QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert P. Feldman (Bar No. 69602)
  bobfeldman@quinnemanuel.com
  Eliyahu Ness (Bar No. 311054)
  eliness@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  John M. Potter (Bar No. 165843)
  johnpotter@quinnemanuel.com
  Maxwell A. Blum (Bar No. 299336)
  maxblum@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Specially Appearing Defendants
Pangang Group Company, Ltd., Pangang Group
Steel Vanadium & Titanium Company, Ltd.,
Pangang Group Titanium Industry Company,
Ltd., and Pangang Group International Economic
& Trading Company

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 11-0573 JSW |
| Plaintiff, | **DECLARATION OF OWEN D. NEE, JR. IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS' THIRD MOTION TO QUASH SERVICE OF SUMMONSES** |
| vs. | |
| PANGANG GROUP COMPANY, LTD., PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD., PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD., and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY, | Hearing Date: June 20, 2017, at 1:00 p.m. |
| Defendants. | |

NEE DECLARATION

I, Owen D. Nee, Jr., declare as follows:

1. I have been a member of the bar of the State of New York (Registration No. 1624626) since 1974 and a solicitor of England and Wales (SRA Number 189510) since 1995.

2. I was a member of the Law Review and graduated from Columbia Law School in 1973 before beginning my career as an international attorney with Coudert Brothers, LLP from 1973 to 2005, when the firm closed.

3. During that time, I spent approximately 30 years in Asia in Hong Kong, Beijing and Shanghai. I opened the firm's offices in Beijing and Shanghai and was the head of the firm's 'China Group', a collection of lawyers and paralegals which at its height consisted of approximately 70 timekeepers.

4. Having opened the first foreign law offices in China and represented many Fortune 500 companies investing in China, I was recognized by THE AMERICAN LAWYER in August 2013 as one of "The Top 50 Big Law Innovators of the Last Fifty Years".

5. After the closure of Coudert Brothers, I continued my practice with Orrick Herrington & Sutcliffe, Jones Day, and Greenberg Traurig from 2005 until 2015.

6. I maintained a home in China until 2015, where I spent approximately one-half of my time after returning to the United States in 2005.

7. I retired at the end of 2015 and started my own sole practice in 2016.

8. I am an adjunct professor at New York University Law School. I teach a seminar on International Business and Investment Transactions with China. I have taught this course in New York since 2010, except for two (2) years, 2014 and 2015, when I taught a similar, but expanded course for the NYU Law School in Shanghai. I also have taught this seminar at Columbia University Law School 2009, 2010, 2013-2015.

NEE DECLARATION

9.      I am the author of four (4) books on Chinese law, *Mergers and Acquisitions in China, Shareholder Agreements and Joint Ventures in China, Competition Law in China,* and *Business Operations in the People's Republic of China*.  The first three books are published by Thomson Reuters (WEST Publications) and are updated each year.  The fourth is published by Bloomberg BNA as one of its Tax Management Foreign Income Portfolios (No. 7070) and is updated five (5) times a year.

10.     A copy of my current curriculum vitae, which summarizes my qualifications and experience, is attached. (*See* Exhibit 1).

11.      I have been asked by counsel to the defendants (herein collectively the "Pangang Group Companies") to provide this Declaration.  According to the Declaration of FBI Special Agent, Cynthia Ho, I understand that criminal summonses were served on a Mr. Todd (Weizhong) Wang, an employee of Angang America, Inc., at 2 Tower Center Blvd., 10/F, East Brunswick, New Jersey 08816 ("AAI").

12.     I have been provided with the government's filings regarding service of the summonses.  For the reasons stated below, the government's factual assertions regarding a merger between AAI's parent companies and the Pangang Group Companies are incorrect.

13.      I have also been provided with a copy of the Declaration of Mr. Sun Ce Jun in Support of Specially Appearing Defendants' Third Motion to Quash (the "Sun Declaration"), which I have considered in forming my opinions expressed herein.  For the reasons stated below, the factual statements in the Sun Declaration regarding the corporate relationships between AAI's parent companies and the Pangang Group Companies in Paragraphs 19, 21, 23, 26, 27 and 28, and the first sentence of Paragraphs 24 and 25 are consistent with my understanding of the requirements of Chinese law.

14.     According to the Declaration of Wang Qizhi in Support of Specially Appearing Defendants' Third Motion to Quash, provided to me by counsel for the Pangang Group Companies, AAI is a subsidiary of Anshan Iron and Steel Company ("Anshan Steel").  (*See* Wang Decl. ¶ 19.)

15.     In the government's Motion for Sanctions, the government asserts that the "Pangang entities" and AAI's parent "Angang entities" have merged, resulting in a company called "Angang Group."[1]

16.     Contrary to the government's position, it is my opinion that Angang Group Corporation ("Angang Group") was not created as a result of a merger between Pangang Group and Anshan Steel; but instead was formed as a reorganization of separate holdings.  As set forth in paragraphs 17 through 31 below, there was no such merger.

17.     Angang Group was created on July 28, 2010.  It was formed with registered, paid-up capital of RMB 17,309.7 million Renminbi (RMB or Chinese Yuan).  The paid-up share capital of the new company was inserted into the new company by an infusion of the equity shareholdings of two companies: Anshan Steel and Pangang Group.[2]

18.     In China, companies in the same industry (such as Anshan Steel and Pangang Group) are frequently reorganized under industrial holding companies like the Angang Group.  Other similar groups in the steel industry include the Baosteel Group, Wuhan Iron and Steel Corporation, Shagang Group, and Shougang Group.  Nonetheless, such holding companies (here, Angang

---

[1] United States Motion for Sanctions, Dkt. No. 998 at 2, n. 3.
[2] *See* Exhibit 2: Restructuring of Angang Holding and Resumption of Trading Announcement May 25, 2010 (Stock Code :347) and Clarification Announcement, Angang Steel Company Limited (Stock Code: 347), July 30, 2010 at
http://www.hkexnews.hk/listedco/listconews/SEHK/2010/0730/LTN20100730304.pdf .

-3-

Group) generally do not exercise day-to-day management of the companies they hold, but instead serve solely as shareholders.[3]

19.     The 2010 transaction involving Angang Group did not merge Pangang Group and Anshan Steel.

20.     Pursuant to Article 70 of the Company Law, Pangang Group and Anshan Steel may not have the same chairman, vice chairman, directors or other senior management personnel.[4]  I note that the Sun Declaration is consistent with this requirement.

21.     Had Pangang Group and Anshan Steel actually been merged, such a merger would have been accomplished pursuant to Chapter 9 of the Company Law.

22.     Two basic types of merger are possible under the Company Law: a merger by absorption (sometimes translated 'consolidation') and a merger by new establishment (sometimes translated 'incorporation'). [5] A merger by absorption is one in which one or more companies are absorbed into another company and the absorbed company or companies are dissolved in the process.  Such a merger format may be used when it is the intention of the parties to move the headquarters of the combined company to a new location, which is where the owner will establish the corporate headquarters as a newly incorporated entity.

---

[3]*See* Company Law of the People's Republic of China {中华人民共和国公司法}(Standing Committee of the National People's Congress, Document Number: Order No. 8 of the President of the People's Republic of China, Effective Date: March 1, 2014.  *See* Exhibit 3, The Company Law, Art. 67.

The Company Law was originally adopted on December 29, 1993 and subsequently amended on December 25, 1999 and August 28, 2004; and was revised and reissued on October 27, 2005 and December 28, 2013 with the final revision taking effect on March 1, 2014.  References to the Company Law herein are to the Company Law revised on October 27, 2005, which took effect on January 1, 2006, as this version of the Company Law was the one in effect during 2010. *See* Exhibit 3.

[4]  *See* Ex. 3, Company Law, Art. 70.

[5]  *See* Ex. 3, Company Law, Art. 173.

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23.     A merger by new establishment occurs when two or more companies merge and thereby create a new entity that previously did not exist, while the former corporate entities are dissolved.  The merger by new establishment is used when two entities desire to combine their operations and adopt a new name for the combined business or, for reasons of comparable size and reputation, neither of the combining entities is willing to be the only company that is forced to dissolve—so both dissolve.

24.     When either type of merger occurs at least one of the merging companies disappears.[6]  As a result, at least one of the merged companies would no longer have its own distinct Business License, since upon dissolution a company must surrender its Business License to the Administration of Industry and Commerce.[7]

25.   With respect to Pangang Group and Anshan Steel, neither company was dissolved in the 2010 transaction.  Attached as Exhibit 4 is a translation of Anshan Steel's Business License dated January 25, 2017.  Attached as Exhibit 5 is a translation Pangang Group's Business License dated May 21, 2015.  A Business License is the functional equivalent of a Certificate of Incorporation in the United States and states the date of incorporation. In the case of Anshan Steel, the Business License clearly states that it was incorporated on July 9, 1949 and in the case of Pangang Group, its Business License states that it was incorporated on October 26, 1989. Had there been a merger of these two companies in 2010, a merger by absorption would have caused one of the two companies to give up its Business License and a merger by new establishment would have meant that both companies would have had to turn in their Business Licenses.  Yet both companies were in existence before 2010 and both remained in existence after 2010.

---

[6] *See id.*, Art.173.
[7] *See id.*, Art. 180.

26.     Apart from Chinese law, my conclusion that Pangang Group and Anshan Steel did not merge is further supported by my review of publicly available information from The Stock Exchange of Hong Kong where Anshan Steel owns 67% of the shares of a listed company, Angang Steel Company Limited ("Angang Steel").

27.     Had the 2010 transaction merged Anshan Steel and Pangang Group, Angang Group would have been required to make a general offer to purchase the shares of the public shareholders of Angang Steel pursuant to Rule 26 of the Codes on Takeovers and Mergers and Share Repurchases of Securities and Futures Commission of Hong Kong.[8]

28.     The purpose of the rule is to protect the public shareholders from acquisitions or mergers where the acquirer or successor may have quite a different management plan for the publicly traded subsidiary.

29.     According to Angang Steel's public filings in Hong Kong, Angang Steel had been notified that a waiver application would be "made to the Executive Director of the Corporate Finance Division of the Securities and Futures Commission in respect of any mandatory general offer obligation."[9]  While such requests for waivers and the responses are not public documents, the waiver must have been granted as indicated by the fact that no general offer was made.[10]

30.     That the regulators at the Hong Kong Stock Exchange did not require a general offer to be made to Angang Steel's public shareholders further demonstrates that the 2010

---

[8] *See* Codes on Takeovers and Mergers and Share Repurchases, Hong Kong Sec. & Fut. Comm., Rue 26. Mandatory Offer at http://www.sfc.hk/web/EN/assets/components/codes/files-previous/web/codes/the-codes-on-takeovers-and-mergers-and-share-buy-backs.  The version cited is that applicable in July 2010.

[9] *See* Exhibit 2: Clarification Announcement, Angang Steel Company Limited (Stock Code: 347), July 30, 2010 at http://www.hkexnews.hk/listedco/listconews/SEHK/2010/0730/LTN20100730304.pdf .

[10] The filings for Angang Steel Company Limited (Stock Code: 347) may be found at http://www.hkexnews.hk/listedco/listconews/advancedsearch/search_active_main.aspx

transaction was not a merger, since ownership of Angang Steel remained the same before and after the 2010 transaction.

31.    In conclusion, it is my opinion that Pangang Group and Anshan Steel remain separate and distinct companies notwithstanding the transaction in 2010.

**Ability to Give Notice in China**

32.    Unlike the United States, Chinese law provides that the form of service prescribed by the Judicial Assistance Agreement is the only form of service permitted in a criminal case originating in a foreign country.  Specifically, Chinese law provides:

> Judicial assistance shall be requested for and provided via the channels prescribed under the pertinent international treaty concluded or acceded to by the People's Republic of China, or via diplomatic channels in the absence of any pertinent treaty concluded or acceded to.[11]

It is accordingly illegal under Chinese law for one individual or corporation to serve another individual or corporation with court documents regarding a criminal matter originating in another country.

33.    Assuming that Todd Wang is a citizen of China and is subject to its laws (even while resident in the United States),[12]  he would have been in violation of Chinese law if he had forwarded the summonses to any of the Pangang Group Companies.

34.     The same would be true for any person residing in China to whom Todd Wang might have sent the summonses.

\*       \*       \*

---

[11] Interpretations of the Supreme People's Court on the Application of the "Criminal Procedure Law of the People's Republic of China" {最高人民法院关于适用《中华人民共和国刑事诉讼法》的解释}(Supreme People's Court, Document Number: *Fa Shi* [2012] No.21, Dec. 20, 2012, eff. Jan 1. 2013), Art. 409.

[12] Criminal Law of the People's Republic of China {中华人民共和国刑法}(National People's Congress, Order No. 83 of the President of the People's Republic of China, Oct. 1, 1997, as amended through Nov. 1, 2015), Arts. 7 and 10

1    I declare under the penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct

3

       Executed April 24, 2017, at Port Chester, New York

4

5

6                      Owen D. Nee, Jr.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1
## (attached to the Declaration of Owen D. Nee, Jr.)

**Owen D. Nee Jr.**

**I.      General Information**

**A.      Personal Data**

  1.      Home Address:

          <u>New York</u>
          701 Forest Avenue
          Rye, New York 10580

  2.      Business Address:

          <u>New York</u>
          In Re Nee, LLC
          32 N. Main Street
          Port Chester, NY 10573
          Tel. No.: 914 481 1777
          Email: onee@inrenee.com

**B.      Academic and Professional Preparation**

  1.      Education
  •        J.D., Columbia University, 1973
  •        Member, Board of Editors, Columbia Law Review
  •        A.B., Princeton University, 1965

  2.      Admitted to Practice

  •        New York  1974
  •        England and Wales  1995
  •        Hong Kong  1996

**C.      Employment**

  1.      Senior Counsel, Greenberg Traurig, LLP, New York and Shanghai (2011-2015)
          a.  Jones Day (2006-2011)
          b.  Orrick Herrington & Sutcliffe (2005-2006)
          c.  Coudert Brothers (1973-2005)

2.      Academic

•       Adjunct Professor, New York University School of Law, 2006 to 2017; Global Law Professor from Practice, New York University School of Law, NYU-Shanghai 2014 & 2015

•       Lecturer in Law, Columbia University School of Law, 2007 to 2013.

## II. Professional Experience

### A. Significant Representations

•       Advised a Chinese chemical company on the first IPO of a Chinese corporation on the New York Stock Exchange (NYSE).

•       Advised a Chinese bank on the first internal investigation of corporate governance procedures.

•       Represented a company in acquisition of a powdered milk company in Guangzhou, China.

•       Represented a Fort Worth, Texas company in the establishment of a leasing company in Shanghai, China.

•       Formed first industrial joint venture in Beijing, China in 1982 and provided corporate, labor and tax advice to the company for 30 years.

•       Represented a company in a proposed investment in a China white goods company through a novel foreign invested joint stock company structure.

•       Represented of a company in various employment matters and formation of an additional subsidiary in the state of Delaware.

•       Provided transaction counsel to a company in various matters related to positions in companies affected by PRC laws and economic policies.

•       Represented a United States-based company in regard to anti-monopoly law clearance.

•       Represented a company in several employment matters as well as the licensing for a new plant in Qingdao, China.

•       Represented of a Fortune 500 company in several Foreign Corrupt Practices Act (FCPA) investigations and case dispositions in China.

•       Represented a chemical company in an anti-dumping sunset review proceedings for chloroform sales to China.

•       Represented a company in advisory matters as to the application of the FCPA in China.

- Litigated in the Shanghai Intermediate People's Court (through local counsel) for Salem Steel in a trade case involving defective steel products.

- Advised a company as to the effect of changes in China's banking laws on one of its business partners.

- Advised world's largest retailer as to Chinese law and necessity of forming a worker's union or representative body.

## B. Awards and Recognition

- American Lawyer selection "One of the 50 Most Innovative Big Law Lawyers of the Past 50 Years" – August 2013.

- Listed, AsiaLaw Leading Lawyers (1999-2006)

- Recipient, Legal Personality of the Year, Asia Corporate Counsel (2005)

- Recipient, Bronze Star, U.S. Army, Military Intelligence (1971)

- Recipient, Medal of Gallantry, Army of the Republic of Vietnam

## C. Expert Engagements as to Chinese Law

- ***Tang v. Tang*** (New York Supreme Court, 2005) – acting for plaintiff; retained by Vandenberg & Feliu, LLP, New York (2005).

- ***Salem Steel v. Shangshang Stainless Steel Co., Ltd.*** (New Jersey Federal District Court) #: 2:08-cv-04827-DMC-MF – acting for plaintiff; retained by Morison Ansa Holden Assuncao & Prough, LLP, New Jersey 2008.

- ***Ontario Securities Commission*** (Investigation of Chinese company and Accounting Firm) – acting for Commission (2012).

- ***Nautilus Group, Inc. v. Allianz Global Risk:*** No. C11-5281BHS, United States District Court in the Western District of Washington at Tacoma – acting for defendant insurance company; retained by Zelle Hofman Voelbel and Mason LLP (2012).

- ***In the Court of Chancery of the State of Delaware: In re China Agritech, Inc., Shareholder Derivative Litigation***: Consolidated C.A. No. 7163-VCL – acting for defendant; retained by O'Melveny & Myers, LLP (2013 to date).

- ***Kevin Smith, et. al. v. China Agritech, Inc.:*** No.: CV-13-03008 (RGK), United States District Court Central District of California – acting for defendant; retained by O'Melveny & Myers, LLP (2013 to date).

- ***In the Matter of Certain Rubber Resins and the Manufacture of the Same*** (International Trade Commission, Washington, D.C.) No. 337-TA-849 – acting for plaintiff; retained by Milbank, Tweed, Hadley & McCoy (2013).

- 3 -

- ***AXMS v. Marvin Friedman, et. al.***:No. 1:13-cv-01811-KBF, United States District Court for the Southern District of New York – acting for plaintiff; retained by Teitler & Teitler LLP (2013).

### III. Articles, Publications and Lectures

**A. Articles**

- Author, "Let's Make it More Intrusive, and We will Call it Reform: Comments on the Ministry of Commerce's Proposed "Foreign Investment Law of the People's Republic of China", American Chamber of Commerce, Shanghai, February 2015

- Author, "Why the Capital Does Not Flow -- The Legal Dams to Bilateral PRC/US Investment," Conference on China's Economic and Trade Relations, Columbia University School of International and Public Affairs, November 2011

- Author, "Foreign Management of Private Equity in China," The Review of Securities & Commodities, Volume 43, No. 10, May 2010

- Author, "New Attack on Arbitration in China," Bloomberg Corporate Law Journal, Volume 1, Issue 2, Spring 2006

**B. Publications**

- Author, Competition Law in China, Thomson Reuters, Fall 2016

- Author, Mergers and Acquisitions in the PRC, Thomson Reuters, Summer 2016

- Author, Shareholder Agreements and Joint Ventures in the PRC, Thomson Reuters, Spring 2016

- Author, Business Operations in the People's Republic of China, Bureau of National Affairs, Portfolio 7070, 4th edition, 2013 (updated quarterly)

- Author, China in Global Telecommunications Law and Practice, Thompson, Sweet & Maxwell Europe, Spring 2006

**C. Lectures**

- Speaker, "China's Use of Antitrust Laws: Qualcomm's Experience" U.S.-Asia Law Institute, 21st Annual Timothy A. Gelatt Dialogue, November 12, 2015.

- Speaker, "What China Stands For in the New World Order" Princeton University, May 29, 2015.

- Speaker, "Bilateral PRC/US Investment - Is 2014 the Year?" Shanghai, NYU Conference, January 14, 2014.

- Speaker, "Introducing Business Operations in the PRC" BNA Conference, Boston, Massachusetts, September 2012.

- Speaker, "The Commercialization of Communist China," 2nd Annual Fashion Law Institute Symposium, Fordham Law School, New York, NY, April 20, 2012

- Speaker, "Saying within the Lines in the People's Republic of China -- What to Know when Searching behind the Great Wall," The Mosaic of Global Research, CASRO Conference, Miami, Florida, April 18, 2012

- Speaker, "Effect of Foreign Investment on Law Reform," China's Quest for Justice, Timothy A. Gelatt Dialogue on the Rule of Law in Asia, New York University School of Law, New York, NY, November 7, 2011

- Speaker, "PLI's Doing Deals in and with Emerging Markets: BRIC and Beyond 2011," New York, NY, July 22, 2011

- Speaker, "How Antitrust Works in a State Planned Economy," Columbia School of Law, New York, NY, October 26,

- Speaker, "Conducting a Commercial Fraud Investigation in China," Anti-Corporate Fraud Conference, Shanghai, China, September 14, 2010

- Speaker, "Let a Hundred Flowers Bloom," Timothy Gelatt Memorial Lecture, Practising Law Institute, New York, NY, September 7, 2010

- Speaker, "Doing Deals in Emerging Markets: BRIC and Beyond 2010," Practising Law Institute, New York, NY, May 13, 2010

- Speaker, "U.S.-China Relations: Implications for HR," Human Resources Policy Institute, New York, NY, May 13, 2010

- Speaker, "Mergers & Acquisitions in China: Has Private Equity Crossed the Great Wall of China," American Conference Institute, New York, NY, February 25, 2010

- Speaker, "Is China a New Growth Engine for the World Economy," Columbia University, New York, NY, February 17, 2010

- Speaker, "US-China Relations in 2010," Princeton Club, New York, NY, February 8, 2010

- Speaker, "China's Automotive Law and Policy," Elliott Associates, New York, NY, November 2, 2009

- Speaker, "Trade and Investment Litigation in China," New York University, New York, NY, March 2, 2009

- Speaker, "Doing Business in China 2008 - New York," New York, NY, July 17, 2008

- Speaker, "Does Chinese Law Have a Direction?" Columbia University School of Law, Reunions – 2008, New York, NY, June 7, 2008

- Speaker, "Electronic Discovery Inside the Great Wall," American Chamber of Commerce Shanghai, Shanghai, China, March 24, 2008

- Speaker, "Mid-Atlantic APALSA Conference: Internet Governance in the People's Republic of China," University of Pennsylvania, Philadelphia, PA, February 2, 2008

- Speaker, "How Private Equity Structures Investments Under the New Enterprise Income Tax Law, Atlas - Doing Business in China," New York, NY, December 12, 2007

- Speaker, "Mergers and Acquisitions in China - Compliance with China's New Labor Laws," American Conference Institute, New York, NY, December 10-11, 2007

- Speaker, "Changing Trends in China Investments: A Lawyer's Perspective (China Investment Environment)," Yale University, New Haven, CT, September 19, 2007

- Speaker, "Handling Disputes in China," New York University, New York, NY, April 4, 2007

- Speaker, "China Banking Regulatory Commission: US Regulation of Non-Banking Bank Activities," Beijing, China, March 13, 2007

- Speaker, "Investing in China - New Tax Laws, International Fiscal Association," USA 2007 Annual Conference, New York, NY, February 28, 2007

- Speaker, "Investment Issues in the People's Republic of China," Q Investments, Fort Worth, TX, January 24, 2007

# EXHIBIT 2
## (attached to the Declaration of Owen D. Nee, Jr.)

*Hong Kong Exchanges and Clearing Limited and The Stock Exchange of Hong Kong Limited take no responsibility for the contents of this announcement, make no representation as to its accuracy or completeness and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*



# 鞍 鋼 股 份 有 限 公 司
## ANGANG STEEL COMPANY LIMITED*

*(a joint stock limited company incorporated in the People's Republic of China with limited liability)*

(Stock Code: 347)

# CLARIFICATION ANNOUNCEMENT

Reference is made to the announcement made by Angang Steel Company Limited*（鞍鋼股份有限公司）on 25 May 2010 (the "**Announcement**") in relation to, among other matters, the joint restructuring of Anshan Iron & Steel Group Complex*（鞍山鋼鐵集團公司）("**Angang Holding**"), the controlling shareholder of the Company, and Panggang Group Company Limited*（攀鋼集團有限公司）. Unless otherwise specified, capitalized terms in this announcement shall have the same meanings as defined in the Announcement.

The Company wishes to announced that it has been notified by Angang Holding that Angang NewCo has been established on 28 July 2010 with a registered share capital of RMB17,309.7 million and Angang Holding has become a wholly-owned subsidiary of Angang NewCo. Accordingly, the current shareholding structure of the Company is as follows:



The Company has also been notified that a waiver application will be made by Angang NewCo to the Executive Director of the Corporate Finance Division of the Securities and Futures Commission in respect of any mandatory general offer obligation which would otherwise arise under Rule 26 of the Code on Takeovers and Mergers as soon as possible.

By Order of the Board

**Fu Jihui**

*Executive Director and Secretary to the Board*

Anshan City, Liaoning Province, the PRC.
30 July 2010

*The directors of the Company jointly and severally accept full responsibility for the accuracy of the information contained in this announcement and confirm, having made all reasonable enquiries, that to the best of their knowledge, opinions expressed in this announcement have been arrived at after due and careful consideration and there are no other facts not contained in this announcement, the omission of which would make any statement in this announcement misleading.*

As at the date of this announcement, the Board comprises the following directors:

| *Executive Directors:* | *Independent Non-Executive Directors:* |
|---|---|
| Zhang Xiaogang | Li Shijun |
| Yang Hua | Ma Guoqiang |
| Chen Ming | Kwong Chi Kit, Victor |
| Yu Wanyuan | |
| Fu Jihui | |

\*   *For identification purposes only*

*Hong Kong Exchanges and Clearing Limited and The Stock Exchange of Hong Kong Limited take no responsibility for the contents of this announcement, make no representation as to its accuracy or completeness and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*



# 鞍 鋼 股 份 有 限 公 司
## ANGANG STEEL COMPANY LIMITED*

*(a joint stock limited company incorporated in the People's Republic of China with limited liability)*

(Stock Code: 347)

# RESTRUCTURING OF ANGANG HOLDING
# AND
# RESUMPTION OF TRADING

This announcement is made pursuant to Rule 13.09 of the Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited.

The Company is notified by its controlling shareholder, Anshan Iron & Steel Group Complex* （鞍山鋼鐵集團公司） ("**Angang Holding**") on 21 May 2010, that Angang Holding has received a notice from the State-owned Assets Supervision and Administration Commission of the State Council*（國務院國有資產監督管理委員會） ("**SASAC**") which states that SASAC has agreed to the joint restructuring of Angang Holding and Panggang Group Company Limited*（攀鋼集團有限公司） ("**Panggang Group**") (the "**Joint Restructuring**"). The Joint Restructuring entails the establishment by SASAC (as the representative of the State Council) of a new company, Angang Group Company*（鞍鋼集團公司） ("**Angang NewCo**"), which will wholly own Angang Holding and Panggang Group.

Upon completion of the Joint Restructuring, there will be no change to the ultimate beneficial owner and the immediate controlling shareholder of the Company, being SASAC and Angang Holding, respectively. The current structure of Angang Holding is as follows:



The structure of Angang Holding upon completion of the Joint Restructuring will be as follows:



Trading in the shares of the Company ("**Shares**") on The Stock Exchange of Hong Kong Limited (the "**Stock Exchange**") was suspended at the request of the Company with effect from 10:23 a.m. on 24 May 2010, pending release of this announcement. Application has been made to the Stock Exchange for the resumption of trading in the Shares with effect from 9:30 a.m. on 26 May 2010.

As of the date of this announcement, Angang NewCo has not yet been established. The Company will make further announcement(s) in respect of the progress of the Joint Restructuring when further information is available.

The Company envisages that a waiver application will be made to the Executive Director of the Corporate Finance Division of the Securities and Futures Commission in respect of any mandatory general offer obligation which would otherwise arise under Rule 26 of the Code on Takeovers and Mergers as soon as possible.

By Order of the Board
**Fu Jihui**
*Executive Director and Secretary to the Board*

Anshan City, Liaoning Province, the PRC.
25 May 2010

*The directors of the Company jointly and severally accept full responsibility for the accuracy of the information contained in this announcement and confirm, having made all reasonable enquiries, that to the best of their knowledge, opinions expressed in this announcement have been arrived at after due and careful consideration and there are no other facts not contained in this announcement, the omission of which would make any statement in this announcement misleading.*

As at the date of this announcement, the Board comprises the following directors:

| *Executive Directors:* | *Independent Non-Executive Directors:* |
| --- | --- |
| Zhang Xiaogang | Li Shijun |
| Yang Hua | Ma Guoqiang |
| Chen Ming | Liu Wei |
| Yu Wanyuan | Kwong Chi Kit, Victor |
| Fu Jihui | |

\*   *For identification purposes only*

# EXHIBIT 3
## (attached to the Declaration of Owen D. Nee, Jr.)

## Westlaw China Delivery Summary

| | |
|---|---|
| Request made by: | OWEN D NEE |
| Request made on: | Monday, 24 April, 2017 at 01:23 Beijing Time |
| Content type: | Laws & Regulations |
| Title: | Company Law of the People's Republic of China |
| Delivery selection: | Current Document |
| Number of documents delivered: | 1 |

© 2007– 2017, Thomson Reuters, all rights reserved.



# ==Company Law== of the People's Republic of China

Promulgating Institution:  Standing Committee of the National People's Congress
Document Number:  Order No. 42 of the President of the People's Republic of China
Promulgating Date:  10/27/2005
Effective Date:  01/01/2006
Validity Status:  Revised
Revision History:  This document has been revised pursuant to the Decision of the Standing Committee of the National People's Congress on Revising the "Marine Environment Protection Law of the People's Republic of China" and Other Six Laws promulgated on December 28, 2013 and taken effect from March 1, 2014.

Order No. 42 of the President of the People's Republic of China

The Company Law of the People's Republic of China has been revised and adopted at the 18th session of the Standing Committee of the Tenth National People's Congress of the People's Republic of China on October 27, 2005. The revised Company Law of the People's Republic of China is hereby promulgated, and shall come into effect on January 1, 2006.

Hu Jintao, President of the People's Republic of China

October 27, 2005

Company Law of the People's Republic of China

(Adopted at the Fifth Session of the Standing Committee of the Eighth National People's Congress on December 29, 1993; Amended for the first time pursuant to the Decision on Revising the "Company Law of the People's Republic of China" adopted at the 13th Session of the Standing Committee of the Ninth People's Congress on December 25, 1999; Amended for the second time pursuant to the Decision on Revising the "Company Law of the People's Republic of China" adopted by the 11th Session of the Standing Committee of the Tenth National People's Congress on August 28, 2004; Revised at the 18th Session of the Standing Committee of the Tenth National People's Congress on October 27, 2005)

Table of Contents

Chapter 1: General Provisions

Chapter 2: Establishment and Organizational Structure of a Limited Liability Company

Section 1: Establishment

Section 2: Organizational Structure

Section 3: Special Provisions on One-Person Limited Liability Companies

Section 4: Special Provisions on Wholly State-Owned Companies

Chapter 3: Equity Transfer of a Limited Liability Company

Chapter 4: Establishment and Organizational Structure of a Company Limited by Shares

Section 1: Establishment

Section 2: General Meeting

Section 3: Board of Directors; Managers

Section 4: Board of Supervisors

Section 5: Special Provisions on the Organizational Structure of a Listed Company

Chapter 5: Issuance and Transfer of Shares of a Company Limited by Shares

Section 1: Issuance of Shares

Section 2: Transfer of Shares

Chapter 6: Qualifications and Obligations of the Directors, Supervisors, and Senior Management Personnel of a Company

Chapter 7: Corporate Bonds

Chapter 8: Finance and Accounting of a Company

Chapter 9: Merger, Division or Capital Increase or Reduction of a Company

Chapter 10: Dissolution and Liquidation of a Company

Chapter 11: Branches of a Foreign Company

Chapter 12: Legal Liabilities

Chapter 13: Supplementary Provisions

Chapter 1: General Provisions

Article 1        This Law is formulated with a view to regulating the organization and activities of companies, protecting the legitimate rights and interests of companies, and their shareholders and creditors, maintaining social and economic orders, and facilitating the development of the socialist market economy.

Article 2        For the purpose of this Law, a company shall refer to a limited liability company or a company limited by shares established within the territory of the People's Republic of China in accordance with this Law.

Article 3        A company is an enterprise legal person with independent legal person property, and is entitled to legal person property rights. The company shall bear liabilities for its debts with all its assets. The shareholders of a limited liability company shall bear liabilities for the company to the extent of their respective subscribed capital contribution. The shareholders of a company limited by shares shall bear liabilities for the company to the extent of their respective subscribed shares.

Article 4      The shareholders of a company shall, in accordance with the law, be entitled to such rights as to obtain capital proceeds, to participate in important decision-making, to elect management personnel, etc.

Article 5        A company shall, when engaging in business activities, abide by laws and administrative regulations, observe social moralities and business ethics, act in good faith, accept the supervision of the Government and the general public, and undertake social responsibilities.

The legitimate rights and interests of a company shall be protected by law, and shall not be infringed upon.

Article 6        To establish a company, an applicant shall submit an application for establishment registration to the relevant company registration authority in accordance with the law. If the application satisfies the establishment conditions provided for herein, the company registration authority shall register the proposed entity as either a limited liability company or a company limited by shares; otherwise, the proposed entity shall not be registered as a limited liability company or a company limited by shares.

Where laws or administrative regulations specify that the establishment of a company shall be subject to approval, the relevant approval formalities shall be gone through in accordance with the law prior to the registration of the company.

The general public may apply to company registration authorities to inquire on company registration matters, and company registration authorities shall provide the inquiry services.

Article 7      Company registration authorities shall issue business licenses of companies to the companies established under the law. The date of issuance of the business license for a company shall be the date of establishment of the company.



The business license of a company shall state therein such matters as the name, domicile, registered capital, paid-up capital, business scope, and the name of the legal representative, etc. of the company.

Where any of the matters stated in the business license of a company is changed, the company shall go through the formalities for change of registration in accordance with the law, and the relevant company registration authority shall issue a new business license to replace the old one.

Article 8    A limited liability company established under this Law shall include the characters "######" (limited liability company) or "####" (company limited) in the company name thereof.

A company limited by shares established under this Law shall include the characters "######" or "####" (both meaning joint stock company) in the company name thereof.

Article 9    Where a limited liability company converts to a company limited by shares, such conversion shall meet the requirements on a company limited by shares provided for herein. Where a company limited by shares converts to a limited liability company, such conversion shall meet the requirements on a limited liability company provided for herein.

Whether a limited liability company converts to a company limited by shares or a company limited by shares converts to a limited liability company, the creditors' rights and liabilities of the company before the conversion shall be succeeded to by the company formed after the conversion.

Article 10    The location of the principal office of a company shall be its domicile.

Article 11    To establish a company, the company's articles of association shall be formulated in accordance with the law. The articles of association shall be binding on the company, and its shareholders, directors, supervisors and senior management personnel.

Article 12    The business scope of a company shall be specified in its articles of association, and shall be registered in accordance with the law. A company may modify its articles of association to change the scope of business, provided that the formalities for change of registration shall be gone through.

Where any item in the business scope of a company shall be subject to approval in accordance with laws and administrative regulations, approval shall be obtained pursuant to the law.

Article 13    The legal representative of a company shall, pursuant to the company's articles of association, be assumed by the chairman of the board of directors, an executive director or a manager, and shall be registered in accordance with the law. Change of the legal representative of the company shall be subject to the formalities for change of registration.

Article 14    A company may establish a branch company by filing an application for registration with the relevant company registration authority and obtaining a business license. A branch company is not qualified as a legal person, and its civil liabilities shall be borne by the parent company.

A company may establish subsidiaries. Subsidiaries are qualified as legal persons, and shall independently bear civil liabilities in accordance with the law.

Article 15    A company may invest in other enterprises, provided that it shall not become a capital-contributing party that bears joint and several liabilities for the debts of the enterprises that it invests in, unless otherwise specified by the law.

Article 16    Where a company invests in another enterprise or provides guarantee for others, the investment or guarantee shall, in accordance with the company's articles of association, be subject to a resolution of the board of directors, the shareholders' meeting or the general meeting. If any limit on the total amount of investments or guarantees or any limit on the amount of a single investment or guarantee is provided for in the company's articles of association, the investment or guarantee shall not exceed the specified limit.

Where a company provides guarantee for a shareholder or the actual controller of the company, such guarantee shall be subject to a resolution of the shareholders' meeting or the general meeting.

Neither a shareholder specified in the preceding Paragraph nor a shareholder who is controlled by the



actual controller specified in the preceding Paragraph is allowed to vote on the matters specified in the preceding Paragraph. Such voting shall be subject to adoption by the other shareholders who represent more than half of the voting rights of all the other shareholders present at the meeting.

Article 17    A company shall protect the legitimate rights and interests of its staff members, conclude labor contracts with them, participate in the social insurance system, and reinforce the labor protection for them so as to achieve safe production.

The company shall adopt various forms to enhance vocational education and job training for its staff members to improve their professional competency.

Article 18    The staff members of a company shall organize a labor union in compliance with the Labor Union Law of the People's Republic of China to carry out labor union activities and maintain the legitimate rights and interests of the staff members. The company shall provide necessary conditions for the labor union thereof to carry out activities. The labor union of the company shall, in accordance with the law, conclude a collective contract with the company in connection with such matters as labor remunerations, working hours, benefits, insurance, labor safety, and sanitation, on behalf of the staff members.

A company shall, in accordance with the Constitution and other relevant laws, implement democratic management through a general meeting of the representatives of staff members or other forms.

When making research and decisions on restructuring or any major issue concerning its business operations, or when formulating important rules and regulations, a company shall listen to the opinions of its labor union, and to the opinions and suggestions of its staff members through the general meeting of the representatives of staff members or other forms.

Article 19    An organization of the Communist Party of China ("CPC") shall be established in a company to carry out activities of the CPC pursuant to the Constitution of the Communist Party of China. The company shall provide necessary conditions for the activities of the organization of the CPC.

Article 20    The shareholders of a company shall abide by laws, administrative regulations, and the company's articles of association, and shall exercise shareholder's rights in accordance with the law. A shareholder shall not prejudice the interests of the company or other shareholders by abusing shareholder's rights, nor shall the shareholder prejudice the interests of the creditors of the company by abusing the independent legal person status of the company or by abusing the limited liabilities of the shareholder.

Any shareholder of a company that has caused any loss to the company or to other shareholders by abusing shareholder's rights shall be liable for compensation in accordance with the law.

Where any shareholder of a company evades debts by abusing the independent legal person status of the company or by abusing the shareholder's limited liabilities, thereby graving prejudicing the interests of the creditors of the company, the shareholder shall be jointly and severally liable for the debts of the company.

Article 21    The controlling shareholders, actual holders, directors, supervisors and senior management personnel of a company shall not make use of their affiliation to prejudice the interests of the company.

Whoever mentioned in the preceding Paragraph shall be liable for compensation if he/she causes any loss to the company by violating the preceding Paragraph.

Article 22    The contents of a resolution of the shareholders' meeting, the general meeting or the board of directors shall be invalid if they are in violation of laws or administrative regulations.

Where the procedures for convening, or voting at, the shareholders' meeting, the general meeting or a meeting of the board of directors are in violation of laws, administrative regulations or the company's articles of association, or where a resolution is in violation of the articles of association, a shareholders may, within 60 days of the date on which the resolution is made, file a request with a competent people's court for cancellation.

Where a shareholder files an action in accordance with the preceding Paragraph, the competent people's court may, at the request of the company, require the shareholder to provide corresponding guarantee.

Where after a company has gone through the formalities for change of registration pursuant to a resolution of the shareholders' meeting, the general meeting or the board of directors, the competent people's court declares the resolution invalid or cancels the resolution, the company shall file an application with the relevant company registration authority for cancellation of the change of registration.

Chapter 2: Establishment and Organizational Structure of a Limited Liability Company

Section 1: Establishment

Article 23     To establish a limited liability company, the following conditions shall be satisfied:

(1) The number of shareholders meets the quorum;

(2) The amount of capital contributions paid by the shareholders reaches the statutory minimum amount of capital;

(3) The shareholders jointly formulate the company's articles of association;

(4) The company has a name, and its organizational structure meets the requirement for a limited liability company; and

(5) The company has a domicile.

Article 24     The establishment of a limited liability company shall be subject to the capital contribution by not more than 50 shareholders.

Article 25     The articles of association of a limited liability company shall set forth the following matters:

(1) Name and domicile of the company;

(2) Business scope of the company;

(3) Registered capital of the company;

(4) Names of the shareholders;

(5) Form, amount, and schedule of capital contributions by the shareholders;

(6) Organizations of the company and the methods of formation, authorities, and rules of procedure thereof;

(7) Legal representative of the company; and

(8) Any other matter deemed as necessary to be specified by the shareholders' meeting.

The shareholders shall affix their signatures and seals to the company's articles of association.

Article 26     The registered capital of a limited liability company shall be the total amount of capital contributions subscribed for by all the shareholders as registered with the relevant company registration authority. The aggregate amount of the first capital contribution made by all the shareholders of the company shall not be less than 20 percent of the registered capital, nor shall it be less than the statutory minimum amount of the registered capital. The remaining capital contributions shall be paid up in full by the shareholders within two years from the date of establishment of the company, or may be paid up in full within five years in the case of an investment company.

The minimum amount of the registered capital of a limited liability company shall be RMB 30,000, unless a higher minimum amount of the registered capital of a limited liability company is specified in laws or administrative regulations.

Article 27     A shareholder may make capital contributions in the form of monetary funds, or alternatively may make capital contributions with such valued non-monetary property as physical items, intellectual property rights, and land-use rights that may be valued in monetary terms and may be



transferred in accordance with the law, excluding the property that shall not be used for capital contributions as specified in laws and administrative regulations.

The non-monetary property that is used for capital contributions shall be valued and verified, and shall not be over-valued or under-valued. The provisions on the valuation of such property as prescribed by laws or administrative regulations shall prevail.

The aggregate amount of monetary capital contributions by all the shareholders shall not be less than 30 percent of the registered capital in the case of a limited liability company.

Article 28    The shareholders of a company shall, according to the schedule, make full payment for the capital contributions that they have respectively subscribed for as specified in the articles of association of the company. If a shareholder makes capital contribution in the monetary form, the shareholder shall deposit the full amount of the monetary capital contribution into the bank account opened for the limited liability company. If a shareholder makes capital contribution with non-monetary property, the formalities for transfer of the property rights shall be completed pursuant to the law.

A shareholder who fails to pay capital contribution in accordance with the preceding Paragraph shall, in addition to making full payment to the company, bear the liabilities for breach of contract to the shareholders who have already made full payment of their capital contributions as scheduled.

Article 29    The capital contributions made by shareholders shall be subject to the capital verification of a lawfully-established capital verification agency and the issuance of certification thereby.

Article 30       After the first capital contribution made by a shareholder has been verified by a lawfully-established capital verification agency, a representative designated, or an agent jointly entrusted, by all the shareholders shall apply with the relevant company registration authority for establishment registration by submitting a written application for company registration, the company's articles of association, the capital verification certification and other documents.

Article 31       After the establishment of a limited liability company, if the actual value of any capital contribution made in the form of non-monetary property is found to be apparently lower than the value specified in the company's articles of association, the shareholder who has made the said capital contribution shall pay up the difference, with the other shareholders at the time of establishment of the company bearing joint and several liability.

Article 32    Upon the establishment of a limited liability company, a capital contribution certificate shall be issued to each of the shareholders.

The capital contribution certificate shall set forth the following matters:

(1) Name of the company;

(2) Date of establishment of the company;

(3) Registered capital of the company;

(4) Names of the shareholders, amount of their respective capital contributions, and the date on which the capital contributions are made; and

(5) Serial number and date of issuance of the capital contribution certificate.

The capital contribution certificate shall be affixed with the seal of the company.

Article 33    A limited liability company shall prepare and make available a shareholder register, with the following items specified therein:

(1) Names and domiciles of the shareholders;

(2) Amount of capital contributions made by each of the shareholders; and

(3) Serial number of each capital contribution certificate.

The shareholders who are recorded in the shareholder register may exercise the shareholder's rights on the strength of the shareholder register.

Westlaw. CHINA

A company shall register the names of the shareholders and the amount of their respective capital contributions with the relevant company registration authority. In the case of change of any registered item, the formalities for change of registration shall be completed. A company that fails to go through the formalities for registration or change of registration shall not set up a defense against any third party.

Article 34      The shareholders of a company shall be entitled to inspect and duplicate the company's articles of association, the minutes of the shareholders' meetings, the resolutions of the board of directors, the resolutions of the board of supervisors, and the financial and accounting reports of the company.

The shareholders may request to inspect the accounting books of the company. Where a shareholder so requests, a written request shall be submitted to the company, with the purposes indicated therein. If the company has reasons to believe that the shareholder's request to inspect the accounting books is for any improper purpose and may prejudice the legitimate interests of the company, the company may reject the request and shall, within 15 days after the shareholder submits the written request, give a written reply to the shareholder and state the reasons therefor. Where the company refuses to allow inspection by the shareholder, the shareholder may request the competent people's court to require the company to provide the access to inspection.

Article 35      The dividends shall be distributed to shareholders in proportion to the actual capital contributions paid up by them, unless otherwise agreed upon by all the shareholders. In the event of capital increase of the company, the shareholders shall have the priority to subscribe for capital contribution proportionate to their actual paid-up capital contributions, unless otherwise agreed upon by all the shareholders.

Article 36      After the establishment of a company, its shareholders shall not withdraw their paid-up capital contributions.

Section 2: Organizational Structure

Article 37      The shareholders' meeting of a limited liability company shall be composed of all shareholders. The shareholders' meeting is the company's governing body, and shall exercise its powers in accordance with this Law.

Article 38      The shareholders' meeting of a company shall exercise the following powers:

(1) Making decisions on the company's operation guidelines and investment plans;

(2) Electing and replacing the directors and supervisors who are not the representatives of the staff members, and making decisions on the matters concerning the remunerations of the directors and supervisors;

(3) Approving the reports of the board of directors through deliberation;

(4) Approving the reports of the board of supervisors or those of the supervisors through deliberation;

(5) Approving the annual financial budget plans and final accounts of the company through deliberation;

(6) Approving the profit distribution plans and loss recovery plans of the company through deliberation;

(7) Making resolutions on the increase or decrease of the company's registered capital;

(8) Making resolutions on the issuance of corporate bonds;

(9) Making resolutions on the merger, division, dissolution or liquidation of the company or on the conversion of the corporate form;

(10) Modifying the company's articles of association; and

(11) Exercising other powers specified in the articles of association.

Where all the shareholders have reached a written consensus on a matter listed in the preceding Paragraph, a decision may be directly made without convening a shareholders' meeting, provided that all the shareholders shall affix their signatures and seals to the decision document.

Article 39      The first shareholders' meeting shall be convened and presided over by the shareholder who



has made the largest proportion of capital contributions, and shall exercise its powers in accordance with this Law.

Article 40   The shareholders' meetings are classified into regular meetings and interim meetings.

Regular meetings shall be held as scheduled under the company's articles of association. An interim meeting shall be held if so proposed by the shareholders representing more than one tenth of the voting rights, more than one third of the directors, the board of supervisors, or in the absence thereof, the supervisors.

Article 41   Where a limited liability company has established a board of directors, the shareholders' meetings shall be convened by the board of directors and be presided over by the chairman of the board of directors. If the said chairman is unable to or fails to perform the duties thereof, the shareholders' meetings shall be presided over by the vice chairman of the board of directors. If the vice chairman of the board of directors is unable to or fails to perform the duties thereof, the shareholders' meeting shall be presided over by a director elected jointly by more than half of all the directors..

Where a limited liability company has no board of directors, the shareholders' meetings shall be convened and presided over by an executive director.

If the board of directors or the executive director is unable to or fails to perform the duties of convening the shareholders' meetings, the board of supervisors or, in the absence thereof in the company, the supervisors, shall convene and preside over such meetings. If the board of supervisors or the supervisors fail to convene or preside over such meetings, the shareholders representing more than one tenth of the voting rights may convene and preside over such meetings at their own discretion.

Article 42   A notice shall be given to all the shareholders of a company 15 days before a shareholders' meeting is held, unless otherwise specified in the company's articles of association or otherwise agreed upon by all the shareholders.

Minutes shall be prepared by the shareholders' meeting for the decisions on the matters deliberated at each of the shareholders' meetings. Shareholders present at such meetings shall affix their signatures thereto.

Article 43   The shareholders of a company shall exercise their voting rights at shareholders' meetings in proportion to their respective capital contributions, unless otherwise specified in the company's articles of association.

Article 44   The rules of procedure and voting procedures of the shareholders' meeting of a company shall be set forth in the company's articles of association, unless otherwise specified in this Law.

Any resolutions made at a shareholders' meeting on the amendment of the company's articles of association, increase or decrease of the registered capital and on the merger, division, dissolution, or conversion of the company, shall be adopted by the shareholders representing more than two thirds of the voting rights.

Article 45   A limited liability company shall have a board of directors that is to be composed of 3 to 13 members, unless otherwise specified in Article 51 of this Law.

In the case of a limited liability company established with investment from two or more State-owned enterprises or two or more other types of State-owned investing parties, the members of its board of directors shall include the representatives of the staff members of the company; in the case of any other limited liability company, the members of its board of directors may include representatives of the staff members of the company. The representatives of the staff members in the board of directors shall be elected democratically through a general meeting of the representatives of the staff members, general meeting of staff members, or in other forms.

The board of directors shall have one chairman, and may have several vice chairmen. The methods for election of the chairman and vice chairmen shall be specified in the company's articles of association.

Article 46   The term of office of a director of a company shall be specified in the company's articles of



association, subject to a maximum of three years. The term of office of a director may be renewed upon expiry thereof in the case of successful re-election.

Where a new election is not held in a timely manner upon expiry of the term of office of a director, or where the number of the members of the board of directors is less than the quorum due to the resignation of one or more directors during their term of office, such former director(s) shall continue to perform the director's duties in accordance with laws, administrative regulations and the company's articles of association until the newly-elected director(s) take office.

Article 47     The board of directors of a company shall be accountable to the shareholders' meeting and exercise the following powers:

(1) Convening the shareholders' meetings and reporting to the shareholders' meeting;

(2) Executing the resolutions of the shareholders' meeting;

(3) Making decisions on the operation plans and investment plans of the company;

(4) Formulating the annual financial budget plans and final accounts of the company;

(5) Formulating the profit distribution plans and loss recovery plans of the company;

(6) Formulating the plans on the increase or reduction of the registered capital of the company, and on the issuance of corporate bonds;

(7) Formulating the plans on the merger, division, dissolution, or conversion of the company;

(8) Making decisions on the set-up of the internal management bodies of the company;

(9) Making decisions on the employment or dismissal of the manager of the company and matters related to the remuneration thereof, and making decisions, according to the manager's nomination, on the employment or dismissal of the vice manager(s) and the personnel in charge of financial issues and the matters related to their remunerations;

(10) Formulating the fundamental management systems of the company; and

(11) Exercising other powers specified in the company's articles of association.

Article 48     The meetings of the board of directors shall be convened and presided over by the chairman of the board of directors. If the chairman is unable to or fails to perform his/her duties, the meetings shall be convened or presided over by the vice chairman of the board of directors. If the vice chairman is unable to or fails to perform his/her duties, the meetings shall be convened or presided over by a director jointly elected by more than half of all the directors.

Article 49     The rules of procedure and voting procedures of the board of directors of a company shall be set forth in the company's articles of association, unless otherwise specified in this Law.

Minutes shall be prepared by the board of directors for the decisions made on the matters discussed [each of the meetings of the board of directors]. The directors present at such meetings shall affix their signatures thereto.

In voting on a resolution of the board of directors, one person shall be entitled to only one vote.

Article 50     A limited liability company may have a manager whose employment or dismissal shall be subject to the decision of the board of directors. The manager shall be accountable to the board of directors and shall exercise the following powers:

(1) Taking charge of the management of the production and business operations of the company, and organizing the implementation of the resolutions of the board of directors;

(2) Organizing the implementation of the annual operation plans and investment plans of the company;

(3) Drafting the plans on the set-up of the internal management bodies of the company;

(4) Drafting the fundamental management systems of the company;

(5) Formulating specific regulations of the company;

(6) Proposing to employ or dismiss the vice manager(s) or personnel in charge of financial issues of the company;

(7) Making decisions on the employment or dismissal of the persons in charge of management other than those whose employment or dismissal shall be subject to the decision of the board of directors; and

(8) Exercising other powers conferred by the board of directors.

Provisions on the powers of the manager otherwise specified in the company's articles of association shall prevail.

The manager shall attend meetings of the board of directors as a non-voting participant.

Article 51      A limited liability company with relatively few shareholders or of a relatively small size may have one executive director instead of a board of directors. The executive director may concurrently hold the post of the manager of the company.

The powers of the executive director shall be specified by the company's articles of association.

Article 52      A limited liability company shall have a board of supervisors that is to be composed of at least three members. A limited liability company with relatively few shareholders or of a relatively small size may have one or two supervisors instead of a board of supervisors.

The board of supervisors shall include representatives of the shareholders and an appropriate proportion of representatives of the staff members of the company. The specific proportion of the latter shall be specified in the company's articles of association, subject to a minimum of one-third. The representatives of the staff members in the board of supervisors shall be elected democratically by the staff members of the company through a general meeting of the representatives of the staff members, a general meeting of staff members, or in other forms.

The board of supervisors shall have one chairman who is to be elected by more than half of all the supervisors. The chairman of the board of supervisors shall convene and preside over the meetings of the board of supervisors. If the chairman is unable to or fails to perform his/her duties, such meetings shall be convened or presided over by a supervisor jointly elected by more than half of all the supervisors.

The directors or senior management personnel shall not concurrently hold the posts of supervisors.

Article 53      The term of office of a supervisor shall be three years. The term of office of a supervisor may be renewed upon expiry thereof in the case of successful re-election.

If a new election is not held in a timely manner upon the expiry of the term of office of a supervisor, or if the number of the members of the board of supervisors is less than the quorum due to the resignation of one or more supervisors during their term of office, such former supervisor(s) shall continue to perform supervisor's duties in accordance with laws, administrative regulations, and the company's articles of association until the newly elected supervisor(s) take(s) office.

Article 54      The board of supervisors or, in the absence thereof in a company, the supervisors shall exercise the following powers:

(1) Conducting inspection of the financial issues of the company;

(2) Supervising the performance of duties by the directors and senior management personnel, and submitting a proposal on the removal of any director or senior management person who violates laws or administrative regulations, the company's articles of association, or any resolution of the shareholders' meeting;

(3) Requiring the directors or senior management personnel to correct their conducts that prejudice the interests of the company;

(4) Proposing to convene interim shareholders' meetings, and convening and presiding over shareholders' meetings when the board of directors fails to perform the duties of convening and presiding over shareholders' meetings as specified in this Law;

(5) Putting forward proposals to the shareholders' meeting;

(6) Filing actions against the directors or senior management personnel in accordance with Article 152 of this Law; and

(7) Exercising other powers specified in the company's articles of association.

Article 55     The supervisors of a company may attend the meetings of the board of directors as non-voting participants, and may raise questions or suggestions on the matters decided by the board of directors.

The board of supervisors or, in the absence thereof in a company, the supervisors may conduct investigation when discovering any abnormality in the operating conditions of the company, and, where necessary, may engage an accounting firm and others to provide assistance, with relevant expenses borne by the company.

Article 56     The board of supervisors shall convene a meeting at least once a year, and the supervisors may propose to convene an interim meeting of the board of supervisors.

The rules of procedure and voting procedures of the board of supervisors of a company shall be set forth in the company's articles of association, unless otherwise specified in this Law.

A resolution of the board of supervisors shall be passed by more than half of all the supervisors.

Minutes shall be prepared by the board of supervisors for the decisions on the matters discussed [at each of the meetings of the board of supervisors]. The supervisors present at such meetings shall affix their signatures thereto.

Article 57     The necessary expenses incurred by the board of supervisors or, in the absence thereof in a company, the supervisors for exercise of their powers shall be borne by the company.

Section 3: Special Provisions on One-Person Limited Liability Companies

Article 58     This Section shall be applicable to the establishment and the organizational structure of a one-person limited liability company. In the absence of pertinent provisions in this Section, Section 1 and Section 2 of this Chapter shall apply.

For the purpose of this Law, a one-person limited liability company shall refer to a limited liability company comprising only one natural person shareholder or one legal person shareholder.

Article 59     The minimum amount of the registered capital of a one-person limited liability company shall be RMB 100,000. The shareholder shall pay up the capital contribution specified in the articles of association in one lump sum.

One natural person can only establish one one-person limited liability company which is prohibited from investing in the establishment of another one-person limited liability company.

Article 60     A one-person limited liability company shall indicate, in its company registration, whether it is wholly owned by a natural person or a legal person. The same shall also be stated in the business license of the company.

Article 61     The articles of association of a one-person limited liability company shall be formulated by the shareholder.

Article 62     A one-person limited liability company has no shareholders' meeting. Where the shareholder makes a decision listed in Paragraph 1 of Article 38 of this Law, the decision shall be made in writing, and shall be prepared and made available at the company after the shareholder has affixed his/her signature thereto.

Article 63     A one-person limited liability company shall prepare financial and accounting reports at the end of each fiscal year, and such reports shall be audited by an accounting firm.

Article 64     Where the shareholder of a one-person limited liability company is unable to prove that the property of the company is independent of his/her own property, the shareholder shall bear joint and



several liabilities for the debts of the company.

### Section 4: Special Provisions on Wholly State-Owned Companies

Article 65      This Section shall be applicable to the establishment and the organizational structure of a wholly State-owned company. In the absence of pertinent provisions in this Section, Section 1 and Section 2 of this Chapter shall apply.

For the purpose of this Law, a wholly State-owned company shall refer to a limited liability company to which the capital contribution is solely made by the State and for which the State Council or the State-owned assets supervision and administration authority, authorized by the local people's government at the same level, performs the duties of the capital contributing party.

Article 66      The articles of association of a wholly State-owned company shall be formulated by the relevant State-owned assets supervision and administration authority, or be formulated by the board of directors and be reported to the relevant State-owned assets supervision and administration authority for approval.

Article 67      A wholly State-owned company has no shareholders' meeting, and the relevant State-owned assets supervision and administration authority shall exercise the powers of the shareholders' meeting. The State-owned assets supervision and administration authority may authorize the board of directors of the company to exercise part of the powers of the shareholders' meeting, and to make decisions on material matters of the company. However, the merger, division, and dissolution of the company, the increase or reduction of the registered capital, or issuance of corporate bonds shall be subject to the decision of the State-owned supervision and administration authority. The merger, division, and dissolution of, or application for bankruptcy by, an important wholly State-owned company shall, after the examination and verification of the State-owned assets supervision and administration authority, be reported to the people's government at the same level for approval.

For the purpose of the preceding Paragraph, an important wholly State-owned company shall be determined in accordance with relevant provisions of the State Council.

Article 68      A wholly State-owned company shall have a board of directors which shall exercise its powers in accordance with Article 47 and Article 67 of this Law. The term of office of a director shall not exceed three years. The members of the board of directors shall include representatives of the staff members of the company.

The members of the board of directors shall be appointed by the relevant State-owned assets supervision and administration authority. However, the representatives of the staff members in the board of directors shall be elected by the staff members of the company through a general meeting of the representatives of the staff members.

The board of directors shall have one chairman and may have several vice chairmen. The chairman and vice chairmen of the board of directors shall be appointed from among the members of the board by the relevant State-owned assets supervision and administration authority.

Article 69      A wholly State-owned company may have a manager whose employment or dismissal shall be at the decision of the board of directors. The manager shall exercise his/her powers pursuant to Article 50 of this Law.

Subject to the consent of the relevant State-owned assets supervision and administration authority, a member of the board of directors may concurrently hold the post of the manager of the company.

Article 70      The chairman, vice chairmen, and directors of the board of directors and the senior management personnel of a wholly State-owned company shall not, without the consent of the relevant State-owned assets supervision and administration authority, concurrently hold any position at any other limited liability company, company limited by shares, or any other economic organization.

Article 71      The board of supervisors of a wholly State-owned company shall comprise at least five members, among whom the proportion of the representatives of the staff members shall not be less than one third, and the specific proportion shall be specified in the company's articles of association.



The members of the board of supervisors shall be appointed by the relevant State-owned assets supervision and administration authority, provided that the representatives of the staff members in the board of supervisors shall be elected through a general meeting of the representatives of the staff members.

The chairman of the board of supervisors shall be appointed from among the members of the board of supervisors by the State-owned assets supervision and administration authority.

The board of supervisors shall exercise the powers specified in Item (1) through to Item (3) of Article 54 of this Law and other powers provided for by the State Council.

Chapter 3: Equity Transfer of a Limited Liability Company

Article 72      The shareholders of a limited liability company may transfer all or part of their equity among each other.

The proposed transfer of equity by a shareholder to any non-shareholder party shall be subject to the consent of more than half of the other shareholders. The shareholder shall notify the other shareholders in writing of the matters on the proposed equity transfer for their consent. Failure to reply by any of the other shareholders within 30 days upon receipt of the written notice shall be deemed as consent to the transfer. Where more than half of the other shareholders do not consent to the transfer, such non-consenting shareholders shall purchase the equity to be transferred; failure to purchase the equity shall be deemed as consent to the transfer.

With respect to any equity to be transferred with the consent of the shareholders, those shareholders other than the transferring party shall have the preemptive right under the same conditions. Where two or more shareholders claim to exercise their preemptive right, they shall determine the proportional ratio for purchase through consultation. Where the consultation fails, the preemptive right shall be exercised in proportion to their respective capital contribution at the time of the transfer.

The provisions on equity transfer otherwise prescribed by the articles of association of a company shall prevail.

Article 73      A people's court shall, when transferring a shareholder's equity pursuant to the mandatory enforcement procedures under the law, notify the company and all the shareholders that the other shareholders have the preemptive right under the same conditions. The other shareholders who fail to exercise their preemptive right within 20 days of such notification shall be deemed to have waived their preemptive right.

Article 74      After transfer of any equity pursuant to Article 72 and Article 73 of this Law, the company concerned shall deregister the capital contribution certificate of the original shareholder, issue a capital contribution certificate to the new shareholder, and modify the records on the shareholder and the capital contributions thereof in the company's articles of association and the shareholder register accordingly. The shareholders' meeting is not required to vote on the said modification to the company's articles of association.

Article 75      Under any of the following circumstances, a shareholder of a company who votes against a resolution of the shareholders' meeting may request the company to acquire the equity thereof at a reasonable price:

(1) Where the company fails to distribute any profit to its shareholders for five consecutive years, while being profitable during those five consecutive years and satisfying the conditions on profit distribution specified in this Law;

(2) Where the company is merged or divided, or it transfers its primary property; or

(3) Where upon the expiration of the term of operation specified in the company's articles of association or the occurrence of any other cause of dissolution specified therein, a resolution is adopted at a shareholders' meeting to modify the articles of association to the effect that the company continues to exist.

Westlaw. CHINA

If the shareholder fails to reach an agreement with the company on equity acquisition within 60 days after the resolution of the shareholders' meeting is adopted, the shareholder may file an action with a competent people's court within 90 days after the resolution of the shareholders' meeting is adopted.

Article 76     After the death of a natural person shareholder of a company, the lawful successor thereof may succeed to the shareholder capacity, unless otherwise specified in the company's articles of association.

Chapter 4: Establishment and Organizational Structure of a Company Limited by Shares

Section 1: Establishment

Article 77     To establish a company limited by shares, the following conditions shall be satisfied:

(1) The number of promoters meets the statutory quorum;

(2) The share capital subscribed for and raised by the promoters reaches the statutory minimum amount of capital;

(3) The issuance of shares and the preparatory work are in compliance with the law;

(4) The company's articles of association is formulated by the promoters, or is adopted at the inaugural meeting if the company is established by means of stock flotation;

(5) The company has a name, and has established an organization structure that conforms to the requirements on a company limited by shares; and

(6) The company has a domicile.

Article 78     A company limited by shares may be established through promotion or stock flotation.

Establishment of a company through promotion shall mean that the promoters of a company establish the company by subscribing for all of the shares that shall be issued by the company.

Establishment of a company through stock flotation shall mean the promoters of a company establish the company by subscribing for part of the shares that shall be issued by the company and offering the remaining shares to the public or particular investors for subscription.

Article 79     To establish a company limited by shares, there shall be not less than two but not more than 200 promoters, of whom more than half shall have domiciles within the territory of China.

Article 80     The promoters of a company limited by shares shall be responsible for the establishment preparatory work of the company.

They shall conclude a promoters' agreement to clarify their respective rights and obligations during the course of establishment of the company.

Article 81     Where a company limited by shares is established through promotion, the registered capital thereof shall be the total amount of the share capital subscribed for by all the promoters as registered at the relevant company registration authority. The aggregate amount of the first capital contribution made by all the promoters shall not be less than 20 percent of the registered capital, and the remaining capital contribution shall be paid up in full by the promoters within two years from the date of establishment of the company, or may be paid up in full within five years in the case of an investment company. Before capital contribution is fully paid up, offering shares to others for subscription shall be prohibited.

Where a company limited by shares is established through stock flotation, the registered capital thereof shall be the actual total paid-up share capital registered at the relevant company registration authority.

The minimum amount of the registered capital of a company limited by shares shall be RMB 5 million. A higher minimum amount of the registered capital of a company limited by shares as prescribed in laws or administrative regulations shall prevail.

Article 82     The articles of association of a company limited by shares shall set forth the following matters:

(1) Name and domicile of the company;

(2) Business scope of the company;

(3) Form of establishment of the company;

(4) Total shares, price per share, and registered capital of the company;

(5) Names of the promoters, number of shares they have subscribed for, and forms and schedule of their capital contributions;

(6) Composition, authorities and rules of procedure of the board of directors;

(7) Legal representative of the company;

(8) Composition, authorities and rules of procedure of the board of supervisors;

(9) Methods for profit distribution of the company;

(10) Causes for dissolution, and methods for liquidation, of the company;

(11) Methods of notification and public announcement by the company; and

(12) Any other matters deemed as necessary to be specified by the general meeting.

Article 83     Article 27 of this Law shall be applicable to the forms of capital contribution by promoters.

Article 84     Where a company limited by shares is established through promotion, the promoters shall subscribe for, in writing, the full amount of the shares to be subscribed for under the company's articles of association. The full amount of capital contribution shall be paid up immediately in the case of a lump-sum payment; or the first installment of capital contribution shall be made immediately in the case of payment by installments. Where capital contribution is made with non-monetary property, the promoter concerned shall go through the formalities for transfer of its property rights in accordance with the law.

In the event of a promoter's failure to make capital contributions in accordance with the preceding Paragraph, the promoter shall bear the liabilities for breach of contract pursuant to the promoters' agreement.

After the payment of the first capital contributions by the promoters, a board of directors and a board of supervisors shall be elected. The board of directors shall apply with the relevant company registration authority for establishment registration by submitting the company's articles of association, the capital verification certificate issued by a lawfully-established capital verification agency, and other documents specified by laws and administrative regulations.

Article 85     Where a company limited by shares is established through stock flotation, the shares subscribed for by the promoters shall not be less than 35 percent of the total shares of the company, unless otherwise prescribed by laws or administrative regulations.

Article 86     The promoters of a company limited by shares shall announce a prospectus and prepare a share subscription form if they publicly offer shares for subscription. The share subscription form shall state the items listed in Article 87 of this Law. The subscribers shall fill out the number and value of their subscribed shares and their domiciles, accompanied by their signatures or seals. The subscribers shall pay for the shares according to the number of their subscribed shares.

Article 87     The prospectus shall be accompanied by the company's articles of association formulated by the promoters, and shall set forth the following matters:

(1) Number of shares subscribed for by the promoters;

(2) Par value and issuing price per share;

(3) Total number of bearer stocks issued;

(4) Purposes of the funds raised;

(5) Rights and obligations of the subscribers; and

(6) Commencement and ending dates of the share offering, and a statement that the subscribers may withdraw their subscriptions if the shares are not fully subscribed upon the expiry of the share offer.

Article 88     The public share offering of promoters shall be underwritten by a lawfully-established securities company, and an underwriting agreement shall be concluded.

Article 89     When conducting a public share offering, the promoters shall conclude an agreement with a bank whereby the latter shall collect the payment for shares on behalf of the former.

The receiving bank shall collect and hold the payments for shares in accordance with the agreement, issue receipts to subscribers who have paid for their share subscriptions, and is under the obligation to provide the relevant department with the certificates for payment receipt.

Article 90     The payments for the issued shares shall, after being fully made, be subject to capital verification and issuance of a certification by a lawfully-established capital verification agency. The promoters shall convene a meeting to found the company within 30 days after the payments for the shares are fully made. The attendees at the inaugural meeting shall comprise the promoters and subscribers.

If the shares issued are not fully subscribed upon the expiry of the time limit specified in the prospectus, or if the promoters fail to convene an inaugural meeting within 30 days after the payments for the issued shares are fully made, the subscribers may require the promoters to refund their payments for the shares plus the interest calculated according to the bank deposit interest rate for that corresponding period.

Article 91     The promoters shall notify each and every subscriber of the date of the inaugural meeting or make a public announcement thereon 15 days before the meeting is held. Only when the promoters and subscribers representing more than half of the total shares are present may the inaugural meeting be held. The inaugural meeting shall exercise the following powers:

(1) Deliberating the report of the promoters on the establishment preparatory work of the company;

(2) Adopting the company's articles of association;

(3) Electing the members of the board of directors;

(4) Electing the members of the board of supervisors;

(5) Examining and verifying the expenses incurred for the establishment of the company;

(6) Examining and verifying the valuation of the property contributed by the promoters in lieu of payments for shares; and

(7) Reaching a resolution on non-establishment of the company, as permitted in the occurrence of any force majeure event or material change to operating conditions that directly affects the establishment of the company.

The resolutions on any of the matters listed in the preceding Paragraph shall be passed by the subscribers who represent more than half of the voting rights of all subscribers present at the meeting.

Article 92     The promoters and subscribers shall not withdraw their share capital after making payments for the shares or otherwise making capital contributions in lieu of payments for shares, except where the issued shares are not fully subscribed by the specified deadline, the promoters fail to convene the inaugural meeting as scheduled, or the inaugural meeting reaches a resolution on non-establishment of the company.

Article 93     The board of directors of a company limited by shares shall, within 30 days after the conclusion of the inaugural meeting, file an application for establishment registration with the relevant company registration authority by submitting the following documents:

(1) A written application for company registration;

(2) Minutes of the inaugural meeting;

(3) Articles of association of the company;

(4) Capital verification proofs;

(5) Appointment documents and identity documents of the legal representative, directors, and supervisors;

(6) Certifications of the legal person or natural person status of the promoters; and

(7) Certification on the domicile of the company.

Where a company limited by shares established through stock flotation publicly issues shares, the approval document issued by the securities regulatory authority of the State Council shall also be submitted to the relevant company registration authority.

Article 94      After the establishment of a company limited by shares, if a promoter fails to make full payment for the capital contribution as specified in the company's articles of association, the promoter shall make good the due amount, and the other promoters shall bear joint and several liabilities.

After the establishment of a company limited by shares, if the actual value of the non-monetary property used as capital contribution for the establishment of the company is found to be significantly lower than the value specified in the company's articles of association, the promoter who has made the said capital contribution shall pay up the difference, and the other promoters shall bear joint and several liabilities.

Article 95     The promoter of a company limited by shares shall bear:

(1) joint and several liabilities for the debts and expenses resulting from the activities for establishment of the company, in the event of failure to establish the company;

(2) joint and several liabilities for refunding the subscribers' payments for shares plus interest calculated according to the bank deposit interest rate for the corresponding period, in the event of failure to establish the company; and

(3) the liability for compensation to the company, in the event that the interests of the company are prejudiced due to the negligence of the promoter during the course of establishment of the company.

Article 96     Where a limited liability company converts to a company limited by shares, the total actual paid-up capital converted shall not be more than the company's net assets. Where a limited liability company converts to a company limited by shares, the public offering of shares for capital increase purpose shall be conducted in accordance with the law.

Article 97       A company limited by shares shall make available, at the company, its articles of association, shareholder register, counterfoils of corporate bonds, minutes of the general meetings, minutes of the meetings of the board of directors, minutes of the meetings of the board of supervisors, and financial and accounting reports.

Article 98       The shareholders of a company shall be entitled to inspect the company's articles of association, shareholder register, counterfoils of corporate bonds, minutes of the general meetings, minutes of the meetings of the board of directors, minutes of the meetings of the board of supervisors, and financial and accounting reports, and to put forward proposals or raise questions concerning the business operations of the company.

## Section 2: General Meeting

Article 99       The general meeting of a company limited by shares shall be composed of all the shareholders. The general meeting is the company's governing body, and shall exercise powers in accordance with this Law.

Article 100      The provisions on the powers of the shareholders' meeting of a limited liability company under Paragraph 1 of Article 38 of this Law shall be applicable to the general meeting of a company limited by shares.

Article 101      The general meeting of a company shall hold an annual meeting once every year. An extraordinary general meeting shall be held within two months in the event of any of the following circumstances:

(1) Where the number of directors is less than two thirds of the number specified in this Law or the



company's articles of association;

(2) Where the unrecovered losses of the company amount to one third of the total paid-up share capital;

(3) Where the extraordinary general meeting is requested by one shareholder who holds, or several shareholders who jointly hold, at least ten percent of the shares of the company;

(4) Where the board of directors deems it necessary to hold the extraordinary general meeting;

(5) Where the extraordinary general meeting is proposed by the board of supervisors; or

(6) Where there are any other circumstances set forth in the company's articles of association.

Article 102      The general meeting of a company shall be convened by the board of directors and presided over by the chairman of the board of directors. If the chairman is unable to or fails to perform his/her duties, the meeting shall be presided over by the vice chairman of the board of directors. If the vice chairman is unable to or fails to perform his/her duties, the meeting shall be presided over by a director jointly elected by more than half of all the directors.

If the board of directors is unable to or fails to perform its duty of convening the general meeting, the board of supervisors shall convene and preside over the meeting in a timely manner. If the board of supervisors fails to convene or preside over the meeting, one shareholder who holds, or several shareholders who jointly hold, at least ten percent of the shares of the company for at least 90 consecutive days may convene and preside over the meeting at their own discretion.

Article 103      To convene a general meeting of a company, each shareholder shall be notified, 20 days before the meeting is held, of the time and venue of the meeting and the matters to be deliberated. To convene an extraordinary general meeting, each shareholder shall be notified 15 days before the meeting is held. Where bearer stocks are to be issued, the time and venue of the general meeting and the matters to be deliberated shall be announced 30 days before the meeting is held.

One shareholder who holds, or several shareholders who jointly hold, three percent or more of the shares of the company may submit an interim proposal in writing to the board of directors ten days before the general meeting is held. The board of directors shall, within two days upon receipt of the proposal, notify the other shareholders, and submit the said interim proposal to the general meeting for deliberation. The contents of the interim proposal shall fall within the scope of powers of the general meeting, and the proposal shall have a clear agenda and specific matters on which resolutions are to be made.

The general meeting shall not make resolutions on matters that are not clearly listed in the notices mentioned in the preceding two paragraphs.

If holders of bearer stocks attend a general meeting, they shall have their stocks kept at the company from five days before the meeting is held till the conclusion of the meeting.

Article 104      A shareholder of a company present at a general meeting shall have one voting right for each share held, provided that the company shall have no voting right for the shares held by itself. Any resolution of the general meeting shall be passed by the shareholders representing more than half of the voting rights of all shareholders present at the meeting. However, a resolution of the general meeting on modification of the articles of association, increase or reduction of the registered capital, merger, division or dissolution, or the conversion of the company shall be passed by the shareholders representing more than two thirds of the voting rights of all shareholders present at the meeting.

Article 105      With regard to any matter that shall be subject to a resolution by the general meeting of a company as specified in this Law and the company's articles of association, such as the company's transfer of any substantial assets to, or acceptance of the transfer of the same from, another party, or the company's provision of guarantee for an external party, the board of directors shall convene a general meeting in a timely manner for the latter to vote on any such matter.

Article 106      The general meeting of a company shall elect directors and supervisors and may, in accordance with the company's articles of association or a resolution of the general meeting, adopt a cumulative voting system.



For the purpose of this Law, a cumulative voting system shall mean that, in the election of directors or supervisors by the general meeting, the number of voting rights under each share is the same as the number of directors or supervisors to be elected, and that the shareholders may cast all of their votes for a single candidate.

Article 107    A shareholder of a company may authorize a proxy to attend a general meeting. The proxy shall submit to the company a power of attorney issued by the shareholder, and shall exercise voting rights within the authorized scope.

Article 108    Minutes shall be prepared by the general meeting for the decisions on the matters discussed [at each of the general meetings]. The chairman of the meeting and the directors present at the meeting shall affix their signatures thereto. The minutes shall be kept together with the book of signatures of the shareholders present as well as the documents of the power of attorney for the proxies present.

Section 3: Board of Directors; Managers

Article 109    A company limited by shares shall have a board of directors that is to be composed of 5 to 19 members.

The board of directors may include representatives of the staff members of the company who shall be elected democratically through a general meeting of the representatives of the staff members, a general meeting of staff members, or in other forms.

The provisions of Article 46 of this Law on the term of office of the directors of a limited liability company shall be applicable to the directors of a company limited by shares.

The provisions of Article 47 of this Law on the powers of the board of directors of a limited liability company shall be applicable to the board of directors of a company limited by shares.

Article 110    The board of directors shall have one chairman and may have one or more vice chairmen. The chairman and vice chairmen of the board of directors shall be elected by more than half of all the directors.

The chairman of the board of directors shall convene and preside over the meetings of the board of directors to inspect the implementation of the resolutions of the board of directors. The vice chairmen shall assist the chairman's work. If the chairman is unable to or fails to perform his/her duties, a vice chairman shall perform the duties instead. If the vice chairman is unable to or fails to perform his/her duties, a director jointly elected by more than half of all the directors shall perform the duties.

Article 111    The board of directors shall convene at least two meetings annually. All the directors and supervisors shall be notified ten days before a meeting is held.

Shareholders representing more than one tenth of the voting rights, more than one third of all directors, or the board of supervisors may propose to convene an interim meeting of the board of directors. The chairman of the board of directors shall convene and preside over an interim meeting of the board of directors within ten days upon receipt of the proposal.

The ways and time limit of notification for convening an interim meeting of the board of directors may be decided separately.

Article 112    A meeting of the board of directors may be held only when more than half of all the directors are present. A resolution of the board of directors shall be passed by more than half of all the directors.

In voting on a resolution of the board of directors, one person shall be entitled to only one vote.

Article 113    The directors shall attend the meetings of the board of directors in person. Any director who is unable to attend a meeting for a certain reason may authorize, in writing, another director to attend the meeting as a proxy, and the scope of authority shall be stated in the power of attorney.

Minutes shall be prepared by the board of directors for the decisions on the matters discussed [at each of the meetings of the board of directors]. The directors present at the meeting shall affix their signatures



thereto.

The directors shall be liable for the resolutions of the board of directors. If a resolution of the board of directors is in violation of laws, administrative regulations, the company's articles of association or a resolution of its general meeting, and causes heavy losses to the company, the directors who participate in adopting the resolution shall be liable for compensation, provided that a director may be exempted from liabilities if it is proved that he/she has expressed objections at the time of voting and such objections are recorded in the meeting minutes.

Article 114    A company limited by shares shall have a manager whose employment and dismissal shall be decided by the board of directors.

The provisions of Article 50 of this Law on the authorities of the manager of a limited liability company shall apply to the manager of a company limited by shares.

Article 115    The board of directors of a company may decide to appoint a member of the board of directors to concurrently hold the post of the manager of the company.

Article 116    A company shall not, either directly or through any of its subsidiaries, provide loans to any director, supervisor or senior management personnel.

Article 117    A company shall regularly disclose to its shareholders information on the remunerations obtained by the directors, supervisors and senior management personnel from the company.

Section 4: Board of Supervisors

Article 118    A company limited by shares shall have a board of supervisors that is to be composed of at least three members.

The board of supervisors shall include representatives of the shareholders and an appropriate proportion of representatives of the staff members of the company. The specific proportion of the representatives of the staff members shall be specified in the company's articles of association, subject to a minimum of one third. The representatives of the staff members on the board of supervisors shall be elected democratically by the staff members through a general meeting of the representatives of the staff members, a general meeting of staff members, or in other forms.

The board of supervisors shall have one chairman and one or more vice chairmen. The chairman and vice chairmen of the board of supervisors shall be elected by more than half of all the supervisors. The chairman of the board of supervisors shall convene and preside over the meetings of the board of supervisors. If the chairman of the board of supervisors is unable to or fails to perform his/her duties, the meeting may be convened and presided over by a vice chairman. If the vice chairman is unable to or fails to perform his/her duties, the meeting may be convened and presided over by a supervisor jointly elected by more than half of all the supervisors.

No director or senior management personnel may concurrently hold the post of a supervisor.

The provisions on the term of office of the supervisors of a limited liability company shall be applicable to the supervisors of a company limited by shares.

Article 119    The provisions on the powers of the board of supervisors of a limited liability company under Article 54 and Article 55 of this Law shall be applicable to the board of supervisors of a company limited by shares.

The necessary expenses incurred by the board of supervisors for exercise of its powers shall be borne by the company.

Article 120    The board of supervisors of a company shall hold at least one meeting every six months. The supervisors may propose to convene interim meetings of the board of supervisors.

The rules of procedure and voting procedures of the board of supervisors shall be set forth in the company's articles of association, unless otherwise specified in this Law.

A resolution of the board of supervisors shall be passed by more than half of all the supervisors.



Minutes shall be prepared by the board of supervisors for the decisions on the matters discussed [at each of the meetings of the board of supervisors]. The supervisors present at the meeting shall affix their signatures thereto.

### Section 5: Special Provisions on the Organizational Structure of a Listed Company

**Article 121**    For the purpose of this Law, a listed company shall refer to a company limited by shares whose stocks are listed and traded on a securities exchange.

**Article 122**    Where the value of the purchase or sale of any substantial assets by a listed company or the provision of guarantee exceeds 30 percent of the total asset value of the listed company within a given year, a resolution shall be made by the general meeting, and shall be passed by the shareholders representing more than two thirds of the voting rights of all the shareholders present at the meeting.

**Article 123**    A listed company shall have independent directors. Detailed measures in this regard shall be specified by the State Council.

**Article 124**    A listed company shall have a secretary of the board of directors to be responsible for such matters as preparing for general meetings and the meetings of the board of directors, properly keeping documents, managing the data on the company's shareholders, and disclosing relevant information.

**Article 125**    Any director of a listed company who is affiliated with any enterprise involved in the matters under any resolution made at a meeting of the board of directors shall be prohibited from exercising voting rights concerning that resolution, nor may that director vote on behalf of any other directors. The meeting of the board of directors may be held with the presence of more than half of all the non-affiliated directors. A resolution made at such meeting of the board of directors shall be passed by more than half of all the non-affiliated directors. If the number of non-affiliated directors present is less than three, the matter shall be submitted to the general meeting of the listed company for deliberation.

### Chapter 5: Issuance and Transfer of Shares Held of a Company Limited by Shares

### Section 1: Issuance of Shares

**Article 126**    The capital of a company limited by shares shall be divided into shares, and each share shall have the same value.

The shares of the company are represented in stocks. Stocks are certificates issued by the company to certify the shares held by its shareholders.

**Article 127**    Shares shall be issued in accordance with the principles of fairness and impartiality. Each share of the same class shall be entitled to the same rights.

With regard to the shares of the same class that are issued at the same time, the issuing conditions and price for each share shall be the same. Any entity or individual shall pay the same price for each of the shares subscribed for.

**Article 128**    The issuing price of a share may be at or above the par value, but shall not be below the par value.

**Article 129**    Stocks shall be in paper form or in other forms specified by the securities regulatory authority of the State Council.

A stock shall set forth the following major matters:

(1) Name of the company;

(2) Date of establishment of the company;

(3) Class and par value of the stock, and the number of shares that it represents; and

(4) Serial number of the stock.

Stocks shall bear the signature of the legal representative and the seal of the company.

The stocks for promoters shall be marked with the characters "#####" (promoters' stocks).

Article 130    The shares issued by a company may be either registered stocks or bearer stocks.

The stocks issued by a company to a promoter or a legal person shall be registered stocks, with the name of the promoter or legal person recorded thereon. Such stocks shall not be registered under any other name or in the name of a representative.

Article 131    A company that issues registered stocks shall prepare and make available a shareholder register to record the following matters:

(1) Names and domiciles of the shareholders;

(2) Number of shares held by each shareholder;

(3) Serial numbers of the stocks held by each shareholder; and

(4) Date on which each shareholder obtains the shares.

A company that issues bearer stocks shall record the volume and the serial numbers of the stocks issued, and the issuance date of each of the stocks.

Article 132    The State Council may separately formulate provisions on the issuance of shares of classes other than those provided for in this Law.

Article 133    Once a company limited by shares is established, its stocks shall be formally delivered to the shareholders. No stocks may be delivered to the shareholders prior to the establishment of the company.

Article 134    Where a company issues new shares, a resolution on the following matters shall be made by the general meeting:

(1) Type and number of the new shares;

(2) Issuing price of the new shares;

(3) Commencement and ending dates for the issuance of the new shares; and

(4) Class and number of the new shares to be issued to the existing shareholders.

Article 135    Where a company issues new shares to the public upon verification and approval of the securities regulatory authority of the State Council, the company shall release the prospectus for the new shares and its financial and accounting reports, and prepare a share subscription form.

Article 88 and Article 89 of this Law shall be applicable to the public offering of new shares by a company.

Article 136    A company that issues new shares may, according to its operational and financial conditions, determine a plan for the pricing of the shares.

Article 137    A company shall, upon receipt of all the payments for its newly issued shares, go through the formalities for change of registration with the relevant company registration authority and make public the same.

Section 2: Transfer of Shares

Article 138    The shares held by shareholders are transferrable under the law.

Article 139    Shareholders shall transfer their shares at lawfully-established securities exchanges or by other means provided for by the State Council.

Article 140    Registered stocks shall be transferred through endorsement by the relevant shareholder or by any other means specified in laws or administrative regulations. After the transfer, the company concerned shall record the transferee's name and domicile in the shareholder register.

Within 20 days before the general meeting is held, or within five days prior to the benchmark date determined by the company for dividend distribution, the formalities for change of registration of the shareholder register specified in the preceding Paragraph shall not be effected, unless otherwise

prescribed by laws on the change of registration of the shareholder register of a listed company.

Article 141    The transfer of bearer stocks shall become valid upon the delivery of the said stocks to the transferee by the relevant shareholder.

Article 142    The shares of a company by the promoters thereof shall not be transferred within one year of the date of establishment of the company. The shares issued before the public offering of shares by the company shall not be transferred within one year of the date on which the stocks of the company are listed and traded on a securities exchange.

The directors, supervisors, and senior management personnel of the company shall declare, to the company, information on their holdings of the shares of the company and the changes thereto. The shares transferrable by them during each year of their term of office shall not exceed 25 percent of their total holdings of the shares of the company. The shares that they held in the company shall not be transferred within one year of the date on which the stocks of the company are listed and traded. The aforesaid persons shall not transfer their shares of the company within six months of their departure from the company. The company's articles of association may set forth other restrictive provisions on the transfer of the shares of the company held by the directors, supervisors, and senior management personnel.

Article 143    A company shall be prohibited from acquiring its own shares, except as under any of the following circumstances:

(1) The company reduces the registered capital thereof;

(2) The company merges with another company that holds its shares;

(3) The company rewards its staff members with shares; or

(4) Any shareholder of the company raises objections to a resolution made by the general meeting on the merger or division of the company, and therefore requests the company to acquire its holdings of shares.

The acquisition of its own shares by the company under Item (1) through to Item (3) of the preceding Paragraph shall be subject to a resolution of the general meeting. After the company has acquired its own shares in accordance with the preceding Paragraph, it shall deregister such shares within ten days of the date of acquisition, if the acquisition falls under Item (1); or transfer or deregister such shares within six months, if the acquisition falls under Item (2) or Item (4).

Where a company acquires its own shares under Item (3) of Paragraph 1, the shares to be acquired shall not exceed five percent of the total outstanding shares of the company. The funds for the acquisition shall be sourced from the after-tax profit of the company. The shares so acquired shall be transferred to its staff members within one year.

A company shall not accept any pledge with its own stocks as the subject matter.

Article 144    Where any registered stocks are stolen, lost or damaged, the shareholder concerned may, pursuant to the procedures of public notice for assertion of claim provided for in the Civil Procedure Law of the People's Republic of China, request a competent people's court to declare the stocks invalid. After the people's court has so declared, the said shareholder may apply to the company concerned for re-issuance of the stocks.

Article 145    The stocks of a listed company shall be listed and traded in accordance with relevant laws, administrative regulations and the trading rules of the securities exchange concerned.

Article 146    A listed company shall, in accordance with laws and administrative regulations, disclose its financial position, operational conditions and material lawsuits, and publish its financial and accounting reports once every six months in each accounting year.

Chapter 6: Qualifications and Obligations of the Directors, Supervisors, and Senior Management Personnel of a Company

Article 147    Whoever is under any of the following circumstances is not allowed to assume the post of a director, supervisor, or senior management person of a company:

(1) He/she has no or limited civil capacity;

(2) He/she has been sentenced to criminal punishments due to corruption, bribery, embezzlement of property, misappropriation of property, or disrupting the order of the socialist market economy, and less than five years have elapsed since the punishments are fully executed; or he/she has been deprived of political rights due to any criminal offense, and less than five years have elapsed since the punishment is fully executed;

(3) He/she has served as a director, factory manager or manager of a company or enterprise that is bankrupt and liquidated, and is personally liable for the bankruptcy of the company or enterprise, and less than three years have elapsed since the date of completion of the bankruptcy liquidation of the company or enterprise;

(4) He/she has served as the legal representative of a company or enterprise that has its business license revoked and is ordered to close down due to violations of the law, and is personally liable for such punishment, and less than three years have elapsed since the date of revocation of the business license of the company or enterprise; or

(5) He/she has a relatively large amount of overdue debts.

If the company elects or appoints any director or supervisor, or engages any senior management personnel in violation of the preceding Paragraph, the election, appointment or engagement shall be invalid.

The company shall remove a director, supervisor or senior management person from his/her post if he/she falls under any of the circumstances described in Paragraph 1 of this Article during the term of office.

Article 148     The directors, supervisors and senior management personnel of a company shall abide by laws, administrative regulations and the company's articles of association. They shall be faithful and diligent to the company.

No director, supervisor or senior management personnel may, by abusing their powers, take any bribe or other illegal gains, or encroach on the property of the company.

Article 149     A director or senior management person of a company is prohibited from any of the following acts:

(1) Misappropriating the funds of the company;

(2) Opening an account in his/her own name or the name of any other individual to deposit the funds of the company;

(3) Without the consent of the shareholders' meeting, the general meeting or the board of directors, loaning the funds of the company to others or using the company's property to provide guarantee for others in violation of the company's articles of association;

(4) Concluding contracts or making deals with the company in violation of the company's articles of association or without the consent of the shareholders' meeting or the general meeting;

(5) Without the consent of the shareholders' meeting or the general meeting, seeking, for the benefit of his/her own or others, any business opportunity that belongs to the company by taking advantage of his/her powers, and operating for his/her own or for others any business that is of the same type with that of the company that he/she serves;

(6) Accepting, and keeping in his/her possession, commissions for the transactions between others and the company;

(7) Disclosing the company's secrets without authorization; or

(8) Committing other acts in violation of his/her obligation of loyalty to the company.

The income gained by the director or senior management person from any of the acts listed in the preceding Paragraph shall belong to the company.



Article 150    Where any director, supervisor or senior management person of a company violates laws, administrative regulations or the company's articles of association during the performance of duties, he/she shall be liable for compensation if any loss is caused to the company.

Article 151    Where a director, supervisor or senior management person of a company is required to attend a shareholders' meeting or a general meeting as a non-voting participant, the director, supervisor or senior management person shall do so and accept the inquiries from shareholders.

The directors and senior management personnel shall truthfully provide relevant information and materials to the board of supervisors or, in the absence thereof in a limited liability company, to the supervisors, and shall not hinder the board of supervisors or the supervisors from exercising their powers.

Article 152    Where a director or senior management person falls under any of the circumstances specified in Article 150 of this Law, the shareholder(s) of a limited liability company, or one shareholder of a company limited by shares who holds, or several shareholders thereof who jointly hold, at least one percent stake in the company for at least 180 consecutive days may submit a written request to the board of supervisors or, in the absence thereof in the limited liability company, to the supervisors, to file an action with the competent people's court. Where a supervisor falls under any of the circumstances specified in Article 150 of this Law, the aforesaid shareholder(s) may submit a written request to the board of directors or, in the absence thereof in the limited liability company, to the executive directors to file an action with the competent people's court.

Where the board of supervisors or, in the absence thereof in the limited liability company, the supervisors refuse to, or if the board of directors or the executive directors refuse to, file an action upon receipt of the shareholders' written request specified in the preceding Paragraph, or fail to file an action within 30 days upon receipt thereof, or where the failure to immediately file an action in an emergency case will cause irreparable damage to the interests of the company, the shareholder(s) specified in the preceding Paragraph may, in their own name, directly file an action to the competent people's court for the interest of the company.

Where any other person infringes upon the legitimate rights and interests of the company and causes losses thereto, the shareholder(s) specified in Paragraph 1 of this Article may file an action with the competent people's court pursuant to the provisions of the preceding two paragraphs.

Article 153    Where a director or senior management person of a company violates laws, administrative regulations or the company's articles of association, thereby damaging the interests of the shareholder(s), the shareholder(s) may file an action with the competent people's court.

Chapter 7: Corporate Bonds

Article 154    For the purpose of this Law, corporate bonds shall refer to the marketable securities issued by a company pursuant to statutory procedures whose principal plus interest shall be serviced within a specific time limit as agreed upon.

To issue corporate bonds, a company shall satisfy the issuing conditions provided for in the Securities Law of the People's Republic of China.

Article 155    After the application of a company for issuing corporate bonds is approved by a department authorized by the State Council, the company shall announce the methods for offering the bonds.

The methods for offering the corporate bonds shall set forth the following major matters:

(1) Name of the company;

(2) Purposes of the funds raised through bond issuance;

(3) Total amount of the corporate bonds and the par value thereof;

(4) Method for determining the interest rate of the bonds;

(5) Time limit and method for servicing the principal and interest;

(6) Information on the guarantee of the bonds;

(7) Issuing price of the bonds, and commencement and ending dates of the issuance;

(8) Net asset value of the company;

(9) Total amount of the outstanding corporate bonds; and

(10) Underwriters of the corporate bonds.

Article 156      Where a company issues corporate bonds in the form of physical bonds, such matters as the company name, the par value, interest rate and time limit for repayment of the bonds, etc. shall be stated on the bonds which shall be signed by the legal representative and affixed with the seal of the company.

Article 157      Corporate bonds may be registered bonds or bearer bonds.

Article 158      Where a company issues corporate bonds, it shall prepare and make available a book of counterfoils for the corporate bonds.

If the company issues registered corporate bonds, its book of counterfoils for the corporate bonds shall record the following matters:

(1) Names and domiciles of the bondholders;

(2) Dates on which the bondholders obtain the bonds and the serial numbers of the bonds;

(3) Total value, par value and interest rate of the bonds, as well as the time limit and method for servicing the principal and interest; and

(4) Issuance date of the bonds.

Where a company issues bearer corporate bonds, its book of counterfoils for the corporate bonds shall record the total value and interest rate of the bonds, the time limit and method for repayment, issuance date, and the serial numbers of the bonds.

Article 159      The registration and settlement institutions for registered corporate bonds shall establish relevant systems for the registration, custody, interest payment and redemption of the bonds.

Article 160      Corporate bonds are transferable, and the transfer price shall be agreed upon by and between the transferor and the transferee.

Corporate bonds listed and traded on a securities exchange shall be transferred in accordance with the trading rules of the securities exchange.

Article 161      Registered corporate bonds shall be transferred through endorsement by the relevant bondholder or by any other means provided for by laws or administrative regulations. After the transfer, the company concerned shall record the name and domicile of the transferee in its book of counterfoils for the corporate bonds.

The transfer of bearer corporate bonds shall come into effect upon the delivery of the said bonds to the transferee by the relevant bondholder.

Article 162      A listed company may, subject to a resolution of the general meeting, issue corporate bonds that can be converted to shares, and shall specify the conversion methods in the offering plan of the corporate bonds. The issuance by a listed company of corporate bonds that can be converted to shares shall be subject to the verification and approval of the securities regulatory authority of the State Council.

In the event of issuance of corporate bonds that can be converted to shares, such characters as "#######" (convertible corporate bonds) shall be indicated thereon, and the number of convertible corporate bonds shall be recorded in the company's book of counterfoils for corporate bonds.

Article 163      Where corporate bonds that can be converted to shares are issued, a company shall issue shares in exchange for the bonds of the bondholders in accordance with the conversion methods, provided that the bondholders shall have the option as to whether or not to convert their bonds into shares.

Westlaw. CHINA

Chapter 8: Finance and Accounting of a Company

Article 164      A company shall establish its own financial and accounting systems in accordance with laws, administrative regulations and the provisions of the finance department of the State Council.

Article 165      A company shall, at the end of each accounting year, prepare a financial and accounting report which shall be audited by an accounting firm in accordance with the law.

The financial and accounting report shall be prepared in accordance with laws, administrative regulations and the provisions of the finance department of the State Council.

Article 166      A limited liability company shall submit its financial and accounting report to each shareholder within the time limit specified in the company's articles of association.

The financial and accounting report of a company limited by shares shall be made available at the company 20 days before the annual general meeting is held for inspection by shareholders. A company limited by shares that publicly offers shares shall announce its financial and accounting report.

Article 167      When a company distributes its after-tax profit of the current year, ten percent of the profit shall be allocated to its statutory common reserve fund. The company is not required to do so once the cumulative amount of the statutory common reserve fund reaches 50 percent or more of the company's registered capital.

If the statutory common reserve fund of the company is not sufficient to cover its losses in previous years, the company shall use the profit of the current year to cover the losses before accruing the statutory common reserve fund in accordance with the preceding Paragraph.

After the company has accrued the statutory common reserve fund from its after-tax profit, it may, subject to a resolution of the shareholders' meeting or the general meeting, accrue discretionary common reserve fund from the after-tax profit.

After having been used to cover the losses and make allocation to the common reserve fund, the remaining after-tax profit shall be distributed in accordance with Article 35 of this Law, in the case of a limited liability company; or in proportion to the shares held by each shareholder, in the case of a company limited by shares, unless otherwise specified in its articles of association.

Where the shareholders' meeting, general meeting or board of directors violates the preceding Paragraph and distributes profit to shareholders before the company covers the losses and accrues the statutory common reserve fund, the shareholders shall return to the company the profit distributed in violation.

A company shall not distribute profits to its holdings of its own shares.

Article 168      Both the premium obtained by a company limited by shares from issuing shares at a price above the par value thereof, and other incomes that shall be included in the capital reserve fund of the company as required by the finance department of the State Council shall be included in the capital reserve fund of the company.

Article 169      The common reserve fund of a company shall be used to cover the losses of the company, expand the production operations of the company, or be converted to increase the company's capital. The capital reserve fund shall not be used to cover the losses of the company.

Where the statutory common reserve fund is converted into capital, the amount thereof remaining after the conversion shall not be less than 25 percent of the registered capital of the company before the increase.

Article 170      The engagement of any accounting firm undertaking the audit of a company, and the termination of the engagement shall, pursuant to the company's articles of association, be decided by the shareholders' meeting, the general meeting or the board of directors.

Where the shareholders' meeting, general meeting or board of directors votes on the termination of the engagement of an accounting firm, the accounting firm shall be allowed to present its opinions.

Article 171      A company shall provide the accounting firm engaged with truthful and complete



accounting proofs, account books, financial and accounting reports and other accounting materials, and may not refuse to provide or conceal any required information or make any false statements.

Article 172    A company shall not establish any account books other than the statutory ones.

No company assets may be deposited under any account opened in any individual's name.

### Chapter 9: Merger, Division or Capital Increase or Reduction of a Company

Article 173    Merger of companies may either be merger by consolidation or merger by incorporation.

Merger by consolidation shall mean that a company absorbs other companies while the absorbed companies shall be dissolved.

Merger by incorporation shall mean that two or more companies merge into a newly incorporated company while all the merged parties shall be dissolved.

Article 174    In the case of a merger of companies, the parties thereto shall conclude a merger agreement and prepare the balance sheet and a list of property. The companies shall notify their creditors within ten days after the resolution on merger is made, and shall publish an announcement in newspapers within 30 days. The creditors may, within 30 days upon receipt of the written notice or, in the case of failure to receive the written notice, within 45 days of the public announcement, request the company to repay the debts or provide the corresponding guaranty.

Article 175    In the case of a merger of companies, the claims and debts of each of the companies to the merger shall be succeeded to by the company continuing to exist after the merger or the newly incorporated company.

Article 176    In the case of the division of a company, the property thereof shall be divided accordingly.

The balance sheet and a list of property of the company shall be prepared for the division thereof. The company shall notify its creditors within ten days after the resolution on division is made, and shall publish an announcement in newspapers within 30 days.

Article 177    The companies after the division shall bear joint and several liabilities for the debts of the company prior to the division, unless otherwise agreed upon prior to the division by the company and its creditors in a written agreement concerning the settlement of debts.

Article 178    Where it is necessary for a company to reduce its registered capital, it shall prepare the balance sheet and a list of property.

The company shall notify its creditors within ten days after the resolution on the reduction of the registered capital is made, and shall publish an announcement in newspapers within 30 days. The creditors shall, within 30 days upon receipt of the written notice, or in the case of the failure to receive the written notice, within 45 days after the public announcement, be entitled to request the company to repay the debts or provide the corresponding guaranty.

The registered capital of the company after the reduction shall not be less than the statutory minimum amount.

Article 179    Where a limited liability company increases its registered capital, the capital contribution subscribed for by its shareholders for the newly increased capital shall be governed by the provisions of this Law on the capital contribution for the establishment of a limited liability company.

Where a company limited by shares issues new shares to increase its registered capital, the subscription of the new shares by its shareholders shall be governed by the provisions of this Law on the payment for shares for the establishment of a company limited by shares.

Article 180    In the event of merger or division of a company, the formalities for change of registration shall be completed with the relevant company registration authority for changes of any registered item in accordance with the law; the company deregistration formalities shall be completed in accordance with the law if the company is dissolved; and the company establishment registration formalities shall be completed in accordance with the law if a new company is established.



In the case of any increase or reduction of a company's registered capital, relevant formalities for change of registration shall be completed with the company registration authority concerned in accordance with the law.

## Chapter 10: Dissolution and Liquidation of a Company

Article 181    A company may be dissolved for any of the following reasons:

(1) The term of operation specified in the company's articles of association expires or any of the other causes of dissolution specified in the company's articles of association occurs;

(2) The shareholders' meeting or the general meeting makes a resolution to dissolve the company;

(3) Dissolution is required by a merger or division of the company;

(4) The business license of the company is revoked, or the company is ordered to close down or is removed, in accordance with the law; or

(5) A people's court decides to dissolve the company pursuant to Article 183 of this Law.

Article 182    A company under Item (1) of Article 181 of this Law may continue to exist by modifying its articles of association.

The modification of the company's articles of association in accordance with the preceding Paragraph shall be passed, in the case of a limited liability company, by the shareholders representing more than two thirds of the voting rights or, in the case of a company limited by shares, by the shareholders representing more than two thirds of the voting rights of all shareholders present at the general meeting.

Article 183    Where a company faces difficulty in operations and management such that the interests of its shareholders will suffer heavy losses if the company continues to exist, and there is no other way to resolve the problem, the shareholders representing more than ten percent of the voting rights of all the shareholders of the company may file a request with the competent people's court to dissolve the company.

Article 184    Where a company is dissolved under Item (1), Item (2), Item (4) or Item (5) of Article 181 of this Law, a liquidation group shall be formed to commence liquidation within 15 days after a cause of dissolution occurs. The liquidation group shall be composed of shareholders, in the case of a limited liability company; or shall be composed of the candidates determined by the directors or the general meeting, in the case of a company limited by shares. Where a liquidation group is not formed to carry out liquidation within the specified time limit, the creditors may apply to the competent people's court to designate relevant personnel to form a liquidation group for liquidation. The people's court shall accept the application, and shall promptly organize a liquidation group to carry out liquidation.

Article 185    The liquidation group of a company may exercise the following powers during liquidation:

(1) Liquidating the property of the company, and preparing the balance sheet and a list of property;

(2) Informing the creditors of the company by notice or public announcement;

(3) Handling the outstanding liquidation-related business of the company;

(4) Paying off the due and payable taxes and the taxes incurred during the liquidation;

(5) Liquidating the claims and the debts of the company;

(6) Handling the property remaining after the full repayment of the debts of the company; and

(7) Participating in civil litigations on behalf of the company.

Article 186    The liquidation group of a company shall notify the creditors within ten days upon its formation, and publish an announcement on newspapers within 60 days. The creditors shall declare their claims to the liquidation group within 30 days upon receipt of the written notice or in the case of the failure to receive the written notice, within 45 days of the public announcement.

When declaring the claims, the creditors shall clarify the matters related thereto and provide supporting



materials. The liquidation group shall register the claims.

During the period for declaration of claims, the liquidation group shall not make any repayment to any of the creditors.

Article 187      The liquidation group of a company shall, after having liquidated the property of the company and prepared the balance sheet and a list of property, formulate a liquidation plan which shall be submitted to the shareholders' meeting, the general meeting or the competent people's court for confirmation.

After paying off the liquidation expenses, the salaries, social insurance premiums and the statutory compensations of the staff members, the due and payable taxes and the debts of the company, the liquidation group shall distribute the remaining property, in the case of a limited liability company, in proportion to the shareholders' capital contribution or, in the case of a company limited by shares, in proportion to the shares held by each shareholder.

During the liquidation, the company shall continue to exist, but shall not carry out business activities irrelevant to the liquidation. The property of the company shall not be distributed to any shareholder before full payments have been made out of the property in accordance with the preceding Paragraph.

Article 188      Where the liquidation group of a company discovers, after having liquidated the property of the company and prepared the balance sheet and a list of property, that the property of the company is not sufficient for debt repayment in full, it shall apply to the competent people's court for bankruptcy declaration in accordance with the law.

After the people's court rules to declare the company bankrupt, the liquidation group shall hand over the liquidation matters to the people's court.

Article 189      After the completion of the liquidation of a company, the liquidation group shall prepare a liquidation report which shall be submitted to the shareholders' meeting, the general meeting or the competent people's court for confirmation, and to the relevant company registration authority for the purpose of applying for the deregistration of the company and the public announcement on the termination of the company.

Article 190      The members of a liquidation group shall devote themselves to their duties and perform liquidation obligations in accordance with the law.

The members of a liquidation group shall not take advantage of their powers to accept bribes or other illegal gains, nor shall they encroach on the property of the company concerned.

A member of a liquidation group who has caused any losses to the company or its creditors intentionally or by gross negligence shall be liable for compensation.

Article 191      Where a company is declared bankrupt pursuant to the law, bankruptcy liquidation shall be carried out in accordance with the laws on enterprise bankruptcy.

## Chapter 11: Branches of a Foreign Company

Article 192      For the purpose of this Law, a foreign company shall refer to a company established outside the territory of China under a foreign law.

Article 193      To establish a branch within the territory of China, a foreign company shall file an application with the competent authority of China and submit relevant documents such as its articles of association and the company registration certificate issued by the authority of the country where it is registered. Upon approval, the foreign company shall go through the registration formalities with the relevant company registration authority in accordance with the law and collect the business license for the branch.

Measures for examination and approval of the branches of a foreign company shall be formulated separately by the State Council.

Article 194      A foreign company shall, in establishing a branch within the territory of China, designate a



representative or an agent within the territory of China to be responsible for the branch, and allocate to the branch the funds commensurate with the business activities in which the branch engages.

Other necessary provisions on the minimum amount of the operational funds for a branch of a foreign company shall be separately formulated by the State Council.

Article 195      A branch of a foreign company shall include, in its name, the country of origin and the form of liability of the foreign company.

A branch of a foreign company shall make available, at the branch's premises, the articles of association of the foreign company.

Article 196      A branch established within the territory of China by a foreign company is not qualified as a Chinese legal person.

A foreign company shall bear civil liabilities for the business activities carried out by its branches within the territory of China.

Article 197      When conducting business activities within the territory of China, branches of foreign companies that are established upon approval shall comply with Chinese laws, and shall not prejudice the social and public interest of China. Their legitimate rights and interests are protected by Chinese laws.

Article 198      Where a foreign company removes any of its branches within the territory of China, it shall pay off its debts pursuant to the law, and carry out liquidation in accordance with the company liquidation procedures under this Law. The property of the branch shall not be transferred outside the territory of China before the debts are repaid in full.

Chapter 12: Legal Liabilities

Article 199      Where, in violation of this Law, a company has been registered by false reporting of the registered capital, submission of false materials, or concealment of any important fact by other fraudulent means, the company registration authority concerned shall order correction to be made. Where a company falsely reports its registered capital, a fine of not less than five percent but not more than 15 percent of the falsely-reported registered capital shall be imposed. Where a company submits false materials or conceals any important facts by other fraudulent means, a fine of not less than RMB 50,000 but not more than RMB 500,000 shall be imposed. Under grave circumstances, the company shall be deregistered or its business license shall be revoked.

Article 200      Where a promoter or shareholder of a company makes false capital contribution, fails to deliver the monetary amount or the non-monetary property used as capital contribution, or fails to deliver the same as scheduled, the relevant company registration authority shall order the promoter or shareholder to make correction, and impose thereon a fine of not less than five percent but not more than 15 percent of the amount of the falsely made capital contribution.

Article 201      Where a promoter or shareholder of a company illegally withdraws its capital contribution after the company is established, the relevant company registration authority shall order the promoter or shareholder to make correction, and impose thereon a fine of not less than five percent but not more than 15 percent, of the capital contribution withdrawn.

Article 202      Where a company violates this Law and establishes account books other than the statutory ones, the finance department of the relevant people's government at or above the county level shall order the company to make correction, and impose thereon a fine of not less than RMB 50,000 but not more than RMB 500,000.

Article 203      Where a company makes any false record or conceals any important fact in such materials as the financial and accounting reports that are submitted to the competent authority in accordance with the law, the competent authority shall impose a fine of not less than RMB 30,000 but not more than RMB 300,000 on the primary persons-in-charge subject to direct liabilities and other personnel subject to direct liabilities.

Article 204      Where a company fails to accrue the statutory common reserve fund in accordance with



this Law, the finance department of the relevant people's government at or above the county level shall order the company to make good the accrual, and may impose thereon a fine of up to RMB 200,000.

Article 205     During the merger, division, reduction of registered capital or liquidation of a company, where the company fails to inform its creditors by notice or public announcement in accordance with this Law, the relevant company registration authority shall order the company to make correction, and impose thereon a fine of not less than RMB 10,000 but not more than RMB 100,000.

During the liquidation of a company, where the company conceals its property or makes any false record in the balance sheet or list of property, or distributes its property prior to the repayment of the debts in full, the relevant company registration authority shall order the company to make correction, impose thereon a fine of not less than five percent but not more than 10 percent of the value of the property that the company has concealed or distributed prior to the repayment of debts in full, and impose a fine of not less than RMB 10,000 but not more than RMB 100,000 on the primary persons-in-charge subject to direct liabilities or other personnel subject to direct liability.

Article 206     Where a company carries out any business activity irrelevant to the liquidation during the liquidation period, the relevant company registration authority shall issue a warning to the company and confiscate the illegal gains.

Article 207     Where a liquidation group fails to submit a liquidation report to the relevant company registration authority pursuant to this Law, or where any important fact is concealed or any material omission is found in the liquidation report submitted, the relevant company registration authority shall order the liquidation group to make correction.

Where any member of a liquidation group takes advantage of his/her powers to practice favoritism for personal gains, seek for illegal gains or encroach on any property of the company, the relevant company registration authority shall order the member to return such property of the company, confiscate his/her illegal gains and may impose thereon a fine of not less than one time but not more than five times the illegal gains.

Article 208     Where an institution that undertakes capital valuation, capital verification or certificate verification provides any false materials, the relevant company registration authority shall confiscate the illegal gains of the institution, and impose thereon a fine of not less than one time but not more than five times the illegal gains. The competent authority may also, pursuant to the law, order the institution to terminate its business operations, and revoke the qualification certificates of its personnel subject to direct liabilities and the business license of the institution.

Where an institution that undertakes capital valuation, capital verification or certificate verification provides a report with material omission out of negligence, the relevant company registration authority shall order the institution to make correction and, under grave circumstances, impose thereon a fine of not less than one time but not more than five times the illegal gains. The competent authority may also, pursuant to the law, order the institution organization to terminate its business operations, and revoke the qualification certificates of its personnel subject to direct liabilities and the business license of the institution.

Where the valuation results, capital verification certification or certificate verification certification issued by an institution that undertakes capital valuation, capital verification or certificate verification is not truthful, thus causing losses to the creditors of the company concerned, the institution shall bear the liability for compensation to the extent of the value affected by its untruthful valuation or certification, unless it can prove that it is not at fault.

Article 209     Where a company registration authority approves a registration application that fails to satisfy the conditions hereunder, or fails to approve a registration application that satisfies the conditions hereunder, administrative disciplinary measures shall be taken, in accordance with the law, against the primary persons-in-charge subject to direct liabilities and other personnel subject to direct liabilities.

Article 210     Where a superior department of a company registration authority orders the latter to approve a registration application that fails to satisfy the conditions hereunder or not to approve a

registration application that satisfies the conditions hereunder, or where the superior department covers up any illegal registration by the latter, administrative disciplinary measures shall be taken, in accordance with the law, against the primary persons-in-charge subject to direct liabilities and other personnel subject to direct liabilities of the superior department.

Article 211     Where an entity not registered as a limited liability company or a company limited by shares in accordance with the law fraudulently names itself as such, or where an entity not registered as a branch company of a limited liability company or a company limited by shares in accordance with the law fraudulently names itself as such, the relevant company registration authority shall order the entity to make correction or ban the entity, and may concurrently impose thereon a fine of up to RMB 100,000.

Article 212     Where a company fails to commence business within six months after its establishment without justifiable reasons, or where a company suspends its business for at least six consecutive months at its own discretion after the commencement of business, the relevant company registration authority may revoke its business license.

Where a company fails to go through the formalities for change of registration of the changes in its registered items in accordance with this Law, the relevant company registration authority shall order the company to go through the registration formalities within a specified time limit; if the company fails to do so by the specified deadline, a fine of not less than RMB 10,000 but not more than RMB 100,000 shall be imposed thereon.

Article 213     Where a foreign company violates this Law and establishes a branch within the territory of China without authorization, the relevant company registration authority shall order the foreign company to make correction or close down the branch, and may concurrently impose thereon a fine of not less than RMB 50,000 but not more than RMB 200,000.

Article 214     The business license of a company shall be revoked if grave illegalities that endanger State security or prejudice social and public interests are committed in the name of the company.

Article 215     A company that violates this Law shall bear civil liabilities for compensation and pay relevant fines, and shall, in the event that its property is not sufficient to make all payments, bear civil liabilities for compensation first.

Article 216     Whoever violates this Law shall be investigated for criminal liabilities pursuant to the law if the violation constitutes a criminal offense.

## Chapter 13: Supplementary Provisions

Article 217     For the purpose of this Law:

(1) "senior management personnel" shall refer to the manager, vice managers and the person in charge of financial matters of a company, the secretary of the board of directors of a listed company, and any other personnel specified in the articles of association of a company;

(2) "controlling shareholder" shall refer to a shareholder whose capital contribution accounts for 50 percent or more of the total capital of a limited liability company, a shareholder whose shares account for 50 percent or more of the total share capital of a company limited by shares, or a shareholder whose voting rights corresponding to the capital contribution or shares thereof are sufficient to exert a material influence on the resolutions of the shareholders' meeting or the general meeting, despite the fact that the shareholder's capital contribution or shares account for less than 50 percent of the total capital or total share capital;

(3) "actual controller" shall refer to a person who is not a shareholder of a company but who is able to actually control the acts of the company through investment relations, agreements or other arrangements; and

(4) "affiliation" shall refer to the relationship between a controlling shareholder, actual controller, director, supervisor or senior management person of a company with an enterprise under the direct or indirect control thereof, or any other relationship that may lead to the transfer of the interests of the company, provided that the enterprises in which the State is the controlling shareholder are not

necessarily affiliated to each other solely on the ground that the State controls the shares thereof.

Article 218    This Law shall be applicable to foreign-invested limited liability companies and companies limited by shares. The provisions otherwise prescribed by the laws on foreign investment shall prevail.

Article 219    This Law shall come into effect on January 1, 2006.

# EXHIBIT 4
## (attached to the Declaration of Owen D. Nee, Jr.)

# 营 业 执 照

统一社会信用代码 912103002414200141

| | |
|---|---|
| 名　　　称 | 鞍山钢铁集团有限公司 |
| 类　　　型 | 有限责任公司（法人独资） |
| 住　　　所 | 鞍山市铁西区 |
| 法 定 代 表 人 | 姚林 |
| 注 册 资 本 | 人民币贰佰陆拾亿元整 |
| 成 立 日 期 | 1949年07月09日 |
| 营 业 期 限 | 自1949年07月09日至长期 |
| 经 营 范 围 | 金属、非金属矿，铁原、精矿购销、加工，客运，危险货物运输，三级普通机动车驾驶员培训，一类机动车维修，公路运输(以上项目下属企业经营)，铁路运输（企业内部经营)，火力发电（有效期至2027年12月日)，工业、民用气体，耐火土石，黑色金属，钢压延制品，金属制品（不含专营)，焦化产品，耐火材料制品，电机、输配电及控制设备，仪器仪表，铁路电讯装置，冶金机械设备及零部件制造，房屋、公路、铁路、矿山、冶炼、机电、化工、通信设备安装工程承包，工程勘察、设计，房屋、设备出租，计算机系统开发，技术开发、转让、咨询、服务、培训，耐火土石开采，建筑，设备安装，勘察设计，职业劳动健康研究与服务，轮胎翻新，设备及备件，冶金材料，合金与金属材料，钢、铁、钒、钛、焦销售。（依法须经批准的项目，经相关部门批准后方可开展经营活动）。 |



登 记 机 关

2017年 01月 25日

提示：应当于每年1月1日至6月30日，通过企业信用信息公示系统报送上一年度年度报告并公示。

# DECLARATION OF CERTIFIED COURT INTERPRETER

**Marilyn Luong, MA**
Master of Arts in Translation and Interpretation (Chinese/English)
1534 Plaza Lane #339
Burlingame, CA 94010

I, Marilyn Luong, declare that I am a certified court interpreter in Mandarin and Cantonese Chinese by the Administrative Office of the Courts.  My Certification Number is #301081.  I also hold a Master's Degree in Translation and Interpretation (Chinese/English) from the Monterey Institute of International Studies.

I certify that the following document is a true and correct translation from Chinese into English, to the best of my knowledge and abilities:

<u>Anshan Business License</u>

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration signed this 23th day of April, 2017 in Burlingame, California.

## <u>Marilyn Luong</u>

Printed Name of Certified Court Interpreter

_Marilyn Luong_

Signature of Certified Court Interpreter

[Translation of Anshan Business License]



# Business License

Unified Social Credit Code   912103002414200141

| | |
|---|---|
| Name | Anshan Iron and Steel Group Co., Ltd. |
| Type | Limited liability company (sole proprietorship of legal person) |
| Address | Tiexi District, Anshan City |
| Legal Representative | YAO Lin |
| Registered Capital | RMB Twenty-Six Billion Yuan Exactly |
| Date of Establishment | July 9, 1949 |
| Term of Operation | From July 9, 1949 to long term |
| Scope of Businesses | Purchase, selling and processing of metal and nonmetal ores, iron ore and concentrate, passenger transport, hazardous freight transport, training of Class-III common motor vehicle drivers, maintenance and repair of Class-I motor vehicles, road transport (the above items are operated by the subordinate enterprises), railway transport (internal operation), thermal power generation (valid until Dec. 4, 2027), gas for industrial and civil use, refractory minerals, ferrous metals, steel calendering products, metal products (exclusive of those requiring special approval), coking products, refractory products, motor, electricity transmission and distribution and control equipment, instruments & meters, railway telecommunication devices, metallurgical machinery and equipment and parts manufacture, installation project contracting for housing, roads, railway, mine, smelting, electromechanical, chemical engineering and communication equipment, engineering survey and design, house and equipment renting, computer system development, technology development, transfer, consultation, service and training, refractory mineral mining, building, equipment installation, survey & design, occupational labor health research and service, tire retreading, equipment and spare parts, metallurgical materials, alloy and metal materials, and selling of steel, iron, vanadium, titanium and coke (items requiring approval according to law shall be operated after being approved by relevant authorities). |

[Seal: Anshan Municipal Administration for Industry and Commerce]

**Registration Authority**



January 25, 2017

Note: The annual report of the previous year should be submitted to and announced by the Enterprise Credit Information Announcement System from Jan. 1 to June 30 each year.

# EXHIBIT 5
# (attached to the Declaration of Owen D. Nee, Jr.)



# 营 业 执 照

注 册 号 510400000035558

| | |
|---|---|
| 名　　　称 | 攀钢集团有限公司 |
| 类　　　型 | 有限责任公司(非自然人投资或控股的法人独资） |
| 住　　　所 | 攀枝花市向阳村 |
| 法 定 代 表 人 | 张大德 |
| 注 册 资 本 | 伍拾亿元人民币 |
| 成 立 日 期 | 1989 年 10 月 26 日 |
| 营 业 期 限 | 2009 年 12 月 18 日至长期 |

经 营 范 围　　钢、铁、钒、钛、焦冶炼；钢压延加工；金属制品、机械设备、电器设备制造修理；建筑材料制造；冶金工程、工业自动化、信息工程技术服务；综合技术及计算机软件开发服务；生活饮用水供应；销售：机械设备、电器设备、金属材料、汽车配件、建筑材料、五金、交电、化工产品（不含危险化学品）、预包装食品（含冷冻饮品）、百货；零售：烟；广告设计、制作、发布；报纸出版、发行；有线广播电视传输及网络维护；餐饮服务；设备租赁；物资储存；日用品修理；房屋租赁；房屋维修；花卉、苗木种植及零售；储存经营冷冻（藏）食品；加工经营食用油、面条及糕点（含裱花蛋糕）；住宿（限分支经营）；游泳场（馆）（按许可证许可范围及期限从事经营）；电影放映；文艺创作及表演；文化体育用品销售；健身服务；会议及展览服务（以上经营范围限分支机构经营）。档案整理。（以上经营范围涉及前置许可的按许可证许可项目及期限从事经营）。



备案经营场所　　（依法须经批准的项目，经相关部门批准后方可开展经营活动）

登 记 机 关

2015 年 　 月 　 日

# DECLARATION OF CERTIFIED
# COURT INTERPRETER

**Marilyn Luong, MA**

Master of Arts in Translation and Interpretation (Chinese/English)

1534 Plaza Lane #339

Burlingame, CA 94010

I, Marilyn Luong, declare that I am a certified court interpreter in Mandarin and Cantonese Chinese by the Administrative Office of the Courts. My Certification Number is #301081. I also hold a Master's Degree in Translation and Interpretation (Chinese/English) from the Monterey Institute of International Studies.

I certify that the following document is a true and correct translation from Chinese into English, to the best of my knowledge and abilities:

Pangang Business License

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration signed this 23th day of April, 2017 in Burlingame, California.

## **Marilyn Luong**

Printed Name of Certified Court Interpreter

*Marilyn Luong*

Signature of Certified Court Interpreter

[Translation of Pangang Business License]



# Business License

Registration No.： 510400000035558

| | |
|---|---|
| Name | Pangang Group Co., Ltd. |
| Type | Limited liability company (sole proprietorship of legal person invested or held by non-natural person) |
| Address | Xiangyang Village, Panzhihua City |
| Legal Representative | ZHANG Da De |
| Registered Capital | RMB Five Billion Yuan Exactly |
| Date of Establishment | October 26, 1989 |
| **Term of Operation** | From December 18, 2009 to long term |

**Scope of Businesses**    Steel, iron, vanadium, titanium and coke smelting; steel calendering processing; manufacturing and repair of metal wares, mechanical equipment and electrical equipment; manufacturing of construction materials; technical services of metallurgical engineering, industrial automation and information engineering; development services of integrated technologies and computer software; drinking water supply; sale of mechanical equipment, electrical equipment, metal materials, auto accessories, construction materials, hardware, electrical materials, chemical products (excluding hazardous chemicals), prepackaged food (including frozen drinks) and articles; retail of cigarette; design, making and publishing of advertisements; publish and distribution of newspaper; cable television transmission and network maintenance; catering service; equipment leasing; material storage; repair of daily commodities; house rental; house maintenance; planting and retail of flowers and seedling; storage and operation of frozen (chilled) food; processing operation of edible oil, noodle and pastry (including decorative cakes); accommodation (limited to branch operation); natatorium   (indoor pool) (operated according to the scope and terms prescribed in the license); film projection; literature and art creation and performance; sale of cultural and sporting goods; fitness service; conference and exhibition services (the above business scope are limited to the branch operation). Archives arrangement. (the above involving pre-licensing shall be operated according to the scope and terms prescribed in the license).



Location of record    (For projects requiring legal approval, operating activities can only be started after approval from relevant authorities is obtained)

[Seal: Panzhihua Administration for Industry and Commerce]

**Registration Authority**

May 21, 2015

The Website of Enterprise Credit Information Announcement System: http://gsxt.scaic.gov.cn      Prepared under the Supervision of the State Administration for Industry and Commerce of the People's Republic of China