**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PANGANG GROUP COMPANY, LTD., et al.<br><br>Defendants. | Case No. 11-cr-00573-JSW-7, 8, 9, 10<br><br>**ORDER ON MOTION TO QUASH AND DEFERRING RULING ON MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 998, 1013 |

Now before the Court for consideration is the Government's motion for sanctions, in which the Government asks the Court to issue an Order to Show Cause to Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company (collectively the "Pangang Group Defendants"), directing these entities to show cause why they should not be sanctioned for their failure to appear at two court hearings. Also before the Court for consideration is the Pangang Group Defendants' third motion to quash service. The Pangang Group Defendants are specially appearing through Robert P. Feldman, Esq. and John M. Potter, Esq. of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel").

The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument. For the reasons set forth in this Order, the Court DENIES the Pangang Defendants' motion to quash, and it DEFERS ruling on the Government's motion for an order to show cause.

//

1

**BACKGROUND**

The Court has set forth the facts underlying this case in several prior orders, and it shall not repeat them here.[1] In 2012, the Government purported to serve the Pangang Group Defendants with summonses. On March 1, 2012, the Pangang Group Defendants specially appeared through Mr. Feldman and Mr. Potter to challenge service of summonses issued on February 8, 2012. On July 23, 2012, the Court granted the Pangang Group Defendants' first motion to quash, on the basis that the Government had not complied with the terms of Federal Rule of Criminal Procedure 4 ("Rule 4"). *See generally United States v. Pangang Group Co., Ltd.*, 879 F. Supp. 2d 1052 (N.D. Cal. 2012) ("*Pangang Group*").

The Government made another attempt to serve the Pangang Group Defendants with summonses, and the Pangang Group Defendants, through Mr. Feldman and Mr. Potter, filed a second motion to quash. On April 8, 2013, the Court granted, in part, and denied as moot, in part, that motion. (*See* Dkt. No. 293 ("Order on Second Motion to Quash").) The Court once again found that the Government had not complied with the provisions of Rule 4. Although the Government asked the Court to issue a terminating order, it withdrew that request in May 2014.

On December 1, 2016, an amended version of Rule 4 took effect.

On December 20, 2016, the Government obtained reissued summonses to the Pangang Group Defendants, which set an arraignment date on January 30, 2017. According to the record, on January 4, 2017, FBI Special Agent Cynthia Ho hand-delivered the summonses to Todd Weizhong Wang at 2 Tower Center Boulevard, 10th Floor, East Brunswick, New Jersey. (Dkt. No. 998-1, Declaration of Cynthia Ho ("Ho Decl."), ¶ 2.) Mr. Wang is the President of Angang America, Inc. ("AAI"). (Ho Decl., ¶¶ 4-5.) Although the parties dispute the exact nature of the relationship between AAI and the Pangang Group Defendants, the record shows they share a common "parent" organization, Angang Group Corporation. (*See* Dkt. No. 1007, Declaration of Sun Ce Jun, ¶ 24; Dkt. No. 1006, Declaration of Owen D. Nee, Jr., ¶¶ 13-31; *see generally* Dkt.

---

[1] The Ninth Circuit also set forth the underlying facts in its opinion affirming, in part, and reversing, in part, the judgment against co-defendants Walter Liew and USA Performance Technology, Inc.. *See United States v. Liew*, 856 F.3d 585, 589-92 (9th Cir. 2017).

No. 1008, Declaration of Wang Qizhi.) According to Special Agent Ho, Mr. Wang "stated that he was not sure which individuals in China should receive the summonses and that he would forward the summonses to his management in China to handle delivery of the summons to the appropriate individuals." (Ho Decl., ¶ 5.)[2]

Special Agent Ho also purported to serve the reissued summonses on Mr. Potter and Mr. Feldman by email and certified mail. (*Id.*, ¶ 6, Exs. B-C.) Mr. Feldman responded by stating that he and his firm "were not authorized to accept the summonses in 2012. We are not authorized to accept service of the summonses now. Nor are we obligated to send the summonses to Pangang and we will not do so." (*Id.*, ¶ 7, Ex. D (Letter dated Jan. 17, 2017 from Robert Feldman to AUSA John H. Hemann).) Mr. Feldman also attests that neither he nor anyone else at his firm has "transmitted the summonses in question to any of the Pangang Group" Defendants. (Dkt. No. 1009, Declaration of Robert Feldman ("Feldman Decl."), ¶ 9.)

The Pangang Group Defendants did not appear for the arraignment on January 30, 2017, and they did not appear at a status set before the undersigned on February 14, 2017. At the latter hearing, the Government stated its intent to file a motion for sanctions, and the Court issued a briefing schedule. (*See* Dkt. Nos. 993, 995.) The Government filed its motion for sanctions on March 13, 2017. The Pangang Group Defendants then filed an application to set a briefing schedule on a third motion to quash and asked that the Court deny the Government's motion for sanctions as moot. (*See* Dkt. No. 1000.) The Court granted the request to set a briefing schedule on a motion to quash, and stated that it would address both motions in a cross-motion format. (Dkt. No. 1003.)

**ANALYSIS**

**A.      The Provisions of Revised Rule 4.**

This Court's ruling on the motions to quash, among other cases, prompted the Department of Justice ("DOJ") to propose amendments to Rule 4. (*See* Dkt. No. 1013, Third Motion to Quash,

---

[2] At the hearing on these motions, the Pangang Group Defendants objected to these statements on the basis that they were inadmissible hearsay and moved to strike them from the record. The Court overruled those objections.

3

Ex. A (Letter dated Oct. 25, 2012 from Assistant Attorney General Lanny A. Breuer to the Honorable Reena Raggi, Chair, Advisory Committee on the Criminal Rules at 1, 3-4 ("Breuer Letter"); Dkt. No. 1002-2, Memorandum dated February 20, 2015, from Jonathan J. Wroblewski to Judge David M. Lawson ("DOJ Memo") at 1 n.1 (noting that "[d]espite the fact that [the Pangang Group Defendants were] indicted years ago along with [Walter] Liew, and [have] had actual notice of the indictment, to date, the United States has been unable to effectively serve [them] pursuant to the current Rule 4").)

Rule 4 now provides, in part:

> (C) A summons is served on an organization in a judicial district of the United States by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. If the agent is one authorized by statute and the statute so requires, a copy must also be mailed to the organization.
>
> (D) A summons is served on an organization not within a judicial district of the United States:
>
> (i) by delivering a copy, in a manner authorized by the foreign jurisdiction's law, to an officer, to a managing or general agent, or to an agent appointed or legally authorized to receive service of process; or
>
> (ii) by any other means that gives notice, including one that is:
>
> (a) stipulated by the parties;
>
> (b) undertaken by a foreign authority in response to a letter rogatory, a letter of request, or a request submitted under an applicable international agreement; or
>
> (c) permitted by an applicable international agreement.

Fed. R. Crim. P. 4(c)(3)(C)-(D).

Before Rule 4(c)(3)(C) was amended, it contained two requirements, a delivery requirement and a mailing requirement. *See, e.g., Pangang Group*, 879 F. Supp. 2d at 1057. The Advisory Committee described key amendments to Rule 4(c)(3)(C) as follows:

> First, like Civil Rule 4(h), the amended provision does not require a separate mailing to the organization when delivery has been made in the United States to an officer or to a managing or general agent. …

4

> Second, also like Civil Rule 4(h), the amendment recognizes that service outside the United States requires separate consideration, and it restricts Rule 4(c)(3)(C) and its modified mailing requirement to service on organizations within the United States. Service upon organizations outside the United States is governed by new subdivision (c)(3)(D).
>
> These two modifications of the mailing requirement remove an unnecessary impediment to the initiation of criminal proceedings against organizations that commit domestic offenses but have no place of business or mailing address within the United States. Given the realities of today's global economy, electronic communication, and federal criminal practice, the mailing requirement should not shield a defendant organization when the Rule's core objective – notice of pending criminal proceedings – is accomplished.

Fed. R. Crim. P. 4, Advisory Committee Notes, 2016 Amendments.

With respect to Rule 4(c)(3)(D), according to the Advisory Committee notes, the "new subdivision states that a criminal summons may be issued on an organizational defendant outside the United States and enumerates a *non-exhaustive* list of permissible means of service that provide notice to that defendant. Although it is presumed that the enumerated means will provide notice, whether actual notice has been provided may be challenged in an individual case." *Id.* (emphasis added); *see also id.* (subdivision 4(c)(3)(D)(ii) "provides a *non-exhaustive* list illustrating other permissible means of giving service on organizations outside the United States, all of which must be carried out in manner that 'gives notice'")(emphasis added).

**B.    The Court Denies the Motion to Quash.**

### 1. The Court Finds the Government Served the Pangang Group Defendants Using a "Means that Gives Notice."

The Government relies on delivery of the summonses to Mr. Wang and to Mr. Feldman and Mr. Potter to show it has served the Pangang Group Defendants. It contends delivery of the summonses to those individuals satisfies the provisions of Rule 4(c)(3)(D)(ii), because both of those methods are "means that give[] notice[.]"[3] Use of these methods presumes the Pangang

---

[3] The Government does not rely on any of the methods set forth in subsections (a) through (c) of that subdivision, although it did attempt to serve the Pangang Group Defendants through a Mutual Legal Assistance Agreement between the United States and the People's Republic of China ("PRC"). However, the PRC's Central Authority denied the request for assistance. (Ho Decl., ¶¶ 14-15, Exs. G-H.)

5

Group Defendants have some form of relationship with these individuals such that the Court can infer that any or all of these individuals provided the Pangang Group Defendants with notice of the summonses. For the reasons set forth below, the Court concludes that the record supports a finding that the Pangang Group Defendants received notice of the summonses from the Quinn Emanuel firm, even if they did not receive the actual documents. Accordingly, the Court does not reach the Government's alternative argument that it also served the Pangang Group Defendants through Mr. Wang.

It is undisputed that the Pangang Group Defendants had a pre-existing relationship with Mr. Potter and Mr. Feldman, who represented them on the first two motions to quash. In addition, during the amendment process, Mr. Feldman and Mr. Potter submitted a letter to the Advisory Committee, in which they noted that "[a]mong our clients are the Pangang Group Company and affiliated entities." (*See* Gov. Opp. Br., Ex. 3 (Letter dated February 13, 2015 from Mr. Feldman and Mr. Potter to Judge Raggi, Sara Sun Beale and Nancy J. King ("Feldman Letter") at 1.) Mr. Feldman and Mr. Potter urged the Advisory Committee not to adopt the proposed amendment:

> There is a fundamental problem with this "notice only" approach: though apparently not the drafter's intent, the proposed rule may be argued to insulate service from judicial review. The proposed advisory committee notes state that "although it is presumed that the enumerated means will provide notice, whether actual notice has been provided may be challenged in an individual case." Practically speaking, however, this could be impossible under the proposed regime: the very act of challenging service might be said to conclusively establish the notice that would make service complete.

(*Id.* at 2.)

The DOJ responded, in part, that

> this is not a flaw in the proposed amendment, it is the point of the amendment. If the defendant corporation has notice of a summons,

---

The Government also attempted to serve the Pangang Group Defendants by serving copies of the summonses on Corporation Service Company, which was listed as AAI's registered agent for service of process. However, the Government states that it received notice from Corporation Service Company that it is not, in fact, AAI's agent. (Dkt. No., 1015-4, Declaration of Cynthia Ho, dated May 18, 2017 (5/18 Ho Decl."), ¶¶ 2-4, Exs. 4, 6; Ho Decl. ¶ 13, Ex. J.) At the hearing, the Government stated that it will not rely on these facts to show it served the Pangang Group Defendants.

6

> it ought to be considered served, and there ought not to be an avenue to present a factual claim that is, by definition, without merit. By contrast, if a corporate defendant seeks to raise some other claim regarding a defect in service, we do not believe anything in the proposed amendment would alter existing rules governing the availability of a "special appearance" to contest service.
>
> For example, nothing in the proposed rule would alter current law regarding whether a corporate defendant could specially appear to contest the constitutionality of the amended Rule 4, whether the rule applied retroactively, or whether the rule applied to a particular defendant.
>
> The purpose of a "special appearance" is to avoid automatically waiving threshold issues by operation of law – not to prevent fact finding. … When a party makes a special appearance, any *facts* that a court learns as a result of that appearance, including that a party has received actual notice of the prosecution, may be considered by the court.

(DOJ Memo at 2-3 (emphasis in original).)

Based on the record, the subcommittee presiding over the amendments to Rule 4 "agreed with the [DOJ's] response:"

> the point of the amendment is to provide a means of service that gives notice, and there is no legitimate interest in allowing a procedure in which an institutional defendant can feign lack of notice. If the amendment were adopted, there would be, however, objections an institutional defendant might assert by a special appearance (such as a constitutional attack on Rule 4, an objection to retroactive application of the amendment, or a claim that an institutional defendant has been dissolved).

(Dkt. No. 1021-1, Advisory Committee on Criminal Rules Minutes ("Advisory Committee Minutes"), March 16-27, 2015, at 11; *see also id.* at 13 ("the Committee voted unanimously to approve the proposed amendment as published and transmit it to the Standing Committee")).

At the hearing, the Pangang Group Defendants, through counsel, conceded that they have notice of these proceedings. (*See also* Feldman Decl., ¶ 7.) Accordingly, the Court concludes that the Government has met its burden to show that it used a "means that gives notice" to effect service on the Pangang Group Defendants.

**2.  The Court Concludes It is Just and Practicable to Apply Amended Rule 4.**

At the time Rule 4 was amended, the case against the Pangang Group Defendants had been

pending since February 7, 2012.  As set forth in the Order accompanying the amendments, "the foregoing amendments shall govern in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."  (Third Mot. to Quash, Ex. D (Excerpts of Transmittal of Amendments from Supreme Court to Congress, at 3).)  The Ninth Circuit has stated that "[t]his language is not unique -- it has been submitted by the Supreme Court with nearly all amendments to the Federal Rules of Criminal Procedure -- and indicates the intent that the rules be applied to pending cases only if such application would be 'just and practicable.'"  *United States v. Woods*, 399 F.3d 1144, 1147 (9th Cir. 2005) (finding that application of an amendment to Rule 33 did not violate *ex post facto* clause and remanding for consideration of whether application of the amendment would be just and practicable); *see also* 28 U.S.C. § 2704(a) ("The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.").

In general, courts should apply "'procedural rules as they exist at the time of decision, as long as no manifest injustice results.'"  *United States v. Moses,* No. CR 05-061 E BLW, 2006 WL 581191, at *3 (D. Idaho March 8, 2006) (quoting *United States v. Bowler,* 252 F.3d 741, 746 (5th Cir. 2005)); *cf. Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1039 (9th Cir. 1985) ("It is a rule of construction that statutes are ordinarily given prospective effect.  But when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases.").

The Government has issued new summonses, and it does not argue amended Rule 4 should be applied to its prior efforts to serve the Pangang Group Defendants.  The case was pending at the time of the amendment, and the Pangang Group Defendants argue it would not be just and practicable to apply the amendment in this case.[4]  Accordingly, the Court will consider that

---

[4] The Pangang Group Defendants take the position that serving a specially appearing lawyer is a "defect in service."  In their brief, and at oral argument, the Pangang Group Defendants set

argument. *Cf. Bowler*, 252 F.3d at 744 (interpreting standard language used to transmit amendments to apply to pending cases and citing cases reaching same conclusion).

The Pangang Group Defendants do not argue that it is not practicable to apply the rule. Rather, their focus is on why it is unjust to apply amended Rule 4. They note that the Government, in briefing or argument on the prior motions to quash or during the amendment process, has never argued that it could or would use a specially appearing lawyer to serve a defendant. In a related argument, the Pangang Group Defendants assert in a conclusory fashion that the Government's conduct "disrupted" their relationship with the Quinn Emanuel firm and required them to consult with two other law firms to determine how to proceed. (Dkt. No. 1019, Reply Br. at 6:13-15 (citing Feldman Decl. ¶¶ 6-7).)

The Pangang Group Defendants have not raised a constitutional challenge to application of the Rule; that is, they do not argue application of amended Rule 4 in this fashion violates their Sixth Amendment right to counsel. Further, there is nothing in the Rule that precludes them from relying on specially appearing counsel to raise such challenges. Thus, they have not explained how they are prejudiced by application of the Rule, other than the fact that they may be required to defend the charges against them on the merits. *Cf. Bowler,* 252 F.3d at 746 (finding it would not be just and practicable to apply amended rule Rule 33, governing motions for new trial, where defendant would have been required to file a motion five months before rule came into effect for the motion to be considered timely under amended provisions of that rule); *Ortaliza v. General Mills Corp.*, 56 F.3d 72, 1995 WL 316927, at *2 (9th Cir. May 24, 1995) (concluding it was just and practicable to apply amended version of rule, so that party would not lose right to appeal).

Moreover, there is nothing in the transmittal language that suggests the evaluation of

---

forth a hypothetical situation where the government used some other means to purportedly serve a defendant, and that defendant then entered a special appearance to contest service. The Pangang Group Defendants argue that, under the Government's view, it would be permissible to serve the specially appearing lawyer with a summons and moot out the question of whether a court could quash service. (*See* Third Motion to Quash at 17:19-22.) Although that might moot an argument about notice, the Court concludes it would not necessarily preclude that defendant from "rais[ing] some other claim regarding a defect in service," including whether service on specially appearing counsel is proper or "just and practicable."

9

whether it would "just and practicable" to apply an amended criminal rule must be limited to a consideration of whether it would be "just and practicable" to a defendant. During the amendment process, the Chair of the subcommittee on the amendments noted that "the proposed amendment is intended to fill a gap in the current rules, which provide no means of service on an institutional defendant that has committed a criminal offense in the United States but has no physical presence here." (Advisory Committee Minutes at 10-11.) If the Court does not apply the new rule, one of the purposes of the amendment would be frustrated, because the Government would not be able to pursue the charges at a trial on the merits.[5] If, however, the Court applies the new rule, the effect is to bring the Pangang Group Defendants into court, where they may raise any and all challenges they may have to the substantive charges. Under these circumstances, the Court concludes that it would be neither unjust nor impracticable to apply amended Rule 4 in this case. *Cf. G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1502 (9th Cir. 1994) (addressing whether it would be just and practicable to apply amended version of Federal Rule of Civil Procedure 15 and stating "the general purpose of the federal Rules is to minimize technical obstacles to a determination of the controversy on its merits") (internal brackets, quotations and citation omitted).

## CONCLUSION

For the foregoing reasons, the Court DENIES the Pangang Group Defendants' third motion to quash service. The Court HEREBY ORDERS the Pangang Group Defendants to appear before the duty magistrate judge on Monday, September 18, 2017, at 9:30 a.m., to be arraigned on the charges set forth in the Third Superseding Indictment. If the Pangang Group Defendants fail to appear on that date, the Court will issue a ruling on the motion for sanctions.

//
//
//
//

---

[5] By this reference, the Court does not suggest the Pangang Group Defendants have committed such an offense. At this stage, they are merely alleged to have done so.

10

If the Pangang Group Defendants appear to defend against the charges, the Court will deny the Government's motion as moot.

**IT IS SO ORDERED.**

Dated: July 18, 2017

_____
JEFFREY S. WHITE
United States District Judge