# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE PANGANG GROUP
COMPANY, LTD.; PANGANG
GROUP STEEL VANADIUM &
TITANIUM COMPANY, LTD.;
PANGANG GROUP TITANIUM
INDUSTRY COMPANY, LTD.;
PANGANG GROUP
INTERNATIONAL ECONOMIC &
TRADING COMPANY,

No. 17-72370

D.C. No.
4:11-cr-00573-JSW

OPINION

PANGANG GROUP COMPANY,
LTD.; PANGANG GROUP STEEL
VANADIUM & TITANIUM
COMPANY, LTD.; PANGANG
GROUP TITANIUM INDUSTRY
COMPANY, LTD.; PANGANG
GROUP INTERNATIONAL
ECONOMIC & TRADING
COMPANY,
                          *Petitioners*,

v.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
CALIFORNIA, OAKLAND,
                          *Respondent*,

UNITED STATES OF AMERICA,
         *Real Party in Interest.*

Petition For Writ Of Mandamus

Argued and Submitted June 13, 2018
San Francisco, California

Filed August 22, 2018

Before:  Michael R. Murphy,[*] Richard A. Paez,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Mandamus / Fed. R. Crim. P. 4(c)(3)(D)

The panel denied a petition for a writ of mandamus, brought by companies owned and controlled by the Chinese government, asking this court to vacate the district court's order denying their motion to quash service of criminal summonses the government had delivered to attorneys for the companies.

The companies argued that the delivery of the summonses did not effect service on them under Fed. R. Crim. P. 4(c)(3)(D). The panel held that where such delivery provides actual notice to a foreign organization, it satisfies Rule 4. The panel concluded that because the evidence established that the companies had actual notice of the summonses, the district court did not err, let alone clearly err, in denying their motion to quash service. The panel therefore denied the petition for a writ of mandamus.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kathleen M. Sullivan (argued) and William B. Adams, Quinn Emmanuel Urquhart & Sullivan LLP, New York, New York; Robert P. Feldman and Andrew P. March, Quinn Emmanuel Urquhart & Sullivan LLP, Redwood Shores, California; for Petitioners.

Merry Jean Chan (argued), Assistant United States Attorney; J. Douglas Wilson, Chief, Appellate Division; United States Attorney's Office, San Francisco, California; for Real Party in Interest.

**OPINION**

IKUTA, Circuit Judge:

After the government delivered criminal summonses to attorneys for the Pangang Group Company, Ltd. and its subsidiaries Pangang Group Titanium Industry Company, Pangang Group Steel Vanadium & Titanium Company, Ltd., and Pangang Group International Economic & Trading Company (collectively, the "Pangang Companies"), the attorneys made a special appearance on behalf of their clients to quash service of the summonses. The district court denied their motion. The Pangang Companies petition for a writ of mandamus directing the district court to vacate its order, arguing that the delivery of the summonses did not effect service on the Pangang Companies under Rule 4(c)(3)(D) of the Federal Rules of Criminal Procedure (which we refer to as the Criminal Rules). We conclude that where such delivery provides actual notice to a foreign organization, it satisfies Criminal Rule 4. Because the evidence established

that the Pangang Companies had actual notice of the summonses, the district court did not err, let alone clearly err, in denying the Pangang Companies' motion to quash. Therefore, we deny the petition.

I

This petition requires us to review the intertwined history of the 2016 amendments to Criminal Rule 4 and the government's repeated attempts at service on the Pangang Companies.

A

On February 7, 2012, the government indicted the Pangang Companies on charges of conspiracy to commit economic espionage, in violation of 18 U.S.C. § 1831(a)(5), and attempted economic espionage, in violation of 18 U.S.C. § 1831(a)(3) and (4). The Pangang Companies are enterprises owned and controlled by the Chinese government. According to the indictment, the Pangang Companies conspired with individuals to illegally obtain trade secrets from E.I. du Pont de Nemours & Company related to chloride-route titanium dioxide production technology.[1]

---

[1] The cases against all but one of the Pangang Companies' co-defendants have been resolved. Two defendants, Tze Chao and Christina Liew, pleaded guilty to their respective charges. A U.S. company, USAPTI, and two other defendants, Walter Liew and Robert Maegerle, were convicted by a jury. *See United States v. Liew*, 856 F.3d 585, 593, 595 (9th Cir. 2017). Maegerle did not appeal. We affirmed USAPTI's and Liew's economic espionage convictions. *See id.* at 593, 603. The case against Hou Shengdong, a Chinese national, remains pending.

A federal magistrate judge issued summonses to each of the Pangang Companies. The government served the summonses at the New Jersey office of a U.S. subsidiary of one of the Pangang Companies, Pan America, Inc., and mailed copies to the same location. At the time, the government attempted service pursuant to the 2011 version of Criminal Rule 4, which provides the process for issuing and executing an arrest warrant or summons to a defendant if a criminal complaint establishes probable cause to believe that an offense has been committed and that the defendant committed it. Fed. R. Crim. P. 4(a). A summons "require[s] the defendant to appear before a magistrate judge at a stated time and place." Fed. R. Crim. P. 4(b)(2). The 2011 version of Criminal Rule 4 provided that a summons is served on an organization "by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process." Fed. R. Crim. P. 4(c)(3)(C) (2011). A copy must also "be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States." *Id.*[2]

On March 29, 2012, the Pangang Companies made a special appearance in district court through two attorneys from Quinn Emanuel Urquhart & Sullivan, LLP (the "Quinn

---

[2] The 2011 version of Criminal Rule 4(c)(3)(C) provided in full:

> A summons is served on an organization by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. A copy must also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States.

Emanuel attorneys"), and filed a motion to quash service of the summonses on the grounds that service on Pan America was defective under Criminal Rule 4. On July 23, 2012, the district court granted the motion, reasoning that service had not complied with the delivery requirement of Criminal Rule 4 for three of the Pangang Companies, and had not satisfied the mailing requirement as to all four Pangang Companies, *see* Fed. R. Crim. P. 4(c)(3)(C) (2011).

Between August 2012 and November 2012, the government attempted to serve the Pangang Companies by mailing and delivering the summonses to various individuals and addresses within the United States that were associated with the Pangang Companies. In addition, the Department of Justice (DOJ) formally requested that an agency of the Chinese government serve the Pangang Companies. The Chinese government refused.

On February 7, 2013, the Pangang Companies made a second special appearance in district court through the Quinn Emanuel attorneys, and filed another motion to quash. The district court granted the motion, holding that none of the agents and addresses bore the requisite connection to the Pangang Companies required under Criminal Rule 4(c)(3)(C). The government asked the district court to reconsider its rulings, arguing that the service of the summonses had substantially complied with Criminal Rule 4. The court denied the government's motion.

B

While the government was struggling to serve the Pangang Companies, the DOJ asked the Advisory Committee on the Criminal Rules to make changes to Criminal Rule 4.

For those unfamiliar with the rulemaking process, we provide a brief overview.  The Rules Enabling Act of 1934, 28 U.S.C. §§ 2071–2077, authorized the Supreme Court to promulgate rules of procedure which have the force and effect of law. The work of formulating and revising such rules has been delegated to the Judicial Conference of the United States (the principal policy-making body of the U.S. Courts).  *Id.* § 2073. The Judicial Conference formed a Committee on Rules of Practice and Procedure (referred to as the Standing Committee) and five advisory rules committees, the Advisory Committees on Appellate, Bankruptcy, Civil, Criminal, and Evidence Rules.  *See id.* § 2073(a)(2), (b).  By statute, the meetings of each Advisory Committee are generally open to the public, and minutes of each meeting are maintained by the committee and made available to the public.  *Id.* § 2073(c)(1).

The rulemaking process proceeds as follows.  After evaluating proposals for new rules or amendments to existing rules, an Advisory Committee may recommend a proposed change to the Standing Committee.  *See id.* § 2073(b).  If the Standing Committee approves the proposal, the Advisory Committee notifies the public regarding the proposed rule or amendment and solicits public comment.  *See* Procedures for the Judicial Conference's Committee on Rules of Practice and Procedure and Its Advisory Rules Committees, § 440.20.40 (2011).[3]  After evaluating and responding to such comments, the Advisory Committee may recommend a final rule or amendment to the Standing Committee.  *See id.* § 440.20.50. The Standing Committee then makes an independent recommendation to the Judicial Conference, *see id.* §§ 440.30.10(d), 440.30.20(d), which in turn recommends the

---

[3]    http://www.uscourts.gov/rules-policies/about-rulemaking-process/laws-and-procedures-governing-work-rules-committees-0.

proposed changes to the Supreme Court. If the Supreme Court approves the proposal, it will promulgate the revised rules to take effect on December 1 of the same year unless Congress enacts legislation to the contrary. *See* 28 U.S.C. § 2074.

The DOJ asked the Advisory Committee to amend Criminal Rule 4 to allow service on an organization outside of the United States either by serving the organization under the laws of the foreign jurisdiction or through a non-exhaustive list of other means of service. Letter from Lanny A. Breuer, Assistant Attorney General, Dep't of Justice, to Judge Reena Raggi, Chair of Advisory Comm. on Criminal Rules (Oct. 25, 2012).[4] The Advisory Committee developed a revised version of the proposal. Advisory Comm. on Criminal Rules, May 2014 Report to Standing Committee, at 2, 6 (May 5, 2014), [hereinafter *Initial Advisory Committee Report*].[5] In its report to the Standing Committee, the Advisory Committee proposed three amendments to Criminal Rule 4. *Id.* at 2. First, it proposed adding the following sentence to the end of Criminal Rule 4(a): "If an organizational defendant fails to appear in response to a summons, a judge may take any action authorized by law." *Id.* at 3. Second, it proposed eliminating the requirement that a summons be separately mailed to an organizational defendant within the United States, except in cases where service is "made on a statutorily appointed agent when the statute itself requires a mailing as well as personal service."

---

[4]   http://www.uscourts.gov/sites/default/files/fr_import/12-CR-B-Suggestion-Breuer.pdf.

[5]   http://www.uscourts.gov/sites/default/files/fr_import/CR05-2014.pdf.

*Id.* Finally, it proposed adding a new subdivision (D) to Criminal Rule 4(c)(3), which would authorize serving a summons on an organization not within a judicial district of the United States by (1) delivery on an appropriate individual in compliance with the foreign jurisdiction's law; or (2) "any other means that gives notice," including by a method stipulated by the parties, undertaken by a foreign authority in response to a formal request, or "permitted by applicable international agreement." *Id.* at 4–5.

The Standing Committee approved the Advisory Committee's recommendation to publish the proposed amendments for public comment.  Comm. on Rules of Practice and Procedure, September 2014 Report to the Judicial Conference, at 18–19 (Sept. 1, 2014)[6]; *see also* Comm. on Rules of Practice and Procedure, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, at 333–34 (Aug. 14, 2014).[7]

The Advisory Committee received six public comments on its proposal, including a comment letter from the Quinn Emanuel attorneys who had previously represented the Pangang Companies in their special appearances in 2012 and 2013.  Advisory Comm. on Criminal Rules, March 2015

---

[6]    http://www.uscourts.gov/sites/default/files/fr_import/ST09-2014.pdf.   The Quinn Emanuel attorneys continued to represent the Pangang Companies at the time the comment letter was submitted in February 2015, as evidenced by the statement in the opening paragraph of the letter, "[a]mong our clients are the Pangang Group Companies and affiliated entities." *Quinn Emanuel Comment Letter*, *infra*, at 1.

[7] https://www.regulations.gov/document?D=USC-RULES-CR-2014-0004-0001.

Agenda Book, at 71 (Mar. 16–17, 2015).[8]  As explained in more detail below, the Quinn Emanuel attorneys contended that allowing service on an organization to be effected "by any other means that gives notice" would result in a range of evils.  Robert P. Feldman & John M. Potter, Comment Letter on Proposed Amendment to Federal Rule of Criminal Procedure 4, at 1 (Feb. 13, 2015) [hereinafter *Quinn Emanuel Comment Letter*].[9]  Among other things, it would allow the government to serve a summons by informal means such as "simply by sending a letter or an email," which would "render superfluous the limitations imposed in the other subsections." *Id.* at 2.  It would also "insulate service from judicial review" by effectively eliminating special appearances. *Id.* at 1–2.  In response to the Quinn Emanuel letter, the DOJ submitted a comment letter arguing that the evils identified by Quinn Emanuel were features, not flaws, of the proposed amendment; indeed, the point of the amendment was to ensure that "[i]f the defendant corporation has notice of a summons, it ought to be considered served." Letter from Jonathan Wroblewski, Dir., Office of Policy and Legislation, Dep't of Justice, to Judge David M. Lawson, Chair of Subcomm. on Rule 4, at 2 (Feb. 20, 2015).[10]  While an organizational defendant could still make special appearances to contest other threshold issues, the DOJ stated, "[w]hen a party makes a special appearance, any *facts* that a

---

[8]   http://www.uscourts.gov/sites/default/files/fr_import/CR2015-05.pdf.

[9] https://www.regulations.gov/document?D=USC-RULES-CR-2014-0004-0028.

[10]   Available at Advisory Comm. on Criminal Rules, May 2015 Agenda Book, at 74 (Mar. 16–17, 2015), http://www.uscourts.gov/sites/default/files/fr_import/CR2015-05.pdf.

court learns as a result of that appearance, including that a party has received actual notice of the prosecution, may be considered by the court." *Id.* at 74–75. According to the DOJ, "feigning ignorance of a criminal summons of which the foreign organization does have notice (either by declining to appear, or by appearing and denying knowledge) is not a legitimate interest the criminal rules should protect." *Id.* at 75.

After considering the comments, the Advisory Committee approved the amendments to Criminal Rule 4 as published. In its report to the Standing Committee, the Advisory Committee discussed at some length "the open-ended provision in (c)(3)(D)(ii) that allows service 'by any other means that gives notice,'" and explained that this language "provides flexibility for cases in which the Department of Justice concludes that service cannot be made (or made without undue difficulty) by the enumerated means." Advisory Comm. on Criminal Rules, May 2015 Report to Standing Committee, at 3 (May 6, 2015) [hereinafter *Final Advisory Committee Report*].[11] Therefore, the Advisory Committee chose not to require the government "to show other options were not feasible or had been exhausted before resorting to certain options for service." *Id.* at 7. The Advisory Committee report also directly addressed and rejected Quinn Emanuel's comments. *Id.* at 5–7. The Advisory Committee recommended that the Standing Committee adopt the amendments to Criminal Rule 4 as published. *Id.* at 5.

---

[11] http://www.uscourts.gov/sites/default/files/2015-05-criminal_rules_report_0.pdf.

The Standing Committee did so, and transmitted them to the Judicial Conference. Comm. on Rules of Practice and Procedure, September 2015 Report to the Judicial Conference, at 2, 23–25 (Sept. 1, 2015).[12]  After approval by the Judicial Conference, the Supreme Court promulgated the amendments to Criminal Rule 4 and transmitted them to Congress on April 28, 2016.  The transmittal instructed that the amendments "shall take effect on December 1, 2016, and shall govern in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."[13]  Congress did not stop the rule from going forward.

C

The amendments to Criminal Rule 4 took effect December 1, 2016.  The new subdivision, Criminal Rule 4(c)(3)(D), provides in full:

> (D) A summons is served on an organization not within a judicial district of the United States:
>
> > (i) by delivering a copy, in a manner authorized by the foreign jurisdiction's law, to an officer, to a managing or general agent, or to an agent appointed or

---

[12] http://www.uscourts.gov/sites/default/files/st09-2015_0.pdf.

[13] This is the standard language that accompanies most amendments to the Federal Rules of Criminal Procedure.  *See United States v. Woods*, 399 F.3d 1144, 1147 (9th Cir. 2005).

legally authorized to receive service of process; or

(ii) by any other means that gives notice, including one that is:

(a) stipulated by the parties;

(b) undertaken by a foreign authority in response to a letter rogatory, a letter of request, or a request submitted under an applicable international agreement; or

(c) permitted by an applicable international agreement.

Fed. R. Crim. P. 4(c)(3)(D). The Committee Note accompanying the amendment explains that subdivision (c)(3)(D) "states that a criminal summons may be served on an organizational defendant outside the United States and enumerates a non-exhaustive list of permissible means of service that provide notice to that defendant. Although it is presumed that the enumerated means will provide notice, whether actual notice has been provided may be challenged in an individual case." Fed. R. Crim. P. 4(c)(3)(D) advisory committee's note to 2016 amendment. The Committee Note to subdivision (D)(ii) states that it "provides a non-exhaustive list illustrating other permissible means of giving service on organizations outside the United States, all of which must be carried out in a manner that 'gives notice.'" Fed. R. Crim. P. 4(c)(3)(D)(ii) advisory committee's note to 2016 amendment.

D

While the rulemaking process for Criminal Rule 4 was still ongoing, the government obtained a new superseding indictment against the Pangang Companies. After the amendments to Criminal Rule 4 took effect, the court reissued summonses for the Pangang Companies at the government's request. The government made a new attempt to serve the Pangang Companies by serving the president of a U.S. affiliate of the Pangang Companies and submitting a formal request that a Chinese agency assist in serving the summonses abroad. The Chinese agency again declined the request.

The government also delivered the summonses to the Quinn Emanuel attorneys by email and certified mail. One of the Quinn Emanuel attorneys responded by letter on January 17, 2017. Stressing the limited nature of Quinn Emanuel's prior special appearances, he explained that the Quinn Emanuel attorneys were "not authorized to accept service of the summonses" and that they were not "obligated to send the summonses to Pangang and [would] not do so." As the attorneys later conceded, although they never transmitted the summonses to the Pangang Companies, they informed the Pangang Companies that they had received them, causing the Pangang Companies to consult with two other law firms as to how they should proceed.

The Pangang Companies failed to appear at the January 2017 hearing set by the summonses, or at a status hearing in February 2017. The government then filed a motion for the imposition of civil contempt sanctions on the Pangang Companies for their failure to appear. On April 24, 2017, the Pangang Companies made a special appearance through the

Quinn Emanuel attorneys, moving to quash service and opposing the government's motion for sanctions.

At a hearing on the motions, one of the Quinn Emanuel attorneys conceded that "[m]y client has authorized me to be here so they plainly know about these proceedings." The attorneys nevertheless argued that their receipt of the summonses was not equivalent to service on the Pangang Companies, even under amended Criminal Rule 4. Alternatively, they argued that the 2016 amendments to Criminal Rule 4 should not be applied to the government's pending complaint.

The district court denied the motion to quash and deferred ruling on sanctions. The court found that the Pangang Companies "received notice of the summonses from the Quinn Emanuel firm, even if they did not receive the actual documents." Based on the Quinn Emanuel attorneys' 2012 and 2013 special appearances, as well as their 2015 comment letter on the proposed amendments to Criminal Rule 4, the district court found that the Quinn Emanuel attorneys had "a pre-existing relationship" with the Pangang Companies, and had also conceded at the hearing that the Pangang Companies had received actual notice. Therefore, the court concluded that delivery of the summonses to the Quinn Emanuel attorneys satisfied Criminal Rule 4(c)(3)(D)(ii)'s requirement to serve a summons using a "means that gives notice."[14] Further, the district court held that it was "just and practicable" to apply amended Criminal Rule 4 to this case because the Pangang Companies had not been prejudiced

---

[14] The court did not reach the issue whether service on the president of the Pangang Companies' U.S. affiliate was sufficient to satisfy Criminal Rule 4.

other than by having to defend against the charges on the merits.

The Pangang Companies timely appealed, and then filed this petition for a writ of mandamus. We dismissed the direct appeal of the court's interlocutory order, but have jurisdiction over the petition for a writ of mandamus pursuant to 28 U.S.C. § 1651(a). *See In re United States*, 884 F.3d 830, 833 (9th Cir. 2018).

## II

A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). Accordingly, mandamus is appropriate only in "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *In re United States*, 884 F.3d at 834 (quoting *Cheney*, 542 U.S. at 380).

In deciding whether the writ should issue, we consider the five factors set forth in *Bauman v. U.S. District Court*, 557 F.2d 650, 654–55 (9th Cir. 1977):

> (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief;

> (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal;

(3) whether the district court's order is clearly erroneous as a matter of law;

(4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and

(5) whether the district court's order raises new and important problems or issues of first impression.

*In re United States*, 884 F.3d at 834 (citation omitted). Because "the absence of the third [*Bauman*] factor, clear error, is dispositive" and requires denial of mandamus, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1146 (9th Cir. 2005), we begin with the question whether the district court clearly erred in its interpretation and application of Criminal Rule 4.

## A

The Federal Rules of Criminal Procedure are promulgated by the Supreme Court pursuant to the Rules Enabling Act. 28 U.S.C. § 2072. Consequently, they are "in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988). "In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002). In discerning the meaning of a

rule, courts may also consult the rulemaking history of the relevant Advisory Committee proceedings for further guidance. *See, e.g.*, *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709–10 (2017); *United States v. Petri*, 731 F.3d 833, 839–40 (9th Cir. 2013).

Here, the text of the rule states that "[a] summons is served on an organization not within a judicial district of the United States: . . . (ii) by any other means that gives notice . . . . " Fed. R. Crim. P. 4(c)(3)(D)(ii). "[T]he word 'any' naturally carries 'an expansive meaning,'" *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)), and typically refers to "all" possibilities within the phrase that it modifies, unless there is some basis for limiting its natural meaning, *Gonzalez*, 520 U.S. at 5.

Applying the relevant language here, the Pangang Companies are not within a judicial district of the United States. *See* Fed. R. Crim. P. 4(c)(3)(D).[15] Moreover, the Pangang Companies do not dispute that the government's service of the summonses on their attorneys gave them actual notice. Therefore, under a straightforward application of Criminal Rule 4, the government succeeded in serving the summonses on the Pangang Companies.

---

[15] As the Advisory Committee's report explains, Criminal Rule 4(c)(3)(D) applies to "*organizations* that are not within a judicial district of the United States," regardless whether the summons is delivered within such a judicial district. *Initial Advisory Committee Report*, at 4 n.3.

B

The Pangang Companies argue that this straightforward interpretation of Criminal Rule 4 is erroneous on two grounds.  First, they argue that the canons of statutory construction do not permit such a broad interpretation of the amendment to Criminal Rule 4.  Second, they argue that we should read the rule narrowly to avoid inconsistency with the historical role of special appearances.  We address each of these arguments in turn.

1

First, the Pangang Companies claim that two canons of statutory construction—the superfluity canon and the canon of ejusdem generis—require the conclusion that the three means of giving notice listed in Criminal Rule 4(c)(3)(D)(ii)(a)–(c) limit the scope of "any other means that gives notice."

Canons of construction provide guidance for interpreting ambiguous statutes by providing a compendium of well-established inferences as to the drafters' intended meaning. The first and most important canon of statutory construction is the presumption "that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"  *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). When the statute is ambiguous, however, canons may provide "rules of thumb that help courts determine the meaning of legislation."  *Id.* at 253.  The superfluity canon guides a court to infer that Congress did not intend to make any portion of

a statute superfluous, and therefore "we must give effect to every word of a statute wherever possible." *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004). The canon of ejusdem generis refers to the inference that a general term in a list "should be understood as a reference to subjects akin to th[ose] with specific enumeration." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223 (2008) (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991)).

Relying first on the superfluity canon, the Pangang Companies argue that the district court's broad reading of "by any other means that gives notice" renders superfluous the enumerated means of service listed in Criminal Rule 4(c)(3)(D)(ii)(a)–(c). For instance, there would be no need to list "stipulated by the parties" as a means that gives notice, because by the time the government and the criminal defendant agreed to a stipulated means of service, the criminal defendant would necessarily have notice. Turning to the canon of ejusdem generis, the Pangang Companies argue that because all three enumerated means "are formal processes that respect domestic and foreign law and procedure, and are otherwise legal and equitable," we should construe the rule to extend only to other processes that share these characteristics.

We disagree. As explained above, the words "by any other means that gives notice" are not ambiguous, and we disfavor efforts to use canons of construction to introduce ambiguity into straightforward text. *See Germain*, 503 U.S. at 253–54.

Moreover, the Pangang Companies' argument that the Advisory Committee intended Criminal Rule 4 to be read

narrowly in accordance with the canons of construction is thoroughly undercut by statements of the Advisory Committee itself. First, the Advisory Committee Notes indicate that the enumerated list of means of service is non-exhaustive, thereby dissolving the inference that it is superfluous both to provide an enumerated list and to allow other means of service. Fed. R. Crim. P. 4(c)(3)(D)(ii) advisory committee's note to 2016 amendment. It is well established that drafters may include specific examples "out of an abundance of caution" or to "remove any doubt" that certain cases fall within the rule's scope. *Ali*, 552 U.S. at 226 (citation omitted). Here, the enumerated list of examples has a purpose: it gives the government the benefit of a presumption that using the means in the list give notice. *See* Fed. R. Crim. P. 4(c)(3)(D) advisory committee's note to 2016 amendment. No such presumption applies to alternate means. Accordingly, the argument that the rule's broad catchall provision makes the list of enumerated means superfluous is meritless.

Moreover, the Advisory Committee was well aware of the Pangang Companies' argument based on the superfluity canon, and rejected it. The Quinn Emanuel attorneys raised the identical argument in their comment letter on the draft rule, asserting that the phrase "'any other means that gives notice' might be said to trump and render superfluous the limitations imposed in other subsections." *Quinn Emanuel Comment Letter*, *supra*, at 2. The Advisory Committee flatly rejected this contention, *Final Advisory Committee Report*, *supra*, at 7, and made clear that the list of means presumed to give notice did not limit the government's options; rather, the purpose of subdivision (D)(ii)'s catch-all provision was to give the government flexibility, *Initial Advisory Committee Report*, *supra*, at 5; *Final Advisory Committee Report*, *supra*,

at 3. In one instance, the Advisory Committee directly rejected the inference that the enumerated list limited the government. Criminal Rule 4(c)(3)(D)(ii)(c) indicates notice may be given by a means "permitted by an applicable international agreement," but the Advisory Committee's report explained that the rule would also allow service by means that were not permitted by international agreement, so long as the service gave notice. *Final Advisory Committee Report*, *supra*, at 3 n.2.

For the same reason, any inference that the Advisory Committee intended to limit service to "formal processes that respect domestic and foreign law," pursuant to the canon of eiusdem generis, is baseless. To the contrary, the Advisory Committee's final report contemplated the possibility that the government might accomplish service "on an organizational defendant in a foreign nation without its consent, or in violation of international agreement." *Id.* at 4. Further, the Quinn Emanuel attorneys' comment letter raised the same concern they raise in their petition before us, that the amended rule could be read to authorize service through a letter or email notifying the organization of the indictment, or other informal means. *Quinn Emanuel Comment Letter*, *supra*, at 2. Despite being aware of these concerns, the Advisory Committee chose to make no changes in the rule. *Final Advisory Committee Report*, *supra*, at 5–7. Accordingly, the canons of statutory construction present no barrier to giving effect to the clear text of Criminal Rule 4.

2

The Pangang Companies also argue that the district court erred in holding that the government could effect service by delivering summonses to the Quinn Emanuel attorneys after

they had made prior special appearances; such a ruling, they argue, would effectively eliminate the possibility of a special appearance by a foreign corporation to contest service. Given the important and longstanding role of special appearances for challenging defects in the service of summons, the Pangang Companies assert, the Advisory Committee did not intend the amendments to Criminal Rule 4 to make such a break with historical practice.

We disagree. As an initial matter, the Pangang Companies have not offered any evidence of a longstanding historical practice of allowing special appearances in criminal cases. The Pangang Companies have pointed only to a handful of district court cases—all within the last 30 years—which have, without explanation or critical examination, permitted criminal defendants to enter special appearances to raise threshold objections. *See, e.g.*, *United States v. Kolon*, 926 F. Supp. 2d 794, 797–99 (E.D. Va. 2013); *United States v. Tucor Int'l, Inc.*, 35 F. Supp. 2d. 1172, 1176, 1183–85 (N.D. Cal. 1998); *United States v. Noriega*, 683 F. Supp. 1373, 1374 (S.D. Fla. 1988); *cf. United States v. Sinovel Wind Grp. Co.*, 794 F.3d 787, 789–90 (7th Cir. 2015) (noting, without comment, that the district court had permitted an organizational defendant to make a special appearance). Rather than embodying a fundamental rule, these cases seem to reflect a more recent trend of prosecuting criminal defendants who are not amenable to the execution of a warrant. *See, e.g.*, *Kolon*, 926 F. Supp. 2d at 800–02 (foreign corporate defendant); *Noriega*, 683 F. Supp. at 1374 n.3 ("*de facto* head of the Panamanian government").

By contrast, there is extensive authority regarding the historical function of special appearances in civil cases. *Harkness v. Hyde*, 98 U.S. 476, 479 (1878) (holding, in a civil

case, that where special appearances are allowed, "[t]he right of the defendant to insist upon the objection to the illegality of the service was not waived by the special appearance of counsel for him to move [for] the dismissal of the action on that ground"); *see also Davidson Bros. Marble Co. v. United States*, 213 U.S. 10, 18–19 (1909) (same); *S. Pac. Co. v. Denton*, 146 U.S. 202, 206 (1892) (same). But in the civil context, this historical tradition has been superseded by Rule 12 of the Federal Rules of Civil Procedure, which eliminated the need to make a special appearance in order to raise such objections in civil actions. *See Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 165 (9th Cir. 1975).

Even if there were a robust tradition of special appearances in the criminal context, however, we see no basis for contravening the text of Criminal Rule 4 in order to avoid limiting the possibility of special appearances. The Pangang Companies do not argue that serving a defendant who makes a special appearance is unconstitutional or violates a federal statute. *Cf. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05 (1987) (explaining, in the civil context, that "whether there is authorization to serve summons" depends on a construction of the applicable federal rule and any other applicable federal statutes). Indeed, the Supreme Court has rejected the argument that defendants have a constitutional right to this procedure. *York v. Texas*, 137 U.S. 15, 20–21 (1890). Thus a state may, "without violence to the 'due process' clause of the 14th Amendment" declare that "one who voluntarily enters one of its courts to contest any question in an action there pending shall be deemed to have submitted himself to the jurisdiction of the court for all purposes of the action," including when the person makes "a special appearance entered for the purpose of objecting that the trial court has not acquired jurisdiction over the person of

the defendant." *W. Life Indem. Co. of Ill. v. Rupp*, 235 U.S. 261, 271–72 (1914) (citing *York*, 137 U.S. at 20).[16]

Nor is there a basis for inferring that the Advisory Committee did not intend to impinge on the practice of special appearances by criminal defendants. The Advisory Committee was aware, contrary to the Pangang Companies' contentions, that the change in Criminal Rule 4 would prevent certain foreign organizations from making a special appearance to argue that they had not been properly served. In its comments on the draft rule, Quinn Emanuel argued that "the rule creates a situation in which any institutional defendant that appears to contest service has in effect admitted it had been served." Advisory Comm. on Criminal Rules, March 2015 Minutes, at 11 (March 16–17, 2015).[17] According to the Advisory Committee's minutes, the subcommittee tasked with considering the proposed amendments to Criminal Rule 4 recommended that the Advisory Committee reject this argument, reasoning that "the point of the amendment is to provide a means of service that gives notice, and there is no legitimate interest in allowing a procedure in which an institutional defendant can feign lack of notice." *Id.* Under the amendment, the subcommittee

---

[16] The Pangang Companies also argue that the government's action "disrupt[ed] the Quinn Emanuel attorneys' relationship with their client" as evidenced by the Pangang Companies' decision to consult with other law firms about how to respond to the 2017 summonses. As the district court observed, the Pangang Companies do not assert that this alleged disruption infringed on their Sixth Amendment right to counsel. The district court did not abuse its discretion in giving the Pangang Companies' conclusory assertion of harm little weight in its analysis.

[17] http://www.uscourts.gov/sites/default/files/criminal-min-2015-03.pdf.

explained, an institutional defendant could no longer make a special appearance to argue that the defendant lacked notice, but could still use a special appearance to assert other objections, "such as a constitutional attack on Rule 4, an objection to a retroactive application of the amendment, or a claim that an institutional defendant has been dissolved." *Id.* Therefore, Criminal Rule 4 would not eliminate the possibility of special appearances entirely. The Advisory Committee agreed and voted unanimously to approve the amendment as initially published, *id.* at 13, stating in its report that "nothing in the proposed amendment addresses or limits any authority of the court to allow a special appearance to contest service on other grounds," *Final Advisory Committee Report*, *supra*, at 6.

To the extent the Pangang Companies argue that delivering a summons to an attorney who previously represented an institutional defendant does not necessarily constitute serving a summons on that defendant, we agree. Criminal Rule 4 does not list delivery of a summons to the foreign organization's attorney. Therefore it is not a method that is presumed to provide notice, and "whether actual notice has been provided may be challenged in an individual case." Fed. R. Crim. P. 4(c)(3)(D) advisory committee's note to 2016 amendment. This issue is not relevant here, however, because the Quinn Emanuel attorneys made a special appearance on the Pangang Companies' behalf in 2017, and conceded that the Pangang Companies had notice of the government's most recent summons.

## C

The Pangang Companies argue alternatively that, even if the district court correctly interpreted Criminal Rule 4, the

court erred by applying the amended version in their case because it was unjust to apply it retroactively. According to the Pangang Companies, had they anticipated that amended Criminal Rule 4 would allow the government to serve them by delivering the summonses to the attorneys who had previously made special appearances on their behalf, the Quinn Emanuel attorneys could have withdrawn their 2012 and 2013 special appearances.

We disagree. Even assuming that the district court's application of amended Criminal Rule 4 to the Pangang Companies was retroactive,[18] the district court did not abuse its discretion in concluding that it was "just and practicable" to apply the rule and deny the Pangang Companies' motion to quash. *See United States v. Ross*, 372 F.3d 1097, 1105 & n.6 (9th Cir. 2004) (reviewing a district court's interpretation of "just and practicable" for an abuse of discretion). The amendments to Criminal Rule 4 became effective in December 2016, and the government delivered the summonses to the Quinn Emanuel attorneys a month later, in

---

[18] When a court applies the amended version of a federal rule to "events occurring before [the amendment's] enactment," such an application is "clearly retrospective." *United States v. Woods*, 399 F.3d 1144, 1147 (9th Cir. 2005) (citation omitted); *see also United States v. Ross*, 372 F.3d 1097, 1105 n.6 (9th Cir. 2004) (same). By contrast, the district court here applied amended Criminal Rule 4 to events (e.g., the 2017 service of summonses on the Quinn Emanuel attorneys and the Pangang Companies' motion to quash) that occurred after the rule's effective date of December 1, 2016. But because the Supreme Court authorized the application of the amended rule to proceedings pending on its effective date "insofar as just and practicable," and the district court did not clearly err in concluding that it was just and practicable to apply the amended rule in this case, we need not decide whether proceedings against the Pangang Companies were "pending" for purposes of the Supreme Court's transmittal memo when the district court ruled.

January 2017. As explained above, under the plain language of amended Criminal Rule 4, service is effective if it gives notice, and the district court could reasonably conclude that the Pangang Companies had notice of the summonses when their attorneys made a special appearance on their behalf in April 2017. This was sufficient evidence for the district court to conclude that the Pangang Companies had been appropriately served. The government did not rely on the Quinn Emanuel attorneys' previously entered special appearances in 2012 and 2013 to demonstrate notice, and therefore the Quinn Emanuel attorneys' inability to withdraw such earlier special appearances was not prejudicial. Had the Pangang Companies not made a special appearance through the Quinn Emanuel attorneys in April 2017, and had the Quinn Emanuel attorneys maintained that they did not give their clients notice of the 2017 summonses, the government would have had to find other means to prove that the Pangang Companies had actual notice. Therefore, the district court did not abuse its discretion in concluding that the Pangang Companies had not demonstrated any prejudice from the application of amended Criminal Rule 4.

Accordingly, we conclude that the district court did not err, let alone clearly err, in denying the Pangang Companies' motion to quash service. We therefore deny the petition for a writ of mandamus and do not reach the remaining *Bauman* factors.

**PETITION DENIED.**