1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CABN 165823)
   COLIN C. SAMPSON (CABN 249784)
5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Tel: (415) 436-7200
        Fax: (415) 436-7234
7       John.Hemann@usdoj.gov

8  JENNIFER KENNEDY GELLIE (DCBN 1020976)
   Trial Attorney, National Security Division
9       950 Pennsylvania Ave., NW
        Washington, DC 20530
10      Tel: (202) 233-0785
        Tax: (202) 233-2146
11      Jennifer.Gellie@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:11-CR-00573-JSW |
| Plaintiff, | UNITED STATES' RESPONSE IN OPPOSITION TO PANGANG DEFENDANTS MOTION FOR BILL OF PARTICULARS (ECF NO. 1124) |
| v. | |
| PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY, | Date: April 23, 2019<br>Time: 1:00 p.m.<br>Courtroom: 5, 2$^d$ Floor, Oakland |
| Defendant. | |

| | | TABLE OF CONTENTS | |
|---|---|---|---|
| I. | FACTS AND PROCEDURAL BACKGROUND | | 2 |
| II. | DISCOVERY PRODUCED TO DATE | | 2 |
| III. | THE LIEW/MAEGERLE/USAPTI TRIAL RECORD | | 3 |
| IV. | APPLICABLE LAW | | 3 |
| V. | ARGUMENT | | 5 |
| | a. | A Bill of Particulars is Not Required with Respect to the Conspiracy to Commit Economic Espionage and Attempted Economic Espionage Counts | 6 |
| | | i. *The Government Has Not Charged Possession Of Stolen Trade Secrets.* | 6 |
| | | ii. *The Government Need Not Prove the Information Sought Actually Consisted of Trade Secrets to Prevail on its Conspiracy and Attempt Charges.* | 6 |
| | | iii. *The Government Filed a Sufficient Bill of Particulars Regarding the Trade Secrets Identified in the Charging Documents.* | 8 |
| | | iv. *The Pangang Defendants' Demonstrated Scouring of the Record Contradicts Their Claimed Confusion as to the Pending Charges.* | 10 |
| | | v. *Identification of Defendants' Employees and These Employees' Knowledge and Intent is Not Required in a Bill of Particulars.* | 11 |
| | | vi. *The Pangang Defendants' Inquiries Have Already Been Answered.* | 12 |
| | b. | The Hacking Allegation Does Not Warrant a Bill of Particulars. | 13 |
| | c. | The Pangang Defendants' Other Complaints Do Not Justify A Bill of Particulars. | 14 |
| | d. | The Court Should Strike the Under Seal Exhibit Filed In Support of the Motion. | 15 |
| VI. | CONCLUSION | | 16 |

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*C.I.T. Corp. v. United States*, 150 F.2d 85 (9th Cir. 1945) .................................................................. 11

*Cooper v. United States*, 282 F.2d 527 (9th Cir. 1960) ..................................................................... 11

*Dollar S.S. Co. v. United States*, 101 F.2d 638 (9th Cir. 1939) ......................................................... 11

*Russell v. United States*, 369 U.S. 749 (1962) ..................................................................................... 4

*United States v. A & P Trucking Co.*, 358 U.S. 121 (1958) .............................................................. 11

*United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1972) ..................................................................... 5

*United States v. Anderson*, 799 F.2d 1438 (11th Cir. 1986) .............................................................. 4

*United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ....................................................................... 4

*United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) ...................................................................... 15

*United States v. Diaz*, 2006 WL 1833081 (N.D. Cal. June 30, 2006) ................................................ 4

*United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) ............................................................ 11, 12

*United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979) .................................................................... 4, 5

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) ................................................................ 4

*United States v. Hilton Hotels Corp.*, 467 F.2d 1000 ........................................................................ 11

*United States v. Hsu*, 155 F.3d 189 ...................................................................................................... 7

*United States v. Inryco, Inc.*, 642 F.2d 290 (9th Cir. 1981) ............................................................... 5

*United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996) ....................................................................... 15

*United States v. Jones*, 2013 WL 5954489 (D. Nev. Nov. 6, 2013) ................................................... 5

*United States v. Kendall*, 665 F.2d 126 (9th Cir. 1981) ..................................................................... 9

*United States v. Kilrain*, 566 F.2d 979 (5th Cir. 1978) ...................................................................... 4

*United States v. Krasovich*, 819 F.2d 253 (9th Cir. 1987) ................................................................. 4

*United States v. Lange*, 312 F.3d 263 (7th Cir. 2002) ........................................................................ 7

*United States v. Liew*, 856 F.3d 585 (9th Cir. 2017) ............................................................. 1, 3, 7, 8

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) ....................................................................... 4

*United States v. Martin*, 228 F.3d 1 ................................................................................................ 6, 7

*United States v. Medjuck*, 937 F. Supp. 1368 (N.D. Cal. 1996) ...................................................... 12

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) .................................................................... 14

*United States v. Middleton*, 35 F. Supp. 2d 1189 (N.D. Cal. 1999) ................................................ 12

*United States v. Navarrette-Aguilar*, 813 F.3d 785 (9th Cir. 2015) ................................................ 12

*United States v. Perry*, 2013 WL 3158078 (D. Mass. June 19, 2013) ............................................... 5

*United States v. Robertson*, 15 F.3d 862 (9th Cir. 1994) ................................................................... 4

*United States v. Ryland*, 806 F.2d 941 (9th Cir. 1986) ............................................................... 4, 12

*United States v. Shelton*, 30 F.3d 702 (6th Cir.1994) ........................................................................ 7

*United States v. Trie*, 21 F. Supp.2d 7 (D. D.C. July 17, 1998) ................................................ 12, 14

*United States v. Yang*, 281 F.3d 534 (6th Cir. 2002) ..................................................................... 6, 7

*United States v. Yeargain*, 314 F.2d 881 (9th Cir. 1963) .................................................................. 4

*Wong Tai v. United States*, 273 U.S. 77 (1927) .................................................................................. 4

Federal Statutes

18 U.S.C. § 1831(a)(3) ................................................................................................................ 2, 6, 9

18 U.S.C. § 1831(a) (4) ........................................................................................................................ 6

18 U.S.C. § 1831(a) (5) .................................................................................................................... 2, 6

18 U.S.C. § 1839(3) ............................................................................................................................. 9

28 U.S.C. § 1732 .................................................................................................................................. 4

Federal Rules

Federal Rule of Criminal Procedure 7(c) .......................................................................................... 10

Federal Rule of Criminal Procedure 4 ................................................................................................ 2

Federal Rule of Criminal Procedure 7(f) ............................................................................................ 3

Federal Rule of Criminal Procedure 16 .............................................................................................. 4

1 The Court should deny the motion for a bill of particulars ("Motion," ECF No. 1124) filed by Defendants Pangang Group Company, Ltd. and its subsidiaries Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company (collectively, the "Pangang Defendants"). The Pangang Defendants' arguments relate primarily to the sufficiency of the government's evidence and not whether the Third Superseding Indictment and discovery produced have sufficiently apprised them of the government's theory of the case.

Indeed, the government's theory is clear and straightforward: the Pangang Defendants conspired and attempted to steal DuPont de Nemours & Company ("DuPont") trade secrets related to the manufacture of Titanium Dioxide ("TiO2") for benefit of the People's Republic of China ("PRC"). The Pangang Defendants did so by hiring and paying individuals who claimed to possess DuPont's trade secrets, including Walter Liew and Tze Chao, and by procuring information exfiltrated by computer hacking from DuPont.

The Pangang Defendants' contention that the government must further define the trade secrets identified in the Third Superseding Indictment ("TSI" or "Indictment") ignores both the law and the voluminous record in this case. Legally, the government need only prove that the Pangang Defendants *believed* that they were stealing trade secrets, not that the items identified in the Indictment were, in fact, trade secrets. *See* 9th Cir. Model Jury Ins. § 8.141A, Comment (for conspiracy and attempt, "the jury should be instructed that it is not necessary for the government to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret") (citing *United States v. Liew*, 856 F.3d 585, 600 (9th Cir. 2017). Factually, in addition to a detailed indictment and voluminous discovery demonstrating the Pangang Defendants' intent to obtain DuPont trade secrets to benefit the PRC, there is a two-month record from the trial of Walter Liew, USA Performance Technology, Inc. ("USAPTI"), and Robert Maegerle that reveals both the evidence and the government's theory regarding the same trade secrets that are currently charged.

The Pangang Defendants' motion is no more than an attempt to obtain a preview of the government's trial strategy, including its planned exhibits and witness testimony. There will be a time for exchange of this information, and none of it will be much of a surprise given the previous trial. Now

is not that time.

## I. FACTS AND PROCEDURAL BACKGROUND

On February 7, 2012, a grand jury sitting in the Northern District of California returned a Superseding Indictment charging the Pangang Defendants with, among other things, conspiracy to commit economic espionage, in violation of 18 U.S.C. § 1831(a)(5), and attempted economic espionage, in violation of 18 U.S.C. § 1831(a)(3) and (4). (ECF No. 64). The government filed its Second Superseding Indictment on March 12, 2013 ("SSI"). (ECF No. 269). After each superseding indictment, the Pangang Defendants successfully quashed service. (ECF Nos 176 and 293). A jury convicted the remaining defendants, Walter Liew and USA Performance Technology, Inc.[1] on charges of conspiracy to commit and attempted economic espionage,[2] A Northern District of California grand jury returned the current, Third Superseding Indictment, on January 5, 2016 (ECF No. 971). After vigorous motion practice as to service under the revised Federal Rule of Criminal Procedure 4, the magistrate judge arraigned the Pangang Defendants on September 6, 2018 and the Pangang Defendants finally appeared through counsel before the District Court on October 2, 2018, over six and a half years after the government first filed the first charges against them. Trial is set to commence on February 3, 2020.

## II. DISCOVERY PRODUCED TO DATE

As detailed in the Declaration of Colin Sampson, filed herewith, and subject to stipulated protective orders, the government has produced voluminous discovery. *See* Sampson Decl., ¶¶ 4-6. The discovery produced to date includes, among other things, hundreds of memorandums of interviews of potential witnesses, including employees of the Pangang Defendants, grand jury testimony of employees of the Pangang Defendants, items voluntarily provided to the government by some of those employees,

---

[1] Defendants Walter and Christina Liew, USA Performance Technology, Inc., and Robert Maegerle previously filed a motion for a bill of particulars. *See* (ECF No. 314). In response to the Court's order, the government filed a Bill of Particulars regarding the same trade secrets at issue here. (ECF No. 363). The Court subsequently found that Bill of Particulars to be sufficient in denying the subsequent defense motion for an amended Bill of Particulars. (ECF No. 466). Defense counsel here have signaled their familiarity with the filings in the *Liew, et al.*, case, and have no doubt analyzed the prior Bill of Particulars.

[2] Codefendant Robert Maegerle, was convicted of conspiracy to steal and attempted theft of DuPont trade secrets. Defendant Christina Liew was convicted of false statements and witness tampering.

and copies of all items seized from the employees of the Pangang Defendants at the Rodeway Inn in Alameda in July 2011. *Id.*

The government has also produced evidence seized from numerous search warrant locations during the investigation of this matter, including the Liews' residence and safe deposit box, USAPTI, Robert Maegerle's residence, Tze Chao's residence, and locations of entities believed to be affiliated with the Pangang Defendants in New Jersey (Pan America, Inc. and Angang America, Inc.), as well as search warrant affidavits, videos, and photographs. The government has further produced the trial exhibits from the 2014 trial of Walter Liew, USAPTI and Robert Maegerle, and has produced confidential materials provided to the government by DuPont related to the trade secrets at issue and cyber intrusions into its servers.

### III.   THE LIEW/MAEGERLE/USAPTI TRIAL RECORD

The 2014 trial of Walter Liew, Robert Magerle, USAPTI lasted 24 days. It included the testimony of over three dozen witnesses, resulting in a 4,673-page trial transcript. The witnesses included a DuPont executive, a DuPont engineer, a DuPont scientist, and a TiO2 industry expert witness – among others – who testified as to each of the alleged trade secrets. The trial culminated in closing statements, with the government addressing the jury for multiple hours, during which time it reviewed in detail the evidence regarding the trade secrets at issue and the government theory as to why each was a trade secret. *See* Transcript of Proceedings, *United States v. Liew, et al.*, Feb. 24, 2014, at 4342-4428. Those trade secrets, as outlined in the Second Superseding Indictment, are identical to those alleged in the currently operative Third Superseding Indictment. *See* SSI at ¶14 (ECF No. 269); TSI at ¶14 (ECF No. 971). As a result of this lengthy and detailed presentation, there is no mystery as to the government's theory regarding the specific trade secrets.

### IV.   APPLICABLE LAW

Federal Rule of Criminal Procedure 7(f) allows for a bill of particulars. The function of a bill of particulars is limited as to both scope and purpose. A bill of particulars has three functions: (1) "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial," (2) "to avoid or minimize the danger of surprise at the time of trial," and (3) "to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the

indictment itself is too vague, and indefinite for such purposes." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979); *see also United States v. Ayers*, 924 F.2d 1468, 1483–84 (9th Cir. 1991). Although addressing double jeopardy concerns is one of the traditionally stated purposes of a bill of particulars, the threat of double jeopardy has been substantially reduced by statute (28 U.S.C. § 1732), and by case law giving defendants recourse to the entire trial record should they ever have to plead former jeopardy. *See, e.g., Russell v. United States*, 369 U.S. 749, 764 (1962); *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976).

To determine whether a bill of particulars is warranted, "a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). When the language of the indictment itself provides this information, a bill of particulars is not required. *United States v. Robertson*, 15 F.3d 862, 873–74 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995); *Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *United States v. Krasovich*, 819 F.2d 253, 254–55 (9th Cir. 1987). A bill of particulars is not a tool for a defendant "to obtain a detailed disclosure of the government's evidence prior to trial." *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978); *see United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (finding that before trial a defendant "is not entitled to know all the evidence the government intends to produce but only the theory of the government's case."). In other words, a bill of particulars is not to be used for generalized discovery. *United States v. Geise*, 597 F.2d 1170, 1181 (9th Cir. 1979) (defendant may not use a motion for a bill of particulars to obtain the "when, where and how" of every act in furtherance of a conspiracy); *see also United States v. Yeargain*, 314 F.2d 881, 882 (9th Cir. 1963) ("A defendant is not entitled to know all the evidence the government intends to produce, but only the government's theory of the case"). To allow a bill of particulars to serve as a discovery tool would frustrate the purposes of Federal Rule of Criminal Procedure 16. *United States v. Anderson*, 799 F.2d 1438 (11th Cir. 1986). The motion for a bill of particulars is "addressed to the sound discretion of the court," and the trial court's ruling thereon should not be disturbed in the absence of an abuse of that discretion. *Wong Tai*, 273 U.S. at 82.

"[E]vidence and legal theories are not proper subjects of bills of particulars but . . . the government's theory of the facts of a case is a proper subject of such bills." *United States v. Diaz*, 2006

WL 1833081, *6 (N.D. Cal. June 30, 2006) (examining 9th Circuit cases). The United States is not required to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972).

"A defendant seeking particularization 'has the burden of showing by brief, affidavit, or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation." *United States v. Jones*, 2013 WL 5954489, at *4 (D. Nev. Nov. 6, 2013) (citing *United States v. Perry*, 2013 WL 3158078 (D. Mass. June 19, 2013)). A defendant may request a bill of particulars to "supplement the indictment by providing more detail of the facts upon which the charges are based." *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981). However, "[f]ull discovery . . . obviates the need for a bill of particulars." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).

## V. ARGUMENT

The Pangang Defendants assert four categories of "pleading deficiencies" they assert requires a bill of particulars: "(1) which parts of the chloride route process they are alleged to have reasonably believed were trade secrets; (2) which trade secrets they allegedly received from their consultants; . . . (3) which employees of the respective companies is alleged to have participated in the illegal conduct (other than Hou Shengdong and Dong Yingjie . . .) [. . . and] (4) any of the details underlying the [Second Superseding] Indictment's conclusory allegation that the Pangang Defendants engaged in 'hacking.'" Motion, Mar. 19, 2019, at p. 5 (ECF No. 1124).

The United States has produced ample discovery that covers the conspiracy to benefit the PRC by appropriating DuPont's TiO2 trade secrets and attempts to do the same. The Pangang Defendants have more than sufficient information to assist them in preparation of their defense, to prevent double jeopardy in the future, and to avoid unfair surprise at trial. The government addresses supposed deficiencies in the TSI below.

### a. A Bill of Particulars is Not Required with Respect to the Conspiracy to Commit Economic Espionage and Attempted Economic Espionage Counts

*i. The Government Has Not Charged Possession Of Stolen Trade Secrets.*

The Pangang Defendants demand, by way of a bill of particulars, identification of "which trade secrets they allegedly received from their consultants," referring to Walter Liew, USAPTI, and presumably Tze Chao. The elements of the two espionage counts charged against the Pangang Defendants—conspiracy to commit economic espionage and attempted economic espionage—do not require receipt of a stolen trade secret. *See United States v. Martin*, 228 F.3d 1, 13 (1st Cir. 2000) (holding that "key question is whether [defendant] intended to steal trade secrets" in rejecting defendant's insufficiency of evidence argument and upholding conspiracy conviction); *see also United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (legal impossibility is not a defense to violations of Sections 1832(a)(4) and (a)(5)). Possession of a stolen trade secret is properly charged under a different subsection of the statute with different elements from those charged in Counts One and Two. *See* 18 U.S.C. § 1831(a)(3).

The question is not *what* the Pangang Defendants[3] received from Liew, USAPTI, Tze Chao, and others, but rather what they *sought* and how they sought it. As a result, while the government may prove at trial that the Pangang Defendants actually did receive some portions of DuPont Trade Secrets 1 through 5 from the already-convicted co-conspirators or by hacking, a plain reading of the statute or elements reveals that proof of receipt is not necessary to meet an element of either attempt (18 U.S.C. § 1831(a)(4)) or conspiracy (18 U.S.C. § 1831(a)(5)) and therefore is not properly the subject of a bill of particulars. *See also* 9th Cir. Model Jury Ins. § 8.141A, Comment.

*ii. The Government Need Not Prove the Information Sought Actually Consisted of Trade Secrets to Prevail on its Conspiracy and Attempt Charges.*

For criminal liability to attach in this case, the government must prove that the Pangang Defendants *believed* that they would be receiving (through the conspiracy with other defendants and

---

[3] Somewhat ironically, while the Pangang Defendants assert that "Pangang Jinzhou" is an "entity that is not charged in the Indictment," they also assert that the government has failed to sufficiently allege what trade secrets were "allegedly utilized in constructing the Jinzhou and Chonquing Plants," which they argue "[t]he Indictment says practically nothing at all about." Motion, pp. 3, 4.

their attempts) stolen DuPont trade secrets related to the TiO2 technology. *See* 9th Cir. Model Jury Ins. § 8.141A, Comment (neither conspiracy nor attempt require that the information defendants "intended to misappropriate was, in fact, a trade secret"). If the Pangang Defendants reasonably believed that the items they were seeking from Liew, USAPTI, Tze Chao, and others were or contained stolen DuPont TiO2 trade secrets,[4] they are guilty of the crimes charged. Refusing to accept this, the Pangang Defendants demand by way of a bill of particulars an accounting of what trade secrets were contained in specific documents (including reports by Tze Chao). Their demand misses the point entirely: even if the information they sought or received contained no trade secrets, if the Pangang Defendants believed that they contained stolen trade secrets, a properly instructed jury will return guilty verdicts. *See United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (In trade secret attempt and conspiracy case, "[t]he fact that [defendants] actually did not receive a trade secret is irrelevant. Since [defendants] intended to commit the crime and took a substantial step towards commission of the crime[.]") (citing *United States v. Shelton,* 30 F.3d 702, 705 (6th Cir.1994)); *United States v. Hsu,* 155 F.3d 189, 203 (holding that "a defendant's culpability for a charge of attempt depends only on 'the circumstances as he believes them to be,' not as they really are."); *cf. United States v. Lange*, 312 F.3d 263, 268 (7th Cir. 2002) (agreeing with "general approach" of *Yang* and *Hsu* but noting that defendant must have also taken a "substantial step toward completion of the offense" to support a conviction for attempted theft of trade secrets)[5] (emphasis in original); *United States v. Martin*, 228 F.3d 1, 13 (1st Cir. 2000) (rejecting defendant's argument that evidence was insufficient where he was charged with conspiracy to violate Section 1832; "key question is whether [defendant] *intended* to steal trade secrets") (emphasis added).

Subsequent to Walter Liew's appeal, The Ninth Circuit has clarified that attempted economic espionage, like conspiracy, requires that the government prove that the defendant reasonably believed that they were seeking a trade secret, and not that the item was, in fact, a trade secret. *See United States*

---

[4] The jury in the trial of codefendants Liew, USAPTI, and Maegerle "found [all five alleged trade secrets] to be actual trade secrets." *United States v. Liew*, 856 F.3d 585, 600 (9th Cir. 2017).

[5] *Lange* further discusses attempt and conspiracy charges as a way "to avoid graymail—the threat that to obtain a conviction the prosecutor must disclose the secret by putting it in the trial record." *Id.*, 312 F.3d at 268. Graymail is certainly a concern here, where defense counsel has already gratuitously filed, under seal, DuPont trade secret information that has no relevance to the arguments made in their motion, as is discussed in § IV.d below.

7

*v. Liew*, 856 F.3d 585, 594, 600 (9th Cir. 2017). That ruling aside, the government previously provided a bill of particulars prior to the *Liew* trial. *See* Bill of Particulars As to Trade Secret 1, As Alleged in Counts Three and Five of the Second Superseding Indictment, July 2, 2013 ("2013 Bill of Particulars") (ECF No. 363). That 2013 Bill of Particulars made clear, as does the Third Superseding Indictment itself, that the government contends that the Pangang Defendants and their co-conspirators "reasonably believed the entire, integrated DuPont chloride-route process to manufacture TiO2 was a DuPont trade secret[,]" as were certain defined the components and subparts. *Id.* This Court found that 2013 Bill of Particulars sufficient to put the Pangang Defendant's co-defendants on notice of the charges against them. *See* Order Denying Joint Motion to Compel Amended Bill of Particulars, Oct. 1, 2013 (ECF No. 466) ("[T]he Court concludes that [the 2013 Bill of Particulars] is sufficient to inform them of the Government's theory on the attempt charges in Counts 3 and 5 with sufficient precision to enable them to prepare for trial, to minimize surprise, and to enable them "to plead [their] conviction or acquittal in bar of another prosecution for the same offense." (citation omitted)). Accordingly, because the Pangang Defendants already have more than sufficient information as to the attempt charges here, the Court should decline to order the government to provide a bill of particulars as to that count.

### iii. The Government Filed a Sufficient Bill of Particulars Regarding the Trade Secrets Identified in the Charging Documents.

As noted, the Pangang Defendants already possess the government's bill of particulars related to Trade Secrets 1 through 5. *See* ECF Nos. 363 (bill of particulars). The descriptions of those trade secrets remains unchanged in the Third Superseding Indictment. *Compare* ECF No. 269 (Second Superseding Indictment) *to* ECF No. 972 (Third Superseding Indictment). Although the Court previously found this bill of particulars to be sufficient, Pangang Defendants contend that the prior bill of particulars is insufficient here, as it fails to assert what the Pangang Defendants believed were trade secrets. The Pangang Defendants further cite the testimony of Daniel Dayton in the *Liew* trial regarding the "multifaceted and extremely complex" chloride-route TiO2 process to support their claim that the government has not provided sufficient detail regarding Trade Secret 1. However, the Pangang Defendants again miss the point: the entire chloride-route process developed by DuPont is so complex

8

and hard to replicate, that the process itself is properly considered a trade secret. *See* 18 U.S.C. § 1839(3) (defining "trade secret" as including "all forms and types of . . . compilations . . . , methods, techniques, processes, procedures, [and] programs"). No amount of additional detail (which the Pangang Defendants paradoxically later argue is a basis for finding that the information should not be considered a trade secret at all, Motion, p. 7), will satisfy the Pangang Defendants, however, it will damage DuPont. In addition, publicly providing additional detail would make public the very thing the Pangang Defendants are alleged to have gone to great lengths to covertly acquire, the value of which relies in part on its close-hold nature. Finally, the Court has previously overruled a vagueness challenge to the description of Trade Secret 1 by co-defendants. *See* Order, ECF No. 338, p. 8 (Denying a bill of particulars regarding the description of trade secrets and finding "it is the Defendants' intent and their actions that form the 'core criminality' of these charges, rather than the existence of the asserted trade secret.").

The same logic applies to all five specific trade secrets: the Pangang Defendants' intent matters, rather than whether the identified processes are in fact trade secrets (although they are). The Pangang Defendants cite no authority for their apparent argument that the government is required to additionally prove their possession of the stolen trade secret documents, which is a different crime. *See* 18 U.S.C. § 1831(a)(3) (possession).

The Pangang Defendants cite no authority requiring the government show their knowledge of the names of certain documents before criminal liability attaches. They provide no such authority because none exists. The government's statement in a joint status report regarding the basis for enhanced protection for certain DuPont trade secret documents is irrelevant to whether they committed the alleged crimes- attempt and conspiracy to commit economic espionage. *See* Motion at 3 ("the government conceded that 'there is no evidence that the Pangang Group defendants or their employees ever possessed or saw'" two specific DuPont trade secret documents). Because the Second Superseding Indictment, the prior bill of particulars, the discovery produced to date, and the voluminous existing trial record are sufficient for the Pangang Defendants to understand the charges against them, the government need not file a bill of particulars, and the Court should decline what is effectively a demand by the Pangant Defendants' for interrogatories *See United States v. Kendall*, 665 F.2d 126, 135 (9th Cir. 1981)

("[t]he defendant's constitutional right is to know the offense with which he is charged, not the details of how it will be proved."); *see also* Fed. R. Crim. P. 7(c).

### *iv. The Pangang Defendants' Demonstrated Scouring of the Record Contradicts Their Claimed Confusion as to the Pending Charges.*

The Pangang Defendants are in the relatively rare position of having insight into the government's trial strategy in the form of the government's entire playbook from a prior trial involving the same conduct. This playbook consists of a 4,673-page trial transcript, with testimony from over three dozen witnesses, across 22 days of trial. It further includes the government's multi-hour closing that lays out exactly what the government's theory as to the conspiracy and attempt to steal DuPont secrets on the part of Walter Liew, Robert Magerle, USAPTI, and the Pangang Defendants. The *Liew* trial involved the trade secrets alleged in the Second Superseding Indictment, which are the same trade secrets alleged in the operative Third Superseding Indictment. *See* SSI at ¶14 (ECF No. 269); TSI at ¶14 (ECF No. 971). And the Pangang Defendants themselves have shown their familiarity with the testimony from the *Liew* trial. *See* Motion at p. 2 (Pangang Defendants citing to *Liew* trial testimony of Daniel Dayton regarding chloride-route process). And, of course, the Pangang Defendants are aware of the government's prior Bill of Particulars regarding the five enumerated trade secrets. *See* ECF No. 363.

Yet, the Pangang Defendants go to exceptional lengths to persuade the Court that they are in the dark as to the government's theory of prosecution. In making their argument that some aspects of Trade Secret 1 include information available to the public, the Pangang Defendants undermine their own claim that the charging document and discovery are insufficient to apprise them of the government's theory of the case. There appears to be little possibility of unfair surprise at trial, as the Pangang Defendants certainly understand that the government alleges that they conspired and attempted to obtain stolen DuPont TiO2 trade secrets, and know and understand exactly what the government's theories as to each trade secrets are – as those theories were litigated, offered, and argued at length in the 2014 trial. They simply disagree as to their guilt and contend that the evidence is insufficient. The Pangang Defendants' demand for interrogatories about what their own employees intended, knew, and did, and their claims that the government must prove that they had knowledge of each individual trade secret, is not the proper subject of a bill of particulars and vastly exceeds the one previously ordered as to other

10

defendants in this case.

### v. Identification of Defendants' Employees and These Employees' Knowledge and Intent is Not Required in a Bill of Particulars.

The Pangang Defendants are not entitled to, in the form of a bill of particulars, an outline of the evidence and witnesses the United States will use to prove its case. *United States v. DiCesare*, 765 F.2d 890, 897-98 (9th Cir. 1985) (bill of particulars cannot be used to discover identities of co-conspirators, exact times of events or overt acts); *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960) (bill of particulars cannot be used to discover identities of government witnesses). Given the clarity of the law in this area, it is unsurprising that the Pangang Defendants cite no authority to support compelling the government to identify which employees "'reasonably believed' that any part of the DuPont process, or the technology provided to the Pangang Defendants by consultants, contained trade secrets." Motion, p. 9.[6]

Indeed, Defendants' argument is absurd on its face given that two Pangang employees *are named defendants*. The Pangang Defendants do not explain how Hou Shengdong and Dong Yingjie *alone*[7] could not have possessed the requisite intent to attribute criminal liability to all defendants, given their roles.[8] Instead, the Pangang Defendants' motion is replete with assumptions about what the government will "likely" do, and in this instance they are likely correct that the government will seek a jury instruction that the *Pangang Defendants* reasonably believed that the items they were seeking (and indeed paying tens of millions of dollars for) were stolen DuPont TiO2 trade secrets. It does not follow, however, that the government is obligated to prove which individual employees of the Pangang

---

[6] Congress may constitutionally impose criminal liability upon a business entity for acts or omissions of its agents within the scope of their employment. *United States v. A & P Trucking Co.,* 358 U.S. 121 (1958).

[7] The Pangang Defendants claim that the government must identify in a bill of particulars "the employees of each of the Pangang Defendants (except Hou Shengdong and Dong Yingje) that the government will claim 'reasonably believed' the information they attempted to, and conspired to, obtain were trade secrets." Motion, p. 13.

[8] Even the actions of "manual laborers" may trigger corporate criminal liability. *Dollar S.S. Co. v. United States,* 101 F.2d 638 (9th Cir. 1939) (ship crewmember); *see C.I.T. Corp. v. United States,* 150 F.2d 85 (9th Cir. 1945) ("It is the function delegated to the corporate officer or agent which determines his power to engage the corporation in a criminal transaction."). Even acts of employees contrary to their instructions may result in criminal liability attributed to the employer. *United States v. Hilton Hotels Corp.*, 467 F.2d 1000, *cert. denied*, 409 U.S. 1125 (1973).

11

1 Defendants had that "reasonable belief," and the Pangang Defendants cite no authority for the
2 proposition that the government must prove the belief of a specific employee before corporate criminal
3 liability attaches, and the government is aware of none.[9] *See United States v. Middleton*, 35 F. Supp. 2d
4 1189, 1192–93 (N.D. Cal. 1999) ("[A] bill of particulars is not meant to provide the defendant with all
5 of the evidence that the government will introduce at trial. Instead, the goal of a bill of particulars is
6 satisfied if the defendant is aware of the theory of the government's case.") (citing *United States v.
7 Ryland*, 806 F.2d at 942). The government has properly alleged its theory of the Pangang Defendants'
8 liability in seeking stolen DuPont trade secrets, and the Court should decline to order the government to
9 summarize for the Pangang Defendants from the evidence produced to date what their own employees
10 (who the government largely has no access to) knew and did in the context of a motion for a bill of
11 particulars.

*vi. The Pangang Defendants' Inquiries Have Already Been Answered.*

13 To meet its burden in a conspiracy case, the United States need not prove exactly how or when
14 each defendant joined the conspiracy or which acts each defendant took; rather, the government must
15 prove that each defendant intended to join the conspiracy and committed at least one overt act in
16 furtherance thereof. *See United States v. Navarrette-Aguilar*, 813 F.3d 785, 794 (9th Cir. 2015) (the
17 government "can prove the existence of a conspiracy through circumstantial evidence that defendants
18 acted together in pursuit of a common illegal goal . . . . Express agreement is not required; rather,
19 agreement may be inferred from conduct.") (internal quotes and citations omitted); *see United States v.
20 Medjuck*, 937 F. Supp. 1368, 1388 (N.D. Cal. 1996), *aff'd*, 156 F.3d 916 (9th Cir. 1998) ("A conspiracy
21 is complete when the conspirators agree and one conspirator has done one overt act in furtherance of the
22 agreement, even if the object of the conspiracy is never achieved."). Moreover, *Feil*, cited by the
23 Pangang Defendants, explicitly found that "a bill of particulars is not warranted to obtain the names of
24 co-conspirators, the exact nature of overt acts, or the precise timing of the alleged conspiracy." *United
25 States v. Feil.* 4:09-cr-00863-JSW, ECF No. 112, p. 5 (Apr. 15, 2010) (citing *United States v. DiCesare*,

---

[9] The only case cited by the Pangang Defendants, *United States v. Trie*, 21 F. Supp.2d 7, 21 (D. D.C. July 17, 1998), required the identification of fraudulent *statements* and co-conspirators alleged as part of an election fraud conspiracy.

765 F.2d 890, 897-98 (9th Cir. 1985)).

**b. The Hacking Allegation Does Not Warrant a Bill of Particulars.**

The Pangang Defendants provide only argument that the "allegation [related to the hacking of DuPont systems] has nothing to do with the conspiracy charged in the [Third Superseding] Indictment." Motion, p. 10. The Pangang Defendants cite no authority for this Court to order a bill of particulars due to the "incendiary" nature of the allegation, nor is the government required to substantiate the factual allegation of involvement in hacking DuPont's servers, as the Pangang Defendants appear to claim.

The government's theory is crystal clear on the face of the Indictment: Defendants' conspired and attempted to obtain DuPont trade secrets in a variety of ways and *one of those ways* was by obtaining trade secrets hacked from DuPont computers. The allegation that the Pangang Defendants received the fruits of a cyber intrusion into DuPont systems (in the form of documents related to the TiO2 chloride route process) as part of their scheme to commit economic espionage of DuPont trade secrets, combined with the production of discovery (discussed below), enables the Pangang Defendants to prepare a defense, avoid unfair surprise, and plead double jeopardy in a future prosecution. The Indictment clearly reveals that the government's theory is based on the fact that the hacked information was actually possessed by Pangang employees when they entered the United States. The Pangang Defendants' arguments merely relate to their perception of the sufficiency of the government's evidence, and are not the proper subject of a motion for a bill of particulars.

The government's allege that the Pangang Defendants used "hackers known or unknown to the Grand Jury" to obtain "trade secret information related to the chloride-route production of TiO2." The Pangang Defendants incorrectly claim that there is no evidence of the hacking. Such evidence has, however, been produced. Dong Yingjie, a Senior Engineer for Pangang Group Titanium Industry Company, Ltd., possessed in an undeleted "recycle bin" on his computer (seized at the Rodeway Inn on July 20, 2011) eight Microsoft Excel spreadsheets, all with a creation date of June 2, 2011. These spreadsheets contain some 43,000 English-language filenames and file paths matching the structure of protected servers storing DuPont's documents at various TiO2 factories (including New Johnsonville, Tennessee, Edge Moor, Delaware, Altamira, Mexico, and Kuan Yin, Taiwan, the locations of four DuPont TiO2 factories). The file paths and file listings on Zhuang Kai's computer match the file names

and structure of protected DuPont computer servers from the 2011 period and reference DuPont documents that contained trade secrets (some files literally say "trade secret" in their titles). The spreadsheets further contain Chinese translations of the file names as well as, in some instances, descriptions of the contents of the files beyond the file names, reflecting that the files themselves (in addition to the file name listings) were exfiltrated from DuPont's servers. DuPont located evidence of cyber intrusions into its network during the months prior to June 2, 2011 (as well as after). The government has provided this information in discovery. *Cf. United States v. Mejia,* 448 F.3d 436, 446 (D.C. Cir. 2006) (bill of particulars properly denied where information sought was contained in discovery such that "if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking").

The government is not required, in a bill of particulars, to walk through every piece of evidence and witness that will demonstrate the origins of the spreadsheets found in the possession of the Pangang employees. Some of that information will come from expert witnesses who will be disclosed when ordered by the Court, and some will come from DuPont employees and agents who will testify about what the information on the spreadsheets is and where it came from. That evidentiary detail is not what bills of particulars is for.

### c. The Pangang Defendants' Other Complaints Do Not Justify A Bill of Particulars.

The Court should reject the Pangang Defendants' claims that it should receive a bill of particulars for its "unique circumstances." Motion, p. 10. The unique circumstances appear only to be that "Defendants are Chinese companies and their employees reside in China" and that translators are needed to communicate with the employees. *Id.*, p. 11. The Pangang Defendants further appear to use the terms of the stipulated Protective Order (ECF No. 1108), which they characterize as "tremendously cumbersome," to support their request for the issuance of a bill of particulars. The parties agreed to numerous countries (not including the United States) where review of the confidential materials may occur. Moreover, as argued above, a bill of particulars is not a vehicle by which a defendant may require the government to walk through its case-in-chief; rather it is meant to ensure that the defendant is able to prepare a defense and fend off future charges. The Third Superseding Indictment satisfies

these goals.

The Pangang Defendants' claims are disingenuous at best considering they have ready access to and control of the vast majority of the witnesses to the alleged crimes, and it is the government that is effectively foreclosed from compelling witnesses to come to the United States to provide testimony. It is unclear how the Pangang Defendants' attorneys' (five in total, including one stationed in the PRC) assertions related to difficulties translating documents and communicating with their client bears on the Court's consideration of their motion. Such circumstances are hardly unique in the criminal justice system, where defendants for whom English is not their first language regularly appear to defend charges against them. The Court should not read in a requirement that translation issues necessitate issuance of a bill of particulars.

The Pangang Defendants request (in footnote 2) that the Court proscribe the government's reference to "Chengde Iron & Steel Group" at their trial. Motion, p. 3, Fn. 2. The Court should decline at this stage (and in the context of a motion for a bill of particulars) to issue an order limiting the trial evidence the government may seek to admit, particularly where the Pangang Defendants provide no argument beyond a guess that the government may not be "intend" to present evidence on that subject and no law to support the Court's suppression or exclusion of such evidence.

### d. The Court Should Strike the Under Seal Exhibit Filed In Support of the Motion.

The Pangang Defendants fail to cite to the exhibit (filed under seal because it contains confidential and proprietary DuPont information), supposedly needed to support the motion for a bill of particulars. *See* ECF No. 1123-2. *See United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (in answering the question of whether a bill of particulars should be granted, "the district court is bound by the four corners of the indictment") (citing *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). Although it is cited in the Declaration of Robert Feldman (ECF No. 112-1) as an example of a document that the Pangang Defendants (correctly) believe is referenced in the Third Superseding Indictment, the document itself has no bearing on the Court's consideration of the four corners of the charging document and should be struck. Although counsel for the United States is willing to meet and confer with the Pangang Defendants regarding such matters, it appears that counsel for the Pangang Defendants is capable of reviewing discovery which supports the Indictment against their clients, further

1 | undermining the basis of the instant motion.  The government has separately responded to the Court's
2 | Order to Show Cause.  *See* ECF No. 1129.

## VI. CONCLUSION

For all the foregoing reasons, the motion for bill of particulars filed by the Pangang Defendants should be denied.  The motion substantively lacks merit, as the Third Superseding Indictment is sufficiently clear as to the Pangang Defendant's involvement and actions underlying the charges and the United States has produced discovery related to the involvement of the Pangang Defendants in the conspiracy and attempt to commit economic espionage charged in Counts One and Two of the Third Superseding Indictment.

Dated: April 2, 2019

Respectfully submitted,

DAVID L. ANDERSON  
United States Attorney

*/s/ Colin Sampson*  
JOHN H. HEMANN  
COLIN SAMPSON  
Assistant United States Attorneys  
JENNIFER KENNEDY GELLIE  
Trial Attorney, National Security Division