QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert P. Feldman (Bar Number 69602)
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5069
Facsimile:     (650) 801-5100

  John M. Potter (Bar Number 165843)
  johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Alec A. Levy, *pro hac vice*
  aleclevy@quinnemanuel.com
1300 I Street N.W., Suite 900
Washington, D.C. 20005
Telephone:     (202) 538-8115
Facsimile:     (202) 538-8100

Attorneys for Defendants Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY,<br><br>    Defendants. | CASE NO. 4:11-CR-0573-07-10 JSW<br><br>**PANGANG DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS**<br><br>Date: April 23, 2019<br>Time: 1:00 p.m.<br>Judge: Hon. Jeffrey S. White<br>Place: Courtroom 5, 2nd Floor |

## TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. The Government's Motion to Strike the Tze Chao Report Should be Denied | 2 |
| II. The Bill of Particulars for the Previous Defendants is Inapplicable to the Pangang Defendants | 5 |
| III. Whether the Government Has to Prove Any Actual Trade Secrets is Irrelevant to the Pangang Defendants' Motion | 7 |
| IV. The Pangang Defendants Are Entitled to Know Which of their Employees Allegedly Believed that Pangang Sought or Received Trade Secrets | 9 |
| V. The Government Concedes the Need for a Bill of Particulars as it Relates to the Alleged "Hacking" | 10 |
| VI. The Government's Arguments Regarding Discovery and the Pangang Defendants' Difficulty Preparing for Trial Are Not Persuasive | 11 |
| CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**Page**

**Cases**

*United States v. Barrett*,
   153 F. Supp. 3d 552 (E.D.N.Y. 2015) .................................................................................. 2

*United States v. Boren*,
   278 F.3d 911 (9th Cir. 2002) ................................................................................................. 3

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) ................................................................................................ 11

*United States v. Curtis*,
   No. 3:17-CR-00007, 2017 WL 3727466 (M.D. Pa. Aug. 30, 2017) ..................................... 2

*United States v. Feil*,
   No. 09-cr-00863-JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) ............................... 11

*United States v. Han*,
   280 F. Supp. 3d 144 (D.D.C. 2017) ...................................................................................... 2

*United States v. Lange*,
   312 F.3d 263 (7th Cir. 2002) ................................................................................................. 4

*United States v. Long*,
   706 F.2d 1044 (9th Cir. 1983) ............................................................................................. 10

*United States v. Wong*,
   No. 06-cr-00428, 2007 WL 404807 (N.D. Cal. Feb. 2, 2007) ............................................ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The government's Opposition to the Pangang Defendants' Motion for Bill of Particulars lacks any merit. This lack of merit is perhaps best exemplified by the government's perplexing argument that the Tze Chao Report, filed under seal as an exhibit to the declaration of Robert P. Feldman, is *irrelevant* to the Defendants' Motion and should be stricken. This argument has no basis in law or fact. Far from being irrelevant, the Tze Chao Report, which is called out by name in (1) the Indictment, (2) the Pangang Defendants' Motion, and (3) their Proposed Order, is *central* to the bill of particulars sought by the Pangang Defendants and was properly filed as an exhibit.

More importantly, the government's arguments against producing a bill of particulars are all unpersuasive. Notwithstanding its sixteen-page Opposition, the government really only makes a handful of distinct arguments. Each is demonstrably wrong or irrelevant. First, the government argues that the Pangang Defendants can rely on a prior bill of particulars, even though that bill says nothing about the Pangang Defendants. Second, the government argues that no bill of particulars is required because it need not prove that the Pangang Defendants sought or received any actual trade secrets, despite the fact that the government concedes it *will in fact* seek to prove actual trade secrets at trial. Third, the government argues that the Pangang Defendants are not entitled to know which employee of each Defendant entity's conduct and scienter gives rise to the alleged criminal liability, even though this is clearly an essential fact underlying the government's charges. Fourth, the government argues that no bill of particulars is needed as to the "hacking" allegations, despite the fact that the government provides facts for the first time about these allegations in its Opposition. And finally, the government argues that the immensely complex and voluminous discovery it has produced, which numerous courts have found militates in *favor* of a bill of particulars, somehow is a reason to deny one in this case.

For the reasons set forth below and in the Pangang Defendants' Motion, the Court should reject these arguments and order the government to produce a bill of particulars.

# ARGUMENT

## I. The Government's Motion to Strike the Tze Chao Report Should be Denied

As a threshold matter, the government's motion to strike the Tze Chao Report as an exhibit to the Declaration of Robert P. Feldman should be denied. This motion is based on the claim that the Tze Chao Report was not cited in the Pangang Defendants' Motion for Bill of Particulars and "has no relevance to the arguments made in [that] motion." (Dkt. No. 1132, Resp. in Opp. to Pangang Defs.' Mot. for Bill of Particulars ("Opp."), at 7 n.5, 15-16.) The government even goes so far as to assert that the defense "gratuitously filed" this Report, giving rise to concerns of "graymail." (*Id.* at 7 n.5.)[1]

As the Court knows from reading the Pangang Defendants' Motion and the rest of the record in this case, these arguments are untethered to the record. The assertion that the Tze Chao Report is not cited in the Pangang Defendants' Motion for Bill of Particulars is simply wrong. The Tze Chao Report is referenced at multiple points throughout that Motion. (Dkt. No. 1124, Pangang Defs.' Mot. for Bill of Particulars ("Mot."), at 4, 8.) The Tze Chao Report is also expressly identified by the Pangang Defendants in their Proposed Order granting their Motion. (*See* Dkt. No 1124-3, Proposed Order, at ¶ 2.) It is unclear why the government would make the statement to the Court that the Chao Report was not referenced in the Motion.

The government also argues that the Report is irrelevant because when resolving a motion for bill of particulars, the Court is limited to the "four corners" of the Indictment. (Opp. at 15.) The government is, again, simply wrong. When resolving a motion for bill of particulars, "the court's analysis is not bounded by the four corners of an indictment." *United States v. Curtis*, No. 3:17-CR-00007, 2017 WL 3727466, at *2 (M.D. Pa. Aug. 30, 2017); *United States v. Han*, 280 F. Supp. 3d 144, 148 (D.D.C. 2017) ("Unlike a Rule 12 motion, the court may look beyond the indictment to determine, in its discretion, whether to direct the Government to file a bill of particulars."); *United States v. Barrett*, 153 F. Supp. 3d 552, 571 (E.D.N.Y. 2015) ("Courts can . .

---

[1] The government has filed a separate Motion to Strike the Tze Chao Report, and the Pangang Defendants have responded to it. (*See* Dkt. No. 1131).

. look beyond the four corners of the indictment in evaluating whether a bill of particulars is necessary"). The holding of United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002), cited by the government as support for its argument, is not to the contrary. In fact, although the government states that that the Boren court held that "in answering the question of whether a bill of particulars should be granted, 'the district court is bound by the four corners of the indictment,'" (Opp. at 15), that court held no such thing. Instead, it stated that "[i]n ruling on a *pre-trial motion to dismiss an indictment for failure to state an offense*, the district court is bound by the four corners of the indictment." Boren, 278 F.3d at 914 (emphasis added). It is unclear why the government would state that the Boren court's holding relates to a bill of particulars analysis.

Moreover, even assuming the government had been correct as a matter of law, this point is irrelevant. The Tze Chao Report falls squarely within the "four corners" of the Third Superseding Indictment, as it is referred to several times in that pleading. (*See* Dkt. No. 971, Third Superseding Indictment, at ¶¶ 30, 53.) Again, it is unclear why the government would make this argument to the Court.

Likewise, the suggestion that the Pangang Defendants filed the Tze Chao Report "gratuitously" or in bad faith is contradicted by the record. The Pangang Defendants filed a *single* exhibit -- the Tze Chao Report -- with their Motion for Bill of Particulars. (*See* Dkt. No. 1124-2, Exhibit A to the Declaration of Robert P. Feldman.). They did *not* file as exhibits any of the other documents discussed in their Motion, opting instead to describe them in non-confidential terms in the Declaration of Robert P. Feldman. (*See* Dkt. No. 1124-1, Decl. of Robert P. Feldman in Support of Mot. for Bill of Particulars, ¶ 3.) Because the government had designated the Tze Chao Report "confidential" under the Protective Order, the Pangang Defendants filed that Report under seal, complying in *every* way with the Local Rules and this Court's Orders. The Protective Order expressly allows -- indeed, requires -- the Pangang Defendants to file confidential documents under seal as exhibits to pleadings. (*See* Dkt. No. 1109, Protective Order, ¶ 5.)

1  Nothing about this process has anything to do with graymail.  According to the case cited by the government, "graymail" is "the threat that to obtain a conviction the prosecutor must disclose the secret by putting it in the trial record."  *United States v. Lange*, 312 F.3d 263, 268 (7th Cir. 2002).  This is plainly inapplicable here, where the government alleges that the Pangang Defendants have *already possessed* the Tze Chao Report for nearly ten years, and therefore presumably could have disclosed that document publicly at any time since.  (Indictment at ¶ 30.)  Clearly, the Pangang Defendants' intention is not to force the public disclosure of this document, but instead to understand which portions of it underlie the criminal charges they face.  Again, it is unclear why the government would make this argument.

Most importantly, there is a legitimate -- indeed, compelling and urgent -- reason that the Tze Chao Report is presented to the Court as an exhibit to the Defendants' Motion.  In the Third Superseding Indictment, the government alleges that the Pangang Defendants received this report from Tze Chao, and that the Report "relied, in part, on DuPont's trade secrets."  (Indictment at ¶ 30.)  Yet the Indictment does not identify these "Dupont[ ] trade secrets" nor the "parts" of the Report that supposedly relied on those secrets.  A core argument in the Pangang Defendants' Motion for Bill of Particulars is that they are entitled to know which "parts" of the Report (and, likewise, Walter Liew's "basic design information") the government claims the Pangang Defendants reasonably believed were trade secrets, or were in fact trade secrets.  Without a bill of particulars on this issue, the Pangang Defendants cannot prepare for trial.  As the Court can discern from reviewing the Tze Chao Report under seal, the document contains *nothing* that is a trade secret on its face or identifies itself as belonging to DuPont, nor does anything in the Report itself or the Indictment suggest which "parts" of the Report the government thinks are at issue.  And the defense would respectfully request the Court compare the Report to the five listed alleged trade secrets in the indictment, (*see* Indictment at ¶ 14); none of these listed trade secrets appear in any recognizable form in the Report.  It is respectfully submitted that once the Court reviews the Report, the importance of a bill of particulars will be apparent.

Finally, the government's filings in Response to the Court's Order to Show Cause further support the necessity of a bill of particulars. Despite the fact that it quotes from and paraphrases portions of the Tze Chao Report, the declaration of Dr. Kevin J. Leary was *not* filed under seal. (*See* Dkt. No. 1129-1, Kevin J. Leary, PH.D. Regarding Exhibit A to the Declaration of Robert P. Feldman (hereinafter "Leary Decl.").) This reinforces the allegation in the Indictment that only "parts" of the Report are at issue and that the government does not view the *entire* Tze Chao Report as being trade secret. The Leary Declaration recites phrases and processes cited in the Report, to wit, the "coke and ore feeder pump," "the separation of the titanium intermediate from other impurities, a continuous bed draw-off system, and some specifics related to the conversion of titanium tetrachloride to pigmentary TiO2." (Leary Decl. at ¶ 5.) So, there is nothing trade secret or valuable about these concepts. For the Report to actually contain trade secrets, it must contain something more about these concepts and processes that is trade secret. There is no reason the government should be allowed to hide the ball about this. For example, if the government intends to argue that the Pangang Defendants reasonably believed all of the information in Section "F" on page 12 of the Tze Chao Report is a trade secret, or that this information was in fact a trade secret, one type of expert witness and one or more particular lay witnesses might be relevant. On the other hand, if the government intends to argue that the Pangang Defendants reasonably believed the information in Section "H" on page 14 of that Report was a trade secret, or that this information was in fact a trade secret, a completely different expert and different lay witnesses might be relevant. If the government intends to make any of these arguments about any specific parts of the Report, it is fundamentally unfair not to provide that information to the Pangang Defendants so that they can prepare appropriately.

II. **The Bill of Particulars for the Previous Defendants is Inapplicable to the Pangang Defendants**

The government's other arguments are no more persuasive. First, the government claims that the earlier bill of particulars "made clear . . . that the government contends that the Pangang Defendants and their co-conspirators 'reasonably believed the entire, integrated DuPont chloride-route process to manufacture TiO2 was a DuPont trade secret[,]' as were certain defined the [sic]

components and subparts." (Opp. at 8 (quoting Dkt. No. 363, Bill of Particulars).) This argument must be based on a misunderstanding of the record. As the Pangang Defendants said in their Motion for Bill of Particulars, this previous bill of particulars says nothing about the charges against the Pangang Defendants -- it says nothing about the Pangang Defendants *at all*. It states only what the government asserted the previous defendants -- *Walter Liew, Christina Liew, Robert Maegerle and USA Performance Technology Inc. ("USA PTI")* -- reasonably believed the trade secrets in this case to be. Those are the only Defendants whose "beliefs" are addressed in that bill of particulars,[2] and this precludes reliance on that previous bill.

The government's erroneous insistence that the previous bill of particulars applies to the Pangang Defendants highlights exactly why a bill of particulars is necessary in this case. The government refuses to acknowledge that the Pangang Defendants are in a fundamentally different position than the previous Defendants. The previous Defendants were charged with *actually* stealing DuPont trade secrets long before their first alleged interaction with any Pangang entity. The government presented evidence at the trial of those Defendants that Walter Liew and Robert Maegerle allegedly possessed specific alleged DuPont trade secret documents, and communicated with each other about specific alleged trade secret information.

The allegations against the Pangang Defendants, and the evidence that could be presented at their trial, are completely different. The government concedes that the Pangang Defendants *did not possess* the specific alleged trade secret documents referenced in the Third Superseding Indictment, and there is no evidence that they were party to the communications between Walter Liew and Robert Maegerle conveying alleged trade secret information. Instead, the government claims that Liew, Maegerle and USA PTI incorporated secrets they had stolen from DuPont into plans for technology they sold to the Pangang Defendants. Accordingly, unlike the previous

---

[2] *See* Bill of Particulars at 1 (listing the "Defendants" in the pleading as Walter Liew, Christina Liew, Robert Maegerle and USA PTI); *see id.* at 2 (stating that "[t]he United States also will argue that Defendants reasonably believed that certain components and subparts of the DuPont chloride-route process to manufacture TiO2 were DuPont trade secrets *and integrated these trade secrets into their design of the following components*"—a statement which makes no sense if this bill of particulars applied to the Pangang Defendants).

Defendants, the Pangang Defendants are in the (unenviable) position of having to guess at what portions of the immensely complex chloride-route process, and the voluminous documents they received from their consultants, the government will argue they believed were DuPont trade secrets. If the government is going to claim that any specific parts of that process or those documents either were, or were believed by the Pangang Defendants to be, DuPont trade secrets, the Pangang Defendants need to know that information. The government should not be allowed to surprise the Pangang Defendants with any such particulars at trial if they do not identify them now.

Moreover, this information must be set out separately for each Pangang Defendant. Although the government refuses to acknowledge it, each Pangang Defendants is a distinct entity. At trial, the jury will be asked to decide separately whether each is guilty or innocent. Accordingly, the Pangang Defendants are entitled to know the essential facts underlying the government's theory that *each* entity is criminally liable.

### III. Whether the Government Has to Prove Any Actual Trade Secrets is Irrelevant to the Pangang Defendants' Motion

The chief argument in the government's Opposition -- repeated again and again throughout -- is that as a legal matter the government need only prove that the Pangang Defendants *believed* they were receiving DuPont trade secrets. The government contends that it can succeed at trial without proving that the Pangang Defendants *in fact* received any *actual* secrets. The Opposition asserts, without explanation, that this somehow obviates the need for a bill of particulars.

Even assuming that the government is correct that it need not prove any actual trade secrets, its Opposition overlooks two critical points. First, a major aspect of the bill of particulars the Pangang Defendants have requested is an identification of the technology that the government will attempt to prove Pangang *believed* were trade secrets. (Mot. at 6.) This tracks the government's view of their burden in this case perfectly. Even under the government's view of the law, this is clearly part of the "essential facts" underlying the government's claims.

In fact, for this reason, the Court has already rejected the government's argument once in this case. In opposition to the previous set of Defendants' motion for bill of particulars, the

-7-
Pangang Defendants' Reply in Support of Motion for Bill of Particulars
Case No. 4:11-CR-0573-07-10 JSW

government argued, just as it does now, that it was not required to produce a bill of particulars for the attempt charges against those Defendants because attempt does not require proof of the existence of an actual trade secret. (*See* Dkt. No. 324, Gov.'s Opp'n to Mot. to Dismiss and for Bill of Particulars, at 16.) Even though the Court ultimately agreed that the government did not need to prove any actual trade secrets to succeed on its attempt claims, (*see* Dkt. No. 792, Final Jury Instructions, at 32), the Court recognized that this was no reason to deny the Defendants a bill of particulars. (*See* Dkt. No. 338, Order Granting in Part and Denying in Part Joint Mot. for Bill of Particulars, at 11-12.) The Court rejected the government's argument and required the government to produce a bill identifying its "theory of what Defendants *reasonably believed* the trade secret to be, *e.g.,* whether the United States will argue that Defendants reasonably believed the entire chloride-route process to manufacture TiO2 was a trade secret or whether it will argue the Defendants reasonably believed a subset of the process was a trade secret." *Id.* (emphasis added). The government's Opposition overlooks that the Pangang Defendants have requested this same relief here (Mot. at 6), and provides no reason why the Court's earlier ruling should not apply to the Pangang Defendants.

Just as importantly, even if the government is correct that it is not *required* to prove the receipt of any actual trade secrets, the government has made it clear again and again that they *will in fact* attempt to do so at trial. We know this because the government alleges receipt of actual trade secrets in the Indictment (*see* Indictment, at ¶¶ 20, 22, 30), concedes in their Opposition that they will seek to prove receipt of actual trade secrets at trial (*see* Opp. at 6 ("the government may prove at trial that the Pangang Defendants actually did receive some portions of DuPont Trade Secrets 1 through 5")), and has repeatedly argued that the record from the previous trial -- where receipt of actual trade secrets was charged -- provides a "playbook" of how the government intends to try the case against the Pangang Defendants (*see id.* at 10). In other words, there is no doubt that the government intends to attempt to prove that the Pangang Defendants received specific parts of DuPont's chloride-route process that were actually trade secrets. The government cannot have it both ways: it cannot avoid a bill of particulars now by arguing that it need only seek

to prove some vague belief on the part the Pangang Defendants that the entire DuPont chloride-route process was trade secret, yet also leave open the door to surprise the Pangang Defendants at trial with evidence about specific parts of that extremely complex and multifaceted process that it claims are in fact trade secrets. This is precisely what the Court precluded the government from doing by ordering a bill of particulars prior to the previous trial in this matter.

The government argues that because receipt of actual trade secrets is not a *required* element of the legal claims against the Pangang Defendants, it is "therefore . . . not prop[erly] the subject of a bill of particulars." (Opp. at 6.) But there is no such limitation on the scope of a bill of particulars. As the government concedes in its brief, "the government's theory of the facts of a case is a proper subject of" a bill of particulars. (Opp. at 4-5 (citation omitted).) If the government's theory of the facts of this case is that the Pangang Defendants received any actual trade secrets -- and the government has made it clear that it is -- the Pangang Defendants are entitled to know the essential facts underlying that theory now. Otherwise, they will be unfairly surprised at trial, and that surprise will be no less prejudicial whether this evidence forms or does not form a required element of the legal claims at issue.

### IV. The Pangang Defendants Are Entitled to Know Which of their Employees Allegedly Believed that Pangang Sought or Received Trade Secrets

Next, the government argues that it has no obligation to identify *any* particular employees of two of the Pangang Defendants that it claims participated in the alleged wrongdoing or held the requisite scienter for criminal liability. (Opp. at 11.) Again, the government is wrong, as this information is clearly part of the essential facts underlying the claims against the Pangang Defendants. Moreover, the government's response reveals a fundamental deficiency in its claims.

The government's description of the relief that the Pangang Defendants seek on this topic is incorrect. The government argues that "[t]he Pangang Defendants are not entitled to, in the form of a bill of particulars, an outline of the evidence and witnesses the United States will use to prove its case." *Id.* But the Pangang Defendants' Motion for Bill of Particulars nowhere asks the government for an outline of evidence or a list of witnesses the government intends to call. It asks

that the defense be told the *essential facts* underlying the government's claim that *each* of the Pangang Defendants had the requisite scienter. (Mot. at 9.) Those essential facts clearly include, at the very least, the identity of employees or agents of each entity that the government will claim committed wrongdoing and "reasonably believed" that they were seeking or obtaining trade secrets.

The government refuses to identify those essential facts, and through their Opposition makes apparent that they are likely unable to do so. Despite the fact that the government implausibly alleges Hou Shengdong and Dong Yingie were employed by two of the four Pangang Defendants (Pangang Group Co. Ltd. and Pangang Group Titanium Industry Co. Ltd.), (*see* Indictment, at ¶¶ 6-7), the government now argues that these two individuals "*alone* could . . . have possessed the requisite intent to attribute criminal liability to all defendants." (Opp. at 11.) This is a remarkable claim -- the government is effectively arguing that the other two Defendants, Pangang Group Steel Vanadium & Titanium Company, Ltd. and Pangang Group International Economic & Trading Company, can be found criminally liable despite the absence of an allegation that anyone acting on their behalf engaged in wrongdoing. The government argues that "even the actions of 'manual laborers' may trigger corporate criminal liability" (*id.* at 11, n.8.), but this is completely beside the point. Here, the government has not, and likely cannot, identify *any* individual, whether a manual laborer or top executive, acting on behalf of two of the named Defendants whose actions or state of mind give rise to criminal liability. The Court should order the government to identify these individuals if they exist and, if they do not, the Court should dismiss the charges against these two Defendants.

V. **The Government Concedes the Need for a Bill of Particulars as it Relates to the Alleged "Hacking"**

The government effectively concedes the need for a bill of particulars regarding the allegation that the Pangang Defendants engaged in "hacking" by providing for the first time in their Opposition some factual material regarding this charge which is completely absent from the Third Superseding Indictment. (Opp. at 13-14.) The Pangang Defendants cannot rely solely on representations in the government's Opposition brief in lieu of a bill of particulars. The

government should be required to set forth the details about the hacking charge in a bill of particulars and it should be ordered to provide complete discovery on this topic.

### VI. The Government's Arguments Regarding Discovery and the Pangang Defendants' Difficulty Preparing for Trial Are Not Persuasive

The government argues that no bill of particulars is necessary in this case because it has provided the Pangang Defendants with voluminous discovery, and any difficulties the Pangang Defendants may face reviewing that discovery are insignificant and exaggerated. Neither of these arguments is persuasive.

First, contrary to the government's suggestion, the volume of discovery in this case is a factor weighing in *favor* of a bill of particulars, not against it. It is true that when determining whether a bill of particulars is necessary, the Court may consider the information available to the defendant from all government disclosures. *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). However, numerous courts, including this one, have recognized the common sense principle that dumping enormous amounts of documents on a criminal defendant does not elucidate anything. Massive and complex document discovery makes it *more* difficult for a defendant to prepare for trial, and creates *more* opportunities for surprise, and therefore militates in favor of a bill of particulars.[3] The discovery in this case -- over one million documents, in Chinese and English, containing vast amounts of technical information -- is a perfect example.

Second, the government argues that the circumstances facing the Pangang Defendants as they review discovery and prepare for trial are "hardly unique" and no more than what is faced by the average "defendant[ ] for whom English is not their first language." (Opp. at 15.) This

---

[3] *See United States v. Bortnovsky,* 820 F.2d 572, 574-75 (2d Cir. 1987) (holding that the district court erred by failing to grant a bill of particulars, noting that "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel"); *United States v. Feil*, No. 09-cr-00863-JSW, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (finding that a bill of particulars was warranted in light of the fact that "[t]he alleged conspiracy, or conspiracies, span[ned] a period of three to seven years" and "the Government has produced over 70,000 pages of discovery"); *United States v. Wong*, No. 06-cr-00428, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007) (finding that bill of particulars was warranted in part because of "extremely voluminous and diverse discovery," including approximately 200,000 pages of documents, 111,250 TIFF images, 1,250 photographs, 5,800 minutes of audio recordings, and 900 minutes of video surveillance).

suggestion borders on the ridiculous. The relevant employees of the Pangang Defendants reside in China, are required to travel thousands of a miles to a foreign country to review the documents in this case, cannot copy, take notes on, or retain any of those documents, and must communicate with their counsel through interpreters. In addition, even if the Pangang Defendants comply with all of these restrictions, the government has recently begun to wield the terms of the Protective Order to preclude key Pangang personnel from reviewing the evidence in this case at all unless they travel to the United States and sit for a deposition -- a result completely contrary to the purpose of the Order and the rights of the Defendants. The Pangang Defendants respectfully submit that these circumstances are indeed "unique" and support the granting of a bill of particulars.

## CONCLUSION

For the foregoing reasons, the Pangang Defendants respectfully request that the Court deny the government's Motion to Strike and grant the Pangang Defendants' Motion for Bill of Particulars.

Dated: April 9, 2019

/s/ Robert P. Feldman
ROBERT P. FELDMAN
JOHN MARK POTTER
ALEC ASHER LEVY

Quinn Emanuel Urquhart & Sullivan, LLP

*Attorneys for Pangang Defendants*