United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PANGANG GROUP COMPANY, LTD., PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY,<br><br>Defendants. | Case No. 11-cr-00573-JSW-7, 8, 9, 10<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION FOR BILL OF PARTICULARS; DENYING GOVERNMENT MOTION TO STRIKE EXHIBIT; AND SETTING DEADLINE FOR GOVERNMENT TO FILE EXHIBIT LIST**<br><br>Re: Dkt. No. 1124 |

Now before the Court for consideration is the motion for a bill of particulars filed by Pangang Group Company, Ltd. ("Pangang Group Ltd."), Pangang Group Steel Vanadium & Titanium Company, Ltd. ("PGSVTC"), Pangang Group Titanium Industry, Ltd. ("Pangang Group Titanium"), and Pangang Group International Economic & Trading Company ("PIETC") (collectively "the Pangang Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court concludes the motion is suitable for disposition without oral argument. The Court VACATES the motion hearing set for April 23, 2019, but the parties still shall appear on that date for a status conference. The Court GRANTS, IN PART, AND DENIES, IN PART, the Pangang Defendants' motion.[1]

---

[1] The Court did not rely on Exhibit A to the Declaration of Robert Feldman, which is a copy of a document identified in paragraph 53 of the Third Superseding Indictment, to resolve the motion. To the extent the Government seeks to strike that exhibit on the basis that it is not relevant to the motion, that motion is denied as moot. To the extent the Government asks the

1

**BACKGROUND**

On January 5, 2016, the Grand Jury returned a Third Superseding Indictment (the "TSI") charging the Pangang Defendants and two individuals with one count of conspiracy to commit economic espionage, in violation of 18 U.S.C. section 1831(a)(5), and one count of attempted economic espionage, in violation of 18 U.S.C. sections 1831(a)(1)-(4). (Dkt. No. 971.) Walter Liew, Christina Liew, Robert Maegerle, and USAPTI also were charged in this case. Mr. Liew, Mr. Maegerle, and USAPTI proceeded to trial in January 2014 (the "Liew trial").

The Government alleges that the People's Republic of China ("PRC") "publicly identified the development of chloride-route titanium dioxide (TiO2) production technology as a scientific and economic priority. Economic growth in the PRC had created significant demand for TiO2, and because PRC companies had not been able to develop clean, efficient TiO2 production technology, the PRC was a net importer or TiO2 from western countries." (TSI ¶ 1.) The Government also alleges that "[c]hloride-route TiO2 production technology was closely held by western companies, including E.I. du Pont de Nemours & Company (DuPont)," which was not willing to sell or license its proprietary technology to PRC companies. (*Id.*)

Pangang Group Ltd. is alleged to be a "state-owned enterprise controlled by the [PRC] State-Owned Assets Supervision and Administration Commission of the State Council." (TSI ¶¶ 3-4.) The remaining Pangang Defendants are alleged to be subsidiaries controlled by Pangang Group Ltd. (*Id.* ¶ 5.) The Government alleges that "individuals named in this [TSI] obtained TiO2 trade secrets belonging to DuPont and conveyed information containing those trade secrets to companies controlled by the PRC government without authorization from DuPont." (*Id.* ¶ 2; *see generally* TSI ¶¶ 16-56.)

The Economic Espionage Act defines a trade secret as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically,

---

Court to strike the exhibit from the record, that motion is denied.

photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).[2]

Trade Secret 1 is identified as:

> The DuPont chloride-route process to manufacture TiO2. Trade Secret 1 includes ways and means in which proprietary and non-proprietary components were compiled and combined by DuPont to form substantial portions of the Ti02 manufacturing process, and Trade Secrets 2 through 5 set forth below.

(*Id.* ¶ 14.a.)

Trade Secret 2 is identified as:

> DuPont Drawing No. W1245258, titled "Edge Moor Plant Oxidation W/RPS System Drawing." This drawing, marked with the DuPont oval logo trademark, explicitly stated that the "information and know-how [on the drawing] may not be used nor the drawing reproduced without the written permission of DuPont." The drawing provided information about TiO2 oxidation area process, including detailed process flow descriptions for each major stream within the process, including stream capacities, chemical compositions, temperatures, pressures, and physical states. The drawing included details related to pipeline sizes, automatic and manual valve sizes and locations, detailed instrumentation requirements, and safety relief devices.

(*Id.* ¶ 14.b.)

Trade Secret 3 is identified as:

> DuPont Accession Report No. 18135, titled "Improved Mixing Correlation for the TiCl4 Oxidation Reaction Computer Model," dated September 7, 1994, which appended a mathematical equation, referred to as the "Diemer correlation," and related code in the Fortran language for a computer model. The correlation, which enabled the calculation of the mixing time and distance required for

---

[2] This definition was not in effect at the time of the Liew trial. *See, e.g., United States v. Liew*, 856 F.3d 585, 597 (9th Cir. 2017).

3

the completion of the oxidation process for any DuPont reactor under any set of process conditions, incorporated historical operating data from DuPont's production lines and its oxidation science. On its cover page, the report was marked "DuPont Confidential – use and dispose per DISO [DuPont Information Security Organization] policy," and "[t]his report contains confidential information and each holder is responsible for its safekeeping. When no longer needed please destroy or dispose of in conformance with PIP [Proprietary Information Protocol] Guidelines."

(*Id.* ¶ 14.c.)

Trade Secret 4 is identified as:

> DuPont Flow Sheet No. EK2411, titled Edge Moor Pigments Plant Flow Sheet – Reaction Area," with handwritten notations. This flow sheet, bearing the DuPont oval logo trademark, was marked "DuPont Confidential – Special Control," and provided that the "employee receiving this registered print will sign and print the attached acknowledging card, will properly safeguard this print and will be held personally accountable for this print." The flow sheet contained information about the TiO2 reaction area process, *e.g.,* the process of treating ores with chlorine gas, including the inter-connectivity of all major streams between the reaction area equipment, which illustrates where and how DuPont injects chemical additives, fuel, feedstocks, purge gasses and coolants to the process. This flow sheet also included roughly 30 alpha numeric handwritten references to a proprietary, internally commissioned computer simulation mode on the ASPEN-PLUS® platform, known as the Reaction Aspen-Plus (RAP) model, which was described in a separate confidential DuPont technical report. The handwritten references matched the specific nomenclature used for the RAP model, which was created for plant optimization projects and capacity expansions.

(*Id.* ¶ 14.d.)

Trade Secret 5 is identified as:

> DuPont Document EM-C-8510-01848, titled "60,000 Metric Tons Per Year Scope/Basic Data," dated October 31, 1985, addressed to R.J. Maegerle (the "Basic Data Document"). This 407 page document, which was designated 'Confidential-Special Control,' and issued in numbered copies, provided the scope and basic data for DuPont's then-planned chloride-route plant in Taiwan, which later opened in Kuan Yin, Taiwan. It contained the process and equipment information necessary to design a greenfield (*e.g.*, a plant built from scratch at an undeveloped site), world-class production scale, integrated chloride-route TiO2 production line. The Basic Data Document's security statement provided that the report is "highly confidential" and "[m]uch of the report data are considered

> in the 'trade secret' category and should not be released to vendor representatives and non-company personnel." The Basic Data Document was itself a trade secret and it contained numerous discrete trade secrets within it.

(TSI ¶ 14.e.)

The Government also alleges that the Pangang Defendants "and computer hackers unknown to the Grand Jury, in a line of effort parallel to the Pangang Defendants' actions to obtain DuPont trade secrets through WALTER LIEW and TZE CHAO, without authorization remotely accessed DuPont computers that stored TiO2 information and stole from those computers, among other things, trade secret information related to the chloride-route production of TiO2, and transmitted such information to computers outside of the United States. This stolen information was then provided to PANGANG employees working on … PANGANG GROUP projects identified" in paragraphs 23 through 32 of the TSI. (TSI ¶ 22 (emphasis in original).)

The Government alleges defendants Dong Yingjie and Hou Shengdong, who have not yet appeared, were among the employees provided with the information from those computers. (*Id.*) Dong Yingjie also is alleged to have possessed and carried into the United States: (1) eight documents that contained information regarding Trade Secret 1; (2) a document entitled "Chloride technology review – Pangang" that is alleged to have contained stolen DuPont proprietary trade secret information regarding Trade Secret 1; and (3) a document entitled "Assessment of the Proposed Pangang 100k tp TiO2 Chloride Process Flowsheet and P&ID (Zhi Hua Technology Co., Ltd. 9/25/090)" that is alleged to have contained information regarding Trade Secret 1. (*Id.* ¶¶ 51-54.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A. Applicable Legal Standard.**

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the filing of a bill of particulars." A "bill of particular serves three functions: 'to inform the defendant of the nature of the charges with sufficient precision to enable him to prepare for trial, to avoid or

minimize the danger of surprise at the time of trial, and to enable him to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for such purposes.'" *United States v. Geise*, 597 F.2d 1170, 1180-81 (9th Cir. 1979) (quoting *United States v. Birmley*, 529 F.2d 103, 108 (9th Cir. 1976)); *see also United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) ("The purposes of a bill of particulars are to minimize the danger of surprise at trial and to provide sufficient information on the nature of the charges to allow preparation of a defense.").

A defendant may not use a motion for a bill of particulars to obtain full discovery of the government's evidence. *Geise*, 597 F.2d at 1181 (concluding court did not abuse its discretion in denying motion for bill of particulars seeking "when, where and how" of every act in furtherance of a conspiracy, when indictment and discovery provided defendant with information sufficient to meet purposes of a bill of particulars). When a court is considering whether to order a bill of particulars, it "should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1984).

**B.     The Court Grants, in Part, and Denies, in Part, the Motion.**

The Pangang Defendants have made four requests in their motion, and the Court shall address each request in turn.

**1.     Request 1.**

The Pangang Defendants ask for a bill of particulars that identifies which parts of the chloride route process they are alleged to have reasonably believed were trade secrets. The Pangang Defendants are subject to a protective order that limits their ability to review the discovery in this case. It is undisputed that discovery is voluminous. *Cf. United States v. Wong*, No. 06-cr-00428-SI, 2007 WL 404707, at *2 (N.D. Cal. Feb. 2, 2007) (finding "extremely voluminous and diverse discovery" a factor weighing in favor of granting bill of particulars). The Court granted similar relief to the Liew Defendants, even though the Court also had directed that the Government provide those defendants with the documents it intended to use in its case-in-chief well in advance of the trial date. Pursuant to its statement at the last status conference, the Court

sets a deadline for the Government to file its exhibit list for its case-in-chief in the conclusion of this Order.

The Government argues the charges do not require proof of an actual trade secret and argues the Pangang Defendants have the benefit of the Liew trial record, which provides them with information about the nature of the trade secrets. In particular, the Government cites to its closing argument and states it "reviewed in detail the evidence regarding the trade secrets at issue and the government theory as to why each was a trade secret" and contends "there is no mystery as to the government's theory regarding the specific trade secrets." (Opp. at 3:15-22.) With respect to Trade Secrets 2 through 5, the Court concludes that the title of the documents provides sufficient notice to the Pangang Defendants of the alleged trade secrets.

However, Trade Secret 1 is defined more broadly. Although the Government argues that the TSI, the Liew trial, discovery, and the previous bill of particulars provide the Pangang Defendants with sufficient information to defend against the charges, it has not expressly stated that the previous bill of particulars would, in fact, apply to each of the Pangang Defendants and what *they* reasonably believed the trade secrets to be. Therefore, in order to minimize surprise at trial and to assist in the expeditious and efficient resolution of this matter, the Court does find it appropriate for the Government to provide a bill of particulars with respect to Trade Secret 1.

If the Government contends that the Bill of Particulars filed in connection with the Liew trial is equally applicable to each individual Pangang Defendant and that there is no additional information that could be added about what each individual Pangang Defendant reasonably believed Trade Secret 1 to be, the Government may rely on that bill of particulars, but it shall make that clear by filing a notice to that effect.

In addition, if there is additional information that would be pertinent as to whether any individual Pangang Defendant reasonably believed a subset of the DuPont chloride-route process to manufacture TiO2 was a trade secret, then as to that particular defendant, the Government shall take into consideration the definition of a trade secret set forth in the Economic Espionage Act and shall file a supplemental bill of particulars that identifies with particularity: (1) the "ways and means," described in paragraph 14.a; and (2) the "proprietary and non-proprietary components,"

described in paragraph 14.a.; (3) and the resulting compilations and combinations that formed substantial portions of the TiO2 manufacturing process.

### 2. Requests 2 and 3.

The Pangang Defendants also ask for a bill of particulars that identifies which trade secrets they are alleged to have received from their consultants ("Request 2") and which of their employees, other than Hou Shengdong and Dong Yingjie, allegedly participated in the conspiracy ("Request 3"). The nature of the charges against the Pangang Defendants would not require proof of an actual trade secret. *See, e.g., Liew*, 856 F.3d at 599-600. However, the Government has alleged that the Pangang Defendants did receive trade secret information from Mr. Liew and other consultants and via hacking. The Court concludes that a bill of particulars is warranted on whether a particular Pangang Defendant is alleged to have received Trade Secrets 2 through 5, or portions of those Trade Secrets and, if so, which portions. With respect to Trade Secret 1, if the Government contends that any Pangang Defendant actually received any portions of that Trade Secret, they shall provide a bill of particulars as to which portions of Trade Secret 1 a particular defendant allegedly received. *Long*, 706 F.2d at 1054.

Request 3 addresses one aspect of this case that differs from the Liew trial, *i.e.* that the only defendants before the Court are corporate defendants. As one court has noted it often "is not readily apparent from an indictment who performed acts attributable to corporations[.]" *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998). In *Hsia*, the court noted that a bill of particulars may be an appropriate way in which to address that issue, even where the corporation is the defendant. *Id.* In that case, the corporation at issue was a third-party. The court determined that a bill of particulars, which set forth the names of the individuals performing acts alleged in the indictment and who acted on the corporation's behalf to form an agreement on the individual defendant's behalf was appropriate. In other instances, however, courts have determined that an indictment and the disclosures provided through discovery would be sufficient. *See, e.g., United States v. Ford Motor Co.*, 24 F.R.D. 65, 68 (D.D.C. 1959) (denying motion for bill of particulars identifying corporate actors on the basis that defendant knew names of officers, agents and employees and the scope of their authority).

The Court takes into consideration the fact that the conspiracy alleged in this case is not particularly large. *Cf. Ford Motor*, 24 F.R.D. at 68. The Court also concludes that the Pangang Defendants' request on this issue is evidentiary in nature, which would not be a proper use of a bill of particulars. *See United States v. DiCesare*, 765 F.2d 890, 897-98 (9th Cir. 1985) (rejecting defendants' request for a bill of particulars to obtain the names of unknown co-conspirators because no unfair prejudice or surprise would result). A bill of particulars is not warranted when its purpose is only to alert the defendants to all the evidence the government may wish to present at trial. *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). Moreover, "[i]ts function is not to provide a defendant with names of government witnesses." *Id.* (citing *Duke v. United States*, 255 F.2d 721, 729 (9th Cir. 1958)); *see also Giese*, 597 F.2d at 1181 (noting that a request for detailed information relating to a conspiracy was "not a purpose of the bill of particulars"). Accordingly, the Court denies Request 3.

### 3. Request 4.

Finally, the Pangang Defendants ask for a bill of particulars that provides additional facts regarding the alleged hacking. The Government argues that the Pangang Defendants are seeking a preview of the Government's evidence on this charge and that between the allegations in the TSI and the discovery that has been provided to date, they have sufficient information to defend against these charges. The Court concurs, and it denies the Pangang Defendants' motion for a bill of particulars on that aspect of the TSI.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the Pangang Defendants' motion for a bill of particulars. If the Government believes that any portion of the bill of particulars required by this Order should be filed under seal, it shall submit an administrative motion to seal. If only portions of the bill of particulars should be sealed, the Government shall electronically file a redacted version.

The Government shall file the bill of particulars required by this Order by no later than May 14, 2019. The Government shall provide the Pangang Defendants with its exhibit list, listing all documents it intends to use in its case-in-chief, by no later than October 4, 2019. Upon review

of the docket, the deadline to exchange motions in limine is November 2, 2019, which is a Saturday. The parties shall exchange motions in limine by November 4, 2019. All other deadlines remain as previously set.

**IT IS SO ORDERED.**

Dated: April 19, 2019

_____
JEFFREY S. WHITE
United States District Judge