DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Assistant United States Attorney
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
COLIN C. SAMPSON (CABN 249784)
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Tel: (415) 436-7200
    Fax: (415) 436-7234
    John.Hemann@usdoj.gov

JENNIFER KENNEDY GELLIE (DCBN 1020976)
Trial Attorney, National Security Division
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 233-0785
    Tax: (202) 233-2146
    Jennifer.Gellie@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY; <br><br> Defendants. | CASE NO. 4:11-CR-00573-JSW-7-10 <br><br> BILL OF PARTICULARS AS TO PANGANG DEFENDANTS |

## I. INTRODUCTION

The Court issued an Order dated April 19, 2019 (ECF No. 1142), directing the United States of America to provide a bill of particulars to Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company (collectively, the "Pangang Defendants") with the following information related to the charges contained in Counts One and Two of the Third Superseding Indictment ("TSI") (ECF No. 971):

1. "[T]he Court does find it appropriate for the Government to provide a bill of particulars with respect to Trade Secret 1. [. . .] If the Government contends that the Bill of Particulars filed in connection with the Liew trial is equally applicable to each individual Pangang Defendant and that there is no additional information that could be added about what each individual Pangang Defendant reasonably believed Trade Secret 1 to be, the Government may rely on that bill of particulars, but it shall make that clear by filing a notice to that effect. [. . .] In addition, if there is additional information that would be pertinent as to whether any individual Pangang Defendant reasonably believed a subset of the [E. I. du Pont de Nemours and Company ("DuPont")] chloride-route process to manufacture TiO2 was a trade secret, then as to that particular defendant, the Government shall take into consideration the definition of a trade secret."

2. "[A] bill of particulars is warranted on whether a particular Pangang Defendant is alleged to have received Trade Secrets 2 through 5, or portions of those Trade Secrets and, if so, which portions. With respect to Trade Secret 1, if the Government contends that any Pangang Defendant actually received any portions of that Trade Secret, they shall provide a bill of particulars as to which portions of Trade Secret 1 a particular defendant allegedly received."

The government reasserts that a bill of particulars is not properly ordered to the extent that it requires particulars of related to elements of crimes not currently charged. *See, e.g.*, *United States v.*

*Hsu*, 155 F.3d 189, 204 (3d Cir. 1998) ("[P]roof that the defendants sought to steal actual trade secrets is not an element of the crimes of attempt or conspiracy under the EEA."); *United States v. Liew*, CR 11–00573–1 JSW, 2013 WL 2605126, at *6 (N.D.C.A. June 11, 2013) ("[I]t is the Defendants' intent and their actions that form the "core criminality" of [the attempted economic espionage] charges, rather than the existence of the asserted trade secret."). Nonetheless, the following bill of particulars is based on the evidence and information known to the government as of this date. The government reserves the right to supplement the following response on the basis of evidence and information obtained after May 14, 2019.

## II. BILL OF PARTICULARS

a. <u>Definition of "Trade Secret"</u>

Pursuant to 18 U.S.C. § 1839(3), "trade secret" is defined as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

b. <u>Trade Secrets 1-5</u>

As alleged in the TSI, <u>Trade Secret 1</u> is described as:

> [t]he DuPont chloride-route process to manufacture TiO2. Trade Secret 1 includes ways and means in which proprietary and nonproprietary components were compiled and combined by DuPont to form substantial portions of the Ti02 manufacturing process, and Trade Secrets 2 through 5.

TSI, ¶ 14.a.

As alleged in the TSI, <u>Trade Secret 2</u> is described as:

> DuPont Drawing No. W1245258, titled 'Edge Moor Plant Oxidation W/RPS System Drawing.' This drawing, marked with the DuPont oval logo trademark, explicitly stated that the 'information and know-how [on the drawing] may not be used nor the drawing reproduced without the written permission of DuPont.' The

3

drawing provided information about TiO2 oxidation area process, including detailed process flow descriptions for each major stream within the process, including stream capacities, chemical compositions, temperatures, pressures, and physical states. The drawing included details related to pipeline sizes, automatic and manual valve sizes and locations, detailed instrumentation requirements, and safety relief devices.

TSI, ¶ 14.b.

As alleged in the TSI, Trade Secret 3 is described as:

DuPont Accession Report No. 18135, titled 'Improved Mixing Correlation for the [titanium tetrachloride ("TiCl$_4$")] Oxidation Reaction Computer Model,' dated September 7, 1994, which appended a mathematical equation, referred to as the 'Diemer correlation,' and related code in the Fortran language for a computer model. The correlation, which enabled the calculation of the mixing time and distance required for the completion of the oxidation process for any DuPont reactor under any set of process conditions, incorporated historical operating data from DuPont's production lines and its oxidation science. On its cover page, the report was marked 'DuPont Confidential – use and dispose per DISO [DuPont Information Security Organization] policy,' and '[t]his report contains confidential information and each holder is responsible for its safekeeping. When no longer needed please destroy or dispose of in conformance with PIP [Proprietary Information Protocol] Guidelines.'

TSI, ¶ 14.c.

As alleged in the TSI, Trade Secret 4 is described as:

DuPont Flow Sheet No. EK2411, titled [']Edge Moor Pigments Plant Flow Sheet – Reaction Area,' with handwritten notations. This flow sheet, bearing the DuPont oval logo trademark, was marked 'DuPont Confidential – Special Control,' and provided that the 'employee receiving this registered print will sign and print the attached acknowledging card, will properly safeguard this print and will be held personally accountable for this print.' The flow sheet contained information about the TiO2 reaction area process, *e.g.,* the process of treating ores with chlorine gas, including the interconnectivity of all major streams between the reaction area equipment, which illustrates where and how DuPont injects chemical additives, fuel, feedstocks, purge gasses and coolants to the process. This flow sheet also included roughly 30 alpha numeric handwritten references to a proprietary, internally commissioned computer simulation mode on the ASPEN-PLUS® platform, known as the Reaction Aspen-Plus (RAP) model, which was described in a separate confidential DuPont technical report. The handwritten references matched the specific nomenclature used for the RAP model, which was created for plant optimization projects and capacity expansions.

TSI, ¶ 14.d.

As alleged in the TSI, Trade Secret 5 is described as:

> DuPont Document EM-C-8510-01848, titled '60,000 Metric Tons Per Year Scope/Basic Data,' dated October 31, 1985, addressed to R.J. Maegerle (the "Basic Data Document"). This 407 page document, which was designated 'Confidential-Special Control,' and issued in numbered copies, provided the scope and basic data for DuPont's then-planned chloride-route plant in Taiwan, which later opened in Kuan Yin, Taiwan. It contained the process and equipment information necessary to design a greenfield (*e.g.*, a plant built from scratch at an undeveloped site), world-class production scale, integrated chloride-route TiO2 production line. The Basic Data Document's security statement provided that the report is 'highly confidential' and '[m]uch of the report data are considered in the 'trade secret' category and should not be released to vendor representatives and non-company personnel.' The Basic Data Document was itself a trade secret and it contained numerous discrete trade secrets within it.

TSI, ¶ 14.d.

   c. Bill of Particulars Re: Trade Secret 1

  The United States asserts that Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company, separately and collectively, reasonably believed the entire, integrated, DuPont chloride-route process to manufacture TiO2 (Trade Secret 1) was a DuPont trade secret. The government relies upon and reincorporates here the previous Bill of Particulars issued to Defendants Walter Liew, Robert Maegerle, and USA Performance Technology, Inc. (ECF No. 363), which is equally applicable to each Pangang Defendant, as each knowingly agreed to misappropriate information that they reasonably believed was a trade secret and did so for the benefit of a foreign government or instrumentality. The United States further incorporates the evidence admitted and closing arguments in the 2014 trial of co-defendants Walter Liew, Robert Maegerle, and USA Performance Technology, Inc. ("USAPTI").

  The United States will also assert that each Pangang Defendant reasonably believed that certain components and subparts of the DuPont chloride-route process to manufacture Titanium Dioxide ("TiO$_2$") were DuPont trade secrets, specifically the following:

    a. AlCl$_3$ Generator and Aluminum Particle Feeding System;

    b. Chlorinator Fluidization Air Requirements;

5

|  |  |  |
|---|---|---|
| | c. | Nitrogen Flow to Chlorinator; |
| | d. | Chlorinator Design; |
| | e. | Chlorinator Velocity; |
| | f. | Chlorinator Jet Pipe Ends; |
| | g. | Chlorination Reaction Front End Layout; |
| | h. | Chlorination Reaction Spray Machine; spiral nozzle with assembly; material (identified by the previously convicted co-defendants[1] in September 2009 as their component SP-3100); |
| | i. | Chlorination Reaction Spray Condenser; material and speed (identified by the previously convicted co-defendants in September 2009 as their component RV-3100); |
| | j. | Fluidized Bed Reactor Seal Distribution Plate; opening range; |
| | k. | $TiCl_4$ Purification Vessel and Sparger design; |
| | l. | Oxidation Reactor; |
| | m. | Oxidation Preheater Design; reaction zone diameter; material and lining (identified by the previously convicted co-defendants in September 2009 as their component R-5500); |
| | n. | Oxidation Bag Filters; |
| | o. | Oxidation Bagfilter Screw Conveyor; Oxidation – Separation and Slurrying; material (identified by the previously convicted co-defendants in September 2009 as their component CV-5780); |
| | p. | Degassing Screw Conveyor; Oxidation – Separation and Slurrying; material (identified by the previously convicted co-defendants in September 2009 as their component CV-5790); |
| | q. | Oxidation Discharge Rotary Valve; Oxidation – Separation and Slurrying; material (identified by the previously convicted co-defendants in |

---

[1] Specifically, Walter Liew, Christina Liew, USAPTI, and Robert Maegerle.

September 2009 as their component R-5790);

r. Fume Disposal Systems;

s. Fume Scrubbers;

t. Oxidation Flue Pond Design and Piping;

u. Solids Receiving/Removal ("SR") Condenser Design;

v. Non-Reversing Cyclone Design;

w. SR Condensate Tank;

x. Contact Condensers;

y. Gas Flow to $O_2$ Rx Insert;

z. Oxidation Degassing Screw Conveyor;

aa. Oxidation Discharge Rotary Valve;

bb. Flash Tank Design;

cc. Slurry Tank;

dd. Slurry Tank Agitator; Oxidation – Separation and Slurrying; height, cone height, cone angle; material (identified by the previously convicted co-defendants in September 2009 as their component A-5800);

ee. Slurry Pumping Data;

ff. Equipment Arrangement;

gg. Chlorine Handling Facilities;

hh. Purge Rate; and

ii. MG -7420, -7520, & -7620; Micron Grinder; Post-Treatment – Grinding; capacity (per hour); material (identified by the previously convicted co-defendants in September 2009 as their components MG-7420, -7520, & -7620).

    d. <u>Bill of Particulars Re: Trade Secrets 2-5</u>

The TSI alleges that Trade Secret 1 includes Trade Secret 2. The United States will assert that each Pangang Defendant reasonably believed that Trade Secret 2, which showed ways and means of

7

producing $TiO_2$, was a compilation and combination of DuPont trade secrets regarding that manufacturing process.

The TSI alleges that Trade Secret 1 includes Trade Secret 3. The United States will assert that each Pangang Defendant reasonably believed that Trade Secret 3 was a DuPont trade secret.

The TSI alleges that Trade Secret 1 includes Trade Secret 4. The United States will assert that each Pangang Defendant reasonably believed that Trade Secret 4, which showed ways and means of producing TiO2, was a compilation and combination of DuPont trade secrets regarding that manufacturing process.

The TSI alleges that Trade Secret 1 includes Trade Secret 5. The United States will assert that each Pangang Defendant reasonably believed that Trade Secret 5, which showed ways and means of producing $TiO_2$, was a compilation and combination of DuPont trade secrets regarding that manufacturing process.

    e. <u>Trade Secrets Possessed by Defendants</u>

Although the government is neither required to prove that the Pangang Defendants actually received trade secrets nor that the identified trade secrets were, in fact, trade secrets in order to secure convictions for conspiracy and attempted economic espionage as charged in Counts One and Two of the TSI, *see, e.g.*, *Hsu* 155 F.3d 189 at 203-04, and that the government is not required to prove actual possession to secure a conviction for attempt and conspiracy under 18 U.S.C. §§ 1831(a)(4) and (5), the government responds as follows to the Court's Order:

    i. Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company, Ltd. possessed the following portions of <u>Trade Secret 1</u>:

1. Fluidized Bed Reactor Seal Distribution Plate; opening range;
2. Chlorination Reaction Spray Machine; spiral nozzle with assembly; material (identified by the previously convicted co-defendants[2] in

---

[2] Specifically, Walter Liew, Christina Liew, USA Performance Technology, Inc. (USAPTI), and Robert

8

September 2009 as their component SP-3100);

3. Chlorination Reaction Spray Condenser; material and speed (identified by the previously convicted co-defendants in September 2009 as their component RV -3100);

4. Oxidation Reactor; Oxidation-Oxidation Preheat and Reaction; Reaction Zone Diameter; material and lining (identified by the previously convicted co-defendants in September 2009 as their component R -5500);

5. Oxidation Bagfilter Screw Conveyor; Oxidation – Separation and Slurrying; material (identified by the previously convicted co-defendants in September 2009 as their component CV-5780);

6. Degassing Screw Conveyor; Oxidation – Separation and Slurrying; material (identified by the previously convicted co-defendants in September 2009 as their component CV-5790);

7. Oxidation Discharge Rotary Valve; Oxidation – Separation and Slurrying; material (identified by the previously convicted co-defendants in September 2009 as their component R-5790);

8. Slurry Tank Agitator; Oxidation – Separation and Slurrying; height, cone height, cone angle; material (identified by the previously convicted co-defendants in September 2009 as their component A-5800);

9. MG -7420, -7520, & -7620; Micron Grinder; Post-Treatment – Grinding; capacity (per hour); material (identified by the previously convicted co-defendants in September 2009 as their components MG-7420, -7520, & -7620); and

10. $AlCl_3$ Generator and Aluminum Particle Feeding System.

---

Maegerle.

9

    ii. Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company, Ltd. possessed the following portions of <u>Trade Secrets 1 and 4</u>:

      1. $AlCl_3$ Generator and Aluminum Particle Feeding System; and

      2. Spray condenser valve for the Solids Removal ("SR") system.

    iii. Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company, Ltd. possessed the following portions of <u>Trade Secrets 1 and 5</u>:

      1. Chlorinator jet pipe ends;

      2. Design of fluidization mixing reaction section and rectification sections of $TiCl_4$ purification vessel; and

      3. $TiCl_4$ Purification Vessel and Sparger design.

  The government reserves the right to supplement the above response on the basis of evidence and information obtained after May 14, 2019.

              Respectfully submitted,

              DAVID L. ANDERSON
              United States Attorney

Dated: May 14, 2019.        <u>/s/ Colin Sampson</u>
              JOHN H. HEMANN
              COLIN SAMPSON
              Assistant United States Attorneys
              JENNIFER KENNEDY GELLIE
              Trial Attorney, National Security Division