QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert P. Feldman (Bar Number 69602)
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5069
Facsimile:    (650) 801-5100

  John M. Potter (Bar Number 165843)
  johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Alec A. Levy, *pro hac vice*
  aleclevy@quinnemanuel.com
1300 I Street N.W., Suite 900
Washington, D.C. 20005
Telephone:    (202) 538-8115
Facsimile:    (202) 538-8100

Attorneys for Defendants Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY,<br><br>    Defendants. | CASE NO. 4:11-CR-0573-07-10 JSW<br><br>**PANGANG DEFENDANTS' OPPOSITION TO GOVERNMENT'S OBJECTIONS TO AND MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE AND MOTION FOR AMENDED PROTECTIVE ORDER**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]**<br><br>Date: June 25, 2019<br>Time: 1:00 p.m.<br>Judge: Hon. Jeffrey S. White<br>Place: Courtroom 5, 2nd Floor |

## TABLE OF CONTENTS

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| INTRODUCTION | 1 |
| LEGAL STANDARD | 1 |
| ARGUMENT | 2 |
| I. The Government's "Attorney's Eyes Only" Proposal is Unlawful and Unfair. | 2 |
| II. The Government's Proposals on Sealing Violate Every Relevant Source of Law | 7 |
| III. The Government Should Not be Allowed to Misuse The Protective Order as a Tool to Leverage Depositions | 12 |
| IV. The Chemours Submission Demonstrates a Complete Lack of Regard for Defendants' Right to a Fair Trial | 14 |
| CONCLUSION | 15 |

-i-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

# TABLE OF AUTHORITIES

**Page**

## CASES

*Concrete Pipe and Prods. v. Constr. Laborers Pension Trust*,
    508 U.S. 602 (1993) .................................................................................................... 1

*Ctr. For Auto Safety v. Chrysler Grp., LLC*,
    809 F.3d 1092 (9th Cir. 2016) ..................................................................................... 8

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ..................................................................................... 8

*Kamakana v. City & Cnty. Of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ..................................................................................... 8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) .............................................................................. 10, 11

*United States v. Hsu*,
    155 F.3d 189 (3d Cir. 1998) ........................................................................................ 5

*United States v. Liew*,
    No. CR 11-00573-1 JSW, 2013 WL 2605126 (N.D. Cal. June 11, 2013) ........................ 5

*United States v. United States Gypsum Co.*,
    333 U.S. 364 (1948) .................................................................................................... 1

## STATUTES

18 U.S.C. § 1835 ................................................................................................... 5, 10, 15

## RULES

Fed. R. Crim. P. 16(a)(1)(E)(ii) .................................................................................... 3

Fed. R. Crim. P. 59 ................................................................................................... 1, 2

Fed. R. Crim. P. 59(a) .................................................................................................. 1

Fed. R. Crim. P. 72(a) .................................................................................................. 1

-ii-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Magistrate Judge Cousins rejected every one of the government's positions on this discovery and sealing dispute because they were unreasonable, unprecedented, and unlawful. If adopted, the government's positions would have violated the Constitution, Ninth Circuit law, this Court's Orders, and the Local Rules.

In its Objections, the government has made no attempt to address any of the legal or factual bases of the Magistrate's rulings. Nor has it made any attempt to satisfy the "clearly erroneous" or "contrary to law" standards of review -- the applicable legal standards are not even mentioned in the government's brief. Instead, the government has simply recycled for this Court the same meritless arguments that Magistrate Judge Cousins already heard and rejected. The government's arguments are as wrong now as they were before Magistrate Judge Cousins and should, yet again, be rejected.

## LEGAL STANDARD

The government gets it wrong from the very first sentence of its Objections. There is no "Federal Rule of Criminal Procedure 72(a)," and Local Civil Rule 72-2 does not apply in this criminal case. Instead, the applicable rule governing the government's Objections is Federal Rule of Criminal Procedure 59. Pursuant to Rule 59, the Court "may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense." Fed. R. Crim. P. 59(a). "A party may serve and file objections to the [Magistrate Judge's] order within 14 days," but only those orders that are "contrary to law or clearly erroneous" may be set aside. *Id.* "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [court] on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Concrete Pipe and Prods. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id.* at 623.[1]

---

[1] The government has alternatively styled its pleading as a "Motion to Amend the Protective Order," but the only arguments related to the Protective Order in its brief are those that

# ARGUMENT

The phrases "clearly erroneous" and "contrary to law" do not appear in the government's Objections for a good reason: there is no plausible way the government could contend that any of Magistrate Judge Cousins' rulings were erroneous *at all*, let alone "clearly" so. And far from being "contrary to law," those rulings were compelled by law. Magistrate Judge Cousins was plainly correct that (i) the government is not allowed to preclude Defendants from *ever* seeing important evidence that is central to the government's allegations, and which the government likely intends to use at trial; (ii) the government is not allowed to shift the burden to *the Defendants* to substantiate the need to seal documents that *the government* claims should be sealed, nor is it allowed to automatically seal hundreds of thousands of files that it has designated "confidential" in this matter; and (iii) the government is not allowed to misuse the Protective Order as a coercive device to force individuals associated with Defendants to submit to government depositions.

## I. The Government's "Attorney's Eyes Only" Proposal is Unlawful and Unfair.

Magistrate Judge Cousins correctly denied the government's proposal to add an "Attorney's Eyes Only" provision to the Protective Order that would have prevented the Defendants from *ever* seeing some of the most important evidence in this case. Judge Cousins recognized that such a provision posed "a threat of constitutional dimension" to Defendants. (Dkt. No. 1155, May 2, 2019 Hearing Transcript ("Hr'g"), at 44:19-21.) Moreover, he concluded that the government's proposal was unnecessary in light of the protections already in place in the existing Protective Order. (*Id.* at 44:22-45:1.) Magistrate Judge Cousins was right on both counts.

The documents for which the government requests "Attorney's Eyes Only" restriction are among the most fundamental in this case. They are two of the four trade secret documents that the government specifically alleges Defendants conspired and attempted to misappropriate: (i) the "Basic Data Document" and (ii) the "Improved Mixing Correlation for the $TiCl_4$ Oxidation

---

Magistrate Judge Cousins already considered and ruled upon. Accordingly, the proper standard of review is that of Federal Rule 59.

-2-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

Reaction Computer Model." *See* Third Superseding Indictment, ECF No. 971, ¶ 14.[2] In its recent Bill of Particulars, the government stated the Defendants "reasonably believed" both of these documents were trade secrets. (Bill of Particulars as to Pangang Defendants, Dkt. No. 1158, at 7-8.) In addition -- despite the government's representation to Magistrate Judge Cousins that it is "not alleging that they [the Defendants] possessed" these documents (Hr'g at 22:10-11), and its earlier representation to this Court that "there is no evidence that the Pangang Group defendants or their employees ever possessed or saw these documents" (Dkt. No. 1116, Joint Status Report, at 5) -- the government's Bill of Particulars shockingly and without explanation states that Defendants actually possessed portions of the Basic Data Document. (Bill of Particulars at 10.)

It is clear from the allegations above that the government intends to use these documents at trial. Between the government's Bill of Particulars and its representations to Magistrate Judge Cousins, (Hr'g at 23:10-11.) ("I don't want to commit to not using them"), it has all but admitted as much. This alone is enough to resolve this dispute: it is black letter law that Defendants must be allowed to inspect the evidence that the government will use against them at trial. Fed. R. Crim. P. 16(a)(1)(E)(ii) ("Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . documents . . .if . . . the government intends to use the item in its case-in-chief at trial"). Even the government concedes as much, as it repeatedly assured Magistrate Judge Cousins that it would *not* seek "Attorney's Eyes Only" restrictions for documents it uses at trial. (Hr'g at 22:24-23:3 ("I don't want the Court to be under the assumption that the Government is going to be trying to do attorneys' eyes only on documents that it will try to get admitted in front of a jury.")); (*id.* at 22:1-4 ("I don't believe that the Government's position is going to be that if the Government intends to admit something as an exhibit, the defense can never see it. That's not my intention."))[3] At a bare minimum, Defendants have a right to inspect these documents if the government is going to use them at trial.

---

[2] These documents were Exhibits 161 and 162 from the trial of Walter Liew, Robert Maegerle and USA Performance Technology, Inc. ("USA PTI").

[3] Contrary to Chemours' somewhat incredible assertion, (Chemours Submission at 7), ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ from

The Defendants' constitutional rights to counsel and due process, as well as their rights under *Brady* and *Jencks*, are plainly not satisfied by allowing only their counsel to review this evidence. As Magistrate Judge Cousins correctly observed, defense counsel cannot provide adequate and meaningful advice to their clients if they cannot communicate with them about *the key documents* underlying the charges in the case. (Hr'g at 44:17-21.)[4] The unprecedented nature of this extreme restriction was captured in the following colloquy: "GOVERNMENT: . . . the Government's view is that these types of documents should not be viewed by the Pangang defendants. THE COURT: Ever. GOVERNMENT: At this time, that's our position. THE COURT: Are there any cases that support that view? GOVERNMENT: I don't have any for your Honor." (*Id.* at 18:18-24.)

Although the government has represented that there are additional documents it would seek to designate "Attorney's Eyes Only," neither Defendants nor their counsel has ever seen, in any form, any of those documents. It is not clear whether they even exist yet. They are referred to only in vague, open-ended terms, such as "analytical work product materials" that the government "foresees" receiving from Chemours. (Objections at 5-6.) But what Defendants do know about these documents is enough to make clear they cannot be withheld. The government writes that "internal Chemours employees have started drafting work product analyzing Chinese patents filed by entities and individuals related to the Pangang Defendants that appear to disclose Chemours trade secrets." (Objections at 12.) "In conducting that analysis," the government states, "this in-house expert is mapping those patents to the Chemours trade secrets and describing in detail how various processes within the overall TiO2 manufacturing process work." (*Id.* at 12-13.) Despite the government's assurance to Magistrate Judge Cousins that it would not seek "Attorney's Eyes

---

[4] *See* Hr'g at 21:11-18 (THE COURT: "I've never given permission to never disclose to a defendant what the super confidential information is and I'd be extremely reluctant to do it here because I think that would potentially be a constitutional problem as well as violating the Jencks Act if it's a -- if it's compelled by some other rule, whether constitutional or statutory. To allow it only to go to counsel I don't think satisfies Jencks or Brady. So that seems like a real reach to me.").

Only" restrictions for documents it intends to use at trial, there is *no possible reason* for Chemours and the government to be creating these documents other than to use them against Defendants. The government is documenting the testimony of employees of the alleged victim company to use as proof that Defendants misappropriated that company's intellectual property.[5] Defendants have a right to view this evidence under Rule 16, *Brady*, and *Jencks*. Moreover, given that these documents appear clearly to be testimonial in nature, withholding them from Defendants would be a violation of the Confrontation Clause.

The government had no good explanation for Magistrate Judge Cousins why its unfair and unlawful proposal should be allowed, and it has none now. Instead, the government has simply recycled the same arguments for this Court that Magistrate Judge Cousins already rejected. Namely, that an "Attorney's Eyes Only" restriction is somehow mandated by 18 U.S.C. § 1835, and that the evidence at issue contains confidential DuPont information that should be protected.

The first argument is simply wrong as a legal matter. Although the government makes no less than *fifteen* references in its brief to the purported congressional "intent," "purpose," or "rationale" behind Section 1835, it gives short-shrift to the text of the statute. Section 1835 states simply that "the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws." 18 U.S.C. § 1835(a). Needless to say, nothing in this law requires the Court to allow the government to *completely withhold* key evidence from criminal defendants. To the contrary, as this Court has already held, "[t]he confidentiality provision" of Section 1835, "aims to strike a *balance* between the protection of proprietary information and the unique considerations inherent in criminal prosecutions." *United States v. Liew*, No. CR 11-00573-1 JSW, 2013 WL 2605126, at *2 (N.D. Cal. June 11, 2013) (quoting *United States v. Hsu*, 155 F.3d 189, 197 (3d Cir. 1998) (emphasis added). The government's proposal does not "strike a balance" between

---

[5] If the government has a reason for doing so unrelated to the creation of evidence to use at trial, Defendants welcome them to provide that reason.

Defendants' need to prepare for trial and the protection of DuPont information. It wholly sacrifices one in the name of the other. That is the opposite of balance.

The government's second argument -- that an "Attorney's Eyes Only" provision is necessary because the documents at issue contain confidential DuPont information -- ignores that there is already an *extremely* strong Protective Order in this case designed and stipulated to by the government for the very purpose of safeguarding confidential DuPont information. That Protective Order is the reason why Magistrate Judge Cousins recognized that the government's proposal, in additional to threatening Defendants' constitutional rights, was also just unnecessary. A representative sample of the protections under the current Order include: (1) representatives of the Defendants and any potential witnesses are only permitted to review confidential documents in the physical presence of counsel (*see* Dkt. No. 1109, Protective Order, ¶¶ 6.a, 6.b); (2) those individuals are not allowed to copy retain, photograph, or even take notes on, any of the documents (*id.*); (3) they are prohibited from making any use of the documents unrelated to this litigation (*id.* ¶ 5); (4) they may only review the documents in one of several designated countries, each of which have been pre-approved by the government (*id.* ¶ 7.b); (5) no review can occur in China under any circumstances, nor at any location owned by the Chinese government; (*id.* ¶¶ 6.a, 6.b, 7.b); and (6) defense counsel must inform the government of the identity of any Pangang employees with whom they intend to review confidential documents, and the government has an opportunity to object before the review begins. (*Id.* ¶¶ 6.a, 6.b.) This extremely controlled and safeguarded procedure for review is sufficient to prevent the use of evidence in this case for any improper commercial purpose. The government offers no reason for this Court to conclude that these protections, which have been functioning successfully for all other confidential DuPont documents, are not equally sufficient to protect the "two buckets" of documents it now seeks to withhold.

Finally, perhaps the best proof that an "Attorney's Eyes Only" restriction is not necessary is the government's own position in this case. The protections in the current Protective Order resulted from months-long negotiations between the Defendants and the United States Attorney's

-6-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

Office, working in conjunction with the Federal Bureau of Investigation. All parties agreed and stipulated to the terms of the current Protective Order. That Order does not include an "Attorney's Eyes Only" provision. Despite the government's vague suggestion that circumstances have somehow changed since that stipulation (Objections at 11-12), the government knew it would be required to produce all of the documents at issue when it agreed to the current order: Exhibits 161 and 162 have been listed by name in the Indictment for years, and the government has unabashedly relied on DuPont's "analysis" and "work product" regarding the alleged trade secrets in this case from the start. Although someone within the government (or Chemours) may have had a change of heart, that is no reason to undo a carefully negotiated, comprehensive Protective Order that all parties agreed upon, that was reviewed and approved by the Court, and that has been functioning successfully for over half of a year.

## II. The Government's Proposals on Sealing Violate Every Relevant Source of Law

Next, the government asked Magistrate Judge Cousins to modify the sealing procedures in this case in two plainly unfair and unlawful ways. First, the government claimed that *the Defendants* should be required to file affidavits substantiating the need to seal documents that *the government* claims need to be sealed. Second, the government claimed that there should be automatic sealing for the many thousands of documents that the government has designated confidential under the Protective Order in this matter. Magistrate Judge Cousins rejected these proposals outright. His decision was not "clearly erroneous" nor "contrary to law." It was plainly correct and, in fact, *mandated* by the law.

First, the government's proposal that Defendants be required to submit affidavits providing the basis to seal documents that the government claims need to be sealed makes no sense. The Defendants are not the parties asserting that these documents are confidential and need to be sealed. Nor are Defendants the parties with the knowledge of these documents necessary to explain why they are or are not confidential or properly sealable. It defies common sense to place the burden on the Defendants to vouch for the sealable nature of these documents. As Magistrate Judge Cousins observed, the institutions "actually wanting to have th[e] materials protected as confidential" are the ones "in the best position to assert a basis for sealing." (Hr'g at 44:1-6.)

-7-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

Moreover, the government's burden-shifting proposal would risk violating the Defendants' constitutional rights. The government's proposal invites this Court to require criminal defendants in a trade secret prosecution to submit sworn affidavits agreeing that evidence that will be used against them is confidential and sealable. Although the government casually assures the Court there would be no constitutional issue with doing so, it is unable to cite a *single* case where any court, from any jurisdiction, has ever shifted the burden in this manner. This Court should not be the first.

The other aspect of the government's proposal -- automatic sealing without *any* factual substantiation -- would violate this Circuit's "strong presumption in favor of access" to Court records. *See Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).[6] To establish the need to seal a document in this Circuit, the party seeking sealing must demonstrate "compelling reasons" or, at least, "good cause," why the document needs to be sealed. *See Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097-99 (9th Cir. 2016). To make such a showing inherently requires a factual analysis of the document offered for sealing. Clearly, this showing cannot be made by stating simply that a document has been stamped "Confidential – 1" or "Confidential – 2" by a government attorney.[7] The government's proposal is especially inappropriate in this case, where it has sweepingly designated vast quantities of documents and other files "confidential," including entire hard drives which contain, in total, *hundreds of*

---

[6] The government's curious assertion that this "presumption does not apply" under the current circumstances (Objections at 8) is plainly wrong, as acknowledged by the government itself at the May 2, 2019 hearing: "I understand that the Court has a strong presumption in favor of not sealing documents." (Hr'g at 12:21-22.)

[7] The government's string cite of cases with protective orders that have allegedly allowed for automatic sealing is telling only for what it omits. Despite clearly having done a thorough canvasing of protective orders across the country, the government is unable to cite *a single one* from this Circuit, let alone this district, that has ever adopted its proposed sealing procedure.

-8-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

*thousands of files.*[8]  The government would have this Court sanction the "automatic" sealing of all of those files.  (Hr'g at 12:9-14.)

Third, both elements of the government's proposal on sealing -- burden shifting and automatic sealing -- violate this Court's Orders and the District's Local Rules.  The Protective Order explicitly states that the Defendants are entitled to file documents designated confidential by the government as exhibits to defense pleadings.  It states that if the Defendants do so, the parties must comply with the sealing requirements in the Northern District of California Local Rules.  Those Local Rules in turn require that when a party tentatively files under seal a document that has been designated confidential by the opposing party, the *designating* party must file a declaration establishing why the document is in fact sealable.  *See* N.D. Crim. L.R. 56-1(c)(1) (incorporating N.D. Civ. L.R. 7-11).

This Court specifically modified the parties' stipulated protective order by requiring that: "*if the parties move to seal any items, they must do more than simply state the item has been designated as Confidential-1 or Confidential-2 under the protective order.  They must provide a factual basis for why any given item is sealable*."  (*See* Dkt. No. 1109, Protective Order, 15 (emphasis added).)   Consistent with the Local Rules, the Court has clarified that this "factual basis" must be submitted by the party that designates the document confidential.  (*See* Dkt. 1126.)[9]  The Court recently emphasized and enforced these rules when the government failed to comply with its obligation to submit an affidavit in support of sealing an exhibit to Defendants' Motion for Bill of Particulars.  The Court issued an Order to the Government to Show Cause Why that Exhibit Should Not be Filed in the Public Record, and specifically explained that the government must comply with the Local Rules and the Protective Order by filing a declaration in support of

---

[8]  *See* Dkt. Nos. 1116, 1138, Joint Status Reports, which discuss the over one million files the government has produced so far in this case.  Many, if not most, of those files have been designated either Confidential-1 or Confidential-2.

[9]  There is a reason the government does not provide any explanation for its unfortunate assertions that Defendants "ignor[ed] their obligations under the current Protective Order," and "fail[ed] to adhere to the spirit of the protective order."  (Objections at 4.)  Those assertions have no basis, at all.  Defendants and their counsel have adhered to the Protective Order in every way.

sealing. (*Id.*)[10] In short, the Court's Orders and Rules *clearly* do not allow for a procedure whereby documents can be sealed simply on the basis of a statement that the document has been designated confidential under a protective order, nor do they allow the burden to substantiate sealing be placed on the non-designating party.

Faced with the fact that every relevant source of law prohibits its proposal, the government's strategy in its Objections is to imply that the sealing procedures required by Ninth Circuit law, this Court's Orders, and the Local Rules somehow violates 18 U.S.C. § 1835. Again, the government places a burden on Section 1835 that it cannot bear. That law simply states that "the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws." § 1835(a). The Court has done that. It has entered the Protective Order in this case "under 18 U.S.C. § 1835." (*See* Protective Order at 1.) Nothing in Section 1835 forbids this Court from complying with Ninth Circuit law and this District's Local Rules regarding sealing. The government cites no case that so holds, because there is none. The government's suggestion otherwise, (Objections at 11 ("Should the Court read the Criminal Local Rule as mandating more, it is the Local Rule, not the EEA that must bend here")), is a textbook red herring.

The government's resort to *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) is telling of the lack of support for its position, as that case is not, in any way, on point. Contrary to the government's suggestion, *Phillips* -- a civil case -- does not address the showing a court should require to seal a document designated confidential under a protective order. In fact, the portion of that case relied on by the government does not even address sealing or unsealing pursuant to a protective order at all, but instead the "separate and independent" question of whether an intervenor (the Los Angeles Times) had a "common law right of access" to

---

[10] Somehow, despite all of the above, the government asserts in its Objections that when filing a document under seal, defense counsel "merely had to declare that they were filing the trade secret exhibit under seal pursuant to the terms of the Court entered protective order." (Objections at 4.) As is clear from the above recitation, to do so would have been to directly violate this Court's rules and orders.

-10-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

documents that a district court had already determined were properly sealed. *Id.* at 1212. The *Phillips* court determined that, in that circumstance, the district court should not apply a "strong presumption of access" to the *already-sealed* document. The court found that to do so "would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders." *Id.* at 1213.

Here, the question is not what showing should be required to unseal a document that the Court "has already decided should be shielded from the public." The question is what showing should be required to seal a document in the first place. The Court has already answered that question, by expressly stating in its Protective Order that "a factual basis for why any given item is sealable" is required before a document can be sealed. It is the government's proposal, not this Circuit's presumption of access to court records, that would "surely undermine" this Court's Protective Order.

Finally, the government's accusation in its Objections that defense counsel intend to purposefully file unnecessary confidential documents "to burden the government and intimidate the victim in this case," (Objections at 5 n.6), is completely unfounded. As has been explained in previous filings, the Defendants have thus far filed a *single* exhibit that has been designated confidential. That exhibit was a document called out by name in the Indictment and central to the relief the Defendants requested in the motion at issue. Defendants filed that document under seal, complying with the Local Rules and this Court's orders in every way. Although the government has now twice falsely stated in pleadings that the document "was not referenced in the defense motion at all," (Objections at 10 n.16), the document was referenced multiple times, by name, in that motion and in its proposed order. (Dkt. No. 1124, Pangang Defs.' Mot. for Bill of Particulars, at 4, 8; Dkt. No 1124-3, Proposed Order, at ¶ 2.) The government moved to strike that exhibit from the record on the ground that it was needlessly filed, and the Court denied that motion. The Defendants did *not* file as exhibits other documents discussed in their motion, opting instead to describe them in non-confidential terms in an associated declaration. There is clearly no basis for the government's repeated assertion that defense counsel have filed, or intend to file, confidential

-11-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

documents in bad faith.  This is not the first time that the government's pleadings have included unfounded allegations that defense counsel are engaged in bad faith conduct.  This is going to be a long trial, and this sort of approach will only serve to make it seem longer.

### III. The Government Should Not be Allowed to Misuse The Protective Order as a Tool to Leverage Depositions

Finally, the government asked Magistrate Judge Cousins to sanction its use of the Protective Order as leverage to force an individual associated with the defense to sit for a government deposition.  Unsurprisingly, the government's position had absolutely no basis in the Protective Order or any other law.  Unsurprisingly, Magistrate Judge Cousins rejected it.

With every passing pleading and hearing, the government's position on Wang Rongkai changes.  First, the government's *sole* objection to Wang Rongkai's review of materials was that he was not currently employed by a named Defendant entity.  As defense counsel immediately explained to the government, that objection made no sense.  The Protective Order nowhere limits the review of confidential documents to individuals who are currently employed directly by a Pangang Defendant company.  In fact, it contains a provision that allows for the review of documents by potential non-employee witnesses—witnesses who, unlike Mr. Wang, have *no* affiliation with the Defendant companies at all.  (Protective Order at 9 ("Disclosure of Confidential Materials to Potential Witnesses").)[11]  There is of course no reason why criminal defendants should be limited to conferring only with their employees when preparing for trial.

Unable to defend this position, the government for the first time discovered "security" concerns about Mr. Wang's review of confidential materials in this case.  These concerns are not meritorious.  The government has never presented *any* evidence supporting them.  In lieu of evidence, the government simply couples statements about Mr. Wang's involvement in the facts of this case (which plainly demonstrate counsel's need to review materials with him) with completely unsupported accusations, such as "the government . . . view[s] his access to trade secret

---

[11] Moreover, the government concedes that Mr. Wang was an employee of a Defendant company during the time period at issue and, even now, is still an employee of a subsidiary controlled by one of the Defendants.  Even if this initial objection had any basis in the Protective Order (it does not) it would have been the epitome of placing form over substance.

-12-

information overseas as a national security threat." (Objections at 13 (no citation or explanation following).) The government cannot be allowed to win every argument by uttering the talisman "national security."

But the Court need not just take Defendants' word that Mr. Wang should be allowed to review the evidence in this case -- *the government agrees*. The government is perfectly willing to allow Mr. Wang to review the evidence so long as the defense agrees to concessions that have nothing to do with the protection of confidential information: the government demands Mr. Wang come to the United States and sit for a Rule 15 deposition. If the government had genuine concerns about Mr. Wang's review of confidential materials, those concerns would not be resolved by Mr. Wang reviewing the documents with counsel somewhere in the United States instead of Switzerland. And they certainly would not be resolved by Mr. Wang sitting for a deposition.

Employing a "kitchen sink" approach, the government continues to find new objections to Mr. Wang's review with each passing pleading. None of these objections were raised originally, because none have merit. First, the government now suggests that Defendants have failed to explain why counsel would need to review evidence with Mr. Wang. The allegations in the government's Objections provide a sufficient answer: Mr. Wang was employed by one of the Defendant companies during the relevant time and, according to the government, "was an integral part of the underlying conspiracy in this case." (Objections at 1.) It is no understatement to say that counsel would be derelict in their duties if, on the basis of these statements alone, they did not review the evidence with Mr. Wang in the process of investigating and preparing for trial. It is because this very work is necessary that the Protective Order allows defense counsel to show documents to Pangang employees as well as non-employee potential witnesses.

Second, the government also recently discovered an objection that Mr. Wang should not be allowed to review documents because he is not "subject" to the Protective Order. Like other arguments in the government's briefs, this one is demonstrably wrong. As the government knows full well, the Protective Order requires all potential witnesses who review confidential documents

-13-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

to sign agreements to be bound by the Order. The government's only response to this obvious defect in its objection is to ask the Court to assume such agreements are ineffective when it comes to Mr. Wang because he does not live in the United States. (Objections at 7 n.9.) There is a reason this novel proposal was not included in the stipulated Protective Order: it clearly gives the government an unfair advantage over foreign defendants, whose employees will naturally reside overseas, and it assumes bad faith where none has been shown.

In sum, the government's insistence that Mr. Wang sit for a deposition in return for Defendants' ability to review evidence with him has nothing to do with the protection of confidential information. It is a heavy handed tactic to use the Protective Order as leverage to exact a deposition that the government is not entitled to. Like Magistrate Judge Cousins, this Court should reject this coercive tactic that has nothing to do with protecting trade secrecy.

### IV. The Chemours Submission Demonstrates a Complete Lack of Regard for Defendants' Right to a Fair Trial

Chemours did not file any pleading with Magistrate Judge Cousins about the disputes that this Court referred to him. If Chemours really believed it had a need to weigh in on the resolution of those disputes it should have, and would have, done so before Magistrate Judge Cousins. Having failed to do so, its recently-filed "submission" is not properly before this Court on appeal.

More importantly, even if considered, the Chemours submission does nothing to make any of Magistrate Judge Cousins' rulings appear "clearly erroneous" or "contrary to law" in retrospect. Just the opposite. ████████████████████████████████████████████████████████████████ ████████ In doing so, its brief evinces an utter lack of regard for criminal defendants' right to a fair trial. While decrying the possibility that ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

-14-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW

| | |
|---|---|
| 1 | Legal or factual support for Chemours' extreme and unlawful positions is nonexistent. On |
| 2 | a legal front, Chemours ████████████████████████████████████████ |
| 3 | ████████████████████████████████████████████████ |
| 4 | ██████████████ Chemours adopts this interpretation despite: (1) the absence of any support |
| 5 | in the law itself, (2) the absence of any case law interpreting the law in such a way, and (3) the fact |
| 6 | that such an interpretation of Section 1835 would put it in conflict with *all* other relevant sources |
| 7 | of law – the Constitution, criminal discovery rules, case law, this Court's orders, and the Local |
| 8 | Rules. |
| 9 | Factually, Chemours' accusations that ████████████████████████ |
| 10 | ████████████████████████████████████████████████ |
| 11 | ████████████████████████████████████████████ |
| 12 | ████████████████████████████████████████████████ |
| 13 | ████████████████████████████████████████████████ |
| 14 | ████████████████████ |
| 15 | Chemours' real message lurks behind a thin veneer: ████████████████ |
| 16 | ████████████████████████████████████████████████ |
| 17 | ██████████████ That might be beneficial to Chemours, but it is not how criminal trials work. |

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court overrule the government's Objections to Magistrate Judge Cousins' rulings.

Dated: May 30, 2019

/s/ Robert P. Feldman
ROBERT P. FELDMAN
JOHN MARK POTTER
ALEC ASHER LEVY

Quinn Emanuel Urquhart & Sullivan, LLP

*Attorneys for Pangang Defendants*

-15-
Pangang Defendants' Opposition to Government's Objections to and Motion for Relief from
Nondispositive Pretrial Order of Magistrate Judge and Motion for Amended Protective Order
Case No. 4:11-CR-0573-07-10 JSW