UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PANGANG GROUP COMPANY, LTD., PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY,<br><br>Defendants. | Case No. 11-cr-00573-JSW-7-10<br><br>**ORDER RESOLVING GOVERNMENT'S MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE**<br><br>Re: Dkt. No. 1162 |

This matter comes before the Court upon consideration of the Government's objection to and motion for relief from discovery rulings issued by Magistrate Judge Cousins. The Court has considered the parties' papers, the under seal submission from The Chemours Company, and the record in this case, and it has had the benefit of oral argument.[1] The Court's rulings are set forth below.

## BACKGROUND

On December 13, 2018, the parties submitted a Stipulated Final Protective Order ("SFPO") to this Court. (*See* Dkt. No. 1108.) The SFPO sets forth two categories of Confidential Materials. Confidential-1 materials are "materials that belong to, previously belonged to, or were obtained from E.I. du Pont de Nemours & Company or any of its corporate affiliates – regardless of how the materials were obtained by the Producing Party – that contain, are alleged to contain, or are

---

[1] The Chemours Company filed its submission pursuant to 18 U.S.C. section 1835(b).

1

reasonably believed to contain trade secrets *or confidential and proprietary business information.*" (Dkt. No. 1108, SFPO, ¶ 2.a (emphasis added).) Confidential-2 Materials are "materials that contain, are alleged to contain, or are reasonably believed to contain trade secrets, *confidential and proprietary business information*, *or other sensitive information*, but are not Confidential-1 Materials." (*Id.*, ¶ 2.b (emphasis added).)

On December 14, 2018, the Court approved that stipulation with a modification. (Dkt. No. 1109.) The Court ordered that "if the parties move to seal any items, they must do more than simply state the item has been designated as Confidential-1 or Confidential-2 under the protective order. They must provide a factual basis for why any given item is sealable." (Dkt. No. 1109, SFPO at 15.) As the parties began to engage in discovery, disputes arose, including disputes over the adequacy of the SFPO and about the Court's modification to its terms.

On April 17, 2019, the Court referred all discovery disputes in this matter to Magistrate Judge Cousins, who also presided over discovery during the trial of co-defendants, Walter Liew, Robert Maegerle, and USA Performance Technology, Inc. On May 2, 2019, the parties appeared before Judge Cousins for a hearing on three issues: (1) whether the SFPO should be modified to provide for a presumption to seal documents designated as confidential, *i.e.* the party who designated the material as "Confidential-1" or "Confidential-2" would not have to show an additional factual basis for sealing the documents; (2) whether the protective order should be modified to include an "Attorney's Eyes Only" provision; and (3) what conditions should apply before Wang Rongkai ("Mr. Wang") could review materials designated "Confidential-1" or "Confidential-2." As will be discussed below, the Government's position on this issue has changed.

Judge Cousins ruled against the Government on each issue. (*See* Dkt. No. 1152; Declaration of Jennifer Kennedy Gellie ("Gellie Decl."), Ex. K (May 2, 2019 Transcript of Hearing at 43:5-46:23).) On May 17, 2019, the Government timely filed its objections to and motion for relief from those rulings.

//

2

**ANALYSIS**

When a party objects to a non-dispositive order issued by a magistrate judge, a district court "must consider timely objections and modify or set aside any part of the order that is contrary to law or is clearly erroneous." Fed. R. Crim. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A). A ruling is clearly erroneous if the reviewing court, after considering the evidence, is left with the "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A decision is contrary to law if the magistrate judge fails to apply or misapplies relevant case law, statutes or rules of procedure. *See, e.g., United States v. Cathcart*, 2009 WL 1764642, at * 2 (N.D. Cal. June 18, 2009).[2]

**A.  Sealing Procedures.**

The Government objects to and asks the Court to overrule Judge Cousins' ruling on sealing procedures and the Court's modification to the SFPO. There is a presumption of access to public court records. *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F. 3d 1092, 1096 (9th Cir. 2016) (citing *Nixon v. Warner Commnc'ns, Inc.*, 435 US. 589, 597 (1978)); *cf.* N.D. Crim. L.R. 56-1, Commentary ("As a public forum, the Court has a policy of providing to the public full access to documents filed with the Court."). A party may overcome that presumption by demonstrating a document should be filed under seal and the standard of proof may vary. *Ctr. for Auto Safety*, 809 F.3d at 1096-1101. In some instances, the party seeking to seal material must demonstrate that compelling reasons exist to seal the document. In some instances, good cause will suffice to maintain a document under seal. In this case, the Court also must take into consideration provisions of the Economic Espionage Act ("EEA" or the "Act") that attempt to preserve the confidentiality of trade secrets at issue in prosecutions under the Act.

Under the EEA, a "court shall enter such orders and take other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, *consistent with* the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other

---

[2] In its opening brief, the Government did not state whether it viewed Judge Cousins' rulings as contrary to law or clearly erroneous. On reply, it argues that each ruling is "contrary to law as stated in 18 U.S.C. § 1835[.]" (Reply at 2:2-3.)

3

applicable laws." 18 U.S.C. § 1835(a). The parties do not dispute that allowing documents to be filed under seal would comport with the goal of Section 1835(a). The dispute centers on who should bear the burden of "substantiating" a sealing motion as to whether a given document is "sealable." *Cf.* N.D. Civ. L.R. 79-5(b) ( "sealable," means a document is "privileged, protectable as a trade secret or otherwise entitled to protection under the law"). There is nothing in the SFPO, as modified by the Court, that permits a party to file a document that has been designated as Confidential-1 or Confidential-2 in the public record. If any party chose to do so, they would be in violation of paragraph 10 of that order.

Judge Cousins concluded that the party "in the best position to assert a basis for sealing" is the party who designated an item as confidential and who wanted "to have those materials protected as confidential." (Tr. at 44:2-6.) When the Court modified the SFPO, it was guided by the Northern District Civil Local Rules. Under those rules, a party filing a motion to seal must file a "declaration establishing that the document sought to be filed under seal, or portions thereof, are sealable." N.D. Civ. L.R. 79-5(d)(1)(A). That rule also provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." *Id.* That rule also provides that if a party wants to file a document under seal, which an opposing or non-party has designated confidential, the submitting party must move to seal the document. However, the designating party must "file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable." N.D. Civ. L.R. 79-5(e)(1).

The Court concludes Judge Cousins' decision not to modify the sealing procedures was neither clearly erroneous nor contrary to law. However, the parties' briefs present more fulsome arguments than were presented to Judge Cousins. As the Government notes, the legislative history of the EEA states that "[i]t is important that in the early stages of a prosecution the issue whether material is a trade secret not be litigated. Rather, courts should, when entering these orders, always assume that the material at issue is in fact a trade secret." 142 Cong. Rec. S12,201, 12,213 (Oct. 2, 1996); *see also United States v. Hsu*, 155 F.3d 189, 197 (3rd Cir. 1998) (stating that

4

Section 1835(a) represents "a clear indication from Congress that trade secrets are to be protected to the fullest extent during EEA litigation" and "aims to strike a balance between the protection of proprietary information and the unique considerations inherent in criminal prosecutions"). This case is not necessarily at an early stage, given the previous trial against the co-defendants, but the prosecution against the Pangang Defendants remains in the pre-trial phase. Mindful of the provisions of Section 1835(a) and the legislative history of the EEA, the Court concludes that modifying the sealing procedures in this case is warranted, *in part*. It will modify the procedures it has put in place for items that have been designated Confidential-1 or Confidential-2 because the materials contain, are alleged to contain, or are reasonably believed to contain a trade secret, as that term is defined in 18 U.S.C. section 1839(3).

At the hearing, the Government argued that the phrases "confidential and proprietary business information" and "other sensitive information" were two ways of saying the same thing, *i.e.* that such material is a "trade secret." The Court is not persuaded by that interpretation of the SFPO. Indeed, to adopt that construction would render those phrases superfluous. Therefore, the Court finds no basis to alter the procedures it put in place for documents that have been designated as Confidential-1 or Confidential-2 because they contain, are alleged to contain, or are reasonably believed to contain "confidential and proprietary business information" or "other sensitive information."

Accordingly, the Court ORDERS the parties to modify the SFPO to include the following provision in Paragraph 10:

> If a **non-designating** party seeks to file a document (or testimony) with the Court that has been designated by the opposing party as Confidential-1 or Confidential-2, the non-designating party shall file a motion to seal stating that the document has been designated as Confidential-1 or Confidential-2 under the protective order by the designating party.
>
> Within **fourteen days** thereafter, the **designating party** shall submit a declaration in response to the motion to seal, in which it identifies the basis for designating the material Confidential-1 or Confidential-2. If the designating party is the party filing a motion to seal, the declaration shall be submitted with the motion to seal.

> If the designating party attests that the material has been designated as Confidential-1 or Confidential-2 because the document contains, is alleged to contain, or is reasonably believed to contain a trade secret, as that term is defined in 18 U.S.C. section 1839(3), the designating party will not be required to submit a declaration setting forth a further factual basis for sealing the document or the testimony at issue.
>
> If, however, the designating party attests that the material has been designated Confidential-1 or Confidential-2 because it contains, is alleged to contain, or is reasonably believed to contain, "confidential and proprietary business information" or "other sensitive information," the designating party also must provide a factual basis that demonstrates the material is "sealable."
>
> If a non-designating party files material under seal pursuant to this procedure, that party shall not be deemed to have conceded the material to be sealed is or contains a trade secret, confidential and proprietary business information, or other sensitive information.

## B.   Designating Documents or Testimony as Attorney's Eyes Only.

The Government also objects to and seeks to overrule Magistrate Judge Cousins' decision not to modify the SFPO to include an attorney's eyes only provision. The Chemours Company joins this request.[3] In its motion to file the Section 1835(b) submission, The Chemours Company asked the Court to treat certain portions of its submission as "Highly Confidential – Attorney's Eyes Only," as set forth in Section 7.3 of the Northern District's model stipulated protective order for litigation involving patents, highly sensitive confidential information and/or trade secrets ("Model Stipulated Protective Order"). (Dkt. No. 1157, Chemours Motion to Seal at ECF 2:11-15.)

Section 1835(a) directs courts to take measures to protect the confidentiality of trade

---

[3] The Chemours Company also objects to the provisions of the SFPO, which permit Defendants to review materials designated Confidential-1 outside of the United States. That issue was not presented to Judge Cousins, although it overlaps to a degree with the issue of whether Mr. Wang can review Confidential Materials.

The Government has not moved to modify the protective order to remove the provisions that permit Defendants to review confidential materials outside of the United States under specified conditions and in specified countries. (*See* Stipulated Protective Order, ¶¶ 6.a-6.c, 7.) The Court will not modify the provisions of the Stipulated Protective Order to remove those provisions. It has, however, required the Government to provide the Defendants with a list of additional individuals to whom Confidential Materials should not be produced.

secrets at issue in EEA cases. However, it does "not … abrogate existing constitutional and statutory protections for criminal defendants." *Hsu*, 155 F.3d at 197. Having considered the parties' arguments, the Court concludes that Judge Cousins' decision was neither clearly erroneous nor contrary to law. Once again, the Court has been presented with a more fulsome record, which includes The Chemours Company's submission. On that record, it exercises its discretion to modify the terms of the protective order to permit each party to designate materials "Attorneys Eyes Only."

The Court has considered the Government's proposed modification, but it finds the proposal too broad. Instead, the Court ORDERS the parties to modify the Stipulated Protective Order to includes provisions for "Disclosure of Highly Confidential – Attorney's Eyes Only" material and procedures for objecting to such designations as set forth in Sections 7.3 and 7.4 of the Model Stipulated Protective Order.[4] Any disputes about such designation and/or disclosure of any additional documents designated "Attorney's Eyes Only," should be presented to Magistrate Judge Cousins in the first instance.

The only specific documents the Government identified in its submission that should be subject to an Attorney's Eyes Only provision are documents identified as Exhibits 161 and 162 from the *Liew* trial. Those exhibits are currently subject to a Stipulated Interim Protective Order, which limits review of those documents to Defendants' counsel under specified conditions. (Dkt. No. 1122.) Although the Court concludes Exhibits 161 and 162 may be designated "Attorney's Eyes Only," it will not alter the terms of the Stipulated Interim Protective Order relating to those two exhibits. As this case gets closer to trial, and after the Government has identified the exhibits it intends to introduce, the Court would consider revisiting this ruling upon a showing from

---

[4] Because the parties permitted Defendants to request disclosure of Confidential-1 materials to "general counsel for the Pangang Defendants," the Court concludes it would be appropriate to include the provisions of the model protective order that permit disclosure of Attorney's Eyes Only material to "Designated House Counsel of the Receiving Party," subject to the procedures for objecting to such disclosure in existing Section 6.a and Section 7(b) of the Model Stipulated Protective Order. However, the parties shall meet and confer as to whether to include "professional jury or trial consultants" in the category of people who may review such materials.

7

Defendants that they would be prejudiced in their ability to present a defense absent a review of those documents. *See generally Hsu*, 155 F.3d at 189 (discussing production of confidential documents in prosecution for attempt to and conspiracy to violation of section 18 U.S.C. sections 1832(a)(4) and 1832(a)(5)).[5]

When it sought leave to file its Section 1835(b) submission, The Chemours Company asked that the Court treat "non-legal arguments" in that submission and paragraphs 5-9 of the declaration in support of the submission as "Attorney's Eyes Only." The Court requires The Chemours Company to identify by page and line the "non-legal" arguments it seeks to designate as attorney's eyes only. As to the declaration, although the Court concludes that designating paragraph 5 as attorney's eyes only would be appropriate, it finds the request to designate the remaining paragraphs as attorney's eyes only, in their entirety, overbroad, and denies that request. The Chemours Company may submit a renewed request that identifies by page and line a more limited subset of statements in that declaration that it contends should be designated attorney's eyes only.

Finally, when the Court granted The Chemours Company's motion to file that submission under seal, it noted the submission included information that does not appear to contain confidential information and referred to matters of public record.[6] The Court reserved the right to issue an Order to Show Cause directing The Chemours Company to show cause why it should not be required to file a redacted version of the submission and the declaration in the public record. The Court concludes that an Order to Show Cause is warranted.

Accordingly, by July 8, 2019, The Chemours Company shall identify by page and line those provisions of the submission and the declaration that it believes must be treated as attorney's eyes only, and it shall identify by page and line any portions of those submissions that it believes

---

[5] The Court would consider an *ex parte* under seal submission from the Defendants on that issue so long as the submission showed it was necessary to preserve any attorney-client privilege and defense strategy.

[6] By way of example only, page 1 lines 1-24, and page 2, lines 1-10 of the submission and paragraphs 1 through 3 of the declaration.

8

contains non-public information that must be maintained under seal.

**C.      Disclosure of Confidential Materials to Wang Rongkai.**

Finally, the Government argues that Judge Cousins' ruling regarding Mr. Wang must be overturned. Mr. Wang is a former employee of Defendant Pangang Group Titanium Industry Company ("PGTIC"). The Pangang Defendants contend that he now works for a subsidiary controlled by PGTIC and, for that reason, should be treated as a Pangang Defendant employee and subject to the disclosure provisions set forth in Section 6.a of the SFPO.

Under Section 6.a, the Government may lodge an objection to disclosing Confidential Materials to "employees of the Pangang Defendants." (SFPO, ¶¶ 6.a, 6.e.) The SFPO also provides that "[u]pon defense counsel providing the government notice (pursuant to section 6 of this protective order) that they intend to review Confidential Materials with employees of the Pangang Defendants in [specified countries] – and absent any *sustained* objection by the government to such disclosure – the government will, within seven days, provide safe passage letters for those employees…." (*Id.*, ¶ 7.b (emphasis added).)

At the hearing, the Government accepted the Defendant's representation that the term "employee" should be construed to include former employees of a Defendant and current employees of a direct subsidiary. It is undisputed that Mr. Wang falls into those categories. The Government's initial position was that Mr. Wang could review confidential materials if he reviewed them in the United States and subjected himself to a deposition. However, in its reply brief and at the hearing, it now objects to Mr. Wang reviewing Confidential Materials under any conditions. According to the Government, he was an integral part of the alleged conspiracy and, although not charged in the case, may be criminally culpable. It also contends that, given the nature of the charges, it is not necessary for Mr. Wang to review the documents. Defendants conceded they do not require Mr. Wang to review the Confidential Materials in order to provide technical expertise. However, they argue that Mr. Wang should be permitted to review Confidential Materials so that Defendants could present testimony as to whether the Defendants reviewed, received, or had any knowledge about a particular document alleged to be or contain

9

trade secrets.

Because the Government's position has changed since it argued this issue before Judge Cousins, the Court cannot say Judge Cousins' ruling was contrary to law or clearly erroneous.[7] Having considered the Government's current position and Defendants' response thereto in the first instance, the Court concludes that Mr. Wang shall not be permitted to review Confidential Materials at this time. As this case gets closer to trial, and after the Government has identified the exhibits it intends to introduce, the Court would consider revisiting this ruling upon a showing from Defendants that they would be prejudiced in their ability to present a defense absent his review of particular documents.[8]

**IT IS SO ORDERED.**

Dated: June 28, 2019

_____
JEFFREY S. WHITE
United States District Judge

---

[7] The Court agrees with Defendants that the requirements the Government initially attempted to impose on Wang Rongkai are not supported by the terms of the Stipulated Protective Order. In addition, although Section 1835(a) emphasizes the need to protect trade secrets, it also requires that any such efforts be consistent with the Federal Rules of Civil and Criminal Procedure. On this record, the Government has not demonstrated that conditioning review of Confidential Materials on submitting to a Rule 15 deposition would be consistent with those rules.

[8] The Court would consider an *ex parte* under seal submission from the Defendants on that issue so long as the submission showed it was necessary to preserve any attorney-client privilege and defense strategy.

10