QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John M. Potter (Bar Number 165843)
  johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Robert P. Feldman (Bar Number 69602)
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5069
Facsimile:    (650) 801-5100

  Alec A. Levy, *pro hac vice*
  aleclevy@quinnemanuel.com
1300 I Street N.W., Suite 900
Washington, D.C. 20005
Telephone:    (202) 538-8115
Facsimile:    (202) 538-8100

Attorneys for Defendants Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY, <br><br> Defendants. | CASE NO. 4:11-CR-0573-07-10 JSW <br><br> **PANGANG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT** <br><br> Date: August 13, 2019 <br> Time: 1:00 p.m. <br> Judge: Hon. Jeffrey S. White <br> Place: Courtroom 5, 2nd Floor |

# NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Defendants Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company (collectively, the "Pangang Defendants"), will and hereby do move the Court, on August 13, 2019, at 1:00 p.m., or as soon thereafter as counsel may be heard before the Honorable Jeffrey S. White, at the Oakland Courthouse, Courtroom 5, Second Floor, 1301 Clay Street, Oakland, California, 94612, to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the authorities cited therein, argument of counsel, and any other matter that may be submitted at or prior to the hearing.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Third Superseding Indictment alleges that the Pangang Defendants are "foreign instrumentalities" of the People's Republic of China ("PRC"). That allegation necessitates the dismissal of this case. First, under the Foreign Sovereign Immunities Act ("FSIA"), foreign states and their instrumentalities are immune "from the jurisdiction of the courts of the United States." Second, even if the Court had jurisdiction, the Indictment fails to state an offense. Consistent with principles of foreign sovereign immunity, 18 U.S.C. § 1831 does not criminalize the conduct of alleged foreign instrumentalities; it only prohibits the conduct of *others* who seek to illicitly benefit alleged foreign instrumentalities. To Defendants' knowledge, no foreign instrumentality has *ever* been prosecuted under this law.

The Indictment must be dismissed for these threshold legal reasons. Disputes involving foreign states and their alleged instrumentalities are matters of foreign affairs. They are resolved by the Executive and Legislative branches -- not by criminal prosecutions in federal courts.

## BACKGROUND

As the Court is aware, this case is complex and has a lengthy procedural history. But for the purposes of this motion, there are only a few allegations that matter. The Indictment alleges two offenses under 18 U.S.C. § 1831: Conspiracy to Commit Economic Espionage and Attempted Economic Espionage. The Indictment further alleges these offenses were committed to benefit the PRC and its alleged "instrumentalities," namely, the Pangang Defendants. (*See* Dkt. No. 971, Indictment, at ¶¶ 17(c), 56(c).) The Pangang Defendants are allegedly "PRC companies," "companies controlled by the PRC government," and "state-owned enterprises." (*Id.* at ¶¶ 1, 2, 4, 20.)

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) permits "any defense which is capable of determination without the trial of the general issue to be raised by pretrial motion." *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (internal quotation omitted). Rule 12(b)(2) states that "[a] motion that the court lacks jurisdiction may be made at any

time while the case is pending," and Rule 12(b)(3) permits a pretrial motion to dismiss for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(2), (b)(3). An indictment fails to state an offense if it does not allege facts which, if proven, would constitute a violation of "the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). "In ruling on a pretrial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

## ARGUMENT

The allegation that the Pangang Defendants are foreign instrumentalities is a fatal defect in the Indictment for two distinct but related reasons. First, foreign instrumentalities are immune from criminal prosecution in the United States. Second, Section 1831 does not criminalize the conduct of alleged foreign instrumentalities. Accordingly, the Court lacks jurisdiction *and* the Indictment fails to state an offense.

### I. Courts Lack Jurisdiction Over Criminal Prosecutions Against Foreign States and their Instrumentalities

The Indictment must be dismissed for lack of jurisdiction because foreign states and their instrumentalities are immune from criminal prosecutions in United States courts. The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Section 1604 of the FSIA states that a "foreign state shall be immune from the jurisdiction of the courts of the United States." 28 U.S.C. § 1604 (subject to exceptions not relevant here). The FSIA "does not limit this grant of immunity to civil cases." *Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 820 (6th Cir. 2002), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). Accordingly, "the FSIA grants immunity to foreign sovereigns from criminal prosecution, absent an international agreement stating otherwise." *Id.*[1] Pursuant to Section 1604, China is immune from criminal prosecution in

---

[1] Defendants are aware of no relevant international agreement that would allow the criminal prosecution in this case, nor has any such agreement been invoked in this case.

United States courts. That is why, despite the allegation of China's involvement in the conduct alleged in this case, China is not a defendant.

Even if the government were to contend that federal common law applies, the result would be the same. Under common law, foreign states are "absolutely immune" from the jurisdiction of United States courts. *See Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1126 (9th Cir. 2010); *see also Samantar*, 560 U.S. at 324 ("Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law.").

The exact same immunity applies to "instrumentalities" of foreign governments such as China. The FSIA defines "foreign states" which are entitled to immunity to include any "instrumentality of [the] foreign state." 28 U.S.C. § 1603(a). For the same reason China cannot be a defendant in a criminal action in the United States, neither can its alleged instrumentalities, the Pangang Defendants.

The "sole basis" for exercising jurisdiction over a foreign state despite this general rule of immunity is the jurisdiction-granting provision of the FSIA, Section 1330(a). *Amerada Hess*, 488 U.S. at 434; *see also* 28 U.S.C. § 1330 ("Actions Against Foreign |States"). But that section is not available as a source of jurisdiction in this or any other criminal case, because it only grants jurisdiction over *civil* actions.[2] *See* § 1330(a) (granting "original jurisdictional … of any nonjury *civil action* against a foreign state … as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of [the FSIA] or under any applicable international agreement." ) (emphasis added). Section 1330(a)'s "reference to 'civil actions' does not suggest . . . that states or their agencies or instrumentalities can be subject to criminal proceedings in U.S. Courts; nothing in the text or legislative history supports

---

[2] And even in civil cases, jurisdiction only attaches if certain narrow exceptions to sovereign immunity apply. Thus, even if the Court were able to exercise jurisdiction over a criminal case against an alleged foreign instrumentality pursuant to Section 1330(a) (despite the express language of the statute forbidding it) it would still be incumbent on the government to demonstrate that an exception to foreign sovereign immunity applied under the FSIA. The government would bear the burden to show that an exception applied. It has never done so, because no exception applies.

such a conclusion." Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* 1 n.2 (2018).

In other words, the *sole* basis for exercising jurisdiction over an action against a foreign instrumentality despite its sovereign immunity is categorically unavailable in this criminal prosecution. Accordingly, this case must be dismissed for lack of jurisdiction.[3] *See Gould, Inc. v. Mitsui Min. & Smelting Co.*, 750 F. Supp. 838, 844 (N.D. Ohio 1990) ("since the FSIA is the only method of obtaining jurisdiction over foreign sovereigns, and § 1330(a) refers only to civil, and not criminal, actions there is no criminal jurisdiction over Pechiney/Trefimetaux, an agency of the French government.").[4]

## II. Section 1831 Does Not Criminalize the Conduct of Foreign Instrumentalities

Even if the Court had jurisdiction, the Indictment must be dismissed because it fails to state an offense against the Pangang Defendants. The Indictment is premised on a fundamental misunderstanding of Section 1831. Section 1831 penalizes certain actions taken while "intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent." The foreign governments, instrumentalities, and agents in this formulation are not themselves potential defendants. Their involvement is not prohibited. Instead, they are referenced solely to define the requisite criminal scienter element for other parties. In other words, the law

---

[3] This lack of jurisdiction explains why, for example, the United States does not bring criminal charges against the Organization of the Petroleum Exporting Countries ("OPEC") for anti-trust violations, nor charges against the countless other acts of foreign instrumentalities across the globe that might violate U.S. criminal law.

[4] The absence of jurisdiction here of course does not mean that the United States is powerless to act against foreign states and their instrumentalities should they engage in wrongdoing: the Executive and Legislative branches manage foreign affairs and determine how to respond to alleged misconduct of foreign nations by, for example, diplomacy, sanctions, tariffs, or even military action. Those political branches are the appropriate ones to craft a uniform and well-informed response on behalf of the United States. *See Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948) (foreign policy is "wholly confided by our Constitution to the political departments of the government, Executive and Legislative"); *Alperin v. Vatican Bank*, 410 F.3d 532, 560 (9th Cir. 2005) ("we are mindful of the Supreme Court's admonition that it is up to the political branches to come to terms with . . . 'delicate [and] complex' foreign policy decisions") (quoting *Chicago & S. Air Lines*, 333 U.S. at 111).

prohibits *others* (in this context, Walter Liew, Robert Maegerle and USA PTI) from taking action to benefit alleged foreign sovereign elements (e.g., the Pangang Defendants). It does not prohibit the conduct of the foreign governments, instrumentalities, or agents themselves.[5]

It is because the law works this way that Defendants are unable to identify a *single* case, from *any* jurisdiction, where a court has *ever* applied Section 1831 to the alleged "foreign instrumentality" involved. This is, of course, consistent with the principles of foreign sovereign immunity articulated above. Accordingly, even if there were jurisdiction here, the Indictment would have to be dismissed because Section 1831 does not prohibit the alleged involvement of the Pangang Defendants in this case.

---

[5] The full text of Section 1831 reads:

**(a) In general.**--Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly--

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret;

(3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in any of paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined not more than $5,000,000 or imprisoned not more than 15 years, or both.

**(b) Organizations.**--Any organization that commits any offense described in subsection (a) shall be fined not more than the greater of $10,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided.

# CONCLUSION

For the foregoing reasons, the Pangang Defendants respectfully submit that the Indictment must be dismissed. The specific allegations and entire premise of the Indictment is that the Pangang Defendants are foreign instrumentalities of the PRC. Foreign instrumentalities are not subject to criminal prosecution in United States courts and, even if they were, they do not fall within the scope of the particular criminal statute at issue.

Dated: July 9, 2019

/s/ *John Mark Potter*
JOHN MARK POTTER
ROBERT P. FELDMAN
ALEC ASHER LEVY

Quinn Emanuel Urquhart & Sullivan, LLP

*Attorneys for Pangang Defendants*