1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CABN 165823)
   COLIN C. SAMPSON (CABN 249784)
5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Tel: (415) 436-7200
        Fax: (415) 436-7234
7       John.Hemann@usdoj.gov

8  JENNIFER KENNEDY GELLIE (DCBN 1020976)
   Trial Attorney, National Security Division
9       950 Pennsylvania Ave., NW
        Washington, DC 20530
10      Tel: (202) 233-0785
11      Fax: (202) 233-2146
        Jennifer.Gellie@usdoj.gov
12

13 Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 11-0573-JSW |
| Plaintiff, | UNITED STATES' RESPONSE IN OPPOSITION TO THE PANGANG DEFENDANTS' MOTION TO DISMISS [DKT 1193] |
| v. | |
| PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY, LTD., | Date: August 13, 2019<br>Time: 1:00 p.m.<br>Location: Courtroom 5, 2nd Floor |
| Defendants. | |

OPPOSITION TO MOTION TO DISMISS
CR 11-0573 JSW

TABLE OF CONTENTS

I. CRIMINAL JURISDICTION EXISTS UNDER 18 U.S.C. § 3231. ............................................1
II. THE FSIA DOES NOT IMMUNIZE THE PANGANG DEFENDANTS. ...................................2
    A. The FSIA Limits Only Certain Civil Actions. ...............................................................2
        1. Background. ..........................................................................................................2
        2. Text. ......................................................................................................................3
        3. Courts have found FSIA immunity inapplicable in criminal cases. .....................4
    B. Alternatively, if the FSIA Applies, So Do Its Exceptions. ...........................................7
        1. The Commercial-Activity Exception. ..................................................................8
        2. Waiver. ................................................................................................................10
III. THE ECONOMIC ESPIONAGE ACT APPLIES TO "WHOEVER." ........................................11
IV. CONCLUSION ............................................................................................................................12

| | TABLE OF AUTHORITIES |
|---|---|
| 1 | |
| 2 | Federal Cases |
| 3 | |
| 4 | *Adler v. Federal Republic of Nigeria*, 219 F.3d 869 (9th Cir. 2000) ................................................. 9 |
| 5 | *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ............................................ 5 |
| 6 | *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339 (D.C. Cir. 2018) ......................... 7 |
| 7 | *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166 (9th Cir. 2010) ................................ 7 |
| 8 | *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 750 F. Supp. 838 (N.D. Ohio 1990) .................................... 5 |
| 9 | *Houston v. Murmansk Shipping Co.*, 667 F.2d 1151 (4th Cir. 1982) ................................................... 3 |
| 10 | *Illinois v. Lidster*, 540 U.S. 419 (2004) ............................................................................... 5 |
| 11 | *In re Grand Jury Investigation of Shipping Indus.*, 186 F. Supp. 298 (D.D.C. 1960) ................................ 6 |
| 12 | *In re Grand Jury Proceeding Related To M/V Deltuva*, 752 F. Supp. 2d 173 (D.P.R. 2010) ................ 4, 6 |
| 13 | *In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019) ............................................................. *passim* |
| 14 | *In re Investigation of World Arrangements*, 13 F.R.D. 280 (D.D.C. 1952) ........................................... 6 |
| 15 | *In re Sealed Case*, 825 F.2d 494 (D.C. Cir. 1987) ...................................................................... 6 |
| 16 | *Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002) ................................................. 4, 5 |
| 17 | *MOL, Inc. v. Peoples Republic of Bangl.*, 736 F.2d 1326 (9th Cir. 1984) ............................................ 9 |
| 18 | *Park v. Shin*, 313 F.3d 1138 (9th Cir. 2002) ............................................................................ 9 |
| 19 | *Pasquantino v. United States*, 544 U.S. 349 (2005) ..................................................................... 6 |
| 20 | *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) ..................................................... 4 |
| 21 | *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ......................................................... 9 |
| 22 | *Republic of Austria v. Altmann*, 541 U.S. 677 (2004) .................................................................. 4 |
| 23 | *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009) ........................................................................ 2 |
| 24 | *Republic of Mexico v. Hoffman*, 324 U.S. 30 (1945) .................................................................... 2 |
| 25 | *Samantar v. Yousuf*, 560 U.S. 305 (2010) ............................................................................... *passim* |
| 26 | *Southway v. Central Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999) ............................................. 4, 7 |
| 27 | *Sun v. Taiwan*, 201 F.3d 1105 (9th Cir. 2000) .......................................................................... 9 |
| 28 | |

| | | |
|---|---|---|
| 1 | *United States v. Aerlinte Eireann,* No. 89-CR-647, Dkt. No. 12 (S.D. Fla. Oct. 6, 1989) | 6 |
| 2 | *United States v. Campa*, 529 F.3d 980 (11th Cir. 2008) | 8, 10 |
| 3 | *United States v. Hendron*, 813 F. Supp. 973 (E.D.N.Y. 1993) | 4 |
| 4 | *United States v. Ho,* 3:16-CR-46-TAV-HBG-1, 2016 WL 5875005 (E.D. Tenn. Oct. 7, 2016) | 6 |
| 5 | *United States v. Jasin,* No. CRIM. A. 91-00602-08, 1993 WL 259436 (E.D. Pa. July 7, 1993*)* | 6 |
| 6 | *United States v. Noriega*, 117 F.3d 1206 (11th Cir. 1997) | 4 |
| 7 | *United States v. Sinovel Wind Grp. Co.*, 794 F.3d 787 (7th Cir. 2015) | 6 |
| 8 | *United States v. Statoil, ASA, No.*, 06-CR-960 (S.D.N.Y. Oct. 13, 2006) | 6 |
| 9 | *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) | 2, 3, 4 |

Federal Statutes

| | | |
|---|---|---|
| 18 U.S.C. § 1831 | | 1, 10 |
| 18 U.S.C. § 3231 | | 1, 2, 9 |
| 28 U.S.C. § 1330 | | 1, 9 |
| 28 U.S.C. § 1330(a) | | 1, 2, 3 |
| 28 U.S.C. § 1331 | | 1 |
| 28 U.S.C. § 1441(d) | | 3 |
| 28 U.S.C. § 1604 | | 7 |
| 28 U.S.C. § 1605(a)(2) | | 8 |

Federal Rules

Federal Rule of Criminal Procedure 4 ................................................................................................ 10

OPPOSITION TO MOTION TO DISMISS
CR 11-0573 JSW

Defendants Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company, Ltd. (collectively the "Pangang Defendants") appear to concede in their Motion to Dismiss the Indictment ("Mot.") [Dkt. No. 1193] that they are indeed controlled by or a part of the government of the People's Republic of China ("PRC"). As an instrumentality of the PRC, the Pangang Defendants argue that the statute governing jurisdiction over foreign governments in civil cases divests this Court of jurisdiction in this criminal case.

The Court should deny the Pangang Defendants' motion. The Court has jurisdiction under 18 U.S.C. § 3231. The Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 ("FSIA") does not divest the Court of jurisdiction. In fact, the FSIA does not apply in criminal cases. But even if the FSIA could apply in some criminal cases, it does not apply here because the Pangang Defendants' charged crimes fall within the FSIA exception for commercial activity.

## I.   CRIMINAL JURISDICTION EXISTS UNDER 18 U.S.C. § 3231.

This Court has subject matter jurisdiction here under 18 U.S.C. § 3231—a statute the Pangang Defendants fail to cite. It grants federal district courts original jurisdiction over "all offenses against the laws of the United States." "It is hard to imagine a clearer textual grant of subject-matter jurisdiction." *In re Grand Jury Subpoena*, 912 F.3d 623, 628 (D.C. Cir. 2019) (per curiam). "And nothing" in the text of the Foreign Sovereign Immunities Act (FSIA) "expressly displaces section 3231's jurisdictional grant." *Id.* Because the Third Superseding Indictment ("Indictment") [Dkt. No. 971] alleges offenses against the laws of the United States—specifically, the Economic Espionage Act, 18 U.S.C. § 1831—this Court has jurisdiction.

Ignoring the criminal jurisdictional statute, the Pangang Defendants rely instead on a civil subject matter jurisdiction statute. 28 U.S.C. § 1330 provides in relevant part that a district court "shall have original jurisdiction without regard to amount in controversy of any *nonjury civil action* against a foreign state as defined in section 1603(a) of" Title 28 "as to any claim for relief in personal with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a) (emphasis added). Chapter 85 of Title 28, where Section 1330 is codified, governs jurisdiction for civil actions, but makes no reference to

jurisdiction in criminal cases—referring only and repeatedly to jurisdiction over "civil actions." 28 U.S.C. § 1331; *see id.* § 1332(a) (diversity of citizenship, amount in question); *id.* § 1336 (Surface Transportation Board's orders); *id.* § 1337 (antitrust); *id.* § 1338 (patents); *id.* § 1339 (postal matters); *id.* § 1340 (internal revenue); *id.* § 1345 (United States as plaintiff). Because this is a criminal proceeding, 28 U.S.C. § 1330(a) does not divest this Court of the jurisdiction granted by 18 U.S.C. § 3231. *See In re Grand Jury Subpoena*, 912 F.3d at 628–31.

## II. THE FSIA DOES NOT IMMUNIZE THE PANGANG DEFENDANTS.

With the question of subject matter jurisdiction resolved, the next question is whether the FSIA immunizes the Pangang Defendants. It does not. First, FSIA immunity categorically does not apply in criminal cases. Second, even if the FSIA did apply in some criminal cases, it does not immunize the Pangang Defendants, because their actions fall within at least one of the FSIA's exceptions to immunity.

### A. The FSIA Limits Only Certain Civil Actions.

#### *1. Background.*

Even in the civil context, "[f]oreign sovereign immunity" is not an inherent restriction on judicial authority but rather "a matter of grace and comity" shown to foreign sovereigns. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983). Historically, the grant or denial of immunity was "the case-by-case prerogative of the Executive Branch." *Republic of Iraq v. Beaty*, 556 U.S. 848, 857 (2009); *see Samantar v. Yousuf*, 560 U.S. 305, 311–13, 320 (2010). That rule flowed from the Executive Branch's constitutional primacy in foreign affairs. *See Republic of Mexico v. Hoffman*, 324 U.S. 30, 34–36 (1945). Until 1952, if a foreign state sought immunity from a private civil action, the Executive generally requested a court to recognize immunity. *Samantar*, 560 U.S. at 311–312.

To address the "considerable uncertainty" faced by "private litigant[s]" due to inconsistent immunity determinations resulting from the Executive Branch having requests for immunity thrust upon it, Congress passed the FSIA in 1976. *See* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 9 (1976) (1976 House Report); *see also Verlinden*, 461 U.S. at 488; Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearing Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary on H.R. 11315, 94th Cong., 2d Sess. 24–27, 31–35, 60 (1976) (1976 Hearings).

The Executive Branch proposed the FSIA to govern "[h]ow, and under what circumstances, . . . private persons [can] maintain a lawsuit against a foreign government or against a commercial enterprise owned by a foreign government." 1976 Hearings 24 (State Department); *accord id.* at 29 (Justice Department). The House likewise noted the need for "comprehensive provisions" to "inform parties when they can have recourse to the courts to assert a legal claim against a foreign state," 1976 House Report 7, and repeatedly referred to "plaintiffs," "suit[s]," "litigants," and "liability," *id.* at 6–8, 12—all terms that suggest civil actions.

        2.     *Text.*

Consistent with Congress's purpose, the FSIA "contains a comprehensive set of legal standards governing claims of immunity in every *civil* action against a foreign state or its political subdivisions, agencies, or instrumentalities." *Verlinden*, 461 U.S. at 488 (emphasis added). The FSIA's text, read "as a whole," *Samantar*, 560 U.S. at 319, demonstrates that the FSIA is exclusively civil in its application. It creates immunity from jurisdiction only in the civil context.

The FSIA begins by conferring jurisdiction over "any nonjury civil action" in which a foreign state is not immune. 28 U.S.C. § 1330(a); *see Houston v. Murmansk Shipping Co.*, 667 F.2d 1151, 1154 (4th Cir. 1982) ("Congress apparently did not intend the phrase 'nonjury civil action' to define the district court's jurisdiction. Rather, it appears that the phrase was intended to serve as a shorthand way of ensuring that actions against foreign states would be tried without a jury").[1] The FSIA's procedures for asserting immunity or other jurisdictional limits likewise address civil actions. *See* 28 U.S.C. § 1441(d) (removal of "[a]ny civil action"); *id.* § 1608(d) (deadline for serving "an answer or other responsive pleading to the complaint"). The FSIA's other procedural provisions have a uniform focus on civil actions. *See, e.g.*, *id.* § 139(f) (venue); *id.* § 1608(a), (b) (service rules). And the statutory findings and declaration of purpose refer to the "rights of both foreign states and litigants," without reference to governments or prosecutors that conduct criminal proceedings." *Id.* § 1602. The exclusively civil focus of these provisions "supports the view of . . . the United States that the Act does not address" immunity from criminal prosecution.

---

[1] Perhaps because they read the statute's silence as precluding criminal jurisdiction entirely, the Pangang Defendants fail to address whether Section 1330 requires a bench trial here.

OPPOSITION TO MOTION TO DISMISS
CR 11-0573 JSW

3

*Samantar*, 560 U.S. at 319 (holding FSIA inapplicable to suits against foreign officials in their official capacity).

Thus, the FSIA's text, purpose, and legislative history confirm that its immunity provisions were designed to address only civil cases, not criminal cases. "[T]he "Act and its legislative history do not say a single word about possible criminal proceedings under the statute.'" *In re Grand Jury Subpoena*, 912 F.3d at 630 (quoting Joseph W. Dellapenna, *Suing Foreign Governments and Their Corporations* 37 (2d ed. 2003)). "To the contrary, the relevant reports and hearings suggest Congress was focused, laser-like, on the headaches born of private plaintiffs' civil actions against foreign states." *Id.* (citations omitted).

### *3. Courts have found FSIA immunity inapplicable in criminal cases.*

The Supreme Court has repeatedly described the FSIA as addressed to civil actions and has never suggested that it applies in the criminal context. *See Verlinden*, 461 U.S. at 488 (the FSIA provides "a comprehensive set of legal standards governing claims of immunity in every *civil* action against a foreign state or its political subdivisions, agencies, or instrumentalities" (emphasis added)); *Republic of Argentina v. NML Capital*, Ltd., 573 U.S. 134, 141 (2014) (same); *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (same).

The only courts that have addressed the question in the criminal context have held that FSIA immunity does not apply. *See In re Grand Jury Subpoena,* 912 F.3d at 629–33; *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997) ("[T]he FSIA addresses neither head-of-state immunity, nor foreign sovereign immunity in the criminal context."); *In re Grand Jury Proceeding Related To M/V Deltuva*, 752 F. Supp. 2d 173, 176–80 (D.P.R. 2010) (holding that "the FSIA does not govern criminal actions against foreign sovereigns, their agents or instrumentalities"); *United States v. Hendron*, 813 F. Supp. 973, 974–77 (E.D.N.Y. 1993) (FSIA "applies only to civil proceedings"). *See also Southway v. Central Bank of Nigeria*, 198 F.3d 1210, 1214 (10th Cir. 1999) (in civil case, holding that FSIA does not apply "in the criminal context" and rejecting the presumption "that Congress intended the FSIA to govern district court jurisdiction in criminal matters").

The Pangang Defendants ignore these cases. Instead, they rely (Mot. 2) on *Keller v. Central Bank of Nigeria*, 277 F.3d 811, 820 (6th Cir. 2002), *abrogated on other grounds by Samantar*, 560 U.S. 305.

In that civil case, the Sixth Circuit held that "the FSIA grants immunity to foreign sovereigns from criminal prosecution, absent an international agreement stating otherwise." *Id.* at 820. The Sixth Circuit ignored holdings from the Tenth and Eleventh Circuits and from the Eastern District of New York, relying instead on broad language from a Northern District of Ohio decision that found a civil RICO action barred by the FSIA on the ground that criminal jurisdiction was unavailable. *Id.* at 819–20. The Pangang Defendants rely on the same Ohio district court decision. Mot. 4 (citing *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 750 F. Supp. 838, 844 (N.D. Ohio 1990)).

But even *Keller* does not support the Pangang Defendant's claim that the FSIA categorically forecloses criminal jurisdiction. In *Keller*, "[n]o party drew the court's attention to the separate grant of subject-matter jurisdiction in [18 U.S.C. §] 3231, and the Sixth Circuit has yet to squarely address whether that provision can support jurisdiction consistent with the Act." *In re Grand Jury Subpoena*, 912 F.3d at 631 (concluding that if "confronted with the same issue we face here, the Sixth Circuit would be free to reach the same conclusion we do: that section 3231 can be invoked in conjunction with the [FSIA]"). Likewise, the Ohio district court decision, *Gould*, 750 F. Supp. 838, does not mention Section 3231.

Equally inapt is the Pangang Defendants' citation to *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989). Mot. 2, 3. "[E]ven the briefest peek under the hood of *Amerada Hess* shows that the Supreme Court's reasons for finding section 1330(a) to be the exclusive basis for jurisdiction in the civil context have no place in criminal matters." *In re Grand Jury Subpoena*, 912 F.3d at 629 (emphasis added). Nothing in *Amerada Hess* addresses, let alone forecloses, criminal jurisdiction. The general language cited by the Pangang Defendants does not support their claim. *See Illinois v. Lidster*, 540 U.S. 419, 424 (2004) ("[G]eneral language in judicial opinions" must be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering"). *Amerada Hess* has no bearing here. *See In re Grand Jury Subpoena*, 912 F.3d at 629.

The Pangang Defendants assert that U.S. courts can *never* have jurisdiction over foreign-state-owned businesses in criminal matters. Mot. 2–4. They cite no authority for that sweeping proposition, and none exists. No court has declined to exercise jurisdiction in a criminal prosecution or grand jury

proceeding on that basis. *See* Restatement (Fourth) of Foreign Relations Law of the United States § 451 reporter's note 4 (2018) ("To date, no reported court decision has dismissed an indictment or otherwise suppressed a criminal prosecution based on immunity conferred by the FSIA.").

No text or context suggests that Congress intended the FSIA to displace the federal government's traditional role in deciding whether to prosecute or subpoena a foreign-government-owned business. To the contrary, the government has taken those steps in appropriate cases for decades. *See, e.g.*, *United States v. Ho*, 3:16-CR-46-TAV-HBG-1, 2016 WL 5875005 (E.D. Tenn. Oct. 7, 2016); *M/V Deltuva*, 752 F. Supp. 2d at 176–80; *United States v. Jasin*, No. CRIM. A. 91-00602-08, 1993 WL 259436 (E.D. Pa. July 7, 1993); *In re Sealed Case*, 825 F.2d 494, 495 (D.C. Cir. 1987) (per curiam); *In re Grand Jury Investigation of Shipping Indus.*, 186 F. Supp. 298, 318–20 (D.D.C. 1960); *In re Investigation of World Arrangements*, 13 F.R.D. 280, 288–91 (D.D.C. 1952); *see also, e.g.*, *United States v. Statoil, ASA*, No. 06-CR-960 (S.D.N.Y. Oct. 13, 2006) (criminal information and deferred prosecution agreement against Norwegian state-owned oil company);[2] *United States v. Aerlinte Eireann*, No. 89-CR-647, Dkt. No. 12 (S.D. Fla. Oct. 6, 1989) (guilty plea of airline then owned by Ireland).[3]

Nor do the FSIA's text or context support such an extension. The federal government, not a private party, controls whether to initiate a federal criminal matter against a foreign-government-owned commercial enterprise. *See Pasquantino v. United States*, 544 U.S. 349, 369 (2005); *see also United States v. Sinovel Wind Grp. Co.*, 794 F.3d 787, 792 (7th Cir. 2015). Immunity in criminal matters "simply was not the particular problem to which Congress was responding." *Samantar*, 560 U.S. at 323 (discussing officials).

In short, the Pangang Defendants ask this Court to rewrite the FSIA. But a court of law "has no business attempting to define the scope of foreign sovereign immunity in the first instance"—as the

---

[2] https://www.justice.gov/criminal-fraud/case/united-states-v-statoilasa-court-docket-number-06-cr-960.

[3] Although the district court in *World Arrangements* ultimately quashed the subpoena and the district court in *Shipping Industry* reserved judgment on the state-owned shipping company's immunity, both cases are examples of the Executive Branch's longstanding position that state-owned enterprises are not immune from criminal process. Those courts did not automatically dismiss the actions on the ground that criminal matters can never proceed against state-owned corporations. Rather, those courts analyzed whether the state-owned entities were organs of the state performing sovereign functions—an analysis that would have been unnecessary if a showing that the companies' ownership by foreign a foreign state automatically entitled them to absolute immunity from criminal jurisdiction.

OPPOSITION TO MOTION TO DISMISS
CR 11-0573 JSW

6

Pangang Defendants ask this Court to do—because if Congress intended for foreign instrumentalities "to be immune from criminal indictment under the FSIA," Congress would need to "amend the FSIA to expressly so state." *Southway*, 198 F.3d at 1214–15 (noting that the "executive and legislative branches of our government are the principal players in the field of foreign relations and international comity, and consequently are much better equipped than a court of law to address the question of foreign sovereign immunity in the criminal context"). The Pangang Defendants' theory conflicts with case law, with the Executive's historical practice, and with the FSIA's text, structure, background, history, and purpose. This Court should thus reject the Pangang Defendants' broad pronouncements of immunity from prosecution in U.S. courts.

### B. Alternatively, if the FSIA Applies, So Do Its Exceptions.

The Pangang Defendants mention—in a parenthetical—that there are some "exceptions not relevant here," Mot. 2, but then fail to cite or discuss any of those exceptions. However, the Supreme Court made clear in *Samantar* that the FSIA is comprehensive only "if it applies." 560 U.S. at 314. Even if the FSIA did apply in some other criminal case, it does not create immunity here, because the charges against the Pangang Defendants concern commercial activity. *See* FSIA at §§ 1605(a)(2)–(6), (b). To read the Pangang Defendants' motion, one might think that the FSIA categorically provides that foreign instrumentalities cannot be subject to the jurisdiction of U.S. courts. It does not. Where an exception applies, there is no immunity under the FSIA.

If the FSIA applies here, so do its exceptions. *See In re Grand Jury Subpoena*, 912 F.3d at 629 (§ 1604 provides that "where the Act applies, an action must fall within one of the listed exceptions and says nothing about excluding criminal actions"); *id.* at 632 ("Congress's choice to extend the section 1605(a) exceptions to 'any case,' instead of just 'civil actions,' tells us that they are available in criminal proceedings."). The Pangang Defendants bear the burden of establishing that no exception applies. *See, e.g.*, *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339, 344–45 (D.C. Cir. 2018); *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1170 (9th Cir. 2010). The Pangang Defendants cannot—nor do they even attempt to—meet that burden.

### *1. The Commercial-Activity Exception.*

Even if the FSIA applied, its commercial-activity exception would clearly encompass the Pangang Defendants' activities here. *See In re Grand Jury Subpoena*, 912 F.3d at 627, 631–32 (concluding that even if 28 U.S.C. § 1604 immunity "applies to criminal proceedings," foreign-state-owned corporation still lacked immunity from grand jury subpoena because FSIA's commercial-activity exception applied); *cf. United States v. Campa*, 529 F.3d 980, 1001 (11th Cir. 2008) (declining to "address the availability of sovereign immunity as a defense, under the [FSIA], to the criminal jurisdiction of federal courts" because defendant "waived any sovereign immunity").

The FSIA's commercial-activity exception provides that foreign government instrumentalities are not immune if "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "Commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act . . . determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* § 1605(d).

The offenses alleged here arise from a contractual relationship between the Pangang Defendants, on one the hand, and Walter Liew and his company USAPTI, on the other. Specifically, the Indictment alleges $27 million in contracts with Walter Liew and USA Performance Technology, Inc. ("USAPTI"), both located in the United States. Indictment ¶¶ 20, 31. Moreover, the government has asserted in prior pleadings and will prove that many employees of the Pangang Defendants traveled to the United States to carry on the Pangang Defendants' business relationship with USAPTI, including signing contracts between the companies on which the Indictment is based in a ceremony at the Hilton Hotel in San Francisco. Another group of Pangang employees traveled to the United States to meet with potential suppliers, with another delegation scheduled to spend approximately a month in Alameda, California, in July 2011.

Indeed, most of the government's evidence against the Pangang Defendants was seized from the hotel rooms of the employees staying at the Alameda hotel and working with USAPTI. The foreign instrumentalities acted in a commercial capacity by contracting and conducting business in the United States.[4] At the very least, the first prong of the FSIA's commercial-activity exception applies.

In determining whether the FSIA's commercial-activity exception applies, "the FSIA directs courts to look to the nature of the activity in question, rather than to its purpose." *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002) (citation omitted). Illegal conduct can still be commercial in nature. *Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 875 (9th Cir. 2000). And "an activity is commercial unless it is one that only a sovereign state could perform." *Park*, 313 F.3d at 1145 (citing *MOL, Inc. v. Peoples Republic of Bangl.*, 736 F.2d 1326, 1329 (9th Cir. 1984)). Even actions that governments usually perform are subject to the exception if private parties can also perform them, such as contracts to purchase military supplies and the issuance of bonds to refinance a debt. *Id.* at 1145 ("Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor." (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614–15 (1992); *Sun v. Taiwan*, 201 F.3d 1105, 1107–08 (9th Cir. 2000))).

It would be difficult to conjure a more commercial activity than that alleged here. The Indictment accuses the Pangang Defendants of entering into contracts with a U.S. citizen and a U.S. company to purchase TiO2 technology for the purpose of manufacturing and selling TiO2 in the PRC. These actions satisfy the commercial-activity exception. When the commercial-activity exception is satisfied, criminal jurisdiction exists under 18 U.S.C. § 3231. As discussed, no text or legislative history supports the view that 28 U.S.C. § 1330—governing civil jurisdiction—wholly precludes criminal proceedings.

The D.C. Circuit recently rejected the same argument that the Pangang Defendants press here. In *In re Grand Jury Subpoena*, a foreign-state-owned corporation argued for a reading of the FSIA that "embraces absolute immunity in criminal cases" and would have meant that "a foreign-sovereign-owned, purely commercial enterprise operating within the United States could flagrantly violate criminal laws and

---

[4] E.I. du Pont de Nemours & Company ("DuPont"), the victim and owner of the titanium dioxide ("TiO2") trade secrets that the Pangang Defendants are alleged to have conspired and attempted to steal through USAPTI and through hacking, is located in the United States.

the U.S. government would be powerless to respond save through diplomatic pressure." 912 F.3d at 629–30. The D.C. Circuit "doubt[ed] very much that Congress so dramatically gutted the government's crime-fighting toolkit." *Id.* The D.C. Circuit held that it did not need to decide categorically whether the FSIA could ever extend to the criminal context, because the commercial-activity exception applied in that case regardless. *Id.* at 632–33. So too here.

    2.  *Waiver.*

The Court should also find that the Pangang Defendants waived their FSIA immunity claim through their litigation conduct. *See Campa*, 529 F.3d at 1001 (rejecting as waived a challenge under FSIA made two years after initial appearance and where defendant "appeared before the court on numerous occasions [and] filed several motions").

The Pangang Defendants fought service for years without invoking the FSIA. Even after the Advisory Committee on Rules of Criminal Procedure ("Advisory Committee") rewrote Federal Rule of Criminal Procedure 4, the Pangang Defendants challenged this Court's finding that they had been properly served and petitioned the Ninth Circuit for mandamus relief. Yet they failed to assert immunity in the mandamus proceedings before the Ninth Circuit. More recently, they have sought criminal discovery of confidential DuPont trade secrets[5]—including the very ones they are charged with having conspired and attempted to steal. And the Pangang Defendants have allowed five of their employees to review these documents (and strenuously argued for review by an engineer involved in the underlying conspiracy, Wang Rongkai) outside of the United States.

Only after obtaining significant confidential discovery related to DuPont's trade secrets do the Pangang Defendants now seek dismissal of the charges. These tactics underscore the government's concern that the Pangang Defendants may be seeking to take every advantage that they may wring from the due-process protections embedded in our country's criminal discovery process while simultaneously trying to avoid defending this case on the merits at trial or suffering the consequences of conviction.

---

[5] The Chemours Company is the successor in interest and current holder of the TiO2 process and related trade secrets.

## III. THE ECONOMIC ESPIONAGE ACT APPLIES TO "WHOEVER."

The Pangang Defendants confine their alternative argument to two short paragraphs. They provide no authority that supports their argument that the Economic Espionage Act (EEA), 18 U.S.C. § 1831 *et seq.*, cannot apply to them as a foreign-government-controlled company. Their argument contorts the EEA's language and purpose, and depends on the Court buying their meritless FSIA arguments.

The first word of 18 U.S.C. § 1831, "whoever," applies to all that violate the statute. The EEA does not exclude the beneficiaries of the crimes that it proscribes—the foreign government instrumentalities. Yet under the Pangang Defendants' view, a foreign government may direct with impunity actions of companies that hurt trade secret holders and that benefit the foreign government. That outcome is precisely why Advisory Committee revised Federal Rule of Criminal Procedure 4: so that foreign companies would no longer be able to "conduct both real and virtual activities" in the United States while evading criminal prosecution for harm done to this country and its citizens. *See*, *e.g.*, United States' Opp. to Specially Appearing Defs' Third Mot. to Quash, and Reply in Support of United States' Mot. for Sanctions, at 1, 3–4 (discussing and citing to rulemaking record) [Dkt. 1015]. Not only was the Advisory Committee concerned about the threat of foreign corporations committing crimes generally, it specifically sought to address the charged conduct of the Pangang Defendants. *See, e.g.*, Advisory Committee Minutes, March 16–17, 2015, at 11 (Judge Lawson noting that the Pangang prosecution "demonstrate[d] the necessity for the amendment. Without it, foreign entities [could] violate U.S. law with impunity") [Dkt. 1021-1].

The Pangang Defendants' view would leave open to criminal liability in United States courts only those doing the foreign government's bidding, including its own employees such as Hou Shengdong and Dong Yingjie, while sparing the company itself. Although the Pangang Defendants assert that the United States is suffering from a "fundamental misunderstanding" of the EEA, Mot. 4, it is the Pangang Defendants who ignore the statute's first word and attempt to edit themselves out of the statute's coverage. "Whoever" means whoever—even a state-owned entity of the People's Republic of China.

## IV. CONCLUSION

For the foregoing reason, the Court should deny the Pangang Defendants' motion to dismiss the Indictment and allow this case to proceed to trial on the merits.

Dated: July 23, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*/s/ Colin Sampson*
JOHN H. HEMANN
COLIN SAMPSON
Assistant United States Attorneys
JENNIFER KENNEDY GELLIE
Trial Attorney, National Security Division

OPPOSITION TO MOTION TO DISMISS
CR 11-0573 JSW

12