QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John M. Potter (Bar Number 165843)
  johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Robert P. Feldman (Bar Number 69602)
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5069
Facsimile:    (650) 801-5100

  Alec A. Levy, *pro hac vice*
  aleclevy@quinnemanuel.com
1300 I Street N.W., Suite 900
Washington, D.C. 20005
Telephone:    (202) 538-8115
Facsimile:    (202) 538-8100

Attorneys for Defendants Pangang Group Company, Ltd., Pangang Group Steel Vanadium & Titanium Company, Ltd., Pangang Group Titanium Industry Company, Ltd., and Pangang Group International Economic & Trading Company

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:11-CR-0573-07-10 JSW |
| Plaintiff, | **PANGANG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |
| v. | |
| PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY, | Date: August 13, 2019<br>Time: 1:00 p.m.<br>Judge: Hon. Jeffrey S. White<br>Place: Courtroom 5, 2nd Floor |
| Defendants. | |

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     Defendants Are Immune From The Court's Criminal Jurisdiction........................2

II.    The Government's Arguments Contravene the FSIA and Supreme Court Precedent ...........3

    A.    There is No Jurisdiction Over a Foreign Instrumentality Pursuant to 18 U.S.C. § 3231 ..................................................................................................4

    B.    FSIA Section 1604 Applies to Criminal Cases ................................................5

    C.    The FSIA Exceptions Do Not Apply Legally or Factually ...............................7

        1.    The Commercial Activity Exception Is Inapplicable ...............................7

        2.    The Waiver Exception Is Inapplicable ...................................................9

III.   The Indictment Does Not Allege An Offense Under The Economic Espionage Act ............9

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) .................................................................................................. 1, 2, 3, 4, 5

*Azar v. Allina Health Servs.*,
139 S. Ct. 1804 (2019) ............................................................................................................ 5

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions*,
323 F.3d 1198 (9th Cir. 2003) ................................................................................................ 9

*Breard v. Greene*,
523 U.S. 371 (1998) .............................................................................................................. 10

*Broidy Capital Mgmt., LLC v. Qatar*,
No. CV 18-2421-JFW(EX), 2018 WL 6074570 (C.D. Cal. Aug. 8, 2018) ............................ 8

*United States v. Campa*,
529 F.3d 980 (11th Cir. 2008) ................................................................................................ 9

*Cicippio v. Islamic Republic of Iran*,
30 F.3d 164 (D.C. Cir. 1994) .................................................................................................. 9

*Cicippio v. Islamic Republic of Iran*,
No. CIV. A. 92-2300, 1993 WL 730748 (D.D.C. Mar. 13, 1993) .......................................... 8

*United States v. Davis*,
139 S. Ct. 2319 (2019) .......................................................................................................... 10

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ............................................................................................................ 6

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ............................................................................................................ 5

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ............................................................................................................ 6

*Gomez v. Fresno Police Dep't*,
No. 116CV00526LJOSKO, 2016 WL 2939416 (E.D. Cal. May 20, 2016) ......................... 10

*Gould, Inc. v. Mitsui Min. & Smelting Co.*,
750 F. Supp. 838 (N.D. Ohio 1990) ....................................................................................... 3

*In re Grand Jury Subpoena*,
912 F.3d 623 (D.C. Cir. 2019) ..................................................................................... 2, 4, 6, 8

*In re Investigation of World Arrangements with Relation to Prod.,
Transp., Ref. & Distribution of Petroleum*,
13 F.R.D. 280 (D.D.C. 1952) .................................................................................................. 7

*Jam v. Int'l Fin. Corp.*,
 139 S. Ct. 759 (2019) .................................................................................................. 7

*Keller v. Cent. Bank of Nigeria*,
 277 F.3d 811 (6th Cir. 2002) ....................................................................................... 3

*Kingdomware Techs., Inc. v. United States*,
 136 S. Ct. 1969 (2016) ................................................................................................ 5

*Milner v. Dep't of Navy*,
 562 U.S. 562 (2011) .................................................................................................... 6

*OBB Personenverkehr AG v. Sachs*,
 136 S. Ct. 390 (2015) ............................................................................................... 5, 8

*Permanent Mission of India to the United Nations v. City of New York*,
 551 U.S. 193 (2007) .................................................................................................... 5

*Peterson v. Islamic Republic Of Iran*,
 627 F.3d 1117 (9th Cir. 2010) ..................................................................................... 7

*Republic of Argentina v. NML Capital, Ltd.*,
 573 U.S. 134 (2014) .................................................................................................... 6

*Republic of Argentina v. Weltover, Inc.*,
 504 U.S. 607 (1992) ................................................................................................ 6, 8

*Republic of Austria v. Altmann*,
 541 U.S. 677 (2004) ............................................................................................ 2, 4, 5

*Samantar v. Yousuf*,
 560 U.S. 305 (2010) ................................................................................................ 5, 6

*Saudi Arabia v. Nelson*,
 507 U.S. 349 (1993) ............................................................................................... 5, 8

*Siderman de Blake v. Republic of Argentina*,
 965 F.2d 699 (9th Cir. 1992) ....................................................................................... 9

*United States v. Singleton*,
 165 F.3d 1297 (10th Cir. 1999) ................................................................................. 10

*Sturdza v. United Arab Emirates*,
 281 F.3d 1287 (D.C. Cir. 2002) ................................................................................. 10

*Verlinden B.V. v. Cent. Bank of Nigeria*,
 461 U.S. 480 (1983) .................................................................................................... 6

*Will v. Michigan Dep't of State Police*,
 491 U.S. 58 (1989) .................................................................................................... 10

**Statutory Authorities**

28 U.S.C. § 1330(a) ............................................................................................. 1, 2, 4, 7

28 U.S.C. § 1604 .................................................................................................................. 2, 8

28 U.S.C. § 1605(a)(2) ..................................................................................................... 2, 7, 9

28 U.S.C. § 1608(d) ................................................................................................................ 5

28 U.S.C. § 2072(b) .............................................................................................................. 10

**Rules and Regulations**

Fed. R. Crim. P. 4 ................................................................................................................. 10

**Additional Authorities**

Federal Judicial Center, *The Foreign Sovereign Immunities Act:
  A Guide for Judges*, 1 n.2 (2013) ......................................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In this Country's 243-year history, no court has ever ruled that it had jurisdiction over the criminal prosecution of a foreign state or its alleged instrumentality. The Court should decline the government's invitation to be the first.

Both the Foreign Sovereign Immunities Act ("FSIA") and Supreme Court precedent make crystal clear in unqualified language that foreign states and their instrumentalities are immune from jurisdiction in criminal actions in United States courts. Section 1604 of the FSIA states that "*a foreign state shall be immune from the jurisdiction of the courts of the United States*" (subject to certain exceptions in civil cases, as codified in Section 1330(a)). In *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989), the Supreme Court held (and repeatedly reaffirmed) that the FSIA is "*the sole basis for obtaining jurisdiction over a foreign state in our courts*." These authorities have a plain and simple meaning: courts lack jurisdiction over criminal actions against alleged foreign instrumentalities.

The government seeks to sidestep these controlling authorities by casting about for other statutory provisions more to their liking. These arguments fail individually on their own terms. Collectively, at the core, these arguments share a common recurring flaw: the government is attempting to save its prosecution by adding new language and limitations into the FSIA and *Amerada Hess*. The Court should apply FSIA and *Amerada Hess* as written, not as revised by the government's opposition.

Finally, even if there was jurisdiction, this case would have to be dismissed for failure to state an offense. As discussed in Defendants' motion, Section 1831 does not criminalize the conduct of alleged "foreign instrumentalities." In response, the government argues that "the Economic Espionage Act applies to whoever," and "whoever means whoever." The government is right on both counts: "whoever" appears in the statute and, yes, whoever does mean whoever. However, under applicable case law, the term "whoever" *does not include foreign instrumentalities*. The government's tautology does not save the indictment, while the case law dooms it.

For these reasons and others described below, Defendants respectfully request that the Court dismiss this case.

## ARGUMENT

### I. Defendants Are Immune From The Court's Criminal Jurisdiction

The Court lacks jurisdiction over criminal actions against foreign instrumentalities (as alleged here) under the FSIA and Supreme Court holdings.

The FSIA grants immunity to foreign states and their instrumentalities from *all* jurisdiction. Section 1604 of the FSIA states that a foreign state, including its instrumentalities, "shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. By its express terms, the statute does not limit its application to civil cases. *See In re Grand Jury Subpoena*, 912 F.3d 623, 632 (D.C. Cir. 2019) (Congress "knows how to limit a provision to a 'civil action' when it wants to.").

FSIA Section 1330(a) grants jurisdiction over foreign states and instrumentalities in "civil" cases, not criminal ones. 28 U.S.C. § 1330(a). Because the FSIA is the "sole basis for obtaining jurisdiction" over foreign states and their instrumentalities, *Amerada Hess*, 488 U.S. at 434, and the FSIA only grants jurisdiction over civil actions, the Court has no jurisdiction over criminal cases. Section 1330(a)'s "reference to 'civil actions' does not suggest . . . that states or their agencies or instrumentalities can be subject to criminal proceedings in U.S. courts; nothing in the text or legislative history supports such a conclusion." Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* 1 n.2 (2013).

Consistent with the FSIA's broad grant of immunity, the Supreme Court has held that "the FSIA [is] the sole basis for obtaining jurisdiction over a foreign state in our courts." *Amerada Hess*, 488 U.S. at 434; *see also*, *e.g.*, *Republic of Austria v. Altmann,* 541 U.S. 677, 699 (2004) (same). This was not a passing comment by the Court. In *Amerada Hess* alone, the Court stated three times, without qualifier, that "the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court." 488 U.S. at 434, 439, 443. The Court emphasized that the FSIA is a "comprehensive[ ] . . . statutory scheme," and that Congress "deal[t] comprehensively with the

subject of foreign sovereign immunity in the FSIA." *Id.* at 437-38. At no point in the opinion did the Court limit these repeated holding to civil actions.

Following the passage of the FSIA and the Supreme Court's holding in *Amerada Hess*, multiple federal courts have held that the FSIA grants foreign states and their instrumentalities sovereign immunity in criminal cases. In *Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002), the Sixth Circuit held that "the FSIA grants immunity to foreign sovereigns from criminal prosecution." *Id.* at 820. The court reasoned that the FSIA "does not limit [its] grant of immunity to civil cases." *Id.* The court recognized that both *Amerada Hess* and the FSIA's legislative history make it clear that the Act is the sole and comprehensive mechanism for exercising jurisdiction in cases involving foreign states. *Id.* The court in *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F. Supp. 838 (N.D. Ohio 1990), held the same, adding that "in peacetime situations, this country does not bring criminal proceedings against other nations." *Id.* at 844.[1]

## II. The Government's Arguments Contravene the FSIA and Supreme Court Precedent

The Opposition makes a hodgepodge of arguments, but they are all unified by a common theme. In all of them, the government asks this Court to rewrite the FSIA and Supreme Court precedent. *First*, the government argues that the Court can exercise jurisdiction under 18 U.S.C. § 3231, while ignoring the Supreme Court's command that the FSIA is the "sole basis" for exercising jurisdiction over foreign instrumentalities. *Second*, the government seeks to cabin FSIA's grant of immunity to civil actions -- despite the fact that Section 1604 states that foreign states shall be immune from the "jurisdiction of the courts of the United States," without the government's limitation. And *third*, the government argues that two FSIA exceptions to immunity apply -- despite the fact that the FSIA expressly limits those exceptions to "civil actions" (and the exceptions are inapplicable in any event). We review these arguments.

---

[1] The government does not cite a single instance of a federal court ruling that it had jurisdiction of a foreign sovereign in a criminal prosecution. Moreover, the government lists only a handful of criminal matters throughout this Country's history that even involved -- however tangentially -- foreign states or their instrumentalities. Those cases generally arise in the context of subpoenas, not criminal prosecutions, without any analysis of sovereign immunity.

### A. There is No Jurisdiction Over a Foreign Instrumentality Pursuant to 18 U.S.C. § 3231

The government first contends that this Court can assert jurisdiction over alleged foreign instrumentalities under 18 U.S.C. § 3231. But this argument has been foreclosed by binding Supreme Court precedent. As noted above, the Court in *Amerada Hess* held that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state," and is "a comprehensive jurisdictional scheme." *Amerada Hess*, 488 U.S. at 434; *Altmann,* 541 U.S. at 699. Section 3231 is not part of the FSIA.

The government notes that FSIA Section 1330(a) (which provides civil jurisdiction) does not *itself* expressly state that it precludes jurisdiction under Section 3231. (Opp. at 1-2.) This argument misapprehends the statutory scheme. Section 1330(a) *itself* does not displace any other jurisdictional statute. Instead, the Supreme Court in *Amerada Hess* held that the FSIA *as a whole* displaced any other sources of jurisdiction. 488 U.S. at 437. The government's argument that "*Amerada Hess* has no bearing here," (Opp. at 5,) is untenable given that *Amerada Hess* is Supreme Court precedent on the source of jurisdiction available to federal courts in cases involving alleged foreign instrumentalities.

The government points out that the court in *In re Grand Jury Subpoena* held in a criminal subpoena matter that it could exercise jurisdiction over a foreign instrumentality under Section 3231. In that case, the court determined that when the Supreme Court in *Amerada Hess* said that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state," it actually meant to say "jurisdiction in *civil cases*." The court reached this conclusion after it took a "peek under the hood" of the high Court's opinion, to divine the Court's "chief[ ] concern[ ]." *In re Grand Jury Subpoena*, 912 F.3d at 629.

Respectfully, Defendants submit that no "peek under the hood" is necessary or appropriate when a Supreme Court holding is clear and unambiguous. This Court should not assume, as suggested by the government, that the Supreme Court did not understand the meaning of its own statement that the FSIA is the "sole basis for obtaining jurisdiction." That is especially so given that the *Amerada Hess* Court's holding was not an isolated comment -- either within that opinion,

or in subsequent ones. The Supreme Court has made the same pronouncements regarding the comprehensive scope of the FSIA's jurisdictional scheme again and again. *See OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 393 (2015); *Samantar*, 560 U.S. at 314; *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007); *Altmann*, 541 U.S. at 699; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The Supreme Court did not misunderstand the scope and import of its words in each of these cases.

### B. FSIA Section 1604 Applies to Criminal Cases

The government next argues that Section 1604 of the FSIA does not apply to criminal cases, on account of other statutory provisions and the FSIA's legislative history. But none of these collateral sources alter the clear language of the statute.

The government claims that surrounding statutory provisions create a criminal prosecution exception to Section 1604 immunity. (Opp. at 3-4.) Specifically, the government suggests that as the FSIA *expressly* applies to the litigation of civil cases, *e.g.*, 28 U.S.C. § 1608(d) (setting deadline to file answer), Section 1604's grant of immunity must also apply only to civil cases. That argument is wrong for two reasons. First, structural inferences cannot override or limit Section 1604's plain and unambiguous statutory text. *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) ("If the statutory language is unambiguous and the statutory scheme is coherent and consistent…the inquiry ceases.") (quotation marks, internal citations, and alterations omitted). Second, the existence of provisions in the FSIA regarding the litigation of civil cases is completely consistent with, and indeed *confirms*, the plain reading of the FSIA and *Amerada Hess* advanced by Defendants. There is simply no need for provisions in the FSIA regarding the litigation of criminal cases against foreign instrumentalities, *because courts do not have jurisdiction over such cases*.

The government also argues that the FSIA's legislative history somehow indicates that the statute applies only to civil cases. The government is legally and factually wrong. As a legal matter, it is well established that legislative history cannot limit or alter plain language of a statute. Legislative history "is not the law." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) (quoting *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1631 (2018)). Even judges "who

5

sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011)). "[T]he question is not what Congress would have wanted but what Congress enacted in the FSIA." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 145-46 (2014) (alterations omitted) (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992)). Section 1604 is clear as day: it grants immunity from the "jurisdiction of the courts of the United States," not just civil cases. Legislative history is therefore irrelevant as a matter of law.

Moreover, the legislative history does not help the government create jurisdiction. The government is unable to provide *any* legislative history that actually supports its imaginary exception to immunity for criminal actions. The government has failed to cite a single instance of legislative history indicating that the FSIA does not apply to criminal cases. The government simply maintains that because the legislative history is *silent* about criminal cases, the Court should rewrite the statute such that it does not apply to them. (Opp. at 2-3.) But even if Section 1604 was "ambiguous" -- which, again, it is not -- "silence in the legislative history cannot lend any clarity." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018).[2]

Finally, even if the FSIA did not apply, Defendants would still be immune under federal common law. *See, e.g.*, *Samantar,* 560 U.S. at 324 ("Even if a suit is not governed by the Act, it may still be barred by foreign sovereign immunity under the common law."); *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 497 (1983) ("every action against a foreign sovereign necessarily involves application of a body of substantive federal law."). "At common law, foreign

---

[2] While the parties' briefs correctly reflect that the courts are split on whether the FSIA applies to criminal cases, two observations are worth mention. First, the Ninth Circuit has not addressed this issue. Second, contrary to the government's characterization, the court in *In re Grand Jury*, did *not* hold Section 1604 was limited to civil actions. Instead, the court expressly stated it did not "weigh in" on "whether the [FSIA]—including section 1604's grant of immunity—applies to civil and criminal proceedings alike." 912 F.3d at 627. The court assumed that immunity *did* apply, and went on to consider whether any FSIA exceptions to immunity were applicable. On the facts of that case, the D.C. Circuit determined that the "commercial activity" exception applied. As discussed below, that marks a key distinction between *In re Grand Jury* and the present case, where the alleged conduct at issue is quintessentially sovereign in nature.

states were absolutely immune from suit and execution." *Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1126 (9th Cir. 2010); *see also Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 765 (2019) (same); *In re Investigation of World Arrangements with Relation to Prod., Transp., Ref. & Distribution of Petroleum*, 13 F.R.D. 280, 291 (D.D.C. 1952) (pre-FSIA case, cited by the government, quashing criminal subpoena against foreign instrumentality on sovereign immunity grounds because "[t]he consequences of a successful prosecution of [the company] here would in reality be to charge and find the British Government guilty of violating a law"). As a result, even if the FSIA did not apply, the end result would be the same: under federal common law the Republic of China and its alleged instrumentalities cannot be prosecuted in this courtroom.

### C. The FSIA Exceptions Do Not Apply Legally or Factually

The government's final argument is that if the FSIA "applies [in criminal cases], so do its exceptions." (Opp. at 7.) Like its other arguments, this one is also wrong. Whereas the FSIA's grant of immunity applies to the "jurisdiction of United States courts," *see* 28 U.S.C. § 1604, the exceptions apply only to civil actions, *see* 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury *civil action* against a foreign state . . . with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title") (emphasis added). Hence, FSIA's exceptions are not applicable to this criminal prosecution.

Moreover, even assuming arguendo the exceptions were applicable, the government has the burden of proving that an exception gives rise to jurisdiction. *See Peterson*, 627 F.3d at 1125 (explaining that the party invoking FSIA exceptions has the initial burden). The government has not, and cannot, satisfy that burden. It cannot do so because the claimed exceptions (commercial activity and waiver) are completely inconsistent with the government's allegations and the record in this case.

#### 1. *The Commercial Activity Exception Is Inapplicable*

The government asserts that the FSIA's "commercial activity" exception applies because this "action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).

7

PANGANG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT
Case No. 4:11-CR-0573-07-10 JSW

Unlike *In re Grand Jury,* the assertion of the commercial activity exception in this case is inconsistent with the government's theory of this case since day one. For this exception to apply, the case would have to be "based upon" a "commercial activity." An activity is "commercial" only if it is "the type of action[ ] by which a private party engages in trade and traffic or commerce." *Nelson*, 507 U.S. at 360-61 (quoting *Weltover*, 504 U.S. at 614). Activities that are "peculiar to sovereigns" are not commercial. *Id.* An action is "based upon" commercial activity only if the commercial activity "constitutes the 'gravamen' of the suit." *OBB*, 136 S. Ct. at 396 (quoting *Nelson*, 507 U.S. at 358). Activity "constitutes the gravamen of the suit" when it is the "act[] that actually injured" the alleged victim. *Id.* at 396.

Here, the "gravamen" of the case—as repeatedly emphasized by the government and as expressly stated in the charged offenses—is *espionage*. The government's new-found focus on contracts and business meetings bears no resemblance to the case it has been prosecuting for eight years. These alleged "commercial" elements have never been, and are not today, the gravamen of the government's case. It is the government's position that theses "commercial" activities were fronts for an underlying act of espionage directed by and for the benefit of the government of the sovereign nation of China. Espionage is not "commercial activity" by which a private party can engage in trade and traffic or commerce. It is a quintessentially sovereign act. *See Cicippio v. Islamic Republic of Iran*, No. CIV. A. 92-2300, 1993 WL 730748, at *2 & n.3 (D.D.C. Mar. 13, 1993), *aff'd*, 30 F.3d 164 (D.C. Cir. 1994).

It is of course insufficient to say, as the government now does, that the mere fact that the alleged foreign instrumentality entered into a contract to further the alleged espionage is sufficient to convert this case into one that is "commercial" in nature. The alleged espionage, not the contracts to commit it, is the gravamen of the suit. *See, e.g.*, *Broidy Capital Mgmt., LLC v. Qatar*, No. CV 18-2421-JFW(Ex), 2018 WL 6074570, at *9 (C.D. Cal. Aug. 8, 2018) (holding that contracting with hackers is not commercial activity because hacking is not a commercial act). If it were otherwise, "any act directed by a foreign government and carried out by irregular operatives in whatever circumstances could be thought commercial including isolated acts of assassination, extortion, blackmail, and kidnapping (for, perhaps, the sexual pleasure of a depraved monarch).

That can hardly be what Congress meant by commercial activity . . . ." *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 168 (D.C. Cir. 1994).

### 2. *The Waiver Exception Is Inapplicable*

The government next argues that Defendants waived the right to file a motion to dismiss the Indictment on the basis of foreign sovereign immunity by not filing it earlier. This argument warrants little discussion. The waiver exception, 28 U.S.C. § 1605(a)(1), "is narrowly construed." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1206 (9th Cir. 2003) (quoting *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 720 (9th Cir. 1992)). And even under the most expansive of constructions, there was no waiver. The Court ordered Defendants to file motions challenging the indictment by July 9, 2019. (Dkt. No. 1117, Criminal Minute Order.) Defendants filed their motion to dismiss on that date.[3] That is the end of the inquiry.

## III. The Indictment Does Not Allege An Offense Under The Economic Espionage Act

There is a separate reason the Indictment must be dismissed, and the government does nothing to rebut it. The Economic Espionage Act simply *does not* criminalize the conduct of alleged foreign instrumentalities. Indeed, no alleged foreign instrumentality has ever been charged under the statute until now. Section 1831 criminalizes actions taken while "intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent." The foreign entities define the scienter element of the law. The government's alternative interpretation of the law would effectively render the statute's core intent or knowledge element meaningless in an economic espionage case brought against a foreign instrumentality.

If there was any doubt that Section 1831 did not apply, the government's Opposition confirmed it. The government's sole response is that Section 1831 applies to "whoever," and

---

[3] This is accordingly nothing like the sole case cited by the government, where the defendant had "appeared before the court on numerous occasions [and] filed several motions, *which included motions to dismiss on other grounds*." *United States v. Campa*, 529 F.3d 980, 1001 (11th Cir. 2008) (emphasis added).

"whoever means whoever."[4]  That much is true.  However, the word "whoever" does not encompass instruments of foreign sovereign governments.  The word "whoever" refers only to "persons."  *See United States v. Singleton*, 165 F.3d 1297, 1300 (10th Cir. 1999) (en banc) ("construing 'whoever' to include the government is semantically anomalous").  And "the term 'person' does not include the sovereign," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).  Court after court has held that foreign sovereign entities are excluded from the reach of statutes applicable to "persons."  *See Breard v. Greene*, 523 U.S. 371, 378 (1998) ("Paraguay is not a 'person'"); *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) ("a foreign government is not a 'person'"); *Gomez v. Fresno Police Dep't*, No. 1:16-CV-00526-LJO-SKO, 2016 WL 2939416, at *5 (E.D. Cal. May 20, 2016) ("Neither Mexico nor Tijuana are a 'person'").  Hence, by its very terms ("whoever"), Section 1831 does not apply to alleged foreign instrumentalities (the Pangang Defendants).[5]

## CONCLUSION

For all the foregoing reasons, this case must be dismissed.

Dated:  July 30, 2019

/s/ John Mark Potter
JOHN MARK POTTER
ROBERT P. FELDMAN
ALEC ASHER LEVY

Quinn Emanuel Urquhart & Sullivan, LLP

*Attorneys for Pangang Defendants*

---

[4]  The government also suggests that recent amendments to Fed. R. Crim. P. 4 expand the scope of the Economic Espionage Act.  (Opp. at 11.)  Nothing about that rule has anything to do with this motion.  *See* 28 U.S.C. § 2072(b) (procedural rules may not "abridge, enlarge or modify any substantive right").

[5]  At an absolute minimum, Section 1831 is ambiguous as to its application to alleged foreign sovereign instrumentalities.  Under the rule of lenity, any "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor."  *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019).