UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>PANGANG GROUP COMPANY, LTD.;<br>PANGANG GROUP STEEL VANADIUM<br>& TITANIUM COMPANY, LTD.;<br>PANGANG GROUP TITANIUM<br>INDUSTRY COMPANY, LTD; and<br>PANGANG GROUP INTERNATIONAL<br>ECONOMIC & TRADING COMPANY,<br><br>  Defendants. | Case No.  11-cr-00573-JSC-7-10<br><br>**ORDER RE DEFENDANTS' MOTIONS<br>TO EXCLUDE EXPERT TESTIMONY**<br><br>Re: Dkt. Nos. 1410, 1411, 1413 |

The United States of America indicted the Pangang Defendants, a Chinese industrial company and its related subsidiaries, for conspiring and attempting to steal trade secrets related to titanium dioxide ("TiO2") production from E.I. DuPont de Nemours & Company ("DuPont") in violation of 18 U.S.C. §§ 1831(a)(4) and 1831(a)(5).  (Dkt. No. 971.)[1]  The Pangang Defendants move to exclude testimony from three proposed Government experts: 1) Mr. Gerry Colamarino, a consultant in the titanium dioxide industry and former procurement manager for DuPont; 2) Dr. Barry Naughton, a professor of economics at the School of Global Policy and Strategy at UC San Diego; and 3) Mr. Stephen Taylor, a prior DuPont engineer with over 30 years of experience.

Having considered the parties' submissions, and with the benefit of oral argument during the June 18, 2026 Pretrial Conference, the Court **GRANTS IN PART** Defendants' motions to exclude each of the three experts.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**DISCUSSION**

Defendants assert various bases for exclusion of the experts, predominantly under Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702. Defendants also rely, to varying degrees, on Federal Rules of Evidence 401, 402, 403, and 704(b). As to each expert, the Court only addresses those bases for exclusion sufficient to resolve the motions.

## I.    MOTION TO EXCLUDE MR. COLAMARINO

Mr. Colamarino is currently the managing director of a consulting business, TIPMC Consulting Inc., which consults on the TiO2 market globally. He previously worked for DuPont from 1987 through 2010, managing procurement and other business operations. (Dkt. No. 1425-2.) Subsequently, he worked in a similar capacity at Iluka Resources and Bloom Energy. (*Id.*) The Government has identified four topics on which Mr. Colamarino intends to testify: 1) TiO2 and the differences between the chloride and sulfate processes; 2) DuPont internal security measures and employee policies; 3) the cost to produce TiO2 and pricing in the market; 4) the development of the TiO2 industry in China. (Dkt. No. 1425 at 7-10.)

Defendants argue the Government failed to meet its Rule 16 expert disclosure requirements for Mr. Colamarino. Further, they assert Mr. Colamarino's proposed testimony does not satisfy Rule 702 and includes market data outside the relevant time period in this case. The Court discusses only the Rule 16 issue as Mr. Colamarino's testimony may be excluded on that ground alone.

### A.    Rule 16

Prior to 2022, Federal Rule of Criminal Procedure 16 required parties to disclose only a "written summary" of a proposed expert's opinions, their bases, and the witness's qualifications. *See, e.g.*, *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 837 (9th Cir. 2024) (citing the Rule 16 requirements prior to the 2022 amendments). Thereafter, Rule 16's disclosure requirements were amended. Now, Rule 16(a)(1)(G) (iii) requires the following expert disclosure:

> ***a complete statement of all opinions*** that the government will elicit from the witness in its case- in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

the bases and reasons for them;

the witness's qualifications, including a list of all publications authored in the previous 10 years; and

a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii) (emphasis added).  As the Advisory Committee Notes explain, the 2022 amendments were designed "[t]o ensure that parties receive adequate information about the content of the witness's testimony and potential impeachment . . . ."  Advisory Committee Notes on the 2022 Amendments to Fed. R. Crim P. 16.  Accordingly, Rule 16 now "requires a complete statement of all opinions the expert will provide, but does not require a verbatim recitation of the testimony the expert will give at trial."  *Id*.

Given the recency of the amendments, there is little Ninth Circuit law articulating how a "complete statement of all opinions the expert will provide" differs from the previous requirement of a "written summary."  That said, some district courts have noted the new requirements more closely resemble the standard for expert disclosures in civil matters.  *See, e.g.*, *United States v. Mrabet*, 703 F. Supp. 3d 442, 445 (S.D.N.Y. 2023) (directing the government to review civil expert disclosures "which typically consist of 20 or more pages of specific opinions and detailed statements of the reasons for those opinions and the methodologies employed").  Without deciding whether adherence to civil standards is required, the Court finds that even under a less exacting standard, the Government's disclosure did not comply with Rule 16.

The Government's initial disclosure for Mr. Colamarino was approximately one page long, discussing broadly the subjects of his testimony.  (Dkt. No. 1410-2 at 3-4.)  However, for nearly all of the identified subjects, the Government fails to identify—with any specificity—Mr. Colamarino's opinion, or the basis for the opinion.  For example, the disclosure states: "Mr. Colamarino will testify about difficulties and complexities in producing TiO2."  (*Id*. at 3.)  It does not identify those difficulties or complexities, nor does it state any basis for the analysis.  Similarly, the disclosure states Mr. Colamarino will opine:

A chloride TiO2 plant could not be built simply from plans. A team of experienced TiO2 engineers would still take years to get a new plant running and deal with engineering challenges in the production

United States District Court
Northern District of California

> line. A reputable global engineering firm would be needed to assist in the design and construction.

(*Id*. at 4.)  Yet the disclosure says nothing about how Mr. Colamarino came to this conclusion or the information it is based upon.  As to the 39 slides appended to the disclosure, the Government says nothing about the data used to inform any of the slides, or what opinion Mr. Colamarino will offer as to their specific content.  (*See* Dkt. No. 1410-3.)  This spare effort does not constitute a "complete statement of all opinions that the government will elicit from the witness," nor the "bases and reasons" for each opinion.  Fed. R. Crim. P. 16(a)(1)(G)(iii).

Though the Government provided an amended disclosure to Defendants, the effort is too little too late.  (*See* Dkt. No. 1425-1.)  The initial, deficient disclosure came on March 2, 2026, four months before trial.  This date was agreed upon by the parties and adopted by the Court.  (*See* Dkt Nos. 1377, 1378.)  On May 25, 2026, the Government provided its amended disclosure— nearly three months after the deadline and approximately five weeks before trial.  The amendments to Rule 16 make clear that the Court was required to set a disclosure deadline that was "sufficiently before trial to provide a fair opportunity for each party to meet the other side's expert evidence."  Advisory Committee Notes on the 2022 Amendments to Fed. R. Crim P. 16. The Rule fails to achieve this purpose if the Court permits such belated disclosure, especially when, as here, the Government offers no explanation, let alone a reasonable explanation, for its failure to comply with its disclosure obligations in the first instance.

Under Rule 16(d)(2), the Court possesses various options to remedy a Rule 16 violation. *See* Fed. R. Crim. P. 16(d)(2).  Here, the appropriate remedy is exclusion of Mr. Colamarino as an expert witness. *See, e.g.*, *United States v. Burgos-Lopez*, No. CR-25-01394-001-PHX-SHD, 2026 WL 74487, at *6 (D. Ariz. Jan. 9, 2026) (excluding an expert witness based on a deficient Rule 16 disclosure); *United States v. Daskal*, No. 21-CR-110 (NGG) (LB), 2023 WL 9424080, at *18 (E.D.N.Y. July 12, 2023) (permitting the expert witness to testify only as a lay witness based on a deficient Rule 16 disclosure).  That said, Mr. Colamarino may still testify as a percipient witness based on his time working at DuPont, particularly as it overlaps with the dates of the charged conspiracy.

United States District Court
Northern District of California

* * *

Accordingly, Defendants' motion to exclude Mr. Colamarino's expert testimony is **GRANTED**.  Mr. Colamarino shall not testify as an expert but may still be called to testify as a lay witness.

## II.    MOTION TO EXCLUDE DR. NAUGHTON

Dr. Naughton is an economist and the So Kwanlok Professor of Chinese and International Affairs at UC San Diego.  (Dkt. No. 1411-2.)  He has been an academic for over four decades and is the author of numerous books and academic publications on the Chinese economy.  (*Id*.)  The Government proposes Dr. Naughton to offer testimony on Chinese market regulation, the history of the Pangang entities in the development of the Chinese economy, and various Chinese government initiatives.

Defendants move to exclude Dr. Naughton's testimony in its entirety under Rule 702. Further, they move to exclude portions of his testimony for lack of relevance, for lack of expertise, and under Rules 704(b) and 403.  The Court addresses only the arguments under Rule 702, including the question of expertise, as well as the relevance of certain proposed testimony.

### A.    Rule 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A *Daubert* motion challenges whether the expert testimony's proponent has established, by a preponderance of the evidence, the testimony is admissible under Rule 702.  *See*

*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (noting the "preponderance of the evidence" standard applies to Rule 702).  The Court first considers whether the Government has shown by a preponderance of the evidence that Dr. Naughton is qualified to offer his proposed testimony.  Then, the Court turns to the reliability of his methods and conclusions.

### 1.    Expertise

"Rule 702 contemplates a *broad conception* of expert qualifications."  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (citation omitted) (emphasis in original).  "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  *Id*. (quoting Fed. R. Evid. 702 advisory committee's note).  Ordinarily, "[d]isputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony."  *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1231 (9th Cir. 1998) (citation omitted) (alterations in original).  In sum, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

The only dispute as to Dr. Naughton's expertise involves certain proposed testimony regarding the mining of titanium ore and its separation in the process of creating TiO2.  (*See* Dkt. No. 1411-2.)  Though the threshold for expert qualification is permissive, it does not allow an expert to testify as to a field in which he has no expertise.  Such is the case here.  Dr. Naughton is an economist who studies the Chinese economy.  He has no training in metallurgy, engineering, or any other relevant scientific discipline that would qualify him to opine on "separating titanium out from the magnetite ore."  (*Id*.)

On this basis, Defendants' motion to exclude is partially **GRANTED**.  Dr. Naughton shall not testify to such matters outside his field of expertise.  As for the remaining opinions proposed in his report, the Government has met its burden to show, by a preponderance of the evidence, that Dr. Naughton is sufficiently qualified.

### 2.    Reliability

Under Rule 702, expert testimony "is reliable if the knowledge underlying it has a reliable

United States District Court
Northern District of California

basis in the knowledge and experience of the relevant discipline." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Typically, a party seeking admission of an expert can demonstrate reliability by "[e]stablishing that an expert's proffered testimony grows out of pre-litigation research or that the expert's research has been subjected to peer review . . . ." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). If such evidence is unavailable, "the experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Id*. at 1319. Ultimately, "[t]he focus of the reliability inquiry is on the principles and methodology an expert uses in forming her opinions rather than the expert's conclusions. But in conducting the reliability analysis, the Court must also consider whether, for a given conclusion, 'there is simply too great an analytical gap between the data and the opinion proffered.'" *In re Roundup Prods. Liab. Litig*., 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

"The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969-70. Therefore, the Court must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id*. at 969. Lastly, "there is no presumption in favor of admission," under Rule 702, and a party seeking admission of expert testimony must show the testimony satisfies the Rule. *Engilis*, 151 F.4th at 1049.

To start, Defendants contend Dr. Naughton's testimony should be entirely excluded because he fails to articulate his methodology for reaching his conclusions. Not so. In the introduction to Dr. Naughton's report, he confirms his research and opinion are the product of numerous interviews with Chinese state-owned enterprises, his visiting scholar position at a Chinese university, discussions with other experts and policy makers, review of primary sources, and review of relevant academic literature. (Dkt. No. 1411-2 at 21-22.) Broadly, this method passes muster under Rule 702, as an expert may rely on his experience in a field to offer his

opinion. *See, e.g.*, *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1233 (9th Cir. 2017) (holding a clinician's "experience" and "reliance on a variety of literature and studies" were sufficient to qualify as an expert).

Specifically, however, Dr. Naughton offers certain opinions that do not derive from a reliable application of this methodology. First, Dr. Naughton opines:

> In addition, over the years I have studied China, I have heard of many cases of out-and-out technology theft carried out by Chinese companies and actors. In several cases, I have heard from individuals—whom I deemed credible—that they had personally been victims of such predatory behavior.

(Dkt. No. 1411-2 at 35.) An opinion based on conversations with unknown "victims" of predatory conduct by Chinese actors does not satisfy Rule 702. It is neither based on reliable facts or data nor a reliable application of a recognized academic methodology in economics. The proposed opinion amounts to "something Dr. Naughton heard from someone else," and relies on an unelaborated credibility determination as the method. This recitation of hearsay runs afoul of Federal Rule of Evidence 703 as well, which permits an expert to recite inadmissible facts "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

Second, Dr. Naughton opines:

> Because of the high priority the PRC government has placed on technology acquisition, there is a wide-spread belief among Chinese scientists, engineers and businessmen that the Chinese government does not particularly care whether or not the technology is acquired through legal means. In my opinion, this belief is nearly universal and is based on rational considerations.

(*Id*. at 35-36.) This is speculation masquerading as expert opinion. Dr. Naughton's extrapolation from the Chinese government's emphasis on technology acquisition to the conclusion that "Chinese scientists, engineers, and businessmen" believe the Chinese government does not care about the legality of its conduct, presents a classic *Joiner* problem. The "rational considerations" upon which this "opinion" is based include: 1) the Chinese government's emphasis on achieving "technological mastery"; 2) the belief that collective benefit outweighs individual corporate interest; and 3) the Chinese government has shown "pragmatism and flexibility in pursuing

technology abroad." (*Id*. at 36.)  None of these considerations—individually or combined— indicates the Chinese government categorically disregards intellectual property rights.  Nor does Dr. Naughton explain how the method of reaching this conclusion comports with any recognized economic methodology.  Ultimately, "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

Finally, Dr. Naughton opines:

> In addition, it is frequently alleged that the Chinese government supports Chinese business efforts to steal commercial secrets, including proprietary technologies.  I have no personal knowledge of such efforts, which of course would remain secret on both the offensive and defensive sides.  However, it is my opinion that were China to be involved in such an effort, it would likely include Pangang in those efforts.

(Dkt. No. 1411-2 at 36.)  Here, too, Dr. Naughton resorts to unfounded speculation.  Despite his assertion that he has "no personal knowledge" on the topic, Dr. Naughton muses that *if* the Chinese government were to steal trade secrets, *then* the Pangang Defendants would likely be involved.  This hypothetical does not satisfy Rule 702, and further, it improperly intrudes on the province of the jury, who makes the ultimate determination as to whether the Pangang Defendants engaged in culpable conduct. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("[W]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (citation omitted)).

Consequently, Dr. Naughton shall not offer any of the opinions discussed above.[2]

### B.    Relevance

Relevant evidence is generally admissible unless otherwise prohibited by law.  *See* Fed. R. Evid. 402.  Evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." Fed. R. Evid. 401.  Here, the parties dispute whether Dr. Naughton's proposed testimony on

---

[2] The Court notes Federal Rule of Evidence 403 provides a separate basis for exclusion of these opinions.  Their prejudicial effect outweighs their probative value. *See, e.g.*, *Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1007 (9th Cir. 2001) (excluding testimony that "most Korean businesses are corrupt").

United States District Court
Northern District of California

Chinese government initiatives that post-date the end of the charged conspiracy in 2011 are relevant. The Government argues the post-2011 conduct shows "the nature and purpose of the alleged conspiracy." (Dkt. No. 1423 at 9.) The Court is not persuaded.

The Government has failed to explain how conduct by the Chinese government after the alleged conclusion of the charged conspiracy is relevant to the nature of Pangang's conduct prior to that time. Indeed, whatever relationship the Pangang Defendants may have had with the Chinese government after 2011 does not confirm the nature of any earlier relationship. If anything, admitting such evidence could confuse the jury as to the relevant time period in this case. Moreover, the Government's cited authority does not support their contention. (*Id*. (citing *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016); *United States v. Ripinsky*, 109 F.3d 1436, 1442 (9th Cir. 1997))). In both cases, the court considered Rule 404(b) and admitted evidence of events outside the charged conspiracy period because they involved the same alleged scheme—namely, they constituted relevant uncharged conduct. *Loftis*, 843 F.3d at 1177 ("The uncharged transactions, therefore, are part of the charged offense—the fraudulent scheme as a whole—not 'other' crimes or 'other' acts evidence."); *Ripinsky*, 109 F.3d 1436, 1442 (9th Cir. 1997) ("We conclude that the evidence was 'inextricably intertwined' with evidence of crimes charged in the indictment and was not evidence of "other crimes" under Rule 404(b).").

For these reasons, the Government has not met its burden. Dr. Naughton shall not testify as to events that began after the end of the charged conspiracy period.

\* \* \*

Accordingly, Defendants' motion to exclude the testimony of Dr. Naughton is partially **GRANTED**. Dr. Naughton shall not offer the opinions identified in the Court's above analysis. As to the other opinions presented in Dr. Naughton's report, Defendants' motion is **DENIED**.

## III.    MOTION TO EXCLUDE MR. TAYLOR

Mr. Taylor was previously a DuPont engineer from 1989 through his retirement in 2022. (Dkt. No. 1413-2.) He also cooperated with the Government's investigation into the charged conduct and authored a number of investigative reports on evidence acquired through that investigation. (*See generally* Dkt. Nos. 1412-5 – 1412-18.) The Government proposes Mr. Taylor

testify as to the alleged trade secrets at issue in the case, including DuPont's proprietary technology and overlap with evidence seized during the course of the Government's investigation.

Prior to addressing Defendants' arguments for exclusion, the Court notes several concessions made in the Government's opposition. Mr. Taylor will not opine on whether any information was "misappropriated." He also will not testify as to the national security implications of the alleged trade secrets involved here, or as to China's interest in the technology. Further, he will not testify about certain patents that post-date the conspiracy. Last, he will not testify as to whether certain files appear to have been "hacked." (Dkt. No. 1424 at 6-7.)

Turning to Defendants' remaining arguments, Defendants contend the Government failed to properly disclose Mr. Taylor's opinions under Rule 16, and Mr. Taylor improperly opines on ultimate issues of law. Defendants also assert allowing Mr. Taylor to testify as both an expert and lay witness—particularly with respect to DuPont policies—would confuse the jury.

### A.     Rule 16

As part of the Rule 16 disclosure, the Government lists 14 reports, authored in part by Mr. Taylor, and their accompanying Bates numbers. (Dkt. No. 1413-2 at 3.) The disclosure goes on to say: "Mr. Taylor is expected to testify about the contents of his reports." (*Id*. at 4.) Under Rule 16, this is an insufficient disclosure. The Government may not gesture to a list of documents, and state the expert will testify about their contents, without specifying precisely which opinions he intends to offer. As drafted, the disclosure leaves Defendants to guess which portions of the reports will be the subject of Mr. Taylor's testimony and which portions will not. This issue is exacerbated by Mr. Taylor improperly opining in those reports that various information was "misappropriated." (*See, e.g.*, Dkt. No. 1412-5 at 2-3.) Given the Government's later assertion that Mr. Taylor will not opine on whether information was "misappropriated," it is clear he intends to testify only as to some portions of the attached reports. In any event, merely attaching the reports does not comply with Rule 16's disclosure requirements. So, Mr. Taylor may only offer opinions properly disclosed in the Rule 16 disclosure. He shall not testify as to any opinion that appears only in one of the attached reports without being separately—and sufficiently—identified in the disclosure.

United States District Court
Northern District of California

As for the remainder of the disclosure, it is largely sufficient in its description of Mr. Taylor's proposed opinions and their bases, with certain exceptions. Mr. Taylor's opinions at Subsections k., l., and m. note that he has "reviewed documents" and will offer an opinion as to those documents. (Dkt. No. 1413-2 at 7.) However, the disclosure does not identify the documents reviewed, and upon which Mr. Taylor will offer his opinion. This is an insufficient statement of the bases and reasons for Mr. Taylor's conclusions. So, he may not offer the insufficiently disclosed opinions in those paragraphs. Separately, the disclosure, at times, uses phrasing to indicate an opinion is a subset of a potentially broader list of topics. For instance, at Subsection d.i., the disclosure states: "Some of the items that sets DuPont TiO2 lines apart from competitors include . . ." before listing out several technological components. To comply with Rule 16, Mr. Taylor may not testify as to topics beyond those specifically listed in the disclosure. In sum, where the term "includes," or similar phrasing, appears in the disclosure, it shall be understood to mean "Mr. Taylor's testimony is limited to" the listed topics.

## B.    Additional Objections

Two issues remain. First, Defendants next contend Mr. Taylor seeks to improperly opine on whether certain information is a "trade secret," a legal conclusion left to the jury in this case. Mr. Taylor may testify as to whether DuPont believed certain information was a "trade secret" and took measures to protect the confidentiality of that information. Mr. Taylor shall not opine on the ultimate legal question of whether the information was indeed a "trade secret."

Second, Defendants argue allowing Mr. Taylor to testify as an expert witness as well as a lay witness on the topic of DuPont's policies, practices, and technology, could confuse the jury. As the Ninth Circuit has observed, a witness's "status as an expert could lend him unmerited credibility when testifying as a percipient witness, cross-examination might be inhibited, jurors could be confused and the [witness] might be more likely to stray from reliable methodology and rely on hearsay." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014). But, the use of a witness in both an expert and lay capacity "is not so inherently suspect that it should be categorically prohibited." *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007). In subsequent cases, the Ninth Circuit has affirmed the use of such dual-role testimony when the

district court implemented certain safeguards against the noted risks. *See United States v. Holguin*, 51 F.4th 841, 862 (9th Cir. 2022). Here, the Court will permit Mr. Taylor to testify in both a lay and expert witness capacity. However, the Court will implement safeguards to prevent the jury from drawing improper conclusions or from permitting the expert to improperly rely on hearsay. The Court will discuss these safeguards with the parties at a subsequent pretrial conference.

* * *

So, Defendants' motion to exclude is partially **GRANTED**. Mr. Taylor shall not testify as to any opinion not expressly noted in the Rule 16 disclosure. For instance, Mr. Taylor shall not offer any opinion that appears *only* within the reports attached to the disclosure and not in the disclosure itself. Mr. Taylor also shall not testify to his conclusions from reviewing the undisclosed documents mentioned in Subsections k., l., and m. of the disclosure. Further, Mr. Taylor may testify as to DuPont's treatment of certain material as a "trade secret," but may not offer the legal conclusion that certain material is indeed a trade secret. As to Mr. Taylor's lay and expert testimony, the Court will adopt safeguards to mitigate the risks of dual-purpose testimony. As to all other matters, Defendants' motion is **DENIED**.

This Order disposes of Docket Nos. 1410, 1411, and 1413.

**IT IS SO ORDERED.**

Dated: June 24, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

13